1    quit with notice.  And what happened there is the guy

2    said, "He told me he quit, so therefore, it's quit with

3    notice."  And that's how it is coded on the summary

4    sheet.

5              But if you look at the Termination Report

6    it actually has a detail that explains that he was

7    supposed to be to work on the 8th, "and I called him up,

8    and I pushed the wrong button, and I shouldn't have done

9    it."  And Mr. Migis, if February 8th is the correct last

10   day of work, was paid on time.

11             It's absolutely critical that Auto Zone

12   produce these records.  We are not stonewalling.  But

13   this was never ordered in the -- and I know that you are

14   not that happy, and I understand that.  But you have

15   to --

16             THE COURT:  Have you produced any, yet, of

17   these termination files?

18             MS. COLLINGS-TIFT:  No.  I can produce some

19   of them apparently tomorrow.  I can't give you a precise

20   percentage.  I offered to give them to them as time

21   rolled along if they would give us an extension.  The

22   answer was no.

23             THE COURT:  Well, that's been set out in

24   the papers, and plaintiff denies that they refused to

25   receive documents on a rolling basis.  And it makes no

EXHIBIT _E_
Page _10_

1   sense, frankly, if they are after 200 files, and they

2   can only get some -- some are better than none -- even

3   though it's not proper for withholding them prior to

4   discovery.  So --

5              MS. COLLINGS-TIFT:  I am not saying they

6   refused.  That was never, that was never discussed, that

7   if you get us some, that will be fine for now.  It was

8   if you get us some, that's still too bad for you.  You

9   haven't complied.  That's what was said.

10             THE COURT:  Let's hear from the plaintiff's

11  side.  Who is going to argue from the plaintiff's side?

12             MR. BAILEY:  Thank you, Your Honor.  The

13  Court's recollection is accurate.  What occurred was

14  that we had a motion to compel where there were a number

15  of Requests for Admissions that had not been responded

16  to timely.  And so we had actually asked that those be

17  deemed admitted.

18             The Court gave defendant essentially a

19  second chance, and said I am going to call these denied,

20  but the Request for Production says, "Produce the

21  underlying documents that you -- upon which you base

22  your denial."  And that's what the original 15 calendar

23  days to produce those underlying documents was.

24             THE COURT:  Do you have an independent

25  Request for Production?  I saw one request dated

EXHIBIT  E
Page  11

1   November 19th, '07, one November 30, '07.  Are all of

2   your Requests for Production tied to the Requests for

3   Admissions?

4             MR. BAILEY:  No.  The only thing that is

5   actually due tomorrow are those documents that were

6   subject to your original order.  And then subject to

7   your second order, basically, was a motion on our part

8   to enforce the order that they didn't comply with the

9   first time.

10            And if you will recall, we had to deal with

11  this spreadsheet.  And what we asked for were just the

12  underlying documents that have allowed for the

13  spreadsheet to be made, including provision for the

14  defendant to provide us in electronic format the Excel

15  spreadsheet that they gave us to begin with.  In other

16  words, we wanted the spreadsheet in electronic format.

17            And you ordered that they produce the

18  spreadsheet as well as the underlying documents that

19  would go to -- I think there's 148 people on here, but

20  my recollection is I counted them.  But if Ms. Tift

21  thinks there's 200 -- somewhere between 150 and 200

22  people are on the spreadsheet, identified by employee ID

23  number.  And it's three pages, plus 1, 2, 3, 4, 5, 6, 7,

24  8 people.  So there's three total pages, and then eight

25  additional.

EXHIBIT E
Page 2

Page 13

1              We had not asked for -- we asked that we be

2     provided with the underlying documents that allowed for

3     this document to come to play, whatever those documents

4     are.  We understand that they utilized the Termination

5     Report and other documents.  But they based -- they

6     provided this document to tell us that this document is

7     what they used to deny the Request for Admissions.

8              But on the face of the document it

9     appears -- and Ms. Tift is right -- the document itself

10    that they indicate that they relied on to make the

11    denial seems to indicate that they could not have made a

12    denial of those admissions.  Because as we go through

13    them -- and I have a color-coded chart that you provided

14    me -- on the voluntary quit with notice, the ones that

15    are marked -- that they used their schedule with, the

16    very first person that is on the list, which is the

17    second person down, indicates that they left on May 12,

18    2007, and their check was May 16, 2007, four days later.

19    And we said, well, if they gave notice, the check would

20    have been due the last day they worked.

21              If that's accurate, it doesn't make any

22    sense.  We need the underlying documents.  You ordered

23    them produce it.  I don't know that they have to go

24    through every personnel file to do that, but if they do,

25    there's only 100 of them.  I suspect they could ask the

Page 14

1    stores that they worked in to call up the five or ten

2    that each one has and do it.

3              I am amazed that a paperless company can't

4    scroll through their .pdf files and pull whatever

5    documents that they used to make this document.  Seeing

6    that -- somebody had to have done that in the first

7    place, I would think.  But I am speculating.  Maybe this

8    document is absolutely accurate, and there is no

9    underlying documents for it.  They indicated there were.

10   So seems to me --

11             THE COURT:  What do you want to do in view

12   of the situation?  I am in the middle of a trial.  It's

13   not anything that judges relish to have these kinds of

14   fights continually come back and dropped on the Court on

15   short notice on an expedited basis.

16             Mr. Bailey, you hear what they say, we

17   can't get -- I am not sure what can be produced by the

18   due date tomorrow, but I guess something will be

19   produced.  And we need three weeks for the rest of it.

20   And you heard what she said, what do you want to do?

21   What are you asking for from the Court?

22             MR. BAILEY:  Well, Your Honor, we had

23   earlier sought sanctions with respect to this, and that

24   motion has still not been heard.  We had it on an

25   expedited basis, and that hasn't been heard, to begin

EXHIBIT  E
Page  14

Page 15

1    with.  But to the extent they had all of this time to

2    get through these it would seem to me that it might be

3    appropriate for the Court to put some monetary daily

4    amount they have to tender for every day they sit on

5    this thing and not get them out to us.

6                It seems to me like the only way we're

7.   going to get them moving forward is if something is

8    going to happen, and it's going to cost them some money

9    or something.  This is not -- we're not -- frankly, I

10   have never had anybody not produce when the Court has

11   ordered it twice.  So I don't know the answer to that.

12   I think it's something that the Court needs to do

13   affirmatively to cause them to do this immediately, and

14   put some emphasis on it -- 15 more days?  I mean, I

15.  would think that they could put somebody on this and do

16   it quicker than 15 days.  They have already had five

17   months.

18                THE COURT:  Well, they are asking for

19   21 days.

20                MR. BAILEY:  21 days?  It's crazy.  I don't

21   know what the answer is.

22                THE COURT:  Well, every case, like this,

23   anyway, has two sides, and the judge is in the middle.

24   And judges act in a responsive way, somebody makes a

25   motion and the judge rules.  They made a motion for an

EXHIBIT  E
Page  15

Page 16

1    extension.  You are saying deny the motion, and put a

2    per day fine or something.  There's a provision in the

3    code that fines be paid to the Court, but who does this

4    get paid to, and what amount is it?

5              MR. BAILEY:  Your Honor, I think it would

6    go to the Court.  Obviously we have been here three

7    times now over this same issue.  There needs to be

8    something that will cause these folks to not play with

9    us about this.

10             I think the Court's perception is accurate.

11   We get caught in these one year binds that we always get

12   caught in, and we're going to do a trial schedule with

13   the Court trying to keep up, and we can't do it if they

14   don't produce.  And this is -- this is not that

15   difficult.

16             So I don't have a suggestion.  The Court

17   gave them an order.  I have never -- been doing this a

18   long time.  People tend to obey, at least the second

19   order, and get it done on time.  I don't know what it's

20   going to be.  And I don't have -- beyond what said, I

21   don't have another suggestion.

22             MS. COLLINGS-TIFT:  Your Honor, may I

23   briefly speak to this.  I want to point out one thing

24   that Mr. Bailey said that is very troubling to me.  He

25   just asked you -- and what will happen is there will be

1    an order that comes out that says this is what you said,

2    although you never said it.

3              Mr. Bailey is asking for this document, the

4    summary chart, to be produced in Excel format, and

5    there's a whole bunch of reasons why that is not

6    appropriate.  It's manipulable data.  What you need is a

7    hardcopy of this information so that everybody agrees

8    what goes back and forth between us is what went back

9    and forth between us.  An electronic copy that they can

10   change or alter or can get erased unintentionally is not

11   appropriate.  And it's not a backup document.  But

12   that's what happens --

13             THE COURT:  Well, I am getting confused,

14   because I thought we were talking about what you call

15   termination files.  I thought we were talking about the

16   underlying documents to the spreadsheet?

17             MS. COLLINGS-TIFT:  Yes.

18             THE COURT:  And, thirdly, I thought we were

19   talking about an order that occurred long ago ordering

20   that that spreadsheet be produced in electronic form.

21   Courts have, with electronic discovery, which I am sure

22   you are very familiar with, courts have been ordering

23   this for a long, long time and this is not unusual.  And

24   if somebody tries something underhanded, such as

25   manipulating an electronic document -- anything could be

Page 18

1    manipulated, including a photograph. If somebody does

2    something fraudulent -- not suggesting that would occur,

3    but you are indicating that could happen -- then there

4    are remedies for that. And you could certainly prove

5    that was going on quite easily.

6                    MS. COLLINGS-TIFT:  I do not see any

7    indication in this record that this was ordered to be

8    produced in electronic format. They just say it as

9    though that was a discussion. Nobody produces --

10                   THE COURT:  Why is that a problem producing

11   it?

12                   MS. COLLINGS-TIFT:  It's not a problem.

13   It's just we don't think this should be produced in any

14   form other than a .tiff or .pdf. And if they want that

15   in electronic form, that's fine, but I don't know why

16   they --

17                   THE COURT:  Documents are produced in Excel

18   format all the time. Why is that a problem here?

19                   MS. COLLINGS-TIFT:  Why are they asking for

20   this? Can we produce it in .pdf form? We will. Can we

21   produce it as a .tiff? We will.

22                   MR. BAILEY:  Your Honor, you will recall

23   you looked at the Powelson declaration that was Exhibit

24   B, page 2 of 3, which had the definitions of what we

25   were asking for. And one of the definitions was

1   specifically the electronic data, and obviously we would

2   like to have this document, which is labeled as 2.xls,

3   it's an Excel spreadsheet, the second version,

4   apparently -- we would like to have that document

5   produced to us in its native form.  We want to see it.

6           Sure these can be manipulated.  There isn't

7   any question.  But for the purposes of discovery,

8   electronic discovery on a CD of this document, I get

9   those -- that's just standard formatting.  To argue that

10  they will give us a .pdf file is generally -- piques my

11  interest.

12          And my real interest is that this document

13  has been proffered to this Court as being relied upon to

14  deny the request that we made.  My suspicion is -- I

15  don't know that -- but my suspicion is that this

16  document was created after the denials.  I would like to

17  see that.

18          MS. COLLINGS-TIFT:  Your Honor, even if

19  what he said is true, let's say this summary was

20  produced after the Request for Admissions, it doesn't

21  mean anything because it doesn't mean the data didn't

22  exist.  It means that on this date this was created.

23  Somebody pushed a button and made a selection of

24  different kinds of information to put in a chart and

25  printed it out.  It doesn't mean the data didn't exist.

Page 20

```
1    The data has existed forever.
2              THE COURT:  I am prepared to rule on what
3    is before me.  Defendant has moved for an extension of
4    time for the production that was ordered long ago.
5    Having reviewed the motion and heard oral arguments, and
6    having reviewed the substantial file that has been
7    coming from this since February of 2008, I do not find
8    the motion well taken.  The motion for extension of time
9    is denied.
10             On the specific question of producing the
11   Excel spreadsheet that is apparently in an Excel format,
12   Excel software program, a Microsoft product, that has
13   been discussed with the Court and held up by defense
14   counsel as something that is important.  And it appears
15   to me that is proper discovery for the plaintiff to
16   receive that in the Excel format, and that should be
17   done.
18             And I don't see any reason or any question
19   about whether that was actually ordered earlier.  I
20   don't see any reason why that would take very long at
21   all.  Today is Tuesday, the 22nd.  It would appear that
22   there would be no reason that cannot be produced by noon
23   on Friday of this week, which is April 25th.  And so
24   that's my order on that.
25             Plaintiff, in its response, in his response
```

EXHIBIT E
Page 20

Page 21

1    to the motion, last line, asks for an award of expenses.

2    I am making an award of attorney's fees on the

3    plaintiff's -- reasonable attorneys fees for plaintiff's

4    work in responding to this motion.  And we're not really

5    in a position to take the specifics of this matter up

6    now.

7              Please prepare your petition for an award

8    using the standards of ORCP 68, exchange information

9    with defendants.  And if you can't agree, I guess you

10   will need to file your motion for attorney's fees for

11   this proceeding today.  And the documents that led to

12   this proceeding, you will have to file.

13             In terms of noncompliance with the prior

14   Court orders, Mr. Bailey has requested an unspecified

15   amount of a sanction and/or fine payable to the Court,

16   or -- no clear and specific request was made.  The

17   Courts do rely on the parties to propose matters, and

18   what I am going to do is I am not extending the time.

19   And I am not adverse, necessarily, to a daily sanction,

20   but I ask plaintiff's counsel to propose something

21   specific, what you are asking for in terms of a daily

22   fine.

23             And I can assume it's going to be something

24   that the defendants will view as very unappetizing, and

25   something that will be geared toward motivating them to

1    comply with the past Court orders, and not have this

2    ongoing delay.  I denied the motion for extension.  So

3    as soon as you can get that in I will take that up on an

4    expedited basis.  But you need to propose the specifics

5    of this day-by-day sanction.

6              And I really hate being in this context.

7    This is really similar to a contempt proceeding when the

8    Court has to order -- in some cases of contempt, it's a

9    certain financial amount on a daily basis.  But it's

10   very clear from the records filed before me and this

11   oral argument that the type of record keeping of Auto

12   Zone, these kinds of issues, the kind of spreadsheet

13   issues with underlying documents, these have gone on

14   since 2005.

15             The very same attorneys on the defense side

16   know about this.  They have dealt with this same or

17   similar kinds of requests by plaintiff on the

18   plaintiff's side.  And it's really outrageous that Court

19   time needs to be taken up on matters that should be

20   worked out by counsel.

21             And so make your proposal, Mr. Bailey, and

22   we will take that up when you present an order.

23             MS. ALPERN:  May I be heard briefly.  I

24   want to be sure we're crystal clear on what we need to

25   do.  What we have and what we're prepared to produce are

EXHIBIT  E

Page 22

Page 23

1    the pay records for all of the employees, whether it's

2    150 or 200.  And we Bates stamped them yesterday.  I

3    sent over a protective order to Mr. Bailey's office, and

4    said, you know, is this agreeable able to you?

5                    And the reason we sent the protective

6    order, of course, is this is just right now an

7    individual plaintiff case, and the records that we'll be

8    producing as payroll information has first names and

9    last names.

10                   So what I had hoped was that Mr. Bailey's

11   office would agree to the protective order, and then

12   when we produced the documents tomorrow, without

13   violating any of these individual employee's privacy

14   rights by disclosing to an attorney who does not

15   represent those individuals' confidential information.

16                   I am told that we may not get a signed

17   protective order by tomorrow.  So it does put me in a

18   little bit of an awkward situation, because I don't want

19   to come before the Court, and I know you don't want me

20   to do that --

21                   THE COURT:  Yeah, you are right.  Let me

22   say it's routine in this Court, it's been a routine

23   nationwide for years, for reasonable protective orders

24   to be negotiated between counsel and signed to protect

25   the obvious interests of the kinds of things you are

1   talking about.  And I routinely approve protective

2   orders.

3                And, Mr. Bailey, I would be very surprised

4   if you are going to make an issue out of this, because

5   we need to start all becoming problem solvers here, and

6   not -- things cannot be going on that are going to

7   aggravate the situation, which is already really

8   aggravated.  So is there a problem on this?  Do I need

9   to be in on this, because I can't do too much more

10  hand-holding, frankly.  I am too busy.

11               MR. BAILEY:  I haven't read the protective

12  order that came over.  I came into the office yesterday,

13  after being out of the state, at 1:30 in the afternoon,

14  and I had to prepare for both an argument this morning

15  at 8:30 on class summary judgment on a class case.

16               Having looked at it, counsel said to me in

17  counsel chambers -- or counsel table that there was one

18  there, and had I looked at it.  And my response was I

19  have not.  And my comment was, because the intimation

20  was we aren't going to get our documents until we have a

21  protective order, even though the Court ordered those

22  documents here tomorrow.

23               And I said, don't you think it's a little

24  late to send me a protective order the day before the

25  documents are due?  And then are you telling me I am not

EXHIBIT __E__

Page __24__

Page 25

```
1    going to see those documents that were ordered until I

2    sign it? And I didn't get an answer on that.

3              THE COURT: Was this prior taken up? It

4    seems like when I order production, it's always

5    requested, if it's important, to get a protective order.

6    This is not an afterthought. Was that part of the

7    earlier order on production?

8              MR. BAILEY: No, Your Honor.

9              THE COURT: Then, Counsel, I mean, whatever

10   the order was, the order was. If you didn't ask for it,

11   I don't know if you are entitled to it or not. You are

12   basically telling me this is an afterthought, and we are

13   past the time for afterthought.

14             MS. ALPERN: I would never include in a

15   Request for Production of documents that contained

16   highly sensitive information about personnel

17   information, a protective order and get the Court

18   involved with that. Because it goes without saying, as

19   you suggested, that as the employer I can't turn over

20   that information unless I want to get the employees to

21   all sign off on it. I am trying to be efficient. I

22   sent over a protective order yesterday saying --

23             THE COURT: Was this dealt with prior to or

24   at the time of the March 7th hearing before me, or prior

25   to or at the time of the April 8th hearing before me?
```

Page 26

1    Or at any other time before today?

2              MS. ALPERN:  I do not know, but what I can

3    tell you --

4              THE COURT:  Then the orders that I signed

5    are the orders that I signed.  If you have some

6    afterthought now that you want to impose some additional

7    conditions on it, all I can tell you is the orders have

8    to be followed.  And if your firm thinks now about some

9    new idea that you should have thought about in February

10   or March, then I am sorry.  It's just what --

11             MS. ALPERN:  This is not an afterthought.

12   In our response to the Request for Production of

13   documents, we say that the information that they are

14   asking for -- I just want to make sure that I don't make

15   any misstatements to the Court --

16             THE COURT:  Counsel --

17             MS. ALPERN:  Here it is --

18             THE COURT:  This matter is not really

19   properly before the Court right now.  I am looking again

20   at the motion for extension of time in which you went to

21   Judge Marshall and asked for expedited consideration,

22   and there's nothing about a protective order.

23             MS. ALPERN:  No, no.

24             MS. COLLINGS-TIFT:  That's absolutely

25   right.

EXHIBIT __E__
Page __26__

Page 27

1                    THE COURT:  I am sorry.  This hearing is

2    over.  We're already over time.  I am supposed to have a

3    trial that started at 2:00, so please submit your order.

4                    MS. COLLINGS-TIFT:  Thank you, Your Honor.

5                    MR. BAILEY:  Thank you, Judge.

6                         ENDING TIME:  2:11 P.M.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT  E
Page  27

FROM : COOK COURT REPORTING k ___)   FAX NO. : 5035370339   ay. 21 2008 04:22PM  P3

Page 28

1    STATE OF OREGON   )

2                      )Ss.

3    COUNTY OF YAMHILL)

4

5         I, Deborah L. Cook, RPR, Certified Shorthand

6    Reporter in and for the State of Oregon, hereby

7    certify that at said time and place I reported in

8    stenotype all testimony adduced and other oral

9    proceedings had in the foregoing hearing; that

10   thereafter my notes were transcribed by computer-aided

11   transcription by me personally; and that the foregoing

12   transcript contains a full, true and correct record of

13   such testimony adduced and other oral proceedings had,

14   and of the whole thereof.

15        Witness my hand and seal at Dundee, Oregon,

16   this 21st day of May, 2008.

17

18

19

20        DEBORAH L. COOK, RPR

          Certified Shorthand Reporter

21        OREGON CSR #04-0389

          CALIFORNIA CSR #12886

22        WASHINGTON CSR #2992

23

24

25

COOK COURT REPORTING, INC. - 503-537-0339
www.cookcourtreporting.com

EXHIBIT _E_
Page _28_

24c954c6-7d89-4d4b-9826-0ae2c81233d8

# Exhibit F

# BAILEY, PINNEY & ASSOCIATES, LLC

### Attorneys at Law
#### 1498 SE TECH CENTER PLACE, SUITE 290
#### VANCOUVER, WA 98683

**CHEY POWELSON**
Telephone  (360) 567-2551
Facsimile   (360) 567-3331
e-mail: CPowelson@wagelawyer.com

* Washington License WSBA 34593
* Oregon License OSB 03551

April 28, 2008

## VIA E-MAIL ONLY

**Ms. Leigh Ann Tift**
One Union Square
600 University St, Ste 3200
Seattle, WA  98101-3122

>        ***Re:***      ***Migis v. AutoZone, Inc.*** (Multnomah Co. Circuit Court No. 0711-13531)
>                  Defendant's Document Production / Un-numbered Time Record

Ms. Tift:

Based upon a further review of the file, and deposition/declaration testimony in the *Joarnt* case, I'm writing to request that Defendant look again for and produce certain documents in the *Migis v. AutoZone* matter, such as all weekly schedules for Plaintiff Michael Migis, and all "Management Action Plan[s]." See Plaintiff's First Set of Request For Production Nos. 11, 13 - 14; and Second Set of Requests For Production 5 - 6.  (I recall that in the *Joarnt* matter in late-January 2006, Judge Kantor ordered AutoZone to preserve all period boxes in the Oregon stores.)

Moreover, be advised that in response to Plaintiff's Second Set of Request For Production No. 4 and resulting Court Order, Defendant should have produced more than just the "Missed Lunch Reports" and "Lunch Variance Reports."

And by my own rough estimate, it appears that as of the end of the business day on April 24, 2008 (and in response to the Court's second order on Plantiff's First Set of Requests For Production 2, 4 and 6), Defendant has yet to produce approximately 96 termination reports for employees listed on Bates Nos. AZ/MIGIS 0001212 - 1215.

Please advise by no later than the end of the business day on **Friday, May 2, 2008**, as to whether Defendant will produce any additional documents such as those referenced above.  Be advised that in any event we will need to confer on these issues by no later than **May 7**.  Thanks.

>                          Sincerely,
>
>                          /s/
>
>                          Chey K. Powelson
>                          Attorney for Plaintiff

EXHIBIT____F____
Page___1___

## Chey Powelson

| | |
|---|---|
| **From:** | Chey Powelson |
| **Sent:** | Monday, April 28, 2008 2:42 PM |
| **To:** | 'Tift, Leigh Ann C.' |
| **Cc:** | Bud Bailey; Brad Griffin; Charity Shindle |
| **Subject:** | Migis v. AutoZone -- Defendant's Document Production |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | To Defendant_Gaps in Document Production_04-28-2008.pdf |

Ms. Tift:

See attached letter.

**Chey K. Powelson**
Attorney at Law
Bailey, Pinney & Assoc., LLC
1498 SE Tech Center Pl, Ste 290
Vancouver, WA  98683
Cpowelson@wagelawyer.com
360.567.2551 (Ph)
360.567.3331 (Fax)

*Confidentiality Notice: This e-mail message may contain confidential and privileged information. If you have received this message by mistake, please notify me immediately via telephone, and do not review, disclose, copy, or otherwise distribute it.  Thank you.*

EXHIBIT F
Page 2

# Exhibit G

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**
**FOR THE COUNTY OF MULTNOMAH**

| | |
|---|---|
| **MICHAEL MIGIS**, on behalf of himself and all others similarly situated, | Case No. 0711-13531 |
| Plaintiffs, | |
| v. | **ORCP 39C(6) NOTICE OF DEPOSITION (AFFIRMATIVE DEFENSES)** |
| **AUTOZONE, INC.,** | **ORCP 39C(5) REQUEST FOR PRODUCTION OF DOCUMENTS** |
| Defendant. | |

TO:    AUTOZONE, INC., by and through your attorney, Douglas Parker, 1750 SW Harbor Way, Ste 450, Portland OR 97201

**PLEASE TAKE NOTICE** that on **May 15, 2008**, commencing at **9:00 a.m.**, Plaintiff will take the deposition of Defendant AutoZone, Inc., pursuant to ORCP 39C(6). The deposition will be conducted at 1750 SW Harbor Way, Ste 450, Portland, Oregon, or some other local location if agreed upon in advance by the parties. The deposition will be recorded by a licensed and qualified court reporter, and may additionally be recorded by audio/videotape.

Plaintiff requests examination on the following matters:

1.  All material facts related to Defendant's **First Affirmative Defense** that Plaintiff fails to state any claim: (a) for which class-wide relief may be granted; and (b) for which he may serve as an adequate class representative.

Page 1 -      ORCP 39C(6) NOTICE OF DEPOSITION OF DEFENDANT (AFFIRMATIVE DEFENSES)

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331



EXHIBIT ___6___
Page ___1___

1      2.  All material facts related to Defendant's **Second Affirmative Defense** that Plaintiff

2        and the putative class members were treated fairly and in good faith and were paid

3        all monies due and/or believed to be due. The amount and calculation of wages paid

4        to Plaintiff and the putative class members were undertaken in accord with lawful

5        business reasons and in good faith.

6      3.  All material facts related to Defendant's **Third Affirmative Defense** that Plaintiff

7        and the putative class members are estopped, in whole or in part, from claiming

8        additional and/or unpaid compensation by reason of their actions, such as, but not

9        limited to, failing to properly report compensable time.

10     4.  All material facts related to Defendant's **Fourth Affirmative Defense** that Plaintiff

11       and the putative class members' claims are barred in whole or in part by laches in

12       that they unreasonably delayed in bringing forth their stated claims, to the extent

13       meritorious, and Plaintiff's unreasonable delay caused hardship to AutoZone in

14       defending the purported claims.

15     5.  All material facts related to Defendant's **Fifth Affirmative Defense** that any and all

16       wages unpaid are the subject to a bona fide, good faith dispute in that AutoZone has

17       paid all wages that it knows or knew were due, and that AutoZone therefore should

18       not be subject to the imposition of penalties.

19     6.  All material facts related to Defendant's **Sixth Affirmative Defense** that Plaintiff

20       fails to state a claim that meets, substantively, the pre-requisites of Oregon Civil Rule

21       32A and B, and therefore may not maintain this action as a class action lawsuit.

22       Inquiry by deposition into this Defense will include:

23          a.  The total number and location of AutoZone stores in the State of Oregon

24            for the relevant period of time set forth in the Complaint;

25          b.  The total number of full- and part-time hourly AutoZone employees in the

26            State of Oregon for the relevant period of time set forth in the Complaint;

Page 2 -     ORCP 39C(6) NOTICE OF DEPOSITION OF DEFENDANT (AFFIRMATIVE DEFENSES)

EXHIBIT 6
Page 2

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1      c.    The total number of hourly AutoZone employees in the State of Oregon

2            whose employment terminated (voluntarily and/or involuntarily) during the

3            relevant period of time set forth in the Complaint, including the total

4            number of terminating employees who: (i) were involuntarily terminated;

5            (ii) gave at least 48 hours' notice of their intent to quit employment; and

6            (iii) voluntarily left employment without giving at least 48 hours' notice;

7      d.    The total number of hourly AutoZone employees in the State of Oregon

8            whose time records show one or more work weeks of more than 40 hours

9            of work, during the relevant period of time set forth in the Complaint;

10     e.    The total number of hourly AutoZone employees in the State of Oregon

11           who delivered or picked up parts or other inventory, for the benefit of

12           AutoZone, during the relevant period of time set forth in the Complaint,

13           regardless of whether such delivery or pick up was part of their official job

14           duties or description; and

15     f.    All other material facts relating to Defendant's contention that class

16           certification under ORCP 32A and B is not appropriate.

17   7. All material facts related to Defendant's **Eighth Affirmative Defense** that Plaintiff's

18      and the putative class members' claims are barred in their entirety because their

19      claims are currently pending in another matter, *Joarnt, et al. v. AutoZone, Inc.*; and

20      that Plaintiff and many of the putative class members in this action are also putative

21      class members in *Joarnt, et al. v. AutoZone, Inc.*

22   8. All material facts related to Defendant's denials to Plaintiff's First Requests For

23      Admission Nos. 1 - 3.

24   9. The document(s) Bates-numbered AZ/MIGIS 0001212 - 1215, and related Bates-

25      numbered document(s) AZ/MIGIS 0001216 - 1219, including the identity of all

26      persons involved in the creation, review and/or modification of such document(s),

Page 3 -     **ORCP 39C(6) NOTICE OF DEPOSITION OF DEFENDANT (AFFIRMATIVE DEFENSES)**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

EXHIBIT 6

Page 3

1     and the form and content of those document(s) (e.g., identification and meaning of

2     all fields, sources of data found therein, and the definition of all PeopleSoft Action

3     Codes).

4     10. The contents and authenticity of the documents Defendant has produced, as of the

5     date of the deposition, during the course of this lawsuit.

6     11. The contents and authenticity of the documents as requested below.

7

8     **NOTE:** PURSUANT TO ORCP 39C(6), DEFENDANT'S HAS AN AFFIRMATIVE DUTY TO

9     DESIGNATE, PREPARE AND PRODUCE THE PERSON(S) NEEDED TO TESTIFY AS TO

10    THE TOPICS LISTED ABOVE.  IF THE PERSON OR PERSONS PRODUCED DO NOT

11    HAVE   ADEQUATE   KNOWLEDGE   TO   TESTIFY,   PLAINTIFFS   WILL   SEEK

12    APPROPRIATE REMEDIES, INCLUDING SANCTIONS.

13

14    Defendant should, by no later than five (5) business days prior to the date of this

15    deposition, notify Plaintiff of each person designated, and the issue or issues on which such

16    person will testify.

17    The deposition will continue from hour to hour and day to day until complete.

18

19

20

21                        **[CONTINUED ON NEXT PAGE]**

22

23

24

25

26

Page 4 -        **ORCP 39C(6) NOTICE OF DEPOSITION OF DEFENDANT (AFFIRMATIVE DEFENSES)**

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

EXHIBIT __G__
Page __4__

1        **ORCP 39C(5) REQUEST FOR PRODUCTION AT THE ABOVE-DESIGNATED**

2    **TIME AND PLACE** (NOTE: See **Attachment 1** for the definitions of "document" and

3    "electronic data"): (1) Produce all documents and electronic data containing all material facts and

4    reasons upon which Defendant relies to assert its First, Second, Third, and Fifth Affirmative

5    Defenses.  (2)  Produce in native electronic format all prior versions and drafts, if any, of the

6    document(s) Bates-numbered AZ/MIGIS 0001212 - 1215. (3) Produce Print Screens showing all

7    File Properties information for the Excel file which was a source for the document(s) Bates-

8    numbered AZ/MIGIS 0001212 - 1215.

9

10    SIGNED this _10th_ day of April 2008.

11                    BAILEY, PINNEY & ASSOCIATES, LLC

12

13                    A.E. "BUD" BAILEY, OSB 87157

14                    CHEY POWELSON, OSB 03551
                        Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

Page 5 -      **ORCP 39C(6) NOTICE OF DEPOSITION OF DEFENDANT (AFFIRMATIVE DEFENSES)**

EXHIBIT 6
Page 5

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1

2                          **ATTACHMENT 1**

3    a.       The term "document" or "documents" as used herein is to be construed broadly and shall

4    mean any kind of hard copy and/or electronic written, recorded or graphic matter in any form of

5    physical media, however produced or reproduced, of any kind of description, whether sent or

6    received or neither, including originals, non-identical copies (whether different from the original

7    because of marginal notes, or other material inserted therein or attached thereto, or otherwise),

8    drafts and both sides thereof, including, but not limited to: agreements, communications,

9    correspondence, telegrams, cables, telex messages, electronic mail messages ("e-mail"),

10   memoranda, records, books, summaries of records or personal conversations or interviews, desk

11   calendars, appointment books, diaries, journals, forecasts, statistical statements, tabulations,

12   accountants' work papers, graphs, charts, accounts, analytical records, affidavits, minutes, records

13   or summaries of meetings or conferences, reports or summaries of interviews or telephone

14   conversations, reports or summaries of investigations, opinions or reports of consultants,

15   appraisals, records, reports or trade letters, press releases, contracts, notes, projections, drafts of

16   any documents, working papers, checks (front and back), check stubs or receipts, sound

17   recordings, data processing records, microfilm, photographs, maps, financial statements or reports

18   thereof, promissory notes, loan agreements, loan files and all notes contained with loan files,

19   revolving credit agreements, deeds of trust, guaranty agreements or indemnification agreements,

20   real estate contracts for sale or lease, pleadings, or any other documents or writings of whatever

21   description, including any information contained in any computer (even if not previously printed

22   out) within the custody or control of you or any of your employees, agents, including attorneys,

23   accountants, investment bankers or advisors, or any other person acting or purporting to act on

24   your behalf.

25          b.       Produce all non-identical copies of all responsive documents including copies that

26   bear marks, notations or changes not present on the original.

Page 6 -       ORCP 39C(6) NOTICE OF DEPOSITION OF DEFENDANT (AFFIRMATIVE DEFENSES)

EXHIBIT G
Page 6

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

c.    If any documents are withheld on grounds of attorney/client privilege or attorney work product immunity, identify the author, each recipient thereof, the nature of the document and the basis upon which the privilege is asserted.

d.    If any document requested was, but no longer is in the possession, custody, or control of Defendant, or in existence, Plaintiff will inquire into whether the document (a) is missing or lost, (b) has been destroyed, (c) has been transferred, voluntarily or involuntarily, to others, or (d) has been otherwise disposed of. For each such instance, explain the circumstances surrounding such disposition, give the date or approximate date thereof, and the names and last known home and business addresses of these persons with knowledge of such circumstances.

e.    "Defendant" as used herein refers to all parties named in this action, and all agents, employees or other persons with an interest in any party.

f.    These Requests For Production are continuing and, in the event you discover further information that is responsive to them, you must supplement your responses. If you fail to supplement your responses in a reasonable fashion, requestor will move the Court for an order excluding from evidence at trial any matter which is responsive and not furnished.

g.    The phrase "Electronic Data" includes information from Defendant's computer systems, removable electronic media and other locations. This further includes, but is not limited to, all documents, text files, e-mail and other electronic communication (including logs of e-mail history and usage, header information and "deleted" files), word processing documents, spreadsheets, databases, calendars, telephone logs, fax logs, alarm or security logs or records, video security or other tapes or recordings, contact manager information, internet usage files, backup files and tapes, image files, and network access information. This also includes data on personal, home or laptop computers of personnel containing potentially discoverable information. With respect to all of the above, produce the data in native file format with any metadata intact.

Page 7 -        ORCP 39C(6) NOTICE OF DEPOSITION OF DEFENDANT (AFFIRMATIVE DEFENSES)

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331


EXHIBIT 6
Page 7

# Exhibit H

COPY

1

2

3

4

5          IN THE CIRCUIT COURT OF THE STATE OF OREGON
              FOR THE COUNTY OF MULTNOMAH
6

7    **MICHAEL MIGIS**, individually, and on          Case No. 0711-13531
     behalf of all others similarly situated,
8
                                                      (Filed as a Class Action)
9                   Plaintiff,

10

11          v.                                        **CASE MANAGEMENT ORDER**

12   **AUTOZONE, INC.,**

                    Defendant.
13

14

15          **THIS MATTER** having initially been raised by the Court during hearing on March 7,

16   2008, and the parties having further discussed the dates set forth below, the Court hereby

17   ORDERS the following:

18          1.    **Motions Schedule:**

19                a.   *Class Certification*:  Plaintiff's Motion for Class Certification will be filed and

20                     served by no later than **August 15, 2008** (Friday).   Defendant's opposition

21                     briefing will be filed and served by no later than **September 8, 2008** (Monday).

22                     Plaintiff's reply briefing will be filed and served by no later than **September 15,**

23                     **2008** (Monday).

24                     i.   The Court will set and inform the parties as to the hearing date on said

25                          Motion.

26   ///

Page 1 -    CASE MANAGEMENT ORDER

EXHIBIT ___H___
Page ___1___

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683

1       ii.  The parties agree to service of any of the foregoing briefing by fax, and/or

2           e-mail in .pdf format, with hard copy sent via either regular mail or hand

3           delivery.

4       iii.  ORCP 32F(1) Notice (if necessary): Defendant will provide a class list by

5           no later than 10 business days after the Court's ruling on Plaintiff's Motion

6           for Class Certification.

7       iv.  ORCP 32F(2) Notice (if necessary): To be issued by no later than

8           December 1, 2008.

9

10   **2.**   **Trial Date:** *[handwritten: To be set by Presiding Court. Both Counsel*

11       *to appear at Ex Parte within 10 days to obtain*

12       *trial date and to cooperate on setting Ex Parte date.]*

      i.  [  ] Plaintiff's proposal: April 1, 2009

13

14       ii.  [  ] Defendant's proposal: January 12, 2009

15

16       Changes to this Order proposed by the parties may be made in writing or upon motion,

17 either by stipulation or good cause shown.

18       SIGNED this _14th_ day of ___May___ 2008.

19

20

21           The Hon. Jerome LaBarre

22           Multnomah County Circuit Court

23 APPROVED AS TO FORM:

24

25 A.E. "BUD" BAILEY, OSB NO. 87157
    Bbailey@wagelawyer.com

26 CHEY K. POWELSON, OSB NO. 03551

Page 2 -     **CASE MANAGEMENT ORDER:**

EXHIBIT _H_
Page _2_

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1    Cpowelson@wagelawyer.com
     1498 SE Tech Ctr Pl, Ste 290
2    Phone: 360.567.2551
     Fax: 360.567.3331
3    Vancouver, WA  98683
     Attorneys for Plaintiff

4

5

     APPROVED AS TO FORM (CONT.)
6

7    _____

8    DOUG PARKER, OSB NO. 821017
     NEIL OLSEN, OSB NO. 053378
9    1750 SW Harbor Way, Ste 450
     Portland, OR  97201
     Phone:  503.221.0309
10   Fax:  503.242.2457
     Attorneys for Defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 3 -    CASE MANAGEMENT ORDER

EXHIBIT __H__
Page __3__

# Exhibit I

Deposition of MARK DESSEM, taken on August 25, 2005

Page 1

1           IN THE CIRCUIT COURT OF THE STATE OF OREGON
                 FOR THE COUNTY OF MULTNOMAH

2

3    RICHARD JOARNT AND BERT YAMAOKO,
     individually, and on behalf of all
4    others similarly situated ·              PLAINTIFFS

5    VS.                                NO. 0503-02795

6    AUTOZONE, INC., a Foreign Corporation      DEFENDANT

7

8

9    ****************************************************

10              DEPOSITION OF MARK DESSEM

11   ****************************************************

12

13

14

              TAKEN AT THE INSTANCE OF THE PLAINTIFFS
15       IN THE OFFICES OF THE SHELBY COUNTY COURTHOUSE
             40 ADAMS AVE. RM 228, MEMPHIS, TENNESSEE
16       ON AUGUST 25, 2005, BEGINNING AT 8:55 A.M.

17

18

                   (APPEARANCES NOTED HEREIN)
19

20

21

     Reported by:  REGINA D. RUSSELL, CSR 1110
22   _____

23                ADVANCED COURT REPORTING
                       P.O. BOX 761
24                TUPELO, MS 38802-0761
                     (662) 690-1500

25

EXHIBIT _I_
Page _1_

Deposition of MARK DESSEM, taken on August 25, 2005

Page 2

```
1     APPEARANCES:
2     For the Plaintiffs: A. E. BUD BAILEY, ESQUIRE
                          Bailey, Pinney & Associates, LLC
3                         Columbia Tech Center
                          1498 SE Tech Center Place
4                         Suite 290
                          Vancouver, Washington  98683
5                         (360) 567-2551
6
      For the Defendant:  LEIGH ANN COLLINGS TIFT, ESQUIRE
7                         Littler Mendelson
                          701 Fifth Avenue, Suite 6500
8                         Seattle, Washington  98104-7097
                          (206) 623-3300
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

EXHIBIT _I_
Page _2_

Deposition of MARK DESSEM, taken on August 25, 2005

Page 65

```
1      Q.    What's the procedure if someone quits in
2   Oregon?
3      A.    We receive a phone call from field
4   operations or the store manager, human resources,
5   field or human resources.  They call us up and say so
6   and so -- employment -- he's either quitting, he's
7   been terminated, and they order a final check.
8      Q.    And what is your -- what happens in your
9   office?
10     A.    We immediately write up a check request and
11  that check leaves the same day and is sent out
12  overnight mail, FedEx.
13     Q.    FedEx?
14     A.    Yes.
15     Q.    Back to --
16     A.    Back to that store.
17     Q.    Back to that store.
18     A.    Or, if some reason, human resource, you
19  know, is doing the termination at a different store
20  for some reason, you know -- there are times where it
21  may go to another store, but it's going out to the
22  stores.
23     Q.    Okay.  And the triggering process there is
24  a phone call from someone?
25     A.    Yes.
```

EXHIBIT __I__
Page __3__

Deposition of MARK DESSEM, taken on August 25, 2005

Page 68

1   did it.   The "H" is what we key off as, meaning that

2   is an hourly pay group.

3       Q.   And the pay period ends 10/23/2004.   That

4   just means that's the last day of the pay period?

5       A.   Yes.

6       Q.   And the issue date here is 10/22/2004?

7       A.   Yes.

8       Q.   I note that it's got a box checked, says

9   "off cycle."

10      A.   Yes.

11      Q.   What does that mean?

12      A.   That means this was a manual check that we

13   issued.

14      Q.   And when it's a manual check, is there

15   someone that does a -- why don't you tell me, how

16   does this maual check get done physically?   What goes

17   on?

18      A.   Again, it starts with the phone call.   That

19   person writes up a check request based on the

20   information that we're given, and that check request

21   is given to someone else in payroll who's responsible

22   for issuing manual checks.   They key it in, process

23   the check that same day, FedEx the check out that

24   same day, and it arrives the next day.

25      Q.   The date that the check was issued is the

Deposition of MARK DESSEM, taken on August 25, 2005

Page 69

1    date that it was actually printed in payroll?

2         A.    No.   The issue date is the date that the

3    check is going to arrive.

4         Q.    So this check then would have been

5    theoretically put together on the 21st?

6         A.    Yes.

7         Q.    And so it's dated for the date that it's

8    anticipated that it gets to the store.

9         A.    Yes.

10        Q.    Okay.   If I look down at the screen, it

11   says, a little further down under the box that says

12   "earnings?"

13        A.    Uh-huh (Indicating yes).

14        Q.    It says "Regular 62.65."

15        A.    Correct.

16        Q.    How does that -- how do those hours get

17   transmitted to the person who's doing the handcut

18   check?

19        A.    Well, the person that's doing the handcut

20   check is working off of the check request that is

21   given to them.   The check request is written up by

22   the person that has taken the phone call.   And they

23   are going to get this data from one of two places.

24   In this particular case, first week hours had already

25   been transmitted, because we're into the second -- in

EXHIBIT _I_

Page _5_

1·

```
 1        IN THE CIRCUIT COURT OF THE STATE OF OREGON
              FOR THE COUNTY OF MULTNOMAH
 2


 3   RICHARD JOARNT AND BERT YAMAOKO,
     individually, and on behalf of all
 4   others similarly situated              PLAINTIFFS


 5   VS.                              NO. 0503-02795


 6   AUTOZONE, INC., a Foreign Corporation      DEFENDANT


 7


 8


 9   *************************************************


10            DEPOSITION OF MARK DESSEM


11   *************************************************


12


13


14


          TAKEN AT THE INSTANCE OF THE PLAINTIFFS
15     IN THE OFFICES OF THE SHELBY COUNTY COURTHOUSE
         40 ADAMS AVE. RM 228, MEMPHIS, TENNESSEE
16        ON AUGUST 25, 2005, BEGINNING AT 8:55 A.M.


17


18


              (APPEARANCES NOTED HEREIN)
19


20


21


22   Reported by:   REGINA D. RUSSELL, CSR 1110
     _____

23              ADVANCED COURT REPORTING
                     P.O. BOX 761
24               TUPELO, MS 38802-0761
                    (662) 690-1500        ORIGINAL
25
```

```
1                   C E R T I F I C A T E

2      STATE OF MISSISSIPPI       )

3      COUNTY OF LEE              )

4      RE:   ORAL DEPOSITION OF MARK DESSEM

5           I, Regina D. Russell, CSR 1110, a Notary

6      Public within and for the aforesaid county and state,

7      duly commissioned and acting, hereby certify that the

8      foregoing proceedings were taken before me at the

9      time and place set forth above; that the statements

10     were written by me in machine shorthand; that the

11     statements were thereafter transcribed by me, or

12     under my direct supervision, by means of

13     computer-aided transcription, constituting a true and

14     correct transcription of the proceedings; and that

15     the witness was by me duly sworn to testify to the

16     truth and nothing but the truth in this cause.

17          I further certify that I am not a relative or

18     employee of any of the parties, or of counsel, nor am

19     I financially or otherwise interested in the outcome

20     of this action.

21          Witness my hand and seal on this 1st day of

22     September, 2005.           \

23

24     My Commission Expires:    CSR 1110
       May 27, 2008              Notary Public
25
```

EXHIBIT Ⅱ
Page 7

# Exhibit J



Relentlessly creating the most exciting Zone for vehicle solutions!

Store Handbook

**AutoZone**®

WITTICHEN

EXHIBIT __J__
Page __1__

AZ/MIGIS 0001621

# Your Pay, Records and Benefits

## Overview

**Contents**   Pay, records and benefits topics are listed below.

| Topic | See Page |
|---|---|
| Your Pay | 47 |
| Your Personnel Records | 48 |
| Rewards & Performance Management (RPM) | 49 |
| Benefit Plans | 50 |
| Vacation | 54 |
| Other Paid Time Off | 55 |
| Leaves of Absence | 56 |

## Your Pay

**Introduction**   AutoZone pays you every two weeks (unless regulated by different state requirements). You are provided with a summary of pay and deductions – those required by law and those authorized by you. You are encouraged to review your check carefully and advise your manager if you have any questions or need assistance.

**Electronic pay options**   In certain states AutoZone mandates the use electronic transfer pay options. Options include:

- Direct deposit – recommended if you have a personal bank account; and
- Pay card – available even if you do not have a personal account.

In states that allow AutoZone to mandate electronic transfer you ask your manager for:

- Instructions to enroll in direct deposit using the WITT-JR at your store; or
- A pay card enrollment kit including a Cardholder Agreement that must be signed and mailed as instructed.

AZMIGIS 0001646

© 2004–2006, AutoZone, Inc. All rights reserved

Store Handbook 2006

EXHIBIT
Page

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH

**MICHAEL MIGIS**, individually and on behalf
of all others similarly situated,

                Plaintiff,

    v.

**AUTOZONE, INC.**, a Nevada corporation,

                Defendant.

Case No. 0711-13531

**STIPULATED PROTECTIVE
ORDER**

THE PARTIES TO THE ABOVE-ENTITLED ACTION, hereby stipulate and agree to
the following protective order, subject to approval by the Court:

    1.   Definitions of terms used in this Stipulated Protective Order ("SPO") are as follows:

        a.   "Confidential" refers to: (i) personal information of natural persons, including

            medical information, driver's license numbers, dates of birth, Social Security

            Numbers, financial account numbers, and any other information set forth in

            Uniform Trial Court Rule 2.100; and (ii) business trade secrets, the disclosure

            of which would work a clearly defined and serious injury. See *Citizens' Util.*

            *Bd. v. Oregon Pub. Util. Comm'n*, 128 Or App 650, 658, *rev. denied*, 320 Or

            272 (1994).

        b.   "Document" refers to any hard copy or electronic document or file produced by

            any party in this action or third party in response to compulsory process (e.g.,

            subpoena *duces tecum* or Court order) or pursuant to ORCP 43 (and as

Page 1 -    **STIPULATED PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

"document" and "electronic data" are defined by the parties in their discovery requests); e-mail (including attachments, if any) in hard copy or electronic form; deposition transcripts and exhibits; or any and all other written, printed, typed, punched, taped, filmed, or graphic matter or tangible thing, however produced or reproduced.

2.  Any party may designate documents produced in this lawsuit as "Confidential" by stamping or typing the designation on the face of the documents produced. Notwithstanding the foregoing, a cover letter may be used to designate certain materials, such as computer data, where stamping would be impossible. Transcripts of deposition or other testimony shall be designated by reference to the page and lines being designated. Designation of deposition materials shall be made within 10 days after the transcript of such deposition or hearing is available; or (b) a reasonable extension of any applicable time period may be agreed to in writing among counsel for the parties. If a party inadvertently produces documents bearing an improper designation, the producing party may re-designate such documents by providing written notice to the receiving party within a reasonable time after discovering the inadvertent production. Upon such notice, the receiving party shall treat the documents according to the new designation.

3.  "Confidential" documents may be seen only by:

    a.    the Court and its personnel;

    b.    each party's attorneys and the staff of those attorneys;

    c.    independent experts and consultants;

    d.    court reporters, videographers, commercial copy services, translators, demonstrative exhibit preparers, trial consultants, and data and computer support organizations hired by and assisting the attorneys for any party;

    e.    any natural person or legal entity from whom testimony is taken, where such

Page 2 -    **STIPULATED PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

JUN-04-2008 10:55          94%          P.003

1         person was an author or recipient of the designated document, or which relates

2         to that person, or where counsel for the designating party has, either before or

3         during the deposition, approved the disclosure of such documents to that

4         person, except that such person may not retain any such documents; and

5    f.    current and former individual parties and officers, directors and employees of

6         any party.

7    g.    Neither the "Confidential" documents nor information contained therein shall

8         be disclosed to other persons; such documents may be shown only to the above-

9         described people or entities when disclosure is necessary for purposes of this

10        lawsuit, and said persons are given a copy of this Protective Order and sign an

11        acknowledgment on a copy of this Order stating they have read the Order and

12        agree to be bound by its terms.

13  4.    Nothing herein shall impose any restrictions on the use or disclosure by a party of

14        documents or portions of documents obtained by such party, independent of

15        discovery from a party in this action, whether or not such documents or portions are

16        also obtained through discovery in this action, or from disclosing its own

17        "Confidential" documents or portions of documents as that party deems appropriate.

18        Nor shall this Order restrict the use or disclosure of documents or portions of

19        documents that: (a) are in the public domain at the time of use or disclosure; (b)

20        become part of the public domain after the time of the use or disclosure, through no

21        fault of the receiving party; (c) were received from a third party under no obligation

22        of confidentiality; (d) agreed to in advance in writing by all parties; or (e) are derived

23        or obtained independently of the use or disclosure. The receiving party shall have the

24        burden of proving that the use or disclosure satisfies one or more of these criteria.

25  5.    If any party or individual who has received documents designated as "Confidential"

26        is served with a subpoena or other judicial process demanding production or

Page 3 -    **STIPULATED PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

JUN-04-2008 WED 10:54 AM CIRCUIT COURT ADMIN          FAX NO. 5039885773          P. 03

1    disclosure of the documents, the receiving party or individual: (a) shall provide all

2    parties to the lawsuit with a copy of the subpoena or other judicial process within 10

3    days following receipt thereof; (b) shall inform the subpoenaing party that the

4    requested documents are governed by the terms of this Order; and (c) shall not

5    disclose or produce "Confidential" documents unless (i) the subpoenaed party

6    receives written permission from the designating party, or (ii) the designating party

7    fails to file a motion to protect disclosure of such documents within 15 days of being

8    given notice of the request.  This provision does not apply to those documents that

9    can be redacted of "Confidential" information prior to production.

10    6.    This Order shall not restrict disclosure of "Confidential" documents to the Court, its

11    personnel, or any appellate court in accordance with this Paragraph.  All materials

12    filed with the Court that include documents generally designated "Confidential," or

13    information taken from such documents, shall be filed with any personal confidential

14    or trade secret information redacted before submission to the Court (thereby

15    rendering the document disclosable into the public record).  To the extent redaction

16    is not possible, the parties agree to file "Confidential" documents under seal pursuant

17    the applicable Court rules and/or procedure, PROVIDED however, that the party

18    moving to file documents under seal sets forth a specific description of particular or

19    categories of documents they seek to protect, and a clear statement of the facts

20    justifying a seal and overcoming the strong presumption in favor of public access to

21    court records.  The facts supporting any motion to seal must be supported by

22    declaration or affidavit.  To obtain a court order sealing documents attached to or for

23    use in a non-dispositive motion, the parties must make a particularized showing *and present at ex parte*

24    under the "good cause" standard set forth in ORCP 36C.  To obtain a court order *(presiding)*

25    sealing documents attached to a dispositive motion, such as for summary judgment, *Judge*

26    the parties must meet a "compelling reasons" standard and not the lesser ORCP 36C

Page 4 -    **STIPULATED PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

JUN-04-2008  10:55          94%          P.005

1    "good cause" standard, as court records relating to dispositive motions especially are

2    presumptively public.

3    7.   Any receiving party disagreeing with the producing party's initial or subsequent

4    "Confidential" designation must confer with the producing party in an effort to

5    resolve the issue. If the parties cannot reach agreement, the receiving party may file

6    a motion to challenge the designation, but the designating party retains the "good

7    cause" or "compelling reasons" burden to establish that the document or category of

8    documents are "Confidential."

9    8.   This Order in no way limits the permissible scope of discovery under ORCP 36, nor

10   shall it be deemed a waiver of any party's rights to oppose discovery on any grounds.

11   This Order shall not foreclose the parties from applying to the Court for further or

12   additional protective orders. In addition, the parties may agree among themselves to

13   the modification of this Order, subject to approval of the Court.

14   9.   The Court signing this Order may change the terms of this Order, on motion by any

15   party or on its own motion after notice to the parties and an opportunity to be heard.

16   SIGNED this 27 day of May 2008.

17

18   JEAN K. MAURER
     THE HON. JEROME LABARRE
19   MULTNOMAH CO. CIRCUIT COURT

20

21   APPROVED AS TO FORM:
     BAILEY, PINNEY & ASSOCIATES, LLC          LITTLER MENDELSON, PC

22

23   A.E. "BUD" BAILEY, OSB NO. 87157          LEIGH ANN TIFT, OSB NO. 054732
     bbailey@wagelawyer.com                    One Union Square
24   1498 SE Tech Center Pl, Ste 290           600 University St, Ste 3200
     Vancouver, WA  98683                      Seattle, WA  98101-3122
25   Phone: 360.567.2551                       Phone: (206) 623-3300
     Fax: 360.567.3331                         Fax:   (206) 447-6965
26   Attorney for Plaintiff                    Of Attorney for Defendant

Page 5 -     **STIPULATED PROTECTIVE ORDER**

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

JUN-04-2008 WED 10:55 AM CIRCUIT COURT ADMIN     FAX NO. 5039885773          P. 05

1

2                    **IN THE CIRCUIT COURT OF THE STATE OF OREGON**

3                             **FOR THE COUNTY OF MULTNOMAH**

4

5

6   MICHAEL MIGIS, individually, and on          No. 0711-13531
    behalf of all other persons similarly
7   situated,                                     **DECLARATION OF LEIGH ANN TIFT IN**
                                                  **SUPPORT OF DEFENDANT'S**
8                          Plaintiff,             **OPPOSITION TO PLAINTIFF'S MOTION**
                                                  **TO ENFORCE COURT ORDER**
9          vs.

10  AUTOZONE INC., a Nevada                       **DATED: JULY 11, 2008**
    Corporation,
11
                           Defendant.
12

13
    I, Leigh Ann Collings Tift, hereby declare as follows:
14
            1.      I am an attorney representing Autozone Inc. in the above-captioned matter, and I
15
    make this declaration in support of Defendants' Opposition to Plaintiff's Motion to Enforce Court
16
    Order.  I have personal knowledge of the statements contained herein.
17

18          2.      Attached as **Exhibit 1** to this Declaration is a true and correct excerpt of Defendant's

19  Fourth Supplemental Responses to Plaintiff's Requests for Admission 1-3 and First Requests for

20  Production.

21          3.      In addition to the summary chart of terminated employees, the documents produced

22  by AutoZone in response to Plaintiff's first Requests for Production were termination reports for

23
    employees who terminated in the period November 2006 to November 2007, paycheck data for all
24
    employees who terminated between November 2006-2007, and AutoZone's store handbook, a memo
25

26
    **DEC OF L. TIFT ISO OF DEF'S OPP. TO**              1              Littler Mendelson, PC
    **PLAINTIFF'S MTN TO ENFORCE**                                     600 University Street, Suite 3200
    **COURT ORDER**                                                    Seattle, WA 98101
                                                                       Phone: 206-623-3300 Fax:206-447-6965

                                                                       85452265

1  from Mark Dessem, AutoZone's Director of Payroll, a memo from AutoZone's Director of Payroll

2  (who is responsible for all payroll functions) reminding field officers of "our policy to call in all

3  Oregon terminations on a timely basis so that we may issue the appropriate manual check for their

4  final pay," and training materials for managers, which provide, in relevant part, that dismissal of an

5  employee cannot take place on the spot. A copy of a recent letter from Ms. Alpern, outlining the

6  efforts AutoZone has undertaken to respond to Plaintiff's discovery demands and requests for

7  conferences is attached as **Exhibit 2** to this Declaration.

8

9       4.       Attached as **Exhibit 3** to this Declaration is a true and correct excerpt of Excerpt of

10  March 8, 2008 transcript of a hearing before this Court relating to Defendant's production of

11  documents.

12       5.       On April 22, 2008, after the Court denied AutoZone's request for an extension of

13  time to produce termination reports, AutoZone made an extraordinary effort to find all termination

14  reports, and did so principally on April 23, 2008, the date ordered by the Court, with the remainder

15  of all documents that could be found on April 24. More than half of the reports cannot be located.

16

17  However, that is not the result of negligence or a failure to search. AutoZone's store managers, the

18  Regional HR manager, and I have searched period boxes in the stores and all personnel files for each

19  terminated employee. Based upon the testimony of AutoZone's former Regional HR Manager,

20  Nicole McCollum, whose deposition was taken by Plaintiff's counsel in the matter of Joarnt v.

21  AutoZone, it is my understanding that the reports can be printed at the time they are filled out, but

22  not necessarily after the information is sent to AutoZone's corporate records. Attached to this

23

24  Declaration as **Exhibit 4** is a true and correct excerpt of the deposition transcript of Ms. McCollum,

25

26

DEC OF L. TIFT ISO OF DEF'S OPP. TO                    2
PLAINTIFF'S MTN TO ENFORCE
COURT ORDER

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA 98101

Phone: 206-623-3300 Fax:206-447-6965

1    pages 96 and 97.  Plaintiff's Counsel in this matter, Mr. Bailey, was attorney for Plaintiffs Joarnt and

2    Yamaoka, and examined Ms. McCollum.

3            6.        Attached as **Exhibit 5** to this Declaration is a true and correct excerpt of the

4
     deposition transcript of Plaintiff, Michael Migis, pages 106, 110, 113, 116, and 169.
5
             7.        Attached as **Exhibit 6** to this Declaration is a true and correct copy of the termination
6
7    report prepared for Mr. Migis.  The document was produced in response to Plaintiff's discovery

8    requests, and is Bates numbered 0001347.

9            8.        Attached as **Exhibit 7** to this Declaration is a true and correct copy of a Manager's

10   Training Handbook, page 109.  The document was produced in response to Plaintiff's discovery

11   requests, and is Bates numbered 0002177.
12
             9.        Attached as **Exhibit 8** to this Declaration is a true and correct excerpt of the
13
14   deposition of Carlos Jon, pages 90, 92 and 103.

15           10.       Attached as **Exhibit 9** to this Declaration is a true and correct copy of a termination

16   report, produced in response to Plaintiff's discovery requests.  The document is Bates numbered

17   0001819.

18

19

20

21   Dated:  June 5, 2008

22                                                      _____
                                                        Leigh Ann Collings Tift, OSB #05473
23                                                      ltift@littler.com
                                                        LITTLER MENDELSON
24                                                      A Professional Corporation

25                                                      Attorneys for Defendant
                                                        AUTOZONE, INC.
26

**DEC OF L. TIFT ISO OF DEF'S OPP. TO**              3
**PLAINTIFF'S MTN TO ENFORCE**
**COURT ORDER**

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA 98101
Phone: 206-623-3300 Fax:206-447-6965

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on June 5, 2008, I served a full, true, and correct copy of the following

3  document:

4

5      ## DECLARATION OF LEIGH ANN TIFT IN SUPPORT OF DEFENDANT'S

6      ## OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE COURT ORDER

7   as indicated below:

8           ☐    By delivery via messenger, or otherwise by hand,

9           ☒    By facsimile,

10          ☐    By e-mail,

11          ☒    By mailing same, postage paid,

12  addressed to:

13

14          Bailey Pinney & Associates LLC
            Attorneys at Law
15          1498 SE Tech Center Place
            Suite 290
16          Vancouver, WA  98683
            Fax (360) 567-3331

17              Of Attorneys for Plaintiff

18              By _____

19                  Savanna L. Stevens

20

21  Firmwide:85446067.1 013306.2124

22

23

24

25

26

**DEC OF L. TIFT ISO OF DEF'S OPP. TO**          4
**PLAINTIFF'S MTN TO ENFORCE**
**COURT ORDER**

**EXHIBIT 1**

1
2
3

IN THE CIRCUIT COURT OF THE STATE OF OREGON

4

FOR THE COUNTY OF MULTNOMAH

5

| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,, | No. 0711-13531 |
|---|---|

6
7

**DEFENDANT'S FOURTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

8

Plaintiff,

9

vs.

10

AUTOZONE INC., a Nevada Corporation,,

11

Defendant.

12
13

Defendant AutoZone, Inc. ("Defendant") hereby submits its supplemental objections and

14

responses to Plaintiff's First Set of Requests for Production of Documents as follows:

15

**SUPPLEMENTAL GENERAL OBJECTIONS**

16

The following objections apply generally to all of Plaintiff's discovery requests in this

17

lawsuit:

18

(a)    Objections to Scope of Discovery Requests.  Defendant objects to all discovery

19

requests to the extent they purport to require any actions not required by the Oregon Rules of Civil

20

Procedure, the Uniform Trial Court Rules, or any local rules.  Without limiting the generality of this

21

objection, Defendant objects to all discovery requests to the extent that they (1) go beyond the scope

22

of discovery provided by the Oregon Rules of Civil Procedure, (2) are not reasonably calculated to

23

lead to the discovery of admissible  evidence, and/or (3) purport to impose a duty of supplementation

24

greater than that imposed by the Oregon Rules of Civil Procedure.

25

(b)    Privilege and Trial Preparation Materials.  Defendant objects to all discovery requests

26

to the extent they call for information or documents that fall within any relevant privilege (including

---

PAGE 1 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 1**:    Admit that Defendant failed to pay all wages earned and unpaid by the end of the first business day after termination, to at least one involuntarily terminated employee within the 12 months preceding the date of the filing of this lawsuit.

**FIRST SUPPLEMENTAL RESPONSE**:    Defendant incorporates by reference its General Objections as though fully set forth herein and its specific objections to this request in Defendant's Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further objects to this request to the extent it is unduly burdensome and overbroad, is not limited to employees who worked in the State of Oregon, seeks information that is beyond scope of proper pre-certification discovery, and seeks information about individuals other than Plaintiff Migis.  Plaintiff Migis was not involuntarily terminated.  Without waiving its objections, Defendant has not knowingly failed to pay any employee final wages on time, is unaware of any instance where it has done so, and therefore denies this Request on that basis.  Defendant further asserts that its policies and procedures intend that employees be paid final wages within the time frames set out in the applicable Oregon statutes.

**THIRD SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General Objections as though fully set forth herein and specific answer and objections to this RFA as set forth above.  Without waiving such objections, see, Response to RFP No. 2.

**REQUEST FOR PRODUCTION NO. 1**:  If Defendant admits RFA No. 1, produce all documents and electronically stored information for all involuntarily terminated employees to whom Defendant failed to pay all wages earned and unpaid by the end of the first business day after termination, within the referenced time period.  Produce documents and electronically stored information in electronic format.  If electronic format is not available, produce in original format.  This request includes, but is not limited to, Documents and Electronic Data as defined above.

PAGE 4 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1   **FIRST SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

2   Objections as though fully set forth herein and its specific objections to this request in Defendant's

3   Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further

4   objects to this request to the extent it unduly burdensome and overbroad, is not limited to employees

5   who worked in the State of Oregon, seeks information that is beyond class certification issues, and

6   seeks information about individuals other than Plaintiff Migis.  Finally, Defendant objects to the

7   request for electronically stored information as overbroad and unduly burdensome given that any

8   need for such information is outweighed by the burden to Defendant of searching its electronic

9   records.  Without waiving its objections, see Answer to RFA 1.

10   **THIRD SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

11   Objections as though fully set forth herein and its specific answer and objections to this RFP as set

12   forth above.  Without waiving such objections, see, Response to RFP No. 2.

13   **REQUEST FOR PRODUCTION NO. 2**:  If Defendant denies RFA No. 1, produce all

14   documents and electronically stored information for all involuntarily terminated employees within

15   the referenced time period which Defendant relies upon to support its denial.  Produce documents

16   and records in electronic format.  If electronic format is unavailable, produce in original format.

17   This request includes, but is not limited to, Documents and Electronic Data as defined above.

18   **FIRST SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

19   Objections as though fully set forth herein and its specific objections to this request in Defendant's

20   Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further

21   objects to this request to the extent it unduly burdensome and overbroad, is not limited to employees

22   who worked in the State of Oregon, seeks information beyond the proper scope of pre-certification

23   discovery,  and seeks information about individuals other than Plaintiff Migis.  Defendant also

24   objects to the request for electronically stored information as overbroad and unduly burdensome

25

26

PAGE 5 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

1  given that any need for such information is outweighed by the burden to Defendant of searching its

2  electronic records.

3  **SECOND SUPPLEMENTAL RESPONSE**:  With respect to Plaintiff Migis, Defendant

4  maintains that Plaintiff has all relevant documents; to wit, Plaintiff's final paycheck and Plaintiff's

5  personnel file reflecting the date his employment ended with AutoZone.

6  **THIRD SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

7  Objections as though fully set forth herein and its specific answer and objections to this RFP as set

8  forth above.  Without waiving such objections, *see*, documents previously produced to Plaintiff (i.e.,

9  those labeled AZ/Migis 000001-0001655), documents attached hereto, labeled AZ/Migis 0001656-

10  0001863, and electronic information provided on disk, labeled AZ/Migis 3rd Supplemental.

11  **FOURTH SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its

12  General Objections as though fully set forth herein and its specific answer and objections to this RFP

13  as set forth above.  Without waiving such objections, *see*, AZ/Migis 001864-0001881.

14  **REQUEST FOR ADMISSION NO. 2**:  ·  Admit that Defendant failed to immediately pay

15  all wages earned and unpaid to at least one employee who gave not less than 48 hours' notice of their

16  intention to quit, within the 12 months preceding the date of the filing of this lawsuit.

17  **FIRST SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

18  Objections as though fully set forth herein and its specific objections to this request in Defendant's

19  Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further

20  objects to this request to the extent it unduly burdensome and overbroad, is not limited to employees

21  who worked in the State of Oregon, seeks information that is beyond the proper scope of pre-

22  certification discovery, and seeks information about individuals other than Plaintiff Migis.  Without

23  waiving its objections and limiting its response to Plaintiff Migis, Defendant has not knowingly

24  failed to pay any employee final wages on time, is unaware of any instance where it has done so, and

25  therefore denies this Request on that basis.  Defendant further asserts that its policies and procedure

26

PAGE 6 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1  intend that employees be paid final wages within the time frames set out in the applicable Oregon

2  statutes.

3      **THIRD SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

4  Objections as though fully set forth herein and specific answer and objections to this RFA as set

5  forth above.  Without waiving such objections, see, Response to RFP No. 2.

6

7      **REQUEST FOR PRODUCTION NO. 3**:  If Defendant admits RFA No. 2, produce all

8  documents and electronically stored information for all employees who gave not less than 48 hours'

9  notice of their intention to quit, to whom Defendant failed to pay all wages earned and unpaid

10  immediately at the time of quitting, within the referenced time period.  Produce documents and

11  electronically stored information in electronic format.  If electronic format is unavailable, produce in

12  original format.  This request includes, but is not limited to, Documents and Electronic Data as

13  defined above.

14      **FIRST SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

15  Objections as though fully set forth herein and its specific objections to this request in Defendant's

16  Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further

17  objects to this request to the extent it unduly burdensome and overbroad, is not limited to employees

18  who worked in the State of Oregon, seeks information that is beyond class certification issues, and

19  seeks information about individuals other than Plaintiff Migis.  Defendant also objects to the request

20  for electronically stored information as overbroad and unduly burdensome given that any need for

21  such information is outweighed by the burden to Defendant of searching its electronic records.

22  Without waiving its objections and limiting its response to Plaintiff Migis, *see* Answer to RFA 2.

23      **SECOND SUPPLEMENTAL RESPONSE**:  With respect to Plaintiff Migis, Defendant

24  maintains that Plaintiff has all relevant documents; to wit, Plaintiff's final paycheck and Plaintiff's

25  personnel file reflecting the date his employment ended with AutoZone.

26

---

PAGE 7 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

**EXHIBIT 2**



LITTLER MENDELSON®
A PROFESSIONAL CORPORATION

June 3, 2008

Amy R. Alpern
Direct: 503.889.8878
Direct Fax: 503.914.1816
aalpern@littler.com

**VIA MAIL AND FACSIMILE 360-567-3331 AND U.S. MAIL**

Chey Powelson
Bailey Pinney & Associates, LLC
1498 SE Tech Center Place, Suite 290
Vancouver, WA 98683

Re:    Migis v. AutoZone, Inc.
       Multnomah County Circuit Court Case No. 0711-13531

Dear Chey:

This follows up on my May 23, 2008 letter to you in which I outlined what we were willing to do to resolve the outstanding discovery issues. In that letter I told you that I would get back to you by June 3, and I am now doing so. For reasons that cause me great concern, you continued to file motions to compel, and to ask for yet additional documents, while we are diligently working to produce those items outlined in my May 23 letter. Indeed, I do believe at this point that you are intentionally making things more difficult than they need to be. For example, I prepared a protective order and asked that you sign it. (I told you that the form of protective order I prepared had been approved by the Multnomah County Presiding Court.) Rather than signing my order, you sent me a different order and required that we submit that order, instead. I did not want to fight about the issue, so I agreed to sign your proposed order and then brought it to the scheduling conference to ask the Court to sign it per our discussion on May 23. When I asked you to sign the order at that scheduling conference, you said you could not do so because you prepared it for Mr. Bailey's signature. I then asked Mr. Bailey, who was also at the scheduling conference, to sign it. He said he could not do so because he had not read it. When I pointed out to him that it was on your firm's letterhead, and urged him to sign it, he finally agreed to do so. However, when I presented it to Judge Maurer at the scheduling conference, she had concerns about the language in the order and asked her assistant to review it. As it now stands, we do not have a signed protective order.

I have now enclosed another protective order that complies with the Multnomah County rules. I signed it, ask that you do so, and ask that you forward it to the Presiding Court.

Moving on to my May 23, 2008 letter, I respond as follows:

1.     We agreed to allow you to depose Mark Dessem as a corporate representative pursuant to ORCP 39(c)(6) even though you have already taken one 39(c)(6)

ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

OREGON

PENNSYLVANIA

RHODE ISLAND

SOUTH CAROLINA

TEXAS

VIRGINIA

WASHINGTON

Chey Powelson
June 3, 2008
Page 2

deposition.  We believe that Mr. Dessem is likely to be able to address some of the issues set forth in the 39(c)(6) notice that took place on May 15, 2008.

I also told you at the May 15 deposition that we would provide you with additional information regarding the total number of full- and part-time hourly AutoZone employees for the time periods set forth in your notice.  We reviewed the W-2s for 2006 and can advise you that AutoZone employed 423 employee in Oregon that year. As you recall, we have already provided you with this information for the year 2007. I am still working on 2004 and 2005 and will respond to that request, although I am told that the information is on the payroll tax reports that were produced to your firm in the Joarnt matter.  Nonetheless, I will review those reports as well, and get our answer to you promptly.

2.    As I suspected, the reference to "attendance calendars" in Mr. Jon's deposition is, in fact, a reference to the variance reports.  Since we have already produced the variance reports, we have already satisfied this request.

With respect to Request for Production No. 5 (weekly schedule reports referencing Mr. Migis' work schedule, both approved and unapproved, for three years prior to the filing of the complaint), we have now double-checked the period boxes for the two stores in which Mr. Migis worked in Oregon and can confirm that no additional records responsive to this request exist.

We also agreed to send you a screen print of Mr. Migis' paycheck data.   It is enclosed.

3.    See my May 23 letter.

4.    With respect to the May 9 letter you sent to us regarding the authenticity of documents, I can advise you that defendant will stipulate that each of the listed documents, with one exception, is authentic, i.e., that they are what they purport to be.  The exception is AG-Migis 0002214.  We do not have a copy of that and I suspect that we may have made a numbering mistake.

5.    We promised you that we would produce, in electronic Microsoft Excel format, the lunch variation reports that have been previously produced to you in hard copy.  I understand that Leigh Ann Tift FedExed those to you yesterday and that you are in possession of those.

6.    Defendant has reconsidered its objection to your request for one year's worth of time records for hourly employees in the State of Oregon, but have two caveats. Defendant will seek to shift the cost of producing these records to plaintiff if we are

Chey Powelson
June 3, 2008
Page 3

       able to establish that they are not relevant, and/or if the class is not certified. Second, we are agreeing to produce the documents pursuant to the terms of a mutually agreeable protective order. With that understanding, defendant will produce electronic records of time worked for each AutoZone employee from November 2006 to November 2007. Please let me know when you have signed the order and have forwarded it to the Court, and we will produce the documents.

7.     See my May 23 letter.

8.     Defendant has located and is willing to produce reports reflecting weekly summarizations of hours worked by AutoZone employees as requested in Plaintiff's Third Request for Production No. 4. Defendant is willing to produce this information pursuant to the terms of a protective order. Please let me know when you have signed that order and forwarded it to the Court, and we will provide you with the requested documents.

9.     As promised, defendant's store managers are making a second attempt at finding termination reports. We have looked at the personnel files of all employees to assure that no termination reports were missed, and the AutoZone's Store Managers have been asked to complete their review by June 5. I will let you know what, if anything, they are able to locate. Given Ms. Tift's experience in reviewing the period boxes for the last two stores in which Mr. Migis worked, I strongly doubt that we will find additional responsive documents. Nonetheless, we have taken the time consuming step of looking a second time.

Please understand that your discovery requests have been extremely cumbersome, that we have spent the last month telling you that we want to work cooperatively on discovery issues. As you an see, we have offered several concessions. Despite that, you continue to file motions to compel and motions for sanctions. At some point, I do hope that we are able to move this case in a direction that is likely to benefit our respective clients. That is what you want, right?

Very truly yours,

LITTLER MENDELSON

Amy R. Alpern

ARA/jrs
Enclosures

**EXHIBIT 3**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH


MICHAEL MIGIS, individually,   )
and on behalf of all others    )
similarly situated,            )
       Plaintiff,              )
       vs.                     )Case No. 0711-13531
AUTOZONE INC., A Nevada        )
corporation,                   )
       Defendants.             )


BE IT REMEMBERED THAT on the 8th day of

April, 2008, the above-entitled matter came on for

hearing before the HONORABLE JEROME LaBARRE, Circuit

Court Judge.


DEBORAH L. COOK, RPR, CSR
COOK COURT REPORTING, INC.
1102 N. Springbrook Road
Suite 136
Newberg, Oregon 97132
(503) 537-0339
deb@cookcourtreporting.com

87db286b-0ad6-483a-b058-5998ac3211e5

1   involuntary terminations.  Those are the people who have

2   been fired.

3          And the yellow ones, coded A-1, are

4   essentially those who quit with notice.  And these are

5   responsive to the Request for Production having to do

6   with the admissions.

7          What we asked for and what you ordered is

8   that in the denial of the admissions, that they produce

9   the documents that they relied on to make the denials.

10  And in this instance if you look at just the very first

11  line item, obviously this is a compilation.  Somebody

12  has taken some documents from somewhere and made a

13  spreadsheet.  I believe there's underlying documents

14  that go to this compilation.

15         But if you look at the ID that's apparently

16  an employee number, and we go straight across, the last

17  day I would interpret that the employee worked was

18  August 27th, '07.  The check cycle was an off-cycle

19  check or not.  The N/Y, we assume, is no or yes.  So

20  there was a regular check cut.

21         The check date, or the date the check was

22  likely cut would have been September 14th of 2007.  The

23  individual had been fired.  Our request was admit that

24  you have people that didn't get their check on the next

25  business day after they were fired.

87db286b-0ad6-483a-b058-5998ac3211e5

1  would be a lot of production of documents.  And it would

2  go well beyond this.

3           Now, your interpretation -- I think it

4  could be argued that your interpretation is way overly

5  narrow on what is called for in that request.  However,

6  it is true it may have been poor drafting by the

7  plaintiff's counsel.  I want to essentially introduce as

8  a subject notion of all documents that you relied on in

9  support of your denial, that plaintiff may have -- may

10 be hoist by their own petard on that.

11          I guess I don't know if I have to decide

12 that question today.  Maybe I can.  Right this second I

13 see arguments both ways.  But I do know that employment

14 litigation involves production of -- there's been a lot

15 of employment litigation over the last 10, 20 years.

16 And the production by the employer is never so narrow as

17 to be this kind of a spreadsheet.

18          And if the spreadsheet is supplied, then it

19 always -- the relevant underlying documents that are

20 important for both sides in terms of developing the

21 facts in the case, those are always supplied.  So it

22 seems like it's going to have a pretty good argument

23 that there's game playing involved here, and that they

24 ought to get sanctions at some point.

25          And I don't -- I am on a special assignment

**EXHIBIT 4**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

RICHARD JOARNT AND BERT YAMAOKO,

individually, and on behalf of

all others similarly situated,

              Plaintiffs,

      vs.             No. 0503-02795

AUTOZONE, INC., a Foreign

Corporation,

              Defendant.

_____/

Deposition of

NICOLE LYNN McCOLLUM

Tuesday, October 25, 2005

Reported by:

SHARON CABELLO, RPR

CSR No. 3080

Job No. 632367

439ec2e4-d805-438b-9774-766d0c5edf6b

Page 86

1  particular on a pay stub.
2  Q.    Okay, thank you.
3       Who has the authority to terminate an employee
4  as Autozone?
5  A.    Operations, management -- Operations
6  management.
7  Q.    Can a Store Manager terminate an employee at
8  Autozone?
9  A.    Yes.
10 Q.    Do they have a procedure or any kind of
11 authority that they have to get before they can make
12 that termination?
13 A.    Yes, standard chain of command, including
14 myself, that is needed.  And if we are going to be
15 terminating we also get a verbal recommendation from
16 Autozone Relations.
17 Q.    Okay.  If an individual Store Manager has an
18 employee that for whatever reason believes he wants to
19 terminate, what steps does he have to take to be able
20 to do that?  Can you just -- today the employee walks
21 through the door, he has had it, he is 15 minutes late
22 again, and he decides to terminate them on his own.
23 A.    Could they?
24 Q.    Could the manager do that?
25 A.    Could they do it?  It's not a policy, I mean,

Page 87

1  they could -- the manager can terminate someone in the
2  system, that's their authority to do so.  Our process
3  is they would follow the chain of command, being
4  discussing the situation with their District Manager;
5  District Manager would partner with myself, typically I
6  would partner with Autozone Relations for a verbal
7  recommendation.
8  Q.    So it kind of goes up the order and then you
9  get a recommendation from Autozone Relations, and then
10 what happens?
11 A.    If it's the recommendation we agree with, we
12 would -- the Store Manager would then execute that
13 recommendation and termination.
14 Q.    So you get the recommendation yourself and
15 then pass it on to the District Manager, or does the
16 Autozone folks pass it directly on to the --
17 A.    It comes to myself, sometimes with the
18 District Manager attached, sometimes just to myself, it
19 depends on the person in Autozone Relations.
20 Q.    What about filling a position in a store, does
21 the manager have authority to go out and hire an
22 individual?
23 A.    Yes.
24 Q.    Can you do that without authority from other
25 individuals above you?

Page 88

1  A.    Like termination they could.  Our process
2  would be they discuss it with their District Manager
3  for the pay reason.
4  Q.    Is there a -- if you know, is there a set
5  number of employees that a particular store can't have
6  on its payroll?
7  A.    It doesn't work that way.
8  Q.    Okay.  How does --
9  A.    There is no minimum/maximum for that reason.
10 When -- staffing in stores is dependent on volume.
11 That would be more a District Manager function than
12 myself.  Or the schedule versus -- our practice is a
13 70/30 mix, 70 percent full-time, 30 percent part-time.
14 It's a guide we use in the store for coverage.  It's
15 flexible.  You could have an abundance of part-time
16 people with very limited schedules, i.e. only working
17 two nights or only working weekends and, therefore,
18 inflate the number of employees versus another store of
19 similar volume that is a strict 70/30 mix.
20 Q.    Okay.  And the actual sales volume of the
21 store dictates the number of employees that would
22 typically be allocated for a particular store?
23      MS. TIFT:  Object to the form of the question,
24 misstates and mischaracterizes her testimony.
25      THE WITNESS:  Nothing dictates the number of

Page 89

1  employees, it dictates the available hours allocated
2  based on store volume.  You hire accordingly based on
3  your geographic area, your market.
4  Q.    MR. BAILEY:  Okay.  So when I say dictates the
5  number of employees, the contradiction that I stated
6  there is that it's really the number of hours that the
7  store can utilize employees in; is that correct?
8  A.    The number of hours is a guide based on
9  expected volume.
10 Q.    Okay.  Can a Store Manager on his own decide
11 that he needs an additional 30 hours a week?
12      MS. TIFT:  Object to the form of the question,
13 calls for speculation.
14      THE WITNESS:  Could he decide that he needs
15 that?  Or could he use that?  They are two very
16 different questions.
17      He can use anything he wants, they have the
18 power in the store to do so.
19 Q.    MR. BAILEY:  If a Store Manager is allocated
20 through whatever function 200 hours, and believes that
21 he needs 250, it's up to him -- he has authority to go
22 ahead and hire -- put people on staff to use up the 250
23 hours?
24      MS. TIFT:  Object to the form of the question,
25 calls for speculation.

23 (Pages 86 to 89)

Page 94

1 A.      It depends.  It would depend on where it came
2 from.  Some reports run by our analysts, like the HR
3 report I mentioned earlier, has numerous tabs.  That
4 comes in an email.
5       Sometime she will call it one thing, and
6 sometime another.  It's a query that she runs.  Other
7 information that I may get along with multiple other
8 Autozone employees may have an Autozone header on it.
9 Q.      Okay.  So with regard to this Exhibit 9, if
10 this is an Autozone report, there is no way to tell
11 from the document itself; is that correct?
12 A.      I have not seen it before, so I don't know,
13 not by just looking at it, no.
14 Q.      And there is nothing on here that you can look
15 at that would identify it as an Autozone report?
16 A.      Not without taking a guess, no.
17 Q.      And the same would be the case of Exhibit 8;
18 is that correct?
19 A.      Correct.
20 Q.      Looking at Exhibit 9, it identifies -- if you
21 just take the first person, it looks like Alejandro
22 Agala, A-l-e-j-a-n-d-r-o A-g-a-l-a.  It shows
23 Department ID 2227, and then it has Sales, Part-Time.
24 And then it says Action TER, I take that to mean
25 terminated, and reason A4, And then an effective date

Page 95

1 8/6/2005.
2       Do you understand from what is on here what
3 that is intended to say?
4 A.      I could speculate.
5 Q.      Do you know what reason A4 means?
6 A.      No.
7       MS. TIFT:  Object to the form of the question.
8 If you want to provide her the legend that was also
9 supplied with this, she could probably read it for you,
10 Mr. Bailey, this is misleading and unfair.
11       MR. BAILEY:  Thank you.
12 Q.      You don't know what A4 is?
13 A.      No.
14 Q.      Do you have -- is there a document in Human
15 Resources from which you could draw the information of
16 why a person is terminated?
17 A.      Would you clarify that?
18 Q.      Sure.  When a person is terminated is there a
19 document that is filled out and stored in Human
20 Resources that identifies why a person is terminated?
21 A.      All separations are handled at the store level
22 or Operations level of appropriate nature.  I do not
23 separate anyone that doesn't work for me, that will be
24 entered into the store SMS system and would be along
25 with other data uploaded to the office in Memphis.

Page 96

1       So I would not code it.  If you are asking me
2 if I could find out what this meant, I could call and
3 ask someone.
4 Q.      Do you have people that work for you?
5 A.      Yes.
6 Q.      If you terminate someone that works for you,
7 do you have a termination form that you fill out?
8 A.      Yes.  And it is not like the store's.
9 Q.      Does the store have a termination form?
10 A.      It's an internal form, it's in the computer.
11 They complete it electronically in the computer.
12 Q.      So the form itself exists, it's in the
13 computer?
14 A.      Correct.
15 Q.      If you want to print that form out it would be
16 in the computer?
17 A.      I don't know if it's printable in the way that
18 you are -- we do not have a print screen function.  So
19 if you are looking to just print out a blank page of
20 what you see on the screen, I don't know if that's
21 possible.
22 Q.      If I --
23 A.      Could you look at it?  Yes.
24 Q.      Could I print out a copy of what I see on the
25 screen?

Page 97

1       MS. TIFT:  Object to the form of the question,
2 asked and answered.
3       THE WITNESS:  If it's not completed, I don't
4 know that you can.
5 Q.      MR. BAILEY:  Let's say that we completed the
6 form.
7 A.      Yes, you can print that.
8 Q.      Alejandro Agala has now been terminated and
9 the form was filled out.  It was done on August 6,
10 2005.  Can I get a copy of that?
11 A.      Yes.  At that time, I believe.
12 Q.      Do you know if that is saved into the
13 computer?
14 A.      I don't know.
15 Q.      Well, do people have Human Resources files,
16 personnel files?
17 A.      Yes.
18 Q.      When someone is hired you put their hire
19 information in the file?
20 A.      Some of it, yes.
21 Q.      For example, you put in the file an
22 application?
23 A.      Yes.
24 Q.      And you put in the information, their W-4, and
25 that kind of stuff, W-2 Forms?

25  (Pages 94 to 97)

439ec2e4-d805-438b-9774-766d0c5edf6b

**EXHIBIT 5**

Michael Migis                    May 20, 2008

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH


MICHAEL MIGIS, individually,

and on behalf of all other

persons similarly situated,

            Plaintiff,

        vs.                NO. 0711-13531

AUTOZONE, INC., a Nevada Corporation,

        Defendant.



VIDEOTAPED

DEPOSITION OF MICHAEL MIGIS



Taken on Behalf of the Defendant

Tuesday, May 20, 2008



Beovich Walter & Friend

d4bf5154-1ee8-4713-889b-13fc3453a6d5

1       sorry.  Can -- can I retract that?

2   Q   Sure.

3   A   The telephone conversation did happen.  But it

4       was my first initial conversation with 401K,

5       and it was before I had actually quit AutoZone.

6   Q   Okay.

7   A   And what I had asked them is, I asked them if I

8       could take out a loan against my 401K.  And I

9       had an existing thousand-dollar loan from 2002

10      that I used to get my wife and I up to the

11      Portland area.  And because of that outstanding

12      loan, they could not give me a second loan on

13      my 401K.

14  Q   Okay.  So as best you know, did that happen on

15      the 6th, Monday?

16  A   Yes.

17  Q   Okay.  And then what was the next thing that

18      happened?

19  A   I called corporate.

20  Q   Okay.

21  A   And I asked them -- basically, I had the same

22      conversation with AutoZone corporate.  And

23      whoever I talked to told me that the only way

24      that I could access my 401K money was if either

25      I retire or I quit the company.  I hung up the

Michael Migis                    May 20, 2008

1    Q    Okay.

2    A    You're talking on-the-clock, get paid

3         on-the-clock.

4    Q    Okay.  So you're pretty confident that you were

5         not paid for any days after February 4.

6    A    February 4th was the last day that I worked for

7         AutoZone.

8    Q    Okay.

9    A    February 6th was the day that I quit.

10   Q    Okay.  And you quit by informing your peer,

11        Scott Klein?

12   A    He's my equal.

13   Q    Right.

14   A    Yes.  I made an attempt to call Mike Italiano.

15        That was my first attempt.

16   Q    Typically, when would you have received the --

17        is there usually a three-week lag between when

18        you work and when you get paid?

19   A    Not three weeks.

20   Q    Okay.

21   A    There's a one-day -- you know, if I -- if I

22        were just to start the company today, I would

23        have to wait one week.  They hold one week's

24        pay back.  And -- but if payday was next week,

25        then I'd work this week, work the second week,

d4bf5154-1ee8-4713-889b-13fc3453a6d5

Michael Migis          May 20, 2008

1    A    Exactly.

2    Q    And you also got the cash out of your 401K?

3    A    No, my 401K was sitting in the bank for a week

4         before I got my last check from AutoZone.

5    Q    Okay.  Do you recall about how much it was that

6         you received from your 401K?

7    A    Well, after 20 percent federal taken out of it,

8         it was approximately $9,000 -- $9,000.

9    Q    Okay.  And then did you get any other checks

10        from AutoZone besides these three, the last

11        paycheck, the stuff from the sale -- of the

12        stock purchase plan and the 401K proceeds?

13   A    The 401K proceeds did not come from AutoZone.

14   Q    Okay.  Right.  But beyond those three checks,

15        did you get any other payment from AutoZone or

16        the --

17   A    I -- I received one check for the sale of my

18        stocks.

19   Q    Right.

20   A    And then I -- I want to say three checks, as

21        far as relative to stock.

22   Q    Okay.  Three checks?

23   A    And that -- and that includes balanced.  There

24        wasn't enough moneys to buy stocks.  This is

25        what was left over, and that was the final

Beovich Walter & Friend

Michael Migis          May 20, 2008

Page 116

1          And I said, I need you to terminate me out of
2          the system so that corporate can terminate me
3          out of the system so that 401K can be notified
4          I've been terminated so they can release my
5          monies to me.
6     Q    Okay.  And do you have an idea in your mind
7          about when that conversation happened?
8     A    I want to say Tuesday following the Monday that
9          I -- that I left the company.  I think Mike
10         Italiano was off that Monday, I -- I think.
11    Q    And then the second time you talked to him?
12    A    Would have been more towards Friday.
13    Q    Okay.
14    A    But that was not because I did not try to get
15         ahold of him before that.
16    Q    Right.
17    A    I tried calling the store, he was not there.
18         It was his day off.
19    Q    Okay.  And the second --
20    A    But --
21    Q    Did you ask him if the check was at the store?
22    A    I hadn't even been terminated yet.
23    Q    Okay.
24    A    So there's no way that -- that the check would
25         be at the store at that point in time.

Beovich Walter & Friend

d4bf5154-1ee8-4713-889b-13fc3453a6d5

Michael Migis                    May 20, 2008

1    that I won't be terminated until sometime

2    later; correct?  My intentions --

3  A  If --

4  Q   -- might not be clear.

5  A  If one were to do that, then you would be

6    correct.

7  Q  Okay.  Did you ever know of any employees who

8    just stopped coming in and then came back and

9    said:  Look, I'm really sorry.  I just went off

10    with my girlfriend.  Or I did whatever, and I'm

11    sorry, and I'd like to be reinstated?

12  A  Not -- not the situation that -- that you

13    described, no.

14  Q  Anything like that?

15  A  I personally have walked off the job from

16    AutoZone, took three days off and came back and

17    assumed the same position with the company.

18  Q  Okay.

19        THE VIDEOGRAPHER:  Eight minutes.

20        MS. TIFT:  Okay.

21  Q  BY MS. TIFT:  Would you agree with me that hourly

22    employees are personally responsible -- your

23    job -- to clock in correctly at the register?

24  A  Yes.

25  Q  And if you don't clock in correctly at the

Beovich Walter & Friend

d4bf5154-1ee8-4713-889b-13fc3453a6d5

**EXHIBIT 6**

```
AutoZoner Termination Report        *** AutoZone 2236 ***        02/08/2006
                                                                 09:43:55
                                                                 Page   1
        AutoZoner Emp ID: 10090549
         AutoZoner Name: MIGIS, MICHAEL
       AutoZoner Address:
          AutoZoner City:
         AutoZoner State: OR
           AutoZoner Zip: 97220
         AutoZoner Phone: (503)
     Termination Reason: Quit With Notice
        Last Day Worked: 02/10/2006
          Last Day Paid: 02/10/2006
     Would You Rehire ?: No
```

*Comments

*MIKE FAILED TO SHOW FOR WORK THE STORE
WAS NOT OPENED ON TIME*

*WRONG KEY PRESSED SHOULD READ QUIT
WITHOUT NOTICE*

```
Manager Signature: _____
       Completed By: ITALIANO, MICHAEL
          Job Title: Manager
               Date: 02/08/2006
```

REDACTED

AZ/MIGIS 0001347

**EXHIBIT 7**

# Being a Manager





©2005 AutoZone, Inc. All Rights Reserved.

AZ/MIGIS 0002069

**Types of disciplinary action** (continued)

| Type of Action | Details |
|---|---|
| Termination | AutoZone is an at will employer. Termination may be a result of unsatisfactory or inefficient job performance or unacceptable personal conduct.<br><br>• Before considering termination of an AutoZoner,<br>  • the Store Manager should discuss the problem with the DM, RM or RHRM, and<br>  • the RHRM should discuss the problem with DHRM/ AutoZoner Relations.<br><br>• Once an agreement is reached on the need to terminate an AutoZoner, a dismissal conference must be scheduled with the following people duly notified and in attendance,<br>  • the Manager or other person chosen by AutoZone management to conduct the conference<br>  • the AutoZoner, and<br>  • if the person conducting the conference chooses, security may also be present.<br><br>**IMPORTANT:** No attorney shall represent either side at the conference. The conference attendees will review the reasons for termination and documentation. |

*Continued On Next Page*

©2005 AutoZone, Inc. All Rights Reserved.

AZ/MIGIS 0002177

**EXHIBIT 8**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH


MICHAEL MIGIS, individually,  )
and on behalf of all others   )
similarly situated,           )
        Plaintiff,            )
        vs.                   )Case No. 0711-13531
AUTOZONE INC., A Nevada       )
corporation,,                 )
        Defendants.           )


DEPOSITION OF CARLOS JON

TAKEN IN BEHALF OF PLAINTIFF

Portland, Oregon

May 15, 2008


DEBORAH L. COOK, RPR, CSR
COOK COURT REPORTING, INC.
1102 N. Springbrook Road
Suite 136
Newberg, Oregon 97132
(503) 537-0339
deb@cookcourtreporting.com

e0b89694-d645-4133-97f9-8b42808be509

1    Q    Under Last Date, what does that identify?

2    A    That would be the last date worked.

3    Q    That's the last day that an employee

4    performed labor?

5    A    That's the last date that the employee had

6    any time in the time clock.

7    Q    So this would be the last day an employee

8    worked?

9    A    Correct.

10    Q    Where there was time recorded for their

11    work?

12    A    Right.  If they worked the time recorded

13    for that date, that was the date.

14    Q    And then on the other side it says Off

15    Cycle.  What does that mean?

16    A    Off Cycle meaning that we have a period for

17    pay cycles.  "Yes" means it was paid during the pay

18    cycle; "no" means it was paid in between pay cycles.

19    Q    Let me back up and see if I can understand

20    that.  If it says Off Cycle, No, that means they

21    received their check on the next regular payday, or on a

22    regular payday?

23    A    That is correct.

24    Q    And if it says Off Cycle, Y, meaning yes,

25    it means the check was prepared, but not at a regular

e0b89694-d645-4133-97f9-8b42808be509

Page 92

1          A    For net, right.

2          Q    When you look at one of these, would there

3    have been a gross pay?  If you looked at a screen print

4    when you said this might have been made up of screen

5    prints, would there have been a Gross Pay column?

6          A    I don't recall.

7          Q    And then over, the next thing is Reason

8    B-3?  Do you know what B-3 means?

9          A    There is a legend towards the back, and we

10   go to -- B-3 would be page 1218, and B-3 would be almost

11   past halfway.  B-3, violation of company policy.

12         Q    And over there it says VOL or INVOL in a

13   column across from that where you are looking at B-3 on

14   page 1218?

15         A    Yes.

16         Q    And it says Involuntary, does that mean

17   someone was fired?

18         A    Yes.

19         Q    Can you tell me from this particular

20   document, can you tell me what day the employee -- and I

21   am looking at employee 1004509, the first employee

22   listed on this document, can you tell me what day that

23   employee was fired?

24         A    No.

25         Q    The next one down, which is employee ID

1      A    If I would tell the manager to put quit

2  with notice?

3      Q    Yes.

4      A    Let me think about it.  I have never had

5  that question asked.  I couldn't tell what the manager

6  would do, but that's what I would tell the manager, quit

7  with notice.

8      Q    And from your background in working in

9  Oregon, do you know whether or not managers received any

10 training on when they are to make sure people get paid

11 if someone quits with notice or without notice?

12     A    Yes, there's a training manual for that,

13 terms, and they go through the training and they deal

14 with how to process if somebody, quote, unquote -- for

15 example, if somebody gets terminated.

16          And the HR manager will approve the

17 termination, and then will call the Payroll Department.

18 And they will process -- the Payroll Department will cut

19 a check within the guidelines of whatever state we're

20 operating.

21     Q    Okay.  Were you -- did you have any review

22 of the Request for Admissions that were made to Auto

23 Zone having to do with the production of this particular

24 document?  And I am talking about Exhibit No. 3.

25          MS. ALPERN:  Are you talking about at the

e0b89694-d645-4133-97f9-8b42808be509

**EXHIBIT 9**

```
AutoZoner Termination Report          *** AutoZone 2203 ***          01/29/2007
                                                                     12:45:31
                                                                     Page   1

    AutoZoner Emp ID: 10346896
    AutoZoner Name: CADENA, BLADIMIR
  AutoZoner Address:
     AutoZoner City:
    AutoZoner State: OR
      AutoZoner Zip: 97132
    AutoZoner Phone: (503)
 Termination Reason: Abandoned Job *
    Last Day Worked: 01/03/2007
      Last Day Paid: 01/03/2007
 Would You Rehire ?: No

 *Comments
```

No Call no show
Called left messages 5 DAYS IN AROW
No reply.
DIDN'T return any calls.

```
Manager Signature: 
       Completed By: NARAYAN, RAJ
          Job Title: Manager
               Date: 01/29/2007
```

REDACTED

AZ/MIGIS 0001819

1

2

3        IN THE CIRCUIT COURT OF THE STATE OF OREGON

4            FOR THE COUNTY OF MULTNOMAH

5

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,, | No. 0711-13531 |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE COURT ORDER AND MEMORANDUM IN SUPPORT THEREOF** |
| vs. | |
| AUTOZONE INC., a Nevada Corporation,, | **DATE:  JULY 11, 2008** |
| Defendant. | |

6

7

8

9

10

11

12

## I.    INTRODUCTION

13

14    Plaintiff's motion is an unjustified effort to turn a discovery dispute--which has previously

been adjudicated by this Court and which AutoZone has attempted to respond to to Plaintiff's

15

satisfaction--into a larger, more protracted dispute for procedural advantage.  In sum, Plaintiff asks

16

this court to (1) rule now that AutoZone's summary report of information relating to terminated

17

employees is admissible at trial (with no showing of relevance to issues that may or may not be tried

18

before the court or a jury), or (2) rule that the summary table cannot be supplemented or explained

19

by other evidence (for example, by testimony of the store managers who recorded the terminations

20

or the employees who terminated their employment or by other evidence that AutoZone supplied in

21

discovery), or (3) order production of documents that AutoZone cannot locate, despite diligent

22

efforts to do so, or (4) strike AutoZone's affirmative defenses, or (5) order depositions unrelated to

23

the subject of the Court's first discovery orders.  Further, Plaintiff's request for additional sanctions

24

is unwarranted and duplicative of relief that has previously been requested from the Court.

25

26

---

PAGE 1 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

1    **II.    RELEVANT FACTS**

2        **A.    Plaintiff's Requests for Admission and First Requests for Production.**

3            It is true, as Plaintiff points out in this Motion, that Plaintiff's Requests for Admission (the

4    "RFA'S") 1-3 ask that Defendant admit that it failed to pay "at least one" employee outside the time

5    frames set forth in ORS 652.140. AutoZone's Response to these Requests, in relevant part was:

6                ...Without waiving its objections, Defendant has not knowingly failed to pay any employee
         final wages on time, is unaware of any instance where it has done so, and therefore denies
7        this Request on that basis. Defendant further asserts that its policies and procedures intend
         that employees be paid final wages within the time frames set out in the applicable Oregon
8        statutes.

9    Plaintiff's Requests for Production (the "RFP'S"), which follow the RFA's, seek: "all documents

10   and electronically stored information for [the employees identified in the preceding RFA] within the

11   referenced time period which Defendant relies upon to support its denial." In response to Plaintiff's

12   demands, and prior motions to compel, AutoZone has supplemented its responses to these RFP's

13   four times. Specifically, AutoZone's Fourth Supplemental Response to RFP 2 reflects the

14   following:

15           **FIRST SUPPLEMENTAL RESPONSE**: Defendant incorporates by reference its General

16   Objections...., [objects] to this request to the extent it unduly burdensome and overbroad, is not

17   limited to employees who worked in the State of Oregon, seeks information beyond the proper scope

18   of pre-certification discovery,  and seeks information about individuals other than Plaintiff Migis.

19   Defendant also objects to the request for electronically stored information as overbroad and unduly

20   burdensome given that any need for such information is outweighed by the burden to Defendant of

21   searching its electronic records.

22           **SECOND SUPPLEMENTAL RESPONSE**:  With respect to Plaintiff Migis, Defendant

23   maintains that Plaintiff has all relevant documents; to wit, Plaintiff's final paycheck and Plaintiff's

24   personnel file reflecting the date his employment ended with AutoZone.

25           **THIRD SUPPLEMENTAL RESPONSE**: Defendant incorporates by reference its General

26   Objections as though fully set forth herein and its specific answer and objections to this RFP as set

PAGE 2 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

1   forth above.  Without waiving such objections, *see*, documents previously produced to Plaintiff (i.e.,

2   those labeled AZ/Migis 000001-0001655), documents attached hereto, labeled AZ/Migis 0001656-

3   0001863, and electronic information provided on disk, labeled AZ/Migis 3rd Supplemental.

4   **FOURTH SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its

5   General Objections as though fully set forth herein and its specific answer and objections to this RFP

6   as set forth above.  Without waiving such objections, *see*, AZ/Migis 001864-0001881.

7   *See*, Exhibit 1, Declaration of Tift.  AutoZone's answers to each RFP seeking documents to support

8   the answers to the RFA's are similar.

9   In addition to the summary chart (Plaintiff's only focal point for this Motion), the documents

10  produced in response to these Requests for Production ("RFP's") were termination reports for

11  employees who terminated in the period November 2006 to November 2007, a screen print of the

12  paycheck data for each person who was terminated during this period of time, and AutoZone's store

13  handbook (which sets out the general rules for payment of wages).  Additionally, AutoZone

14  produced a memo from AutoZone's Director of Payroll (who is responsible for all payroll functions)

15  reminding field officers of "our policy to call in all Oregon terminations on a timely basis so that we

16  may issue the appropriate manual check for their final pay," and training materials for managers,

17  which provide, in relevant part, that dismissal of an employee cannot take place on the spot.   Decl.

18  of Tift; see, also Exhibit 2 to Decl. of Tift.

19  Despite all of this information, Plaintiff persists with a theory that the only document that has

20  been produced by Ironwood is the summary report.  Plaintiff's position is inexplicable, given that

21  Plaintiff's counsel argued vociferously to obtain the "underlying" documents, and in fact, <u>every</u>

22  document that supported the summary chart.  As an example, Plaintiff's counsel quotes part of the

23  exchange between the Court and Mr. Olsen on March 8, 2008,[1] but omits the fact that neither Mr.

24

25

26  _____
[1] Exhibit C to Decl. of Powellson.

PAGE 3 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

1   Bailey nor the Court was satisfied with AutoZone's production of only the summary report.  Mr.

2   Bailey stated:

3       What we asked for and what you ordered is that in the denial of the admissions, that they
        produce the documents that they relied on to make the denials.  And in this instance if you
4       look at just the very first line item, obviously this is a compilation.  Somebody has taken
        some documents from somewhere and made a spreadsheet.  I believe there's underlying
5       documents that go to this compilation.

6    Excerpt of March 8 transcript ("March 8, Tr."), attached as Ex. 3 to Decl. of Tift, at 7:7-14.  The

7   Court adopted Mr. Bailey's position, and directed that AutoZone produce all termination reports and

8   "underlying documents."  The Court expressly stated:

9       Now, your interpretation -- I think it could be argued that your interpretation is way overly
        narrow on what is called for in that request.  However, it is true it may have been poor
10      drafting by the plaintiff's counsel.  I want to essentially introduce as a subject notion of all
        documents that you relied on in support of your denial, that plaintiff may have – may be hoist
11      by their own petard on that.

12  March 8 Tr. at 13:3-10 (also attached as Exhibit 3).

13          Having insisted upon, and now received underlying documents, policies, memos and (as

14  described below) testimony from a corporate witness, Plaintiff's counsel wishes to pretend that all of

15  this discovery has not changed hands.  Plaintiff's request for a court order "preclud[ing] Defendant

16  from introducing into evidence any matters refuting information contained in the summary report"

17  *see*, Suppl. Briefing at 2:21-22,[2] flies in the face of the demands made before this Court and the

18  hours spent by AutoZone responding to discovery motions and supplementing discovery requests.

19          **B.      AutoZone's Production of Termination Reports.**

20          When the Court denied AutoZone's request for an extension of time on April 22, AutoZone

21  chose to make an extraordinary effort to find all termination reports, and did so principally on April

22  23, 2008, the date ordered by the Court, with the remainder of all documents that could be found on

23  April 24.  Plaintiff is correct that many of the reports cannot be located, but that is not the result of

24  negligence or a failure to search.  AutoZone's store managers, the Regional HR manager, and

25

26  _____

    [2] Plaintiff's "First Request for Relief."

PAGE 4 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

1   AutoZone's counsel in this case have searched period boxes in the stores and all personnel files for

2   each terminated employee. Decl. of Tift. The missing termination reports cannot be located—either

3   because they were not printed at the time[3] or because they have been misplaced.

4         **C.**    **Plaintiff Requested Documents.**

5         Plaintiff's Requests are directed to documents, and neither the summary report nor the

6   termination reports tell the whole story relating to employee terminations. It is possible, and

7   Plaintiff's counsel is well aware that it is likely, that the circumstances surrounding a person's

8   decision to quit, AutoZone's process for terminating employees, and/or recollections of the persons

9   involved lend an explanation to the data found in the summary report, but are not necessarily

10   recorded in a document.

11         Mr. Migis' testimony, on this point, is illustrative. The summary report, which Plaintiff

12   wishes to turn into the universe of information, tells the date that Mr. Migis last worked, but not the

13   day that Mr. Migis' manager determined he quit. That is, Mr. Migis' last day of work, according to

14   him, was February 4, 2006. At some point after that date, Mr. Migis decided to quit his job at

15   AutoZone because he wanted to access his 401(k) funds. The date that Mr. Migis "quit" or

16   AutoZone knew that he "quit" is much more difficult to ascertain than the day he last worked and

17   there are no "documents" that are definitive. Specifically, Mr. Migis testified at his deposition that

18   on February 6, 2006, <u>before</u> he attempted to "quit," he had a conversation with "corporate" to ask

19   how he could get his 401(k) funds.[4] He was told that because he already had a loan against the

20   account he had to quit or retire. Migis Tr. at 106:3-25.[5] Mr. Migis said he did not want to quit, he

21   just wanted the money in his 401(k) account. Mr. Migis did not initially contact his Store Manager

22   to tell him he was quitting, he called his peer, Scott Klein. Later in the week, Mr. Migis called his

23

---

24   [3] It is counsel's understanding that if the form isn't printed from the screen at the Store where the data is inputted, it cannot later be printed. *See*, Ex 4 to Decl. of Tift, McCollum Tr. at 96:12-97:11.

25   [4] Mr. Migis said he told AutoZone he intended to quit on February 6, 2006. There is good reason to doubt Mr. Migis' recollection of this date.

26   [5] Excerpts of Mr. Migis' Deposition Transcript are attached as Exhibit 5 to the Decl. of Tift.

PAGE 5 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

1  Store Manager to tell him he wanted to quit.[6] Migis Tr. at 110:9-15; 113:3-12.  After he talked to his

2  Store Manager, Mr. Migis' employment was terminated and a termination report generated.  *See*,

3  Exhibit 6, Declaration of Tift.  That report shows that Mr. Migis was considered to be on

4  AutoZone's payroll until February 10, 2006.  Mr. Migis' last check was sent to the store, but he

5  didn't call or pick up the check until the last week of February.  Migis Tr. at 116:21-125.  Of course,

6  none of this testimony is contained in a document, but it is, nonetheless, relevant to both Mr. Migis'

7  late pay claims and relevant to the issue of whether his experience in leaving AutoZone is a common

8  experience sufficient to qualify him as a class representative.  Plaintiff's motion, essentially, asks

9  that the Court preclude any testimony relating to the circumstances that surrounded an employee's

10  termination or the payment of their final wages.

11       **D.    Limitations of the Summary Report.**

12       AutoZone's counsel has attempted to explain the limitations of the summary report to

13  Plaintiff's counsel a number of times.  Plaintiff's deposition of AutoZone's Divisional HR Manager,

14  Carlos Jon, also conveyed that information.  That is, while the information contained in the summary

15  report is accurate, it does not tell the complete story of how an employee was terminated, when an

16  employee was told his or her employment with AutoZone was to end, or when AutoZone had notice

17  that the employee intended to quit.

18       As to terminations, for example, AutoZone's training manual makes it clear that a manager

19  must involve AutoZone Human Resources and schedule a dismissal conference.  *See*, Exhibit 7,

20  Decl. of Tift.  In depositions, Mr. Jon explained that an HR manager must approve terminations and

21  request a check from payroll prior to the dismissal conference.  *See*, Exhibit 8, Excerpt of Deposition

22  of Carlos Jon, at 103:8-20, attached to the Declaration of Tift.[7]  In practical terms, this means that an

23  employee might have a last day worked reflected on the termination report that was days earlier than

24  ————————————————

25  [6] Even then, it is important to note that Migis' testimony is that he didn't want to quit, he just wanted his 401(k) funds, and his message was mixed, to say the least.

26  [7] *See, also*, Excerpt of Transcript of Nicole McCollum in the Joarnt matter, attached as Exhibit 4 to Decl. of Tift, at pp 86:10-87:19.

PAGE 6 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

1    his or her termination date—because he or she was on leave or off the work schedule pending an

2    investigation, a disciplinary decision and/or the disciplinary conference. *See*, Jon Tr. at 90:1-13;

3    92:16-24. That information would not be included in a document, but it would be gleaned from a

4    discussion from the store manager.

5         Likewise, AutoZone does not always know when an employee intends to quit. As can be

6    seen from some of the termination reports provided to Plaintiff's counsel, sometimes an employee

7    doesn't give notice that he intends to quit, and AutoZone does not automatically terminate an

8    employee who doesn't show up for a shift. Mr. Migis, in fact, testified that he walked off the job

9    once but then decided to return three days later. Migis Tr. at 169:15-17. Mr. Migis did not write

10   anything expressing an intention to quit and AutoZone did not terminate his employment—thus

11   illustrating quite clearly one of the problems with ascertaining when an employee "quits."

12        The summary report can be used to show the last day an employee worked at an AutoZone

13   store, but it doesn't necessarily show the date that a Store Manager finally came to the conclusion

14   that the employee quit. That information might be included on a termination report, *see*, e.g.,

15   Exhibit 9 to Declaration of Tift, or it might not be documented at all. Regardless, the last day

16   worked as shown on the summary report is not the equivalent of the last day of employment in this

17   situation, or in many others. Recognition of these facts does not mean that AutoZone "disowns" the

18   summary report.

19   **III.    ARGUMENT AND AUTHORITY**

20        AutoZone did not fail or refuse to obey this Court's rulings on discovery matters. Prior to the

21   date that Plaintiff's counsel filed this motion, termination reports and paycheck information which

22   Plaintiff's counsel requested have been produced. AutoZone is unaware of any other kind of

23   document that constitutes an "underlying" document related to the summary report, and notes that

24   Plaintiff has not identified anything else in this motion or in any correspondence that preceded it.[8]

25   ───────────────

26   [8] *See*, e.g., Exhibit 2 to Declaration of Tift, which is the second letter that followed a lengthy discovery conference which took place in Plaintiff's counsel's office.

PAGE 7 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1    In regard to this motion, it is important to clarify that AutoZone has produced the pay

2 information for <u>every</u> terminated employee for the period requested in its discovery responses.

3 Plaintiff's implication that AutoZone has not, or the suggestion that AutoZone does not maintain

4 required records, citing OAR §839-020-0080(1), is simply wrong.  ORS 653.045 provides, in

5 relevant part:

6    **653.045 Records to be kept by employers; itemization of deductions from wages.** (1) Every
employer required by ORS 653.025... to pay a minimum wage to any of the employer's
7 employees shall make and keep available... for not less than two years, a record or records
containing:
8

9    (a) The name, address and occupation of each of the employer's employees.

10    (b) The actual hours worked each week and each pay period by each employee.

11    ...

12 OAR §839-020-0080(1) adds nothing to the contrary, and certainly does not mandate that Oregon

13 employers keep perfect copies of termination reports.  Contrary to Plaintiff's implication,

14 termination reports are not pay records.  AutoZone's pay records are maintained in accordance with

15 the law, and Plaintiffs have received paycheck data for all terminated employees.

16    As to the termination reports, however, AutoZone cannot produce documents that cannot be

17 located or do not exist.  "A court has discretion in imposing sanctions for discovery violations, *see*

18 *Stronach v. Ellingsen*, 108 Or. App. 37, 40, 814 P.2d 175, *rev den* 312 Or. 151 (1991), but it cannot

19 compel a person to produce documents that the person does not have."  *Nelson and Nelson*, 117 Or.

20 App. 157, 161, 843 P.2d 507 (1992).  In sum, even Plaintiff's counsel concedes there is no evidence

21 to show that anything relevant to these discovery requests has been withheld by AutoZone:

22 ("AutoZone **may** have failed to produce all late pay claim-related discovery...").  *See*, Supplemental

23 Briefing, pg. 10:16-17 (emphasis added).  Absent a good faith belief that AutoZone withheld

24 information or failed to produce information ordered by the Court, Plaintiff's motion is baseless and

25 brought for an improper purpose.

26

---

PAGE 8 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

**A.    Plaintiff's have not Shown that Sanctions are Warranted in Regard to their Requests for Admission.**

Plaintiff's counsel contends that the extraordinary sanctions sought in this motion are warranted, in large part, because AutoZone failed to admit the contentions set out in RFA's 1-3. However, AutoZone's answers to Plaintiff's RFA's are fair.  It is clear from the documents produced by AutoZone that its policies call for timely payment of final wages.  To the extent that the policies are not met in every respect, it is because mistakes are made, or an employee's intentions are unclear, or there are good faith misunderstandings.

Contrary to Plaintiff's assertions, Oregon law does not penalize employers for mistakes in paying employees.  Instead, an employer is subject to penalties only if "an employer …fails to pay wages owed at termination [where the employer is] 'fully aware of [its] obligation to do so' but nonetheless consciously and voluntarily decides not fulfill that obligation." *Wilson v. Smurfit Newsprint Corp*., 197 Or. App. 648, 107 P.3d 61 (2005).  AutoZone's answers to the RFA's reflect a reasonable interpretation of its duty to pay final wages under Oregon law.  The answer does not warrant the sanctions Plaintiff requests.

Moreover, in accordance with ORCP 46C, sanctions are permitted for a failure to admit only where:

> [A] a party fails to admit...the truth of any matter, ... and [] the party requesting the admissions thereafter proves... the truth of the matter, the party requesting the admissions may apply to the court for an order requiring the other party to pay the party requesting the admissions the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 45 B or C, or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that such party might prevail on the matter, or (4) there was other good reason for the failure to admit. (emphasis added)

Plaintiff has yet to prove that AutoZone denied the truth of a statement which was true, and even in the unlikely event that Plaintiff is able to do so in regard to these RFA's (which AutoZone contends will not happen), it is inappropriate for Plaintiff to attempt to invoke this provision because Plaintiff's admission concerning AutoZone's "fail[ure] to pay all wages earned and unpaid...to at least one [employee]" is irrelevant to the contentions set forth in the complaint.  That is, Plaintiff

1   contends that AutoZone engages in a company wide practice of failing to pay final wages on time.

2   Even if it were true that one person was paid late, that one exception is completely irrelevant to class

3   treatment, as class treatment hinges on proof of a uniform practice or policy—not a single exception.

4   Commonality, for purposes of a class action, exists only when the defendant has engaged in

5   "standardized conduct" toward the members of the proposed class, thus establishing that all class

6   members are "similarly situated." *Caulton v. Merchants' Credit Guide Co.*, 2007 WL 625457 (N.D.

7   Ill. 2007); see, also, *Joachim v. Crater Lake Lodge*, 48 Or. App. 379, 392, 617 P.2d 632, rev den 290

8   Or. 211 (1980).

9   **B.    Plaintiff has not shown a Basis to Strike AutoZone's Affirmative Defenses.**

10   Plaintiff also suggests that it is appropriate, at this juncture, to strike AutoZone's affirmative

11   defenses related to good faith and bona fide dispute.  A motion to strike pleadings is subject to the

12   same standard as a motion for directed verdict.  The Court must give a defendant every inference in

13   his favor that may reasonably be drawn from the evidence.  *Lemons v. Holland,* 205 Or. 163, 167,

14   284 P.2d 1041 (1955); *Manchunze v. Chemeketa Community College,* 106 Or. App. 707, 712, 810

15   P.2d 406, *rev den* 312 Or. 16 (1991) (In reviewing a motion to dismiss under ORCP 21A(8), the

16   Court must assume the truth of all well-pleaded allegations and any inferences favorable to the

17   pleader that could be drawn.)  Nothing in Plaintiff's motion is sufficient as a basis to strike these

18   defenses, and, in fact, it is not even clear how this remedy relates to the wrong that Plaintiff alleges

19   in this Motion.

20   In any event, and as noted above, Oregon law is contrary to Plaintiff's assertions.  In *Wilson*

21   *v. Smurfit Newsprint Corp.*, 197 Or. App. 648, the Court explained that it was inappropriate to

22   assume that any kind of mistake could lead to liability under Oregon's wage and hour provisions.

23   The Court said:

24   > The cases, then, all apply the definition first stated in [*State ex rel Nilsen v. Johnston*, 233 Or.
   > 103, 108, 377 P.2d 331 (1962)]: An employer acts willfully if it knows what it is doing,
25   > intends to do what it is doing, and is a free agent.  However, *Johnston* itself explains that an
   > employer that makes an "unintentional miscalculation" does not act willfully, 233 Or at 108,
26   > and both *Lee,* 251 Or at 293-94, and *Hekker*, 265 Or at 561, hold that an employer that

---

PAGE 10 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

1

2

3

withholds wages owed at termination under a bona fide belief that it has that authority does not act willfully. Those cases indicate that what an employer "knows" includes only those facts that it believes in good faith to be true. The Supreme Court has never overruled those cases, and, indeed, it continues to cite them. *See Taylor*, 329 Or at 469 (citing *Johnston*).

Plaintiff's motion to strike must be denied.

4

5

### C.      Plaintiff's Request for Additional 39C Depositions must be Denied.

Plaintiff next contends that this Court should order a 39C deposition of a corporate

6

7

representative to testify about efforts to locate, preserve and produce all termination reports "both

prior to and after the March 7, 2008 hearing...".  Notably, the termination reports that Plaintiff

8

9

requested in discovery would have been created, and presumably printed and retained, at least one

year prior to the hearing, and likely before that.

10

11

AutoZone's counsel is prepared to represent that a good faith search has been conducted,

including, but not limited to, printing out each terminated employee's personnel file and searching

12

each file for a termination report.

13

14

### D.      Plaintiff's Motion should be Denied in its Entirety.

There is no evidence before this Court that AutoZone is not in compliance with the Court's

15

16

order.  AutoZone produced all pay records for all terminated employees, produced relevant training

materials, memos issued by the Payroll Director, and all termination reports that can be located.

17

18

Plaintiff fails to establish any basis to impose the onerous sanctions, including the request for

attorney fees and costs, that are requested.

19

20

21

22

23

24

25

26

PAGE 11 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

1

Dated:  June 5, 2008

2

3
                                     _____

4
                                     Leigh Ann Collings Tift OSB No.05473
LITTLER MENDELSON
A Professional Corporation

5

6
Attorneys for Defendant
Autozone Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 12 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2008, I served a full, true, and correct copy of the foregoing:

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
ENFORCE COURT ORDER AND MEMORANDUM IN SUPPORT THEREOF**

☐    By delivery via messenger, or otherwise by hand,

☒    By facsimile,

☐    By e-mail,

☒    By mailing same, postage paid

addressed to:

Bailey Pinney & Associates LLC
Attorneys at Law
1498 SE Tech Center Place
Suite 290
Vancouver, WA 98683
Fax (360) 567-3331

Of Attorneys for Plaintiff

By _____
Savanna Stevens

Firmwide:85393409.1 013306.2124

PAGE 13 – DEFENDANT'S OPP. TO MTN TO
ENFORCE COURT ORDER

1
2
3       IN THE CIRCUIT COURT OF THE STATE OF OREGON
4
            FOR THE COUNTY OF MULTNOMAH
5

6   MICHAEL MIGIS, individually, and on          No. 0711-13531
    behalf of all other persons similarly
7   situated,,                                    **DEFENDANT'S OBJECTIONS TO MAY 22,**
                                                  **2008 STATEMENT OF ATTORNEY FEE**
8               Plaintiff,                        **REQUEST**

9       vs.

10  AUTOZONE INC., a Nevada
    Corporation,,
11
                Defendant.
12

13      Defendant AutoZone, Inc. ("Defendant") incorporates its previously filed objections to

14  Plaintiff's request for award of attorney fees relative to AutoZone's April 22, 2008 Motion for an

15  Extension of Time.  Plaintiff's counsel made a token effort to eliminate time spent on unrelated

16  matters--which were pointed out in AutoZone's first objections-- but the effect is nominal.

17  Plaintiff's fee request has been reduced from $9,056.00 to $8,631.00 (with an additional $45.00 in

18  costs).  The revised fee request does not cure the most significant of the issues presented by

19  AutoZone's first objection: The motion for an extension of time was noted on an expedited basis

20  and less than 30 minutes was allowed for argument.  Given the amount of time permitted by the

21  Court and the fact it was an expedited motion, Plaintiff's effective hourly rate is in the neighborhood

22  of $16,000/hour.

23      Plaintiff's expenditure of time for this hearing is exorbitant and the Court should

24  significantly reduce the fee award to reflect the simplicity of the issue presented as well as the

25  brevity of the proceedings.

26

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1

2

3    Dated:  June 5, 2008

4

5                                    Leigh Ann Collings Tift OSB No.05473
6                                    LITTLER MENDELSON
                                     A Professional Corporation
7
                                     Attorneys for Defendant
8                                    Autozone Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 2 – DEFENDANT'S OBJ. TO MAY 22, 2008 STMT
OF ATTORNEY FEE REQUEST

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2008, I served a full, true, and correct copy of the foregoing:

**DEFENDANT'S OBJECTIONS TO MAY 22, 2008
STATEMENT OF ATTORNEY FEE REQUEST**

☐    By delivery via messenger, or otherwise by hand,

☒    By facsimile,

☐    By e-mail,

☒    By mailing same, postage paid

addressed to:

Bailey Pinney & Associates LLC
Attorneys at Law
1498 SE Tech Center Place
Suite 290
Vancouver, WA  98683
Fax (360) 567-3331

Of Attorneys for Plaintiff

By  _Savanna L. Stevens_
Savanna L. Stevens

Firmwide:85451918.1 013306.2124

---

PAGE 3 – DEFENDANT'S OBJ. TO MAY 22, 2008 STMT
OF ATTORNEY FEE REQUEST

RECEIVED
JUN 4 2008
LITTLER MENDELSON P.C.

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**
**FOR THE COUNTY OF MULTNOMAH**

| | |
|---|---|
| **MICHAEL MIGIS**, individually, and on behalf of all others similarly situated, | Case No. **0711-13531** |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT THEREOF** |
| v. | |
| **AUTOZONE, INC.**, | Date: **July 11, 2008**<br>Time: 1:30 p.m.<br>Court: The Hon. Jerome LaBarre<br>Rm: 702 |
| Defendant. | |

## I. INTRODUCTION

The Court should deny Defendant's *Motion for Protective Order* in its entirety because AutoZone has not made a showing of good cause that ORCP 36C requires. That is, AutoZone:

1. Fails to submit an affidavit from AutoZone or the proposed ORCP 39C(6) designee explaining why his brief absence from the corporate office will create an undue hardship on AutoZone, who is the deponent; and

2. Otherwise fails to articulate the specific oppression, undue burden or expense that AutoZone will suffer if it must produce a designee to testify in Oregon.

Plaintiff supports this *Response* with the *Declaration of Chey K. Powelson* ("*Powelson Decl.*").

///

Page 1 -   PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1    Upon denying Defendant's *Motion*, the Court should order AutoZone to, within four (4)

2    business days of hearing on this matter, produce one or more persons to appear in Oregon and

3    testify as to the issues set forth in Plaintiff's ORCP 39C(6) Notice of Deposition. ORCP 36C.

## II. BACKGROUND

5    AutoZone's October 2007 Form 10-K filing with the U.S. Securities & Exchange

6    Commission indicates that as of August 25, 2007, AutoZone: (1) operated 3,933 domestic stores;

7    (2) employed approximately 53,000 people domestically; (3) operated 25 stores in the State of

8    Oregon; and (4) experienced a 52 week gross profit of over $3 billion.[1]

9    Plaintiff's ORCP 39C(6) Notice of Deposition set the deposition of AutoZone to take

10    place in Oregon on Friday, May 30, 2008. Prior to that deposition, AutoZone confirmed it would

11    not produce anyone. *Powelson Decl.*, Ex. B.

12    Although AutoZone in its *Motion* references several proposals for resolving the current

13    dispute, AutoZone did not inform the Court of all the circumstances leading to this impasse.

14    First, AutoZone already *denied* three of Plaintiff's Requests For Admission, which

15    Plaintiff based on the proposed designee's prior, individual deposition testimony in August 2005.

16    See *Powelson Decl.*, Ex. C. Plaintiff informed Defendant's counsel that "[t]hese types of denials

17    create more work for everyone * * * ." *Id.*, Ex. D.

18    Second, many of the ORCP 39C(6) topics for deposition in this case could not possibly

19    have been addressed in a prior *Joarnt v. AutoZone* individual deposition of an AutoZone manager

20

21    _____
       [1]

22    http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5487038-10667-
       45360&type=sect&TabIndex=2&companyid=5925&ppu=%252fdefault.aspx%253fcompanyi

23    d%253d5925, and
       http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5487038-126451-12873

24    8&type=sect&TabIndex=2&companyid=5925&ppu=%252fdefault.aspx%253fcompanyid%25
       3d5925, and

25    http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5487038-68889-76719
       &type=sect&TabIndex=2&companyid=5925&ppu=%252fdefault.aspx%253fcompanyid%253

26    d5925 (visited on June 2, 2008). See also *Powelson Decl.*, Ex. A.

Page 2 -    **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1    almost three years ago.  The ORCP 39C(6) topics themselves clearly demonstrate this, since they

2    request deposition testimony from AutoZone on, *inter alia*: (a) AutoZone policies and procedures

3    regarding, and efforts taken between *November 2006 and November 2007* to comply with Oregon

4    laws and regulations governing the payment of final wages to hourly employees; (b) AutoZone

5    termination information relating to Plaintiff Migis; (c) AutoZone's hourly employee time records

6    created between April 2005 and November 2007; and (d) AutoZone's document production in

7    this case.

8            Those narrowly-tailored topics, when combined with Defendant's knee-jerk denials to

9    Plaintiff's Requests For Admission and claims of an un-specified burden, cannot now justify

10   AutoZone's position that Plaintiff either stipulate to individual deposition testimony taken in

11   2005, or travel to Memphis because AutoZone cannot be bothered with this lawsuit.

12

13                              **III.  POINTS & AUTHORITIES**

14           Under both the general good cause requirements, and the good cause factors to be

15   considered when determining the location of a 39C(6) deposition, AutoZone fails to establish

16   why it should not appear in Oregon to testify on wage and hour issues affecting, at minimum,

17   hundreds of hourly Oregon employees.

18       **1.  Good Cause (Generally)**

19           "'A party may unilaterally choose the place for deposing an opposing party, subject to

20   the granting of a protective order by the Court * * * designating a different place.'" *Cadent Ltd.*

21   *v. 3M Unitek Corp.*, 232 F.R.D. 625, 628 (C.D.Cal. 2005).  "A party seeking a protective order

22   to prevent or postpone a deposition must show good cause and the specific need for protection."

23   *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 595 (E.D.Tx. 2003).[2]

24   _____

25           [2] Since ORCP 36 is similar to Fed.R.Civ.Pro. 26, Federal cases construing the latter are
     persuasive.  See *Citizens' Util. Bd. v. Pub. Util. Comm'n*, 128 Or App at 656; and *Stevens v.*
26   *Czerniak*, 336 Or 392, 402 (2004).

Page 3 -      **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1    Moreover, a protective order should issue only if there is a good cause "showing that any

2    of the harms listed in the rule are threatened and can be avoided **without impeding** the discovery

3    process." *Flower v. T.R.A. Indus., Inc.*, 127 Wash App 13, 38 (2005) (bold added)).

4    In Oregon, a party that seeks a protective order by claiming potential harm, such as undue

5    burden or expense, must show that the harm is "significant, not a mere trifle." *Citizens' Util. Bd.*,

6    128 Or App at 658.  "Broad allegations of harm unsubstantiated by specific examples or

7    articulated reasoning do not satisfy the good cause requirement." *Id.*

8    This is the commonly accepted view among various courts. See e.g., *Gulf Oil Co. v.*

9    *Bernard*, 452 U.S. 89, 102 n.16 (1981) (good cause requires "a particular and specific

10   demonstration of fact, as distinguished from stereotyped and conclusory statements." ); *Rivera*

11   *v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004) ("Courts have held that the showing of 'good

12   cause' under Rule 26 is a heavy burden."); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121

13   (3rd Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated

14   reasoning, do not satisfy the Rule 26(c) test."); *Sentry Ins. v. Shivers*, 164 F.R.D. 255, 257

15   (D.Kan. 1996) ("During the course of litigation, parties will generally incur expenses.

16   Defendants have provided no evidence, by affidavit or otherwise, of undue burden."); *Hussey*,

17   216 F.R.D. at 596 ("[Defendant] has not shown that allowing the discovery requested will cause

18   it an undue burden or expense.  Accordingly, the Court finds no good cause to enter a protective

19   order * * *."); *Resolution Trust Corp. v. Worldwide Ins. Management Corp.*, 147 F.R.D. 125, 127

20   (N.D.Tx. 1992); and *United States v. Panhandle Eastern Corp.*, 118 F.R.D. 346, 349-50 (D.Del.

21   1988).

22   AutoZone fails to concretely articulate the hardship, much less any "undue hardship," the

23   absence of its proposed designee will cause for the corporation.  Instead, AutoZone's counsel

24   only generally contends: (1) that "it is difficult for [the designee] to remove himself from [his]

25   duties"; and (2) that because of a "time difference" between Memphis, Tennessee and Portland,

26

Page 4 -    **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

1 | Oregon, it will apparently take the designee two full days to travel to and from Oregon.

2 | Defendant's counsel also speculates, without reason, that the deposition will "likely not last even

3 | half a day." See Defendant's *Motion for Protective Order*, pp. 3 - 4.[3]

4 |      In other words, Defendant failed to submit a declaration or affidavit from the designee

5 | himself (or another AutoZone corporate manager), explaining under oath what type or types of

6 | harm the designee's absence will cause.   And Defendant counsel's affidavit is insufficient

7 | because it sets forth only hearsay, indicating that she talked to the proposed designee, who said

8 | that traveling to Portland "is a hardship for him * * * ." See Defendant's *Tift Declaration*, ¶ 12.

9 | (This is most likely a waiver of the attorney-client privilege, and so if the deposition must occur

10 | in Memphis, then, Plaintiff will ask Mr. Dessem about his conversations with Ms. Tift.)

11 |      Defendant is completely silent, however, as to whether its designee's absence could be

12 | mitigated by using the modern technology available to most upper-level managers for large

13 | corporations: cell phones, laptop computers, personal digital assistants, wireless Internet access,

14 | virtual desktops, e-mail and text messaging.

15 |      Had the designee himself averred under oath that he nor anyone else does not, can not,

16 | and would not be able to use any of the foregoing technology while out of the office, then

17 | Defendant would have at least come closer to meeting the heavy burden that ORCP 36C requires.

18 |      But without any such affidavit or other specific explanations, it is difficult to believe that

19 | a corporation as large as AutoZone would suffer an undue hardship by not having one of its

20 | managers physically present in Tennessee.

21 | ///

22 |

23 |     [3] The May 15, 2008 ORCP 39C(6) deposition took most of one day.  Moreover, Exhibit

24 | 5 to the declaration of Defendant's counsel Leigh Ann Tift clearly sets forth Plaintiff's position: that it would **not** "be overly burdensome for AutoZone to produce Mr. Dessem for deposition in

25 | Oregon, where Defendant operates well over 20 retail stores, and where there are important socio-economic issues at stake in the litigation * * *."  The Court should also note that the deponent

26 | is AutoZone, not Mr. Dessem.

Page 5 -   **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**2.** **"Good Cause" When Considering the Location of an ORCP 39C(6) Deposition**

"Corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the [litigation] forum, for the convenience of all parties and in the general interests of judicial economy." *Sugarhill Records, Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985).  Accord, *Cadent*, 232 F.R.D. at 629 (citing *Sugarhill*).  See also ORCP 1B.  Another reason supporting the litigation forum as the proper location for deposition is the extent to which the corporation does business within the forum, and whether it has freely taken advantage of the rules of discovery.  See e.g., *New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 467-68 (N.D.Ill. 2007) (in context of determining the location for deposing non-U.S., foreign corporations).

Generally, that a defendant "will incur additional expense by attending * * * noticed depositions does **not** show undue burden or good cause for a protective order." *Shivers*, 164 F.R.D. at 257 (bold added).  It is also unlikely that, in the absence of a declaration to the contrary, the travel and brief absence of a manager for a large corporation will impose upon the corporation a severe or undue burden.  See *Sugarhill* at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97 (S.D.N.Y. 1968) ("[T]here has been no showing that any harm would result to defendant's business by virtue of the deponents' brief absence from their jobs."); and *Cadent*, 232 F.R.D. at 629 ("[N]either party has provided the Court with declarations from its corporate officers attesting to either the expense or undue burden associated with * * *" specific locations for the noticed depositions.).

In addition to the foregoing, when determining the location of the deposition of a corporation, a court may consider: (a) location of counsel for the parties in the forum district; (b) the number of corporate representatives a party is seeking to depose; (c) the likelihood of significant discovery disputes arising which would necessitate resolution by the forum court; (d) whether the persons sought to be deposed often engage in travel for business purposes; and (e)

Page 6 -    **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1    the equities with regard to the nature of the claim and the parties' relationship. *Cadent*, 232

2    F.R.D. at 629.   "Among the more significant factors * * * are whether the time, expense, and

3    inconvenience of travel presents a **special hardship** for the deponent, and the ability of the court

4    to intervene should disputes arise * * * ." *New Medium Techs.*, 242 F.R.D. at 467 (bold added)

5    (cites omitted). "[A]n antecedent history of contentiousness is a sufficient, but not a necessary

6    basis on which to require a deposition in a locale where judicial supervision will be available."

7    *Id.*

8            Evaluation of the foregoing factors, in conjunction with AutoZone's general failure to

9    articulate good cause, dictates that a protective order is not appropriate.  First, counsel for both

10   parties reside in or very near the litigation forum.  Second, it appears that only one corporate

11   designee needs to travel and appear (as opposed to two attorneys traveling to Memphis), and no

12   "special hardship" to AutoZone is evident.  Third, there is undoubtedly a strong likelihood that

13   significant discovery disputes may occur during the deposition.[4]  Fourth, Defendant is silent as

14   to whether the proposed designee generally or frequently engages in business travel.  Finally, this

15   is a putative wage and hour class action involving, at minimum, hundreds of people who worked

16   or are working in the State of Oregon for a defendant-employer using the corporate form to

17   conduct business.[5]

18   ///

19   ///

20   ///

21   ///

22   ///

23

24          [4] See generally, Plaintiff's *Supplemental Briefing Supporting Plaintiff's Motion to Enforce Court Order*, and Plaintiff's *Motion to Bind and/or Compel ORCP 39C(6) Answers*.

25

26          [5]  Defendant's counsel has already conceded that the class is "enormous." See transcript (pp. 6:22-24) of the April 22, 2008 hearing on Defendant's *Motion for Extension of Time*.

Page 7 -        **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1

2                              **IV. CONCLUSION**

3          In sum, in light of the equities and the importance of the socio-economic issues at stake

4   in this case, and in the absence of any good cause showing, Plaintiff respectfully requests the

5   Court deny Defendant's *Motion*, and instead order that within four (4) business days of hearing

6   on this matter, AutoZone produce one or more persons to testify in Oregon as to the topics set

7   forth in Plaintiff's First Amended ORCP 39C(6) Notice of Deposition.

8

9

10  DATED this 2nd day of June 2008.          BAILEY, PINNEY & ASSOCIATES, LLC

11

12                                           _____

13                                           CHEY POWELSON, OSB 03551
                                             Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 8 -      **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served the foregoing *Response to Defendant's Motion for Protective Order and Memorandum in Support Thereof* upon:

> Leigh Ann Tift
> Littler Mendelson
> One Union Square
> 600 University Street Suite 3200
> Seattle WA 98101-3122
> Attorney for Defendant AutoZone

by the following indicated method or methods:

[X]    by causing a full, true, and correct copy thereof to be deposited in the U.S. Mail service to the person listed above on the date set forth below.

DATED June 2, 2008

BAILEY, PINNEY & ASSOCIATES, LLC

CHEY POWELSON, OSB 035512
Attorney for Plaintiff

Page 9 -    **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Declaration of Chey K. Powelson
Supporting Plaintiff's Response to
Defendant's Motion for Protective Order

1

2

3

4

5

6

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**
**FOR THE COUNTY OF MULTNOMAH**

7

8   **MICHAEL MIGIS**, individually and on behalf    Case No. **0711-13531**
    of all others similarly situated,

9

10                          Plaintiff,       **DECLARATION OF CHEY K.**
                                              **POWELSON SUPPORTING**
11      v.                                    **PLAINTIFF'S RESPONSE TO**
                                              **DEFENDANT'S MOTION FOR**
12  **AUTOZONE, INC.,**                       **PROTECTIVE ORDER**

13

14                          Defendant.

15

16   I, Chey K. Powelson, hereby declare as follows:

17   1.   I am one of the attorneys for Plaintiff herein.  I am competent to testify in this matter,

18        and base the contents of this declaration on my own personal knowledge and/or the

19        litigation files and documents my firm maintains for this litigation.

20   2.   Attached hereto as **Exhibit A** is a true and correct copy of excerpts from AutoZone's

21        Securities & Exchange Commission filings, including a Form 10-K setting forth

22        various financial information available to AutoZone as of August 2007.  I printed

23        this    exhibit    from    the    following    website    pages    on    June   2,   2008:

24        http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5487038-10

25        667-45360&type=sect&TabIndex=2&companyid=5925&ppu=%252fdefault.aspx

26

Page 1 -    DECLARATION  OF  CHEY  K.  POWELSON SUPPORTING PLAINTIFF'S RESPONSE TO
            DEFENDANT'S MOTION FOR PROTECTIVE ORDER

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1      %253fcompanyid%253d5925, and

2      http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5487038-12

3      6451-128738&type=sect&TabIndex=2&companyid=5925&ppu=%252fdefault.as

4      px%253fcompanyid%253d5925, and

5      http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5487038-68

6      889-76719&type=sect&TabIndex=2&companyid=5925&ppu=%252fdefault.aspx

7      %253fcompanyid%253d5925.

3.    Attached hereto as **Exhibit B** is a true and correct copy of an e-mail exchange
between myself and Defendant counsel, wherein Defendant's counsel confirmed that
AutoZone would not be producing anyone for the ORCP 39C(6) deposition
scheduled for May 30, 2008.

4.    Attached hereto as **Exhibit C** is a true and correct copy of excerpts from Plaintiff's
Second Requests For Admission, in which Plaintiff had already attempted to
establish that certain payroll policies and practices Mr. Dessem as an individual for
AutoZone had testified to in August 2005, still applied after that time.  Defendant
denied those Requests For Admission.

5.    Attached hereto as **Exhibit D** is a true and correct copy of my e-mail to Defendant's
counsel explaining that Defendant's denials to Requests For Admission create more
work.

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST
OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE
FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR
PERJURY.

Dated this ____ day of June 2008 at Vancouver, Washington.

CHEY POWELSON, OSB 03551
Attorney for Plaintiff

Page 2 -    **DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served the foregoing *Declaration of Chey K. Powelson*

*Supporting Plaintiff's Response to Defendant's Motion for Protective Order* upon:

Leigh Ann Tift
Littler Mendelson
One Union Square
600 University Street Suite 3200
Seattle WA 98101-3122
Attorney for Defendant AutoZone

by the following indicated method or methods:

[X]    by causing a full, true, and correct copy thereof to be deposited in the U.S. Mail
        service to the person listed above on the date set forth below.

DATED June 2, 2008

BAILEY, PINNEY & ASSOCIATES, LLC

CHEY POWELSON, OSB 035512
Attorney for Plaintiff

Page 3 -    **DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

# Exhibit A

## Item 1. Business

### Introduction

We are the nation's leading specialty retailer and a leading distributor of automotive replacement parts and accessories, with most of our sales to do-it-yourself ("DIY") customers. We began operations in 1979 and at August 25, 2007 operated 3,933 stores in the United States and Puerto Rico, and 123 in Mexico. Each of our stores carries an extensive product line for cars, sport utility vehicles, vans and light trucks, including new and remanufactured automotive hard parts, maintenance items, accessories and non-automotive products. In many of our stores we also have a commercial sales program that provides commercial credit and prompt delivery of parts and other products to local, regional and national repair garages, dealers and service stations. We also sell the ALLDATA brand automotive diagnostic and repair software. On the web at www.autozone.com, we sell diagnostic and repair information, auto and light truck parts, and accessories. We do not derive revenue from automotive repair or installation services.

At August 25, 2007, our stores were in the following locations:

| | |
|---|---:|
| Alabama | 90 |
| Arizona | 110 |
| Arkansas | 59 |
| California | 428 |
| Colorado | 55 |
| Connecticut | 31 |
| Delaware | 10 |
| Florida | 173 |
| Georgia | 160 |
| Idaho | 18 |
| Illinois | 192 |
| Indiana | 125 |
| Iowa | 22 |
| Kansas | 37 |
| Kentucky | 74 |
| Louisiana | 97 |
| Maine | 6 |
| Maryland | 38 |
| Massachusetts | 66 |
| Michigan | 133 |
| Minnesota | 22 |
| Mississippi | 81 |
| Missouri | 90 |
| Montana | 1 |
| Nebraska | 13 |
| Nevada | 42 |
| New Hampshire | 16 |
| New Jersey | 57 |
| New Mexico | 54 |
| New York | 112 |
| North Carolina | 145 |
| North Dakota | 2 |
| Ohio | 205 |
| Oklahoma | 66 |
| Oregon | 25 |
| Pennsylvania | |

EXHIBIT _A_

Page _1-7_

| | |
|---|---:|
| Puerto Rico | 15 |
| Rhode Island | 15 |
| South Carolina | 68 |
| South Dakota | 1 |
| Tennessee | 145 |
| Texas | 492 |
| Utah | 34 |
| Vermont | 1 |
| Virginia | 81 |
| Washington | 44 |
| Washington, DC | 6 |
| West Virginia | 22 |
| Wisconsin | 48 |
| Wyoming | 5 |
| Domestic Total | 3,933 |
| Mexico | 123 |
| TOTAL | 4,056 |

4

EXHIBIT A
Page 2-7

*Store Personnel and Training*

Each store typically employs from 10 to 16 AutoZoners, including a manager and, in some cases, an assistant manager. AutoZoners typically have prior automotive experience. All AutoZoners are encouraged to complete courses resulting in certification by the National Institute for Automotive Service Excellence ("ASE"), which is broadly recognized for training certification in the automotive industry. Although we do on-the-job training, we also provide formal training programs, including an annual national sales meeting, regular store meetings on specific sales and product issues, standardized training manuals and a specialist program that provides training to AutoZoners in several areas of technical expertise from both the Company and from independent certification agencies. Training is supplemented with frequent store visits by management.

Store managers receive financial incentives through performance-based bonuses. In addition, our growth has provided opportunities for the promotion of qualified AutoZoners. We believe these opportunities are important to attract, motivate and retain high quality AutoZoners.

All store support functions are centralized in our store support centers located in Memphis, Tennessee and Mexico. We believe that this centralization enhances consistent execution of our merchandising and marketing strategies at the store level, while reducing expenses and cost of sales.

*Store Automation*

All of our stores have Z-net ™, our proprietary electronic catalog that enables our AutoZoners to efficiently look up the parts our customers need and provides complete job solutions, advice and information for customer vehicles. Z-net ™ provides parts information based on the year, make, model and engine type of a vehicle and also tracks inventory availability at the store, at other nearby stores and through special order. The Z-net ™ display screens are placed on the hard parts counter or pods, where both AutoZoners and customers can view the screen. In addition, our wide area network enables the stores to expedite credit or debit card and check approval processes, to access immediately national warranty data, to implement real-time inventory controls and to locate and hold parts at neighboring AutoZone stores.

Our stores utilize our computerized proprietary Store Management System, which includes bar code scanning and point-of-sale data collection terminals. The Store Management System provides administrative assistance and improved personnel scheduling at the store level, as well as enhanced merchandising information and improved inventory control. We believe the Store Management System also enhances customer service through faster processing of transactions and simplified warranty and product return procedures.

**Store Development**

The following table reflects store development during the past five fiscal years:

|  | Fiscal Year | | | | |
|---|---|---|---|---|---|
|  | **2007** | **2006** | **2005** | **2004** | **2003** |
| Beginning Domestic Stores | 3,771 | 3,592 | 3,420 | 3,219 | 3,068 |
| New Stores | 163 | 185 | 175 | 202 | 160 |
| Closed Stores | 1 | 6 | 3 | 1 | 9 |
| Net New Stores | 162 | 179 | 172 | 201 | 151 |
| Relocated Stores | 18 | 18 | 7 | 4 | 6 |
| Ending Domestic Stores | 3,933 | 3,771 | 3,592 | 3,420 | 3,219 |
| Ending Mexico Stores | 123 | 100 | 81 | 63 | 49 |
| Ending Total Stores | 4,056 | 3,871 | 3,673 | 3,483 | 3,268 |

EXHIBIT _A_
Page _3-7_

The domestic stores include stores in the United States and Puerto Rico. The new store count in 2007 reflects 3 stores that were temporarily closed during fiscal 2006 and excluded from the prior year ending store count. We believe that expansion opportunities exist both in markets that we do not currently serve, as well as in markets where we can achieve a larger presence. We attempt to obtain high visibility sites in high traffic locations and undertake substantial research prior to entering new markets. The most important criteria for opening a new store are its projected future profitability and its ability to achieve our required investment hurdle rate. Key factors in selecting new site and market locations include population, demographics, vehicle profile, number and strength of competitors' stores and the cost of real estate. In reviewing the vehicle profile, we also consider the number of vehicles that are seven years old and older- "our kind of vehicles," as these are generally no longer under the original manufacturers' warranties and will require more maintenance and repair than younger vehicles. We generally seek to open new stores within or contiguous to existing market areas and attempt to cluster development in markets in a relatively short period of time. In addition to continuing to lease or develop our own stores, we evaluate and may make strategic acquisitions.

7



EXHIBIT A
Page 4-7

### Purchasing and Supply Chain

Merchandise is selected and purchased for all stores through our store support centers located in Memphis, Tennessee and Mexico. No one class of product accounts for as much as 10 percent of our total sales. In fiscal 2007, no single supplier accounted for more than 10 percent of our total purchases. We generally have few long-term contracts for the purchase of merchandise. We believe that we have good relationships with suppliers. We also believe that alternative sources of supply exist, at similar cost, for most types of product sold. Most of our merchandise flows through our distribution centers to our stores by our fleet of tractors and trailers or by third-party trucking firms.

Our hub stores have increased our ability to distribute products on a timely basis to many of our stores. A hub store is able to provide replenishment of products sold and deliver other products maintained only in hub store inventories to a store in its coverage area generally within 24 hours. Hub stores are generally replenished from distribution centers multiple times per week.

### Competition

The sale of automotive parts, accessories and maintenance items is highly competitive in many areas, including name recognition, product availability, customer service, store location and price. AutoZone competes in both the retail ("DIY") and commercial do-it-for-me ("DIFM") auto parts and accessories markets.

Competitors include national and regional auto parts chains, independently owned parts stores, wholesalers and jobbers, repair shops, car washes and auto dealers, in addition to discount and mass merchandise stores, department stores, hardware stores, supermarkets, drugstores, convenience stores and home stores that sell aftermarket vehicle parts and supplies, chemicals, accessories, tools and maintenance parts. AutoZone competes on the basis of customer service, including the trustworthy advice of our AutoZoners, merchandise selection and availability, price, product warranty, store layouts and location.

### Trademarks and Patents

We have registered several service marks and trademarks in the United States Patent and Trademark office as well as in certain other countries, including our service marks, "AutoZone" and "Get in the Zone," and trademarks, "AutoZone," "Duralast," "Duralast Gold," "Valucraft," "ALLDATA" and "Z-net $^{TM}$." We believe that these service marks and trademarks are important components of our merchandising and marketing strategy.

### Employees

As of August 25, 2007, we employed approximately 55,000 persons, approximately 56 percent of whom were employed full-time. About 93 percent of our AutoZoners were employed in stores or in direct field supervision, approximately 5 percent in distribution centers and approximately 2 percent in store support functions. Included in the above numbers are approximately 2,000 persons employed in our Mexico operations.

We have never experienced any material labor disruption and believe that relations with our AutoZoners are generally good.

EXHIBIT _A_

Page _5-7_

**Consolidated Statements of Income**

| (in thousands, except per share data) | | August 25, 2007 (52 Weeks) | | August 26, 2006 (52 Weeks) | | August 27, 2005 (52 Weeks) |
|---|---|---|---|---|---|---|
| | | | **Year Ended** | | | |
| Net sales | $ | 6,169,804 | $ | 5,948,355 | $ | 5,710,882 |
| Cost of sales, including warehouse and delivery expenses | | 3,105,554 | | 3,009,835 | | 2,918,334 |
| Operating, selling, general and administrative expenses | | 2,008,984 | | 1,928,595 | | 1,816,884 |
| Operating profit | | 1,055,266 | | 1,009,925 | | 975,664 |
| Interest expense, net | | 119,116 | | 107,889 | | 102,443 |
| Income before income taxes | | 936,150 | | 902,036 | | 873,221 |
| Income taxes | | 340,478 | | 332,761 | | 302,202 |
| Net income | $ | 595,672 | $ | 569,275 | $ | 571,019 |
| Weighted average shares for basic earnings per share | | 69,101 | | 75,237 | | 78,530 |
| Effect of dilutive stock equivalents | | 743 | | 622 | | 978 |
| Adjusted weighted average shares for diluted earnings per share | | 69,844 | | 75,859 | | 79,508 |
| Basic earnings per share | $ | 8.62 | $ | 7.57 | $ | 7.27 |
| Diluted earnings per share | $ | 8.53 | $ | 7.50 | $ | 7.18 |

EXHIBIT *A*

Page 6-7

## Results of Operations

### Fiscal 2007 Compared with Fiscal 2006

For the year ended August 25, 2007, AutoZone reported net sales of $6.170 billion compared with $5.948 billion for the year ended August 26, 2006, a 3.7% increase from fiscal 2006. This growth was primarily driven by an increase in the number of open stores. At August 25, 2007, we operated 3,933 domestic stores and 123 in Mexico, compared with 3,771 domestic stores and 100 in Mexico at August 26, 2006. Domestic retail sales increased 3.4% and domestic commercial sales decreased 0.4% from prior year. ALLDATA and Mexico sales increased over prior year, contributing 0.9 percentage points of the total increase in net sales. Domestic same store sales, or sales for domestic stores open at least one year, increased 0.1% from the prior year.

Gross profit for fiscal 2007 was $3.064 billion, or 49.7% of net sales, compared with $2.939 billion, or 49.4% of net sales, for fiscal 2006. The improvement in gross profit margin was primarily attributable to ongoing category management initiatives and supply chain efficiencies.

Operating, selling, general and administrative expenses for fiscal 2007 increased to $2.009 billion, or 32.6% of net sales, from $1.929 billion, or 32.4% of net sales for fiscal 2006. The increase in expenses is driven primarily by higher occupancy cost versus the prior year.

Interest expense, net for fiscal 2007 was $119.1 million compared with $107.9 million during fiscal 2006. This increase was primarily due to higher short term rates and higher average borrowing levels over the comparable prior year period and the recognition of interest expense on capital lease obligations that were accounted for as operating leases prior to a modification to the lease agreements in fiscal 2007. Average borrowings for fiscal 2007 were $1.972 billion, compared with $1.928 billion for fiscal 2006. Weighted average borrowing rates were 5.7% at August 25, 2007, compared to 5.5% at August 26, 2006.

Our effective income tax rate decreased to 36.4% of pre-tax income for fiscal 2007 as compared to 36.9% for fiscal 2006 primarily due to benefits from changes in our pre-tax earnings mix and an increase in certain federal and state tax credits. Refer to "Note D - Income Taxes" for additional information regarding our income tax rate.

Net income for fiscal 2007 increased by 4.6% to $595.7 million, and diluted earnings per share increased by 13.6% to $8.53 from $7.50 in fiscal 2006. The impact of the fiscal 2007 stock repurchases on diluted earnings per share in fiscal 2007 was an increase of approximately $0.14.

18

EXHIBIT A
Page 7-7

# Exhibit B

## Chey Powelson

**From:** Tift, Leigh Ann C. [LTift@littler.com]
**Sent:** Tuesday, May 27, 2008 1:20 PM
**To:** Chey Powelson; Alpern, Amy R.
**Cc:** Bud Bailey
**Subject:** RE: Migis v. AutoZone -- July 11

we will not produce a witness in Oregon on the 30th, pending a ruling on the motion for a protective order.

---

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Tuesday, May 27, 2008 10:19 AM
**To:** Alpern, Amy R.; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Brad Griffin; Charity Shindle
**Subject:** RE: Migis v. AutoZone -- July 11
**Importance:** High

Please also advise as to whether any designee will be appearing this Friday, May 30, for Plaintiff's ORCP 39C (6) deposition. Thanks.

---

**From:** Chey Powelson
**Sent:** Tuesday, May 27, 2008 9:51 AM
**To:** 'Alpern, Amy R.'; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Brad Griffin; Charity Shindle
**Subject:** Migis v. AutoZone -- July 11
**Importance:** High

Counsel"

Please advise whether July 11 is an appropriate hearing date for all five motions currently "praeciped." Thanks.

**Chey K. Powelson**
Attorney at Law
Bailey, Pinney & Assoc., LLC
1498 SE Tech Center Pl, Ste 290
Vancouver, WA 98683
Cpowelson@wagelawyer.com
360.567.2551 (Ph)
360.567.3331 (Fax)

*Confidentiality Notice: This e-mail message may contain confidential and privileged information. If you have received this message by mistake, please notify me immediately via telephone, and do not review, disclose, copy, or otherwise distribute it. Thank you.*

----

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly

EXHIBIT B
Page 1-2

prohibited.  If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

EXHIBIT B
Page 2-2

6/2/2008

# Exhibit C

1

2          IN THE CIRCUIT COURT OF THE STATE OF OREGON

3               FOR THE COUNTY OF MULTNOMAH

4

5

6  MICHAEL MIGIS, individually, and on        No. 0711-13531
   behalf of all other persons similarly
7  situated,                                   **DEFENDANT'S RESPONSE TO**
                                               **PLAINTIFF'S SECOND REQUESTS FOR**
8              Plaintiff,                       **ADMISSIONS**

9      vs.

10 AUTOZONE, INC., a Nevada
   Corporation,
11
               Defendant.
12

13         Defendant AutoZone, Inc. ("Defendant" or "AutoZone") hereby submits its objections and

14 responses to Plaintiff's Second Set of Requests for Admissions, as follows:

15                              **GENERAL OBJECTIONS**

16         The following objections apply generally to all of Plaintiff's discovery requests in this

17 lawsuit:

18         (a)    <u>Objections to Scope of Discovery Requests</u>.  Defendant objects to all discovery

19 requests to the extent they purport to require any actions not required by the Oregon Rules of Civil

20 Procedure, the Uniform Trial Court Rules, or any local rules.  Without limiting the generality of this

21 objection, Defendant objects to all discovery requests to the extent that they (1) go beyond the scope

22 of discovery provided by the Oregon Rules of Civil Procedure, (2) are not reasonably calculated to

23 lead to the discovery of admissible evidence, and/or (3) purport to impose a duty of supplementation

24 greater than that imposed by the Oregon Rules of Civil Procedure.

25         (b)    <u>Privilege and Trial Preparation Materials</u>.  Defendant objects to all discovery requests

26 to the extent they call for information or documents that fall within any relevant privilege (including

Page 1 – **DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND**
**REQUESTS FOR ADMISSIONS**

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-2457

EXHIBIT C
Page 1-4

APR-14-2008  17:47          503  226  2791

**RESPONSES**

1

2     **REQUEST FOR ADMISSION NO. 1:** From August 26, 2005 to present, AutoZone's

3 policy for its hourly employees in the State of Oregon has been to pay its employees only for the

4 time they are "clocked in" to the AutoZone time-keeping system.

5     **RESPONSE:** AutoZone incorporates by reference its General Objections as though fully set

6 forth herein. AutoZone further objects to this request on the grounds that it is overbroad as to its

7 temporal scope and accordingly seeks information not relevant to the claims and defenses of the

8 parties and/or not calculated to lead to the discovery of admissible evidence. Plaintiff Migis

9 terminated his employment in February 2006. No class has been certified and class certification is

10 inappropriate. AutoZone further objects on the grounds that the phrases "clocked in" and "time-

11 keeping system" are not defined and are thus vague and ambiguous. Without waiving the foregoing

12 objections, AutoZone's policy is, and at all relevant times, was to pay hourly employees for all hours

13 worked. AutoZone generally monitors hours an employee works through entries the employee posts

14 on a component of AutoZone's payroll system by entering a unique password on a cash register at

15 the store level (hereinafter "punching in" or "punching out," as appropriate); however, if AutoZone

16 becomes aware an hourly employee worked while not punched in, AutoZone pays the hourly

17 employee for time engaged in such work. Except as expressly stated herein, AutoZone denies this

18 request.

19     **REQUEST FOR ADMISSION NO. 2:** From August 26, 2005 to present, AutoZone's

20 policy for its hourly employees in the State of Oregon has been that the employee clock out of the

21 AutoZone time-keeping system for their meal periods.

22     **RESPONSE:** AutoZone incorporates by reference its General Objections as though fully set

23 forth herein. AutoZone further objects to this request on the grounds that it is overbroad as to its

24 temporal scope and accordingly seeks information not relevant to the claims and defenses of the

25 parties and/or not calculated to lead to the discovery of admissible evidence. Plaintiff Migis

26

---

Page 4 – **DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND**
**REQUESTS FOR ADMISSIONS**

<div align="right">

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-2457
</div>

EXHIBIT

Page 2-4

1   terminated his employment in February 2006. No class has been certified and class certification is

2   inappropriate. AutoZone further objects on the grounds that the phrases "clock out" and "time-

3   keeping system" are not defined and are thus vague and ambiguous. Without waiving the foregoing

4   objections, AutoZone's policy does, and at all relevant times, did require that an hourly employee

5   punch out for a meal period. Except as expressly stated herein, AutoZone denies this request.

6       **REQUEST FOR ADMISSION NO. 3:** From August 26, 2005 to present, AutoZone's

7   policy for hourly employees in the State of Oregon has been that those employees not be paid for

8   any meal period less than 30 minutes.

9       **RESPONSE:** AutoZone incorporates by reference its General Objections as though fully set

10  forth herein. AutoZone further objects to this request on the grounds that it is overbroad as to its

11  temporal scope and accordingly seeks information not relevant to the claims and defenses of the

12  parties and/or not calculated to lead to the discovery of admissible evidence. Plaintiff Migis

13  terminated his employment in February 2006. No class has been certified and class certification is

14  inappropriate. Without waiving the foregoing objections, AutoZone's policy is that employees are

15  paid for all work time, and are not paid for time clocked out on a break. Except as expressly stated

16  herein, AutoZone denies this request.

17      **REQUEST FOR ADMISSION NO. 4:** The last day Plaintiff Migis worked for AutoZone

18  in the State of Oregon was February 2, 2006.

19      **RESPONSE:** AutoZone incorporates by reference its General Objections as though fully set

20  forth herein. Without waiving the foregoing objections, AutoZone admits that Plaintiff Migis last

21  punched in and punched out on February 2, 2006. See Response to Request No. 1, herein, for

22  definition of "punching in" and "punching out". Except as expressly stated herein, AutoZone denies

23  the request.

24

25

26

Page 5 – **DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND
REQUESTS FOR ADMISSIONS**                                    Littler Mendelson, PC
                                                             1750 SW Harbor Way, Suite 450
                                                             Portland, OR 97201
                                                             Phone: 503-221-0309 FAX (503) 242-1457

EXHIBIT C

Page 3-4

1    (2)    The document designated as Exhibit B appears to be a copy of an AutoZone

2         business record.  AutoZone does not know the immediate source of this document.

3    (3)    The document designated as Exhibit C appears to be a copy of document AutoZone

4         business record produced by AutoZone in this litigation.

5    Except as expressly stated herein, AutoZone denies this request.

6

7    Dated:  April 14, 2008

8

9

10                                     LITTLER MENDELSON, P.C.

11

12                                     Douglas S. Parker, OSB No. 821017
                                       dparker@littler.com
13                                     Neil N. Olsen, OSB No. 053378
                                       nolsen@littler.com
14
                                       Of Attorneys for Defendant
15                                     AutoZone, Inc.

16

17

18

19

20

21

22

23

24

25

26



Page 7 – **DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND
REQUESTS FOR ADMISSIONS**

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-2457

EXHIBIT C
Page 4-4
P. 008

# Exhibit D

## Chey Powelson

| | |
|---|---|
| **From:** | Chey Powelson |
| **Sent:** | Friday, May 16, 2008 9:25 AM |
| **To:** | 'Tift, Leigh Ann C.' |
| **Cc:** | Alpern, Amy R.; Bud Bailey; Brad Griffin; Charity Shindle |
| **Subject:** | RE: Migis v. AutoZone |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

For purposes of streamlining the conference regarding your issues, I've reviewed the First Amended 39C(6) Notice of deposition set for May 30. That Notice includes several issues that Mark Dessem, even individually, did not speak to and could not have addressed in his 2005 deposition because, for example, the issues noticed include Defendant's document production in this case, Mr. Migis's termination, and other matters occurring in the period of time after August 2005.

---

**From:** Tift, Leigh Ann C. [mailto:LTift@littler.com]
**Sent:** Friday, May 16, 2008 8:25 AM
**To:** Chey Powelson
**Cc:** Alpern, Amy R.
**Subject:** RE: Migis v. AutoZone

The question I asked was whether you would consider a video deposition or stipulating to the testimony of Mr. Dessem. I don't think you answered either question, so let's be sure to address that in the 11:30 conference.

---

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Thursday, May 15, 2008 7:20 PM
**To:** Alpern, Amy R.; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Brad Griffin; Dana Pinney; Charity Shindle
**Subject:** RE: Migis v. AutoZone
**Importance:** High

Ms. Alpern:

I'll let you know when I hear from Bud, whether 11:30 tomorrow will work. Even if he is not available, I will still call to confer. In the meantime, and although I believe I recently sent Defendant via letter various case law regarding Plaintiff's understanding of the ORCP 39C(6) process (based on the Federal Fed.R.Civ.Pro. 30(b)(6)), in anticipation of our conference please consider the additional following ideas and cases which further support such understanding, and by which Plaintiff contends that Defendant failed to adequately produce one or more persons to testify on behalf of AutoZone.

Rule 30(b)(6) "streamlines the discovery process" to prevent a corporation from "bandying" or "sandbagging" the deposing party. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 303, 304 (3rd Cir. 2000). "[I]f a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears…but sleeps through it." *Id.* Accord, *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).

See also *Casper v. Esteb Enters.*, 119 Wn. App. 759 (2004); *Flower v. T.R.A. Indus., Inc.*, 127 Wn. App. 13 (2005); *Briddell v. St. Gobain Abrasives Inc.*, 233 F.R.D. 57 (D.Mass. 2005); *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626 (D.Kan. 1999); *U.S. v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996); *Ferko v. NASCAR*, 218 F.R.D. 125, 143 (E.D.Tx. 2003); *King v. Pratt & Whitney*, 161 F.R.D. 475

EXHIBIT __D__
Page __1-4__

(S.D.Fla. 1995) *aff'd*, 213 F.3d 646 (11th Cir. 2000); *Concerned Citizens v. Belle Haven Club*, 223 F.R.D. 39 (D.Conn. 2004); *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70 (D.Neb. 1996); *United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996); *Buycks-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 343 (N.D.Ill. 1995); *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33 (D.Mass. 2001); *Bank of New York v. Meridien Biao Bank Tanzania, Lt'd*, 171 F.R.D. 135 (S.D.N.Y. 1997) (deponent must be prepared "to the extent matters are reasonably available, whether from documents, past employees, or other sources."); *Overseas Private Investment Corp. v. Mandelbaum*, 185 F.R.D. 67 (D.D.C. 1999); and *Bregman v. District of Columbia*, 182 F.R.D. 352 (D.D.C. 1998).

Please also keep in mind that ORCP 46A provides that an evasive or incomplete answer constitutes a failure to answer.  See also ORCP 46D, the case law cited in my May 12 letter to Defendant, as well as: *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003); *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 268 (2nd Cir. 1999) (citing *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 770-71 (9th Cir. 1995)); and *Haraway v. NASCAR*, 213 F.R.D. 161, 165 (D.Del. 2003) (citing *Black Horse Lane Assoc., L.P.* at 301-02).

See also: *Sec. Ins. Co. v Trustmark Ins. Co.*, 218 FRD 29 (D.Conn. 2003) (In light of affirmative duty imposed by Fed. R. Civ. P. 30(b)(6), corporate representative was obliged to gain some understanding of underlying facts, regardless of source identifying underlying facts, and to answer questions accordingly; therefore, court granted defendant's Fed. R. Civ. P. 37 motion to compel and required company to identify documents relied on by its 30(b)(6) witness and produce such documents to extent it had not done so already, as attorney-client privilege did not provide valid basis on which to refuse to divulge facts underlying company's response to defendant's allegations.)

In sum, Plaintiff's position is that, in light of the foregoing authorities and the scope of ORCP 36B to discover the facts upon which a party bases its claims or defenses (see the Oregon Court's of Appeals Asato opinion (as cited to Defendant in my April 17 and 18 letters), wherein the Court of Appeals upheld Mult. Co. Judge Christopher Marshall's sanction of a party with dismissal because it failed to provide discovery into affirmative defenses as ordered), today's ORCP 39C(6) deposition did not turn out as it should have.

Also, Ms. Tift, though I committed to getting back to you tomorrow on your requests regarding the May 30 ORCP 39C(6) Notice: (1) Whether Plaintiff will change the location or agree to video conferencing, and (2) Whether Plaintiff will stipulate to the testimony already given by Mark Dessem in 2005 in the Joarnt v. AutoZone case, be advised I double-checked the notice of deposition that went to AutoZone, and it appears Plaintiff noticed Mr. Dessem individually – AutoZone did not produce him as an ORCP 39C(6) designee, nor, I believe, as a "person most knowledgeable."

As I explained on the phone today, even if he was produced in response to a "person most knowledgeable" notice of deposition (which in the Joarnt matter only appear to be related to Defendant's document preservation efforts), that type of notice is different than an ORCP 39C(6) notice.  The latter is a deposition of the corporation which has, hopefully, adequately prepared one or more designees to testify on its behalf on the issues set forth in the notice.

I also mentioned to you on the phone that, with respect to the issue of Plaintiff's possible stipulation to prior deposition testimony of Mr. Dessem, Plaintiff had already attempted through a Second Set of Requests For Admission to determine whether certain aspects of AutoZone's payroll policies/procedures/practices had been the same since, inter alia, after Mr. Dessem's August 2005 deposition.

Unfortunately, AutoZone side-stepped the Requests For Admission (Nos. 1 – 3) by interposing what look to be interrogatory answers combined with denials.  These types of denials create more work for everyone, as was evidenced in today's ORCP 39C(6) deposition.

Also as a result of today's deposition, based on Defendant's objections and the designee's answers of "I don't know" and indication he would need to look at additional documents/information not before him, it appears that

EXHIBIT D
Page 2-4

AutoZone should immediately produce additional documents and information in response to the two Court Orders at issue. This does undercut Defendant's assertion on the record that all documents have been produced in response to the Court Orders. (NOTE: As stated in a previous letter to Defendant, there are still approximately 96 +/- "Termination Reports" that AutoZone has not yet produced because it represented it cannot find them. I informed Ms. Tift in a telephonic conference last week (Friday, perhaps) that Plaintiff's supplemental briefing re: Plaintiff's Motion to Enforce Court Order will have to address the implications of such non-production. As you know, Plaintiff cannot simply wait for responsive documents to appear. We previously proposed to the Court a filing date for class certification of mid-August, but non-production and non-answers have made such a deadline rather untenable.).

So either (1) AutoZone has produced all documents/information and today's designee was simply not prepared to testify as to the content/sources of information of Bates Nos. AZ/MIGIS 0001212 – 1215 and the meaning of the PeopleSoft termination/action codes (I believe at one point he said that he would have to look at additional documents because he could not tell from the (a) summary report, (b) Paycheck Data, and (c) Termination Report whether an employee who quit with 2 weeks' notice was actually his final paycheck timely. Bear in mind that Defendant represented to the Court on April 22 that it needed more time to produce the Termination Reports because that information would show why the apparent late pays on the summary report were not really late at all), or (2) Defendant has not produced all responsive documents that would have allowed today's corporate designee to testify.

Finally, we will need to discuss whether Defendant is available June 30 and July 2.

Chey Powelson

---

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Thursday, May 15, 2008 5:33 PM
**To:** Chey Powelson
**Subject:** Re: Migis v. AutoZone


Chey,
Please call me at 11:30 tomorrow. Please have Bud Bailey on the line and I will include Leigh Ann. I'd like to get this case on a productive track and would like all players to participate. If Bud is not available, please let me know when he is available.
Best regards,
Amy

----- Original Message -----
From: Chey Powelson <cpowelson@wagelawyer.com>
To: Alpern, Amy R.
Cc: Tift, Leigh Ann C.; Brad Griffin <bgriffin@wagelawyer.com>; Bud Bailey <bbailey@wagelawyer.com>; Charity Shindle <charity@wagelawyer.com>
Sent: Thu May 15 17:03:36 2008
Subject: Migis v. AutoZone

Ms. Alpern:


Please call me by the end of the day tomorrow to confer on the ORCP 39C(6) deposition that occurred today. I already tried to confer with Ms. Tift, but she was unable to.


Thank you in advance.


Chey K. Powelson

EXHIBIT D
Page 3-4

Attorney at Law

Bailey, Pinney & Assoc., LLC

1498 SE Tech Center Pl, Ste 290

Vancouver, WA  98683

Cpowelson@wagelawyer.com

360.567.2551 (Ph)

360.567.3331 (Fax)


Confidentiality Notice: This e-mail message may contain confidential and privileged information. If you have received this message
by mistake, please notify me immediately via telephone, and do not review, disclose, copy, or otherwise distribute it.  Thank you.

----

To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this document (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the
intended recipient(s).  Any review, use, distribution or disclosure by others is strictly
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

----

To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this document (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the
intended recipient(s).  Any review, use, distribution or disclosure by others is strictly
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com



EXHIBIT D
Page 4-4

# BAILEY, PINNEY & ASSOCIATES, LLC
## Attorneys at Law
### 1498 SE TECH CENTER PLACE, SUITE 290
### VANCOUVER, WA 98683

CHARITY SHINDLE
    Telephone  (360) 567-2551
    Facsimile   (360) 567-3331
    e-mail: charity@wagelawyer.com

June 2, 2008

The Honorable Jerome LaBarre
1021 SW 4th Avenue, Rm. 702
Portland, OR 97204

> **Re:**   *Michael Migis vs. Autozone, Inc.*
> **Case No.  0711-13531**

Dear Judge LaBarre:

Enclosed for filing please find an Plaintiff's Response to Defendant's Motion for Protective Order and Memorandum in Support Thereof, Declaration of Chey K. Powelson Supporting Plaintiff's Response to Defendant's Motion for Protective Order and supporting documents.

Thank you for your attention to this matter.

Sincerely yours,

Charity Shindle
Legal Assistant

Enclosure
cc: Leigh Ann Tift

## BAILEY, PINNEY & ASSOCIATES, LLC

### Attorneys at Law
**1498 SE TECH CENTER PLACE, SUITE 290**
**VANCOUVER, WA 98683**

CHARITY SHINDLE
Telephone  (360) 567-2551
Facsimile   (360) 567-3331
e-mail: charity@wagelawyer.com

June 2, 2008

MULTNOMAH COUNTY COURT CLERK
1021 SW Fourth Avenue
Portland, OR  97204

> **Re:**   *Michael Migis vs. Autozone, Inc.*
> **Case No.  0711-13531**

Dear Clerk:

Enclosed for filing please find an Plaintiff's Response to Defendant's Motion for Protective Order and Memorandum in Support Thereof, Declaration of Chey K. Powelson Supporting Plaintiff's Response to Defendant's Motion for Protective Order and supporting documents.

Please return the enclosed prepaid filing card to our office.

Thank you for your attention to this matter.

Sincerely yours,

Charity Shindle
Legal Assistant

Enclosure
cc: Leigh Ann Tift

RECEIVED
CIRCUIT COURT
MULTNOMAH COUNTY

08 JUN -3 PM 1: 31

FILED

JUN 10 2008
IN REGISTER BY SLF

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**
**FOR THE COUNTY OF MULTNOMAH**

| | |
|---|---|
| **MICHAEL MIGIS**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**AUTOZONE, INC.,**<br><br>Defendant. | Case No. 0711-13531<br><br>**DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER** |

I, Chey K. Powelson, hereby declare as follows:

1. I am one of the attorneys for Plaintiff herein. I am competent to testify in this matter, and base the contents of this declaration on my own personal knowledge and/or the litigation files and documents my firm maintains for this litigation.

2. Attached hereto as **Exhibit A** is a true and correct copy of excerpts from AutoZone's Securities & Exchange Commission filings, including a Form 10-K setting forth various financial information available to AutoZone as of August 2007. I printed this exhibit from the following website pages on June 2, 2008: http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5487038-10 667-45360&type=sect&TabIndex=2&companyid=5925&ppu=%252fdefault.aspx

Page 1 -    **DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1 % 2 5 3 f c o m p a n y i d % 2 5 3 d 5 9 2 5 , a n d

2 http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5487038-12

3 6451-128738&type=sect&TabIndex=2&companyid=5925&ppu=%252fdefault.as

4 p x % 2 5 3 f c o m p a n y i d % 2 5 3 d 5 9 2 5 , a n d

5 http://yahoo.brand.edgar-online.com/displayfilinginfo.aspx?FilingID=5487038-68

6 889-76719&type=sect&TabIndex=2&companyid=5925&ppu=%252fdefault.aspx

7 %253fcompanyid%253d5925.

3. Attached hereto as **Exhibit B** is a true and correct copy of an e-mail exchange between myself and Defendant counsel, wherein Defendant's counsel confirmed that AutoZone would not be producing anyone for the ORCP 39C(6) deposition scheduled for May 30, 2008.

4. Attached hereto as **Exhibit C** is a true and correct copy of excerpts from Plaintiff's Second Requests For Admission, in which Plaintiff had already attempted to establish that certain payroll policies and practices Mr. Dessem as an individual for AutoZone had testified to in August 2005, still applied after that time.  Defendant denied those Requests For Admission.

5. Attached hereto as **Exhibit D** is a true and correct copy of my e-mail to Defendant's counsel explaining that Defendant's denials to Requests For Admission create more work.

I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

Dated this _____ day of June 2008 at Vancouver, Washington.

       CHEY POWELSON, OSB 03551
       Attorney for Plaintiff

Page 2 - **DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be served the foregoing *Declaration of Chey K. Powelson Supporting Plaintiff's Response to Defendant's Motion for Protective Order* upon:

> Leigh Ann Tift
> Littler Mendelson
> One Union Square
> 600 University Street Suite 3200
> Seattle WA 98101-3122
> Attorney for Defendant AutoZone

by the following indicated method or methods:

[X]    by causing a full, true, and correct copy thereof to be deposited in the U.S. Mail service to the person listed above on the date set forth below.

DATED June 2, 2008

BAILEY, PINNEY & ASSOCIATES, LLC

CHEY POWELSON, OSB 035512
Attorney for Plaintiff

Page 3 -    DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Exhibit A

**Item 1. Business**

**Introduction**

We are the nation's leading specialty retailer and a leading distributor of automotive replacement parts and accessories, with most of our sales to do-it-yourself ("DIY") customers. We began operations in 1979 and at August 25, 2007 operated 3,933 stores in the United States and Puerto Rico, and 123 in Mexico. Each of our stores carries an extensive product line for cars, sport utility vehicles, vans and light trucks, including new and remanufactured automotive hard parts, maintenance items, accessories and non-automotive products. In many of our stores we also have a commercial sales program that provides commercial credit and prompt delivery of parts and other products to local, regional and national repair garages, dealers and service stations. We also sell the ALLDATA brand automotive diagnostic and repair software. On the web at www.autozone.com, we sell diagnostic and repair information, auto and light truck parts, and accessories. We do not derive revenue from automotive repair or installation services.

At August 25, 2007, our stores were in the following locations:

| | |
|---|---:|
| Alabama | 90 |
| Arizona | 110 |
| Arkansas | 59 |
| California | 428 |
| Colorado | 55 |
| Connecticut | 31 |
| Delaware | 10 |
| Florida | 173 |
| Georgia | 160 |
| Idaho | 18 |
| Illinois | 192 |
| Indiana | 125 |
| Iowa | 22 |
| Kansas | 37 |
| Kentucky | 74 |
| Louisiana | 97 |
| Maine | 6 |
| Maryland | 38 |
| Massachusetts | 66 |
| Michigan | 133 |
| Minnesota | 22 |
| Mississippi | 81 |
| Missouri | 90 |
| Montana | 1 |
| Nebraska | 13 |
| Nevada | 42 |
| New Hampshire | 16 |
| New Jersey | 57 |
| New Mexico | 54 |
| New York | 112 |
| North Carolina | 145 |
| North Dakota | 2 |
| Ohio | 205 |
| Oklahoma | 66 |
| Oregon | 25 |
| Pennsylvania | 112 |

EXHIBIT *A*
Page *1-7*

| | |
|---|---|
| Puerto Rico | 15 |
| Rhode Island | 15 |
| South Carolina | 68 |
| South Dakota | 1 |
| Tennessee | 145 |
| Texas | 492 |
| Utah | 34 |
| Vermont | 1 |
| Virginia | 81 |
| Washington | 44 |
| Washington, DC | 6 |
| West Virginia | 22 |
| Wisconsin | 48 |
| Wyoming | 5 |
| Domestic Total | 3,933 |
| Mexico | 123 |
| TOTAL | 4,056 |

4

EXHIBIT _A_
Page _2-7_

Case 3:09-cv-00551-KI    Document 26-2    Filed 06/25/09    Page 150 of 500

### Store Personnel and Training

Each store typically employs from 10 to 16 AutoZoners, including a manager and, in some cases, an assistant manager. AutoZoners typically have prior automotive experience. All AutoZoners are encouraged to complete courses resulting in certification by the National Institute for Automotive Service Excellence ("ASE"), which is broadly recognized for training certification in the automotive industry. Although we do on-the-job training, we also provide formal training programs, including an annual national sales meeting, regular store meetings on specific sales and product issues, standardized training manuals and a specialist program that provides training to AutoZoners in several areas of technical expertise from both the Company and from independent certification agencies. Training is supplemented with frequent store visits by management.

Store managers receive financial incentives through performance-based bonuses. In addition, our growth has provided opportunities for the promotion of qualified AutoZoners. We believe these opportunities are important to attract, motivate and retain high quality AutoZoners.

All store support functions are centralized in our store support centers located in Memphis, Tennessee and Mexico. We believe that this centralization enhances consistent execution of our merchandising and marketing strategies at the store level, while reducing expenses and cost of sales.

### Store Automation

All of our stores have Z-net $^{TM}$, our proprietary electronic catalog that enables our AutoZoners to efficiently look up the parts our customers need and provides complete job solutions, advice and information for customer vehicles. Z-net $^{TM}$ provides parts information based on the year, make, model and engine type of a vehicle and also tracks inventory availability at the store, at other nearby stores and through special order. The Z-net $^{TM}$ display screens are placed on the hard parts counter or pods, where both AutoZoners and customers can view the screen. In addition, our wide area network enables the stores to expedite credit or debit card and check approval processes, to access immediately national warranty data, to implement real-time inventory controls and to locate and hold parts at neighboring AutoZone stores.

Our stores utilize our computerized proprietary Store Management System, which includes bar code scanning and point-of-sale data collection terminals. The Store Management System provides administrative assistance and improved personnel scheduling at the store level, as well as enhanced merchandising information and improved inventory control. We believe the Store Management System also enhances customer service through faster processing of transactions and simplified warranty and product return procedures.

### Store Development

The following table reflects store development during the past five fiscal years:

|  | Fiscal Year | | | | |
|  | 2007 | 2006 | 2005 | 2004 | 2003 |
|---|---|---|---|---|---|
| Beginning Domestic Stores | 3,771 | 3,592 | 3,420 | 3,219 | 3,068 |
| New Stores | 163 | 185 | 175 | 202 | 160 |
| Closed Stores | 1 | 6 | 3 | 1 | 9 |
| Net New Stores | 162 | 179 | 172 | 201 | 151 |
| Relocated Stores | 18 | 18 | 7 | 4 | 6 |
| Ending Domestic Stores | 3,933 | 3,771 | 3,592 | 3,420 | 3,219 |
| Ending Mexico Stores | 123 | 100 | 81 | 63 | 49 |
| Ending Total Stores | 4,056 | 3,871 | 3,673 | 3,483 | 3,268 |

EXHIBIT _A_

Page _3-7_

The domestic stores include stores in the United States and Puerto Rico. The new store count in 2007 reflects 3 stores that were temporarily closed during fiscal 2006 and excluded from the prior year ending store count. We believe that expansion opportunities exist both in markets that we do not currently serve, as well as in markets where we can achieve a larger presence. We attempt to obtain high visibility sites in high traffic locations and undertake substantial research prior to entering new markets. The most important criteria for opening a new store are its projected future profitability and its ability to achieve our required investment hurdle rate. Key factors in selecting new site and market locations include population, demographics, vehicle profile, number and strength of competitors' stores and the cost of real estate. In reviewing the vehicle profile, we also consider the number of vehicles that are seven years old and older- "our kind of vehicles," as these are generally no longer under the original manufacturers' warranties and will require more maintenance and repair than younger vehicles. We generally seek to open new stores within or contiguous to existing market areas and attempt to cluster development in markets in a relatively short period of time. In addition to continuing to lease or develop our own stores, we evaluate and may make strategic acquisitions.

EXHIBIT _A_
Page _4-7_

### Purchasing and Supply Chain

Merchandise is selected and purchased for all stores through our store support centers located in Memphis, Tennessee and Mexico. No one class of product accounts for as much as 10 percent of our total sales. In fiscal 2007, no single supplier accounted for more than 10 percent of our total purchases. We generally have few long-term contracts for the purchase of merchandise. We believe that we have good relationships with suppliers. We also believe that alternative sources of supply exist, at similar cost, for most types of product sold. Most of our merchandise flows through our distribution centers to our stores by our fleet of tractors and trailers or by third-party trucking firms.

Our hub stores have increased our ability to distribute products on a timely basis to many of our stores. A hub store is able to provide replenishment of products sold and deliver other products maintained only in hub store inventories to a store in its coverage area generally within 24 hours. Hub stores are generally replenished from distribution centers multiple times per week.

### Competition

The sale of automotive parts, accessories and maintenance items is highly competitive in many areas, including name recognition, product availability, customer service, store location and price. AutoZone competes in both the retail ("DIY") and commercial do-it-for-me ("DIFM") auto parts and accessories markets.

Competitors include national and regional auto parts chains, independently owned parts stores, wholesalers and jobbers, repair shops, car washes and auto dealers, in addition to discount and mass merchandise stores, department stores, hardware stores, supermarkets, drugstores, convenience stores and home stores that sell aftermarket vehicle parts and supplies, chemicals, accessories, tools and maintenance parts. AutoZone competes on the basis of customer service, including the trustworthy advice of our AutoZoners, merchandise selection and availability, price, product warranty, store layouts and location.

### Trademarks and Patents

We have registered several service marks and trademarks in the United States Patent and Trademark office as well as in certain other countries, including our service marks, "AutoZone" and "Get in the Zone," and trademarks, "AutoZone," "Duralast," "Duralast Gold," "Valucraft," "ALLDATA" and "Z-net ™ ." We believe that these service marks and trademarks are important components of our merchandising and marketing strategy.

### Employees

As of August 25, 2007, we employed approximately 55,000 persons, approximately 56 percent of whom were employed full-time. About 93 percent of our AutoZoners were employed in stores or in direct field supervision, approximately 5 percent in distribution centers and approximately 2 percent in store support functions. Included in the above numbers are approximately 2,000 persons employed in our Mexico operations.

We have never experienced any material labor disruption and believe that relations with our AutoZoners are generally good.

EXHIBIT _A_
Page _5-7_

AUTOZONE INC - 10-K - 20071022 - INCOME_STATEMENT                    Page 1 of 1

**Consolidated Statements of Income**

| (in thousands, except per share data) | Year Ended | | |
|---|---|---|---|
| | August 25, 2007 (52 Weeks) | August 26, 2006 (52 Weeks) | August 27, 2005 (52 Weeks) |
| Net sales | $ 6,169,804 | $ 5,948,355 | $ 5,710,882 |
| Cost of sales, including warehouse and delivery expenses | 3,105,554 | 3,009,835 | 2,918,334 |
| Operating, selling, general and administrative expenses | 2,008,984 | 1,928,595 | 1,816,884 |
| Operating profit | 1,055,266 | 1,009,925 | 975,664 |
| Interest expense, net | 119,116 | 107,889 | 102,443 |
| Income before income taxes | 936,150 | 902,036 | 873,221 |
| Income taxes | 340,478 | 332,761 | 302,202 |
| Net income | $ 595,672 | $ 569,275 | $ 571,019 |
| | | | |
| Weighted average shares for basic earnings per share | 69,101 | 75,237 | 78,530 |
| Effect of dilutive stock equivalents | 743 | 622 | 978 |
| Adjusted weighted average shares for diluted earnings per share | 69,844 | 75,859 | 79,508 |
| | | | |
| Basic earnings per share | $ 8.62 | $ 7.57 | $ 7.27 |
| Diluted earnings per share | $ 8.53 | $ 7.50 | $ 7.18 |

EXHIBIT _A_
Page _6-7_

**Results of Operations**

**Fiscal 2007 Compared with Fiscal 2006**

For the year ended August 25, 2007, AutoZone reported net sales of $6.170 billion compared with $5.948 billion for the year ended August 26, 2006, a 3.7% increase from fiscal 2006. This growth was primarily driven by an increase in the number of open stores. At August 25, 2007, we operated 3,933 domestic stores and 123 in Mexico, compared with 3,771 domestic stores and 100 in Mexico at August 26, 2006. Domestic retail sales increased 3.4% and domestic commercial sales decreased 0.4% from prior year. ALLDATA and Mexico sales increased over prior year, contributing 0.9 percentage points of the total increase in net sales. Domestic same store sales, or sales for domestic stores open at least one year, increased 0.1% from the prior year.

Gross profit for fiscal 2007 was $3.064 billion, or 49.7% of net sales, compared with $2.939 billion, or 49.4% of net sales, for fiscal 2006. The improvement in gross profit margin was primarily attributable to ongoing category management initiatives and supply chain efficiencies.

Operating, selling, general and administrative expenses for fiscal 2007 increased to $2.009 billion, or 32.6% of net sales, from $1.929 billion, or 32.4% of net sales for fiscal 2006. The increase in expenses is driven primarily by higher occupancy cost versus the prior year.

Interest expense, net for fiscal 2007 was $119.1 million compared with $107.9 million during fiscal 2006. This increase was primarily due to higher short term rates and higher average borrowing levels over the comparable prior year period and the recognition of interest expense on capital lease obligations that were accounted for as operating leases prior to a modification to the lease agreements in fiscal 2007. Average borrowings for fiscal 2007 were $1.972 billion, compared with $1.928 billion for fiscal 2006. Weighted average borrowing rates were 5.7% at August 25, 2007, compared to 5.5% at August 26, 2006.

Our effective income tax rate decreased to 36.4% of pre-tax income for fiscal 2007 as compared to 36.9% for fiscal 2006 primarily due to benefits from changes in our pre-tax earnings mix and an increase in certain federal and state tax credits. Refer to "Note D - Income Taxes" for additional information regarding our income tax rate.

Net income for fiscal 2007 increased by 4.6% to $595.7 million, and diluted earnings per share increased by 13.6% to $8.53 from $7.50 in fiscal 2006. The impact of the fiscal 2007 stock repurchases on diluted earnings per share in fiscal 2007 was an increase of approximately $0.14.

18

EXHIBIT A
Page 7-7



Exhibit B

**Chey Powelson**

| | |
|---|---|
| **From:** | Tift, Leigh Ann C. [LTift@littler.com] |
| **Sent:** | Tuesday, May 27, 2008 1:20 PM |
| **To:** | Chey Powelson; Alpern, Amy R. |
| **Cc:** | Bud Bailey |
| **Subject:** | RE: Migis v. AutoZone -- July 11 |

we will not produce a witness in Oregon on the 30th, pending a ruling on the motion for a protective order.

---

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Tuesday, May 27, 2008 10:19 AM
**To:** Alpern, Amy R.; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Brad Griffin; Charity Shindle
**Subject:** RE: Migis v. AutoZone -- July 11
**Importance:** High

Please also advise as to whether any designee will be appearing this Friday, May 30, for Plaintiff's ORCP 39C (6) deposition.  Thanks.

---

**From:** Chey Powelson
**Sent:** Tuesday, May 27, 2008 9:51 AM
**To:** 'Alpern, Amy R.'; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Brad Griffin; Charity Shindle
**Subject:** Migis v. AutoZone -- July 11
**Importance:** High

Counsel"

Please advise whether July 11 is an appropriate hearing date for all five motions currently "praeciped."  Thanks.

**Chey K. Powelson**
Attorney at Law
Bailey, Pinney & Assoc., LLC
1498 SE Tech Center Pl, Ste 290
Vancouver, WA  98683
Cpowelson@wagelawyer.com
360.567.2551 (Ph)
360.567.3331 (Fax)

*Confidentiality Notice: This e-mail message may contain confidential and privileged information. If you have received this message by mistake, please notify me immediately via telephone, and do not review, disclose, copy, or otherwise distribute it.  Thank you.*

----

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s).  Any review, use, distribution or disclosure by others is strictly

EXHIBIT $\underline{B}$
Page $\underline{1-2}$

Page 2 of 2

prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

EXHIBIT B
Page 2-2

6/2/2008

# Exhibit C



IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>AUTOZONE, INC., a Nevada Corporation,<br><br>            Defendant. | No. 0711-13531<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND REQUESTS FOR ADMISSIONS** |

Defendant AutoZone, Inc. ("Defendant" or "AutoZone") hereby submits its objections and responses to Plaintiff's Second Set of Requests for Admissions, as follows:

**GENERAL OBJECTIONS**

The following objections apply generally to all of Plaintiff's discovery requests in this lawsuit:

(a)    Objections to Scope of Discovery Requests.  Defendant objects to all discovery requests to the extent they purport to require any actions not required by the Oregon Rules of Civil Procedure, the Uniform Trial Court Rules, or any local rules.  Without limiting the generality of this objection, Defendant objects to all discovery requests to the extent that they (1) go beyond the scope of discovery provided by the Oregon Rules of Civil Procedure, (2) are not reasonably calculated to lead to the discovery of admissible evidence, and/or (3) purport to impose a duty of supplementation greater than that imposed by the Oregon Rules of Civil Procedure.

(b)    Privilege and Trial Preparation Materials.  Defendant objects to all discovery requests to the extent they call for information or documents that fall within any relevant privilege (including

Page 1 – **DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND REQUESTS FOR ADMISSIONS**

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-2457

EXHIBIT C
Page 1-4

1                                    **RESPONSES**

2        **REQUEST FOR ADMISSION NO. 1:** From August 26, 2005 to present, AutoZone's

3 policy for its hourly employees in the State of Oregon has been to pay its employees only for the

4 time they are "clocked in" to the AutoZone time-keeping system.

5        **RESPONSE:** AutoZone incorporates by reference its General Objections as though fully set

6 forth herein. AutoZone further objects to this request on the grounds that it is overbroad as to its

7 temporal scope and accordingly seeks information not relevant to the claims and defenses of the

8 parties and/or not calculated to lead to the discovery of admissible evidence. Plaintiff Migis

9 terminated his employment in February 2006. No class has been certified and class certification is

10 inappropriate. AutoZone further objects on the grounds that the phrases "clocked in" and "time-

11 keeping system" are not defined and are thus vague and ambiguous. Without waiving the foregoing

12 objections, AutoZone's policy is, and at all relevant times, was to pay hourly employees for all hours

13 worked. AutoZone generally monitors hours an employee works through entries the employee posts

14 on a component of AutoZone's payroll system by entering a unique password on a cash register at

15 the store level (hereinafter "punching in" or "punching out," as appropriate); however, if AutoZone

16 becomes aware an hourly employee worked while not punched in, AutoZone pays the hourly

17 employee for time engaged in such work. Except as expressly stated herein, AutoZone denies this

18 request.

19        **REQUEST FOR ADMISSION NO. 2:** From August 26, 2005 to present, AutoZone's

20 policy for its hourly employees in the State of Oregon has been that the employee clock out of the

21 AutoZone time-keeping system for their meal periods.

22        **RESPONSE:** AutoZone incorporates by reference its General Objections as though fully set

23 forth herein. AutoZone further objects to this request on the grounds that it is overbroad as to its

24 temporal scope and accordingly seeks information not relevant to the claims and defenses of the

25 parties and/or not calculated to lead to the discovery of admissible evidence. Plaintiff Migis

26

Page 4 – **DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND**
**REQUESTS FOR ADMISSIONS**

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-2457

EXHIBIT C
Page 2-4

1   terminated his employment in February 2006. No class has been certified and class certification is

2   inappropriate. AutoZone further objects on the grounds that the phrases "clock out" and "time-

3   keeping system" are not defined and are thus vague and ambiguous. Without waiving the foregoing

4   objections, AutoZone's policy does, and at all relevant times, did require that an hourly employee

5   punch out for a meal period. Except as expressly stated herein, AutoZone denies this request.

6       **REQUEST FOR ADMISSION NO. 3:** From August 26, 2005 to present, AutoZone's

7   policy for hourly employees in the State of Oregon has been that those employees not be paid for

8   any meal period less than 30 minutes.

9       **RESPONSE:** AutoZone incorporates by reference its General Objections as though fully set

10  forth herein. AutoZone further objects to this request on the grounds that it is overbroad as to its

11  temporal scope and accordingly seeks information not relevant to the claims and defenses of the

12  parties and/or not calculated to lead to the discovery of admissible evidence. Plaintiff Migis

13  terminated his employment in February 2006. No class has been certified and class certification is

14  inappropriate. Without waiving the foregoing objections, AutoZone's policy is that employees are

15  paid for all work time, and are not paid for time clocked out on a break. Except as expressly stated

16  herein, AutoZone denies this request.

17      **REQUEST FOR ADMISSION NO. 4:** The last day Plaintiff Migis worked for AutoZone

18  in the State of Oregon was February 2, 2006.

19      **RESPONSE:** AutoZone incorporates by reference its General Objections as though fully set

20  forth herein. Without waiving the foregoing objections, AutoZone admits that Plaintiff Migis last

21  punched in and punched out on February 2, 2006. See Response to Request No. 1, herein, for

22  definition of "punching in" and "punching out". Except as expressly stated herein, AutoZone denies

23  the request.

24

25

26

Page 5 – DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND
REQUESTS FOR ADMISSIONS

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-1457

EXHIBIT C
Page 3-4



1    (2)    The document designated as Exhibit B appears to be a copy of an AutoZone

2            business record.  AutoZone does not know the immediate source of this document.

3    (3)    The document designated as Exhibit C appears to be a copy of document AutoZone

4            business record produced by AutoZone in this litigation.

5    Except as expressly stated herein, AutoZone denies this request.

6

7    Dated: April 14, 2008

8

9

10                                                    LITTLER MENDELSON, P.C.

11

12                                                    Douglas S. Parker, OSB No. 821017
                                                      dparker@littler.com
13                                                    Neil N. Olsen, OSB No. 053378
                                                      nolsen@littler.com
14
                                                      Of Attorneys for Defendant
15                                                    AutoZone, Inc.

16

17

18

19

20

21

22

23

24

25

26

Page 7 – DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND                    Littler Mendelson, PC
REQUESTS FOR ADMISSIONS                                          1750 SW Harbor Way, Suite 450
                                                                     Portland, OR  97201
                                                       Phone: 503-221-0309 Fax: 503-242-2457

EXHIBIT C
Page 4-4

APR-14-2008  17:18        503  226  2791            94%            P.008

# Exhibit D

Re: Migis v. AutoZone                                              Page 1 of 4

## Chey Powelson

| | |
|---|---|
| **From:** | Chey Powelson |
| **Sent:** | Friday, May 16, 2008 9:25 AM |
| **To:** | 'Tift, Leigh Ann C.' |
| **Cc:** | Alpern, Amy R.; Bud Bailey; Brad Griffin; Charity Shindle |
| **Subject:** | RE: Migis v. AutoZone |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

For purposes of streamlining the conference regarding your issues, I've reviewed the First Amended 39C(6) Notice of deposition set for May 30. That Notice includes several issues that Mark Dessem, even individually, did not speak to and could not have addressed in his 2005 deposition because, for example, the issues noticed include Defendant's document production in this case, Mr. Migis's termination, and other matters occurring in the period of time after August 2005.

**From:** Tift, Leigh Ann C. [mailto:LTift@littler.com]
**Sent:** Friday, May 16, 2008 8:25 AM
**To:** Chey Powelson
**Cc:** Alpern, Amy R.
**Subject:** RE: Migis v. AutoZone

The question I asked was whether you would consider a video deposition or stipulating to the testimony of Mr. Dessem. I don't think you answered either question, so let's be sure to address that in the 11:30 conference.

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Thursday, May 15, 2008 7:20 PM
**To:** Alpern, Amy R.; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Brad Griffin; Dana Pinney; Charity Shindle
**Subject:** RE: Migis v. AutoZone
**Importance:** High

Ms. Alpern:

I'll let you know when I hear from Bud, whether 11:30 tomorrow will work. Even if he is not available, I will still call to confer. In the meantime, and although I believe I recently sent Defendant via letter various case law regarding Plaintiff's understanding of the ORCP 39C(6) process (based on the Federal Fed.R.Civ.Pro. 30(b)(6)), in anticipation of our conference please consider the additional following ideas and cases which further support such understanding, and by which Plaintiff contends that Defendant failed to adequately produce one or more persons to testify on behalf of AutoZone.

Rule 30(b)(6) "streamlines the discovery process" to prevent a corporation from "bandying" or "sandbagging" the deposing party. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 303, 304 (3rd Cir. 2000). "[I]f a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears...but sleeps through it." *Id.* Accord, *Resolution Trust Corp. v. Southern Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).

See also *Casper v. Esteb Enters.*, 119 Wn. App. 759 (2004); *Flower v. T.R.A. Indus., Inc.*, 127 Wn. App. 13 (2005); *Briddell v. St. Gobain Abrasives Inc.*, 233 F.R.D. 57 (D.Mass. 2005); *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626 (D.Kan. 1999); *U.S. v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996); *Ferko v. NASCAR*, 218 F.R.D. 125, 143 (E.D.Tx. 2003); *King v. Pratt & Whitney*, 161 F.R.D. 475

EXHIBIT D
Page 1-4

(S.D.Fla. 1995) *aff'd*, 213 F.3d 646 (11th Cir. 2000); *Concerned Citizens v. Belle Haven Club*, 223 F.R.D. 39 (D.Conn. 2004); *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70 (D.Neb. 1996); *United States v. Taylor*, 166 F.R.D. 356 (M.D.N.C. 1996); *Buycks-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 343 (N.D.Ill. 1995); *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.*, 201 F.R.D. 33 (D.Mass. 2001); *Bank of New York v. Meridien Biao Bank Tanzania, Lt'd*, 171 F.R.D. 135 (S.D.N.Y. 1997) (deponent must be prepared "to the extent matters are reasonably available, whether from documents, past employees, or other sources."); *Overseas Private Investment Corp. v. Mandelbaum*, 185 F.R.D. 67 (D.D.C. 1999); and *Bregman v. District of Columbia*, 182 F.R.D. 352 (D.D.C. 1998).

Please also keep in mind that ORCP 46A provides that an evasive or incomplete answer constitutes a failure to answer.  See also ORCP 46D, the case law cited in my May 12 letter to Defendant, as well as: *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003); *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 268 (2nd Cir. 1999) (citing *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 770-71 (9th Cir. 1995)); and *Haraway v. NASCAR*, 213 F.R.D. 161, 165 (D.Del. 2003) (citing *Black Horse Lane Assoc., L.P.* at 301-02).

See also: *Sec. Ins. Co. v Trustmark Ins. Co.*, 218 FRD 29 (D.Conn. 2003) (In light of affirmative duty imposed by Fed. R. Civ. P. 30(b)(6), corporate representative was obliged to gain some understanding of underlying facts, regardless of source identifying underlying facts, and to answer questions accordingly; therefore, court granted defendant's Fed. R. Civ. P. 37 motion to compel and required company to identify documents relied on by its 30(b)(6) witness and produce such documents to extent it had not done so already, as attorney-client privilege did not provide valid basis on which to refuse to divulge facts underlying company's response to defendant's allegations.)

In sum, Plaintiff's position is that, in light of the foregoing authorities and the scope of ORCP 36B to discover the facts upon which a party bases its claims or defenses (see the Oregon Court's of Appeals Asato opinion (as cited to Defendant in my April 17 and 18 letters), wherein the Court of Appeals upheld Mult. Co. Judge Christopher Marshall's sanction of a party with dismissal because it failed to provide discovery into affirmative defenses as ordered), today's ORCP 39C(6) deposition did not turn out as it should have.

Also, Ms. Tift, though I committed to getting back to you tomorrow on your requests regarding the May 30 ORCP 39C(6) Notice: (1) Whether Plaintiff will change the location or agree to video conferencing, and (2) Whether Plaintiff will stipulate to the testimony already given by Mark Dessem in 2005 in the Joarnt v. AutoZone case, be advised I double-checked the notice of deposition that went to AutoZone, and it appears Plaintiff noticed Mr. Dessem individually – AutoZone did not produce him as an ORCP 39C(6) designee, nor, I believe, as a "person most knowledgeable."

As I explained on the phone today, even if he was produced in response to a "person most knowledgeable" notice of deposition (which in the Joarnt matter only appear to be related to Defendant's document preservation efforts), that type of notice is different than an ORCP 39C(6) notice.  The latter is a deposition of the corporation which has, hopefully, adequately prepared one or more designees to testify on its behalf on the issues set forth in the notice.

I also mentioned to you on the phone that, with respect to the issue of Plaintiff's possible stipulation to prior deposition testimony of Mr. Dessem, Plaintiff had already attempted through a Second Set of Requests For Admission to determine whether certain aspects of AutoZone's payroll policies/procedures/practices had been the same since, inter alia, after Mr. Dessem's August 2005 deposition.

Unfortunately, AutoZone side-stepped the Requests For Admission (Nos. 1 – 3) by interposing what look to be interrogatory answers combined with denials.  These types of denials create more work for everyone, as was evidenced in today's ORCP 39C(6) deposition.

Also as a result of today's deposition, based on Defendant's objections and the designee's answers of "I don't know" and indication he would need to look at additional documents/information not before him, it appears that

Re: Migis v. AutoZone                                                                    Page 3 of 4

AutoZone should immediately produce additional documents and information in response to the two Court Orders at issue. This does undercut Defendant's assertion on the record that all documents have been produced in response to the Court Orders. (NOTE: As stated in a previous letter to Defendant, there are still approximately 96 +/- "Termination Reports" that AutoZone has not yet produced because it represented it cannot find them. I informed Ms. Tift in a telephonic conference last week (Friday, perhaps) that Plaintiff's supplemental briefing re: Plaintiff's Motion to Enforce Court Order will have to address the implications of such non-production. As you know, Plaintiff cannot simply wait for responsive documents to appear. We previously proposed to the Court a filing date for class certification of mid-August, but non-production and non-answers have made such a deadline rather untenable.).

So either (1) AutoZone has produced all documents/information and today's designee was simply not prepared to testify as to the content/sources of information of Bates Nos. AZ/MIGIS 0001212 – 1215 and the meaning of the PeopleSoft termination/action codes (I believe at one point he said that he would have to look at additional documents because he could not tell from the (a) summary report, (b) Paycheck Data, and (c) Termination Report whether an employee who quit with 2 weeks' notice was actually his final paycheck timely. Bear in mind that Defendant represented to the Court on April 22 that it needed more time to produce the Termination Reports because that information would show why the apparent late pays on the summary report were not really late at all), or (2) Defendant has not produced all responsive documents that would have allowed today's corporate designee to testify.

Finally, we will need to discuss whether Defendant is available June 30 and July 2.

Chey Powelson

---

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Thursday, May 15, 2008 5:33 PM
**To:** Chey Powelson
**Subject:** Re: Migis v. AutoZone


Chey,
Please call me at 11:30 tomorrow. Please have Bud Bailey on the line and I will include Leigh Ann. I'd like to get this case on a productive track and would like all players to participate. If Bud is not available, please let me know when he is available.
Best regards,
Amy

----- Original Message -----
From: Chey Powelson <cpowelson@wagelawyer.com>
To: Alpern, Amy R.
Cc: Tift, Leigh Ann C.; Brad Griffin <bgriffin@wagelawyer.com>; Bud Bailey <bbailey@wagelawyer.com>; Charity Shindle <charity@wagelawyer.com>
Sent: Thu May 15 17:03:36 2008
Subject: Migis v. AutoZone

Ms. Alpern:


Please call me by the end of the day tomorrow to confer on the ORCP 39C(6) deposition that occurred today. I already tried to confer with Ms. Tift, but she was unable to.


Thank you in advance.


Chey K. Powelson

EXHIBIT D
Page 3-4

Re: Migis v. AutoZone                                          Page 4 of 4


Attorney at Law

Bailey, Pinney & Assoc., LLC

1498 SE Tech Center Pl, Ste 290

Vancouver, WA  98683

Cpowelson@wagelawyer.com

360.567.2551 (Ph)

360.567.3331 (Fax)


Confidentiality Notice: This e-mail message may contain confidential and privileged information. If you have received this message
by mistake, please notify me immediately via telephone, and do not review, disclose, copy, or otherwise distribute it.  Thank you.

- - - -

To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this document (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the
intended recipient(s).  Any review, use, distribution or disclosure by others is strictly
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com


- - - -

To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this document (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the
intended recipient(s).  Any review, use, distribution or disclosure by others is strictly
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com




EXHIBIT D
Page 4-4


5/30/2008

1

2

3

4   IN THE CIRCUIT COURT OF THE STATE OF OREGON

5   FOR THE COUNTY OF MULTNOMAH

6   MICHAEL MIGIS, individually, and on        No. 0711-13531
    behalf of all other persons similarly
7   situated,,                                 **DEFENDANT'S OBJECTIONS TO**
                                               **PLAINTIFF'S SECOND MOTION TO**
8                          Plaintiff,          **COMPEL AND MEMORANDUM IN**
                                               **SUPPORT THEREOF**
9        vs.

10   AUTOZONE INC., a Nevada
     Corporation,,                             **NOTED FOR:  JULY 11, 2008**
11
                          Defendant.
12

13   **I.      INTRODUCTION**

14          Plaintiff filed this action in November, 2007.  Since that time, Plaintiff has served four

15   separate sets of discovery requests.  In response, AutoZone has produced more than 2200 pages, and

16   have reviewed countless more, and has agreed to produce all time records for every employee in a

17   one year period of time.  Moreover, AutoZone's counsel met with Plaintiff's counsel and has been a

18   party to at least a dozen "conferences" with Plaintiff's counsel to discuss discovery matters.

19          This motion follows one such conference, and was filed even though Plaintiff's counsel had

20   been told that AutoZone would review the demands made in a conference on May 15, and would

21   attempt to comply with them.  Counsel stated that he intended to file the motion anyway, and

22   remarked that he would "no doubt be thrown under the bus" because he filed the motion without

23   waiting for the promised results of the discovery conferences.  This motion should be dismissed by

24   the Court for the reasons set forth in *Anderson v. State Farm Mut. Auto Ins. Co.*, 217 Or. 592, 177

25   P.3d 31 (2008).  That is, Plaintiff's counsel must, in accordance with Oregon law, engage in a

26

---

PAGE 1 – DEFENDANT'S OBJ. TO PL'S 2ND MOTION TO COMPEL

1    meaningful discovery conference with an eye to resolving discovery disputes, not simply opening

2    the floodgates to multiple, unnecessary discovery motions.[1]

3    **II.    LEGAL STANDARD**

4         The scope of discovery in Oregon courts is limited to legal relevance—that is, the

5    information sought must be relevant to the claim asserted by the party. *See*, ORCP 36B.  Moreover,

6    the court has the authority to deny discovery, if justice requires, "to protect a party or person from

7    annoyance, embarrassment, oppression, or undue burden or expense * * *." ORCP 36C.  Finally,

8    and as noted above, the Court should not even consider a motion where the moving party has not

9    complied with UTCR 5.010 in a meaningful way.

10         It is not entirely clear from Plaintiff's motion exactly what the complaint is in regard to

11    discovery.  However, as best AutoZone can tell, the motion relates to two Requests for Production

12    from two different sets of Requests for Production.[2]

13         **A.    RFP No. 6, Plaintiff's <u>Second</u> Requests for Production to AutoZone.**

14         RFP No. 6 seeks "documents and reports reflecting weekly summarization of hours worked

15    by Plaintiff" for a period of time beginning three years from the date this complaint was filed.  The

16    complaint was filed in November, 2007, but Plaintiff Migis quit AutoZone on or around February

17    10, 2006.  Therefore, in response to this Request, AutoZone provided more than 150 pages of time

18    records for Mr. Migis, back through 2004.  Examples of the documents AutoZone produced are

19    attached as Exhibit 1 to the Declaration of Tift.  AutoZone also produced Mr. Migis' weekly

20    earnings records.  *See*, Exhibit 2 to Declaration of Tift, as an example, and also Ms. Alpern's letter

21    to Plaintiff, attached as Exhibit 3 to Declaration of Tift.  To date, it is not clear why these records are

22    seen by counsel as anything other than exactly what was requested.  They show when Migis clocked

23

---

24    [1] Plaintiff did not need to file the Second Motion to Compel on May 23, because the hearing date is July 11 (Defendant acknowledges that Plaintiff was attempting to push this motion for June 30—despite being told that AutoZone's counsel

25    was unavailable on that date—but even then, the motion did not have to be filed May 23).

     [2] Plaintiff does not number RFP's sequentially.  Every set begins with RFP No. 1, which is confusing and difficult to

26    follow.

PAGE 2 – DEFENDANT'S OBJ. TO PL'S 2ND MOTION TO COMPEL

1  in and when he clocked out for each day of work in a given work week for the period requested, and

2  his hours for the week are summarized at the bottom of each page.

3  **B.    RFP No. 5, Plaintiff's Third Requests for Production to AutoZone.**

4  RFP No. 5 seeks "all time sheets reflecting the hours each Oregon hourly employee worked

5  for Defendants...for the period of time from one (1) year prior to the filing of the Complaint through

6  the date of filing.  AutoZone did object to this Request on the grounds it was vague, overbroad,

7  irrelevant and exceeded the proper scope of reasonable pre-certification discovery.

8  AutoZone's objection is founded on a concern that prior to class certification, counsel does

9  not represent putative class members, only Mr. Migis.  Many employees of AutoZone would no

10  doubt be distressed to learn that their time records were being disclosed to unknown attorneys.

11  Further, Mr. Migis' time records stretched to 150 pages—it is clear that producing time records for

12  every employee in Oregon for a one year period of time would result in tens of thousands of pages.

13  Courts have repeatedly limited pre-certification discovery in order to prevent overreaching and abuse

14  in the class action context.  *See, Mantolete v. Bolger*, 767 F.2d 1416, 1425 (9th Cir. 1985) [refusing

15  class-wide discovery where plaintiff failed to show discovery is likely to substantiate class action

16  allegations]; *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) ["[a]n employer [in

17  class context] should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff

18  at the employer's expense."]; *Shushan v. University of Colo*., 132 F.R.D. 263, 268 (D. Colo. 1990)

19  [rejecting "the extraordinary assertion that an aggrieved party can file a complaint, claiming to

20  represent a class whose preliminary scope is defined by him, and by that act alone obtain a court

21  order which conditionally determines the parameters of the potential class and requires discovery

22  concerning the members of that class"].  *See, also*, *Newman v. Checkrite Cal., Inc*., 1996 WL

23  1118092, at *10 (E.D. Cal. 1996) [refusing discovery addressed to the putative class definition; such

24  discovery was premature since class had not been certified]; *Duval v. Gleason*, 1991 WL 214251

25  (N.D. Cal. 1991) [refusing pre-certification discovery directed to absent class members where the

26

PAGE 3 – DEFENDANT'S OBJ. TO PL'S 2ND MOTION TO COMPEL

1    discovery was "not likely to resolve the issues central to class certification, and would be expensive

2    and intrusive to the class members"].

3            Furthermore, Plaintiff's counsel repeatedly made suggestions for modifying the scope of this

4    Request only to withdraw the suggestion.  For example, in one of the early discovery conferences

5    regarding this RFP, Mr. Powelson first suggested that he would accept a sample of these time

6    records, provided AutoZone would stipulate that the sample was representative.  When asked if he

7    would also stipulate (not whether he would stipulate "first"), Plaintiff's counsel refused.  Mr.

8    Powelson next suggested he would accept time records from one of five employees, then changed

9    his mind, then suggested he would accept time records for every one third of AutoZone's employees,

10   and again changed his mind.  *See*, Exhibit G, Declaration of Powelson; Exhibit 3 to Decl. of Tift.

11   Notably, none of these suggestions were originated by AutoZone's counsel—all of the suggestions

12   came from Mr. Powelson, who, after discussing how the employees would be selected, asking

13   AutoZone to stipulate that the "sample" was representative but declining to do so on the part of

14   Plaintiff, then abandoned the whole idea in favor of a "no compromises" approach.  The lengthy

15   discussions about a possible compromise seemed to be spur of the moment ideas which Plaintiff's

16   counsel had no intention to adopt, and that was frustrating and antithetical to the reason for

17   conducting a discovery conference.  Likewise, Plaintiff's counsel's "horsetrading" was wholly

18   inappropriate.  As even Mr. Powelson concedes, he first offered to back off the discovery demands if

19   counsel would stipulate to class certification (a position that AutoZone's counsel could not take in

20   good faith in light of the facts of this case nor could it be undertaken consistent with counsel's

21   professional obligations to AutoZone) or if counsel would stipulate that Migis was an adequate class

22   representative (another stipulation that counsel could not agree to and maintain its professional

23   responsibilities to AutoZone).  When neither of those "stipulations" was accepted, Mr. Powelson

24   indicated he was going to file a motion to compel.

25

26

---

PAGE 4 – DEFENDANT'S OBJ. TO PL'S 2ND MOTION TO COMPEL

1    Plaintiff's counsel has also failed, in this motion, to explain why the time records of all

2  Oregon employees are relevant to any issue in the case. Certainly daily or weekly time records are

3  not relevant to late pay claims. The Oregon Supreme Court, in *Gafur v. Legacy Good Samaritan*

4  *Hospital*, --P.3d--, 2008 WL 2054448 (Or.), makes clear that Plaintiff is not able to recover money

5  damages for missed or shortened rest breaks, and the Court of Appeals decision in that case settles

6  any claim for wages for missed or shortened lunch breaks. *See*, also, AutoZone's Motion for

7  Judgment on the Pleadings, pending before this Court. Plaintiff Migis has no claim for minimum

8  wage violations—according to him he was always paid more than the Oregon minimum wage.

9  Therefore, it is not immediately apparent what issue in this case all of these time records relate to, or

10  why they are legally relevant.

11    All of that aside, this motion is pointless, because AutoZone has agreed to provide the

12  records. *See*, Exhibit 4, Declaration of Tift.

13  **III.    CONCLUSION**

14    AutoZone asks that this Court dismiss this motion in its entirety. Not one of the

15  "conferences" preceding the motion has been for any purpose other than to clear the decks to file a

16  motion to compel. Plaintiff's counsel offers compromises, then withdraws them; uses discovery

17  motions as a club to obtain concessions unrelated to the discovery; and fails and refuses to discuss

18  why the discovery requested is relevant to any issues in the case. Furthermore, as can be seen from

19  the discovery offered to Plaintiff, AutoZone's attempts to produce documents have been in good

20  faith and have been directly responsive to what is requested by Plaintiff—but whatever is produced

21  is merely used as a springboard by Plaintiff to ask for more, or to ask for the same thing but in a

22  different format. This motion is an abuse of the discovery process.

23

24

25

26

PAGE 5 – DEFENDANT'S OBJ. TO PL'S 2ND MOTION TO COMPEL

1

2

3   Dated:  June 6, 2008

4

5                                                        Leigh Ann Collings Tift OSB No.05473
                                                         LITTLER MENDELSON
6                                                        A Professional Corporation

7                                                        Attorneys for Defendant
                                                         Autozone Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 6 – DEFENDANT'S OBJ. TO PL'S 2ND MOTION TO COMPEL

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on June 6, 2008, I served a full, true, and correct copy of the foregoing:

3

**DEFENDANT'S OBJECTIONS TO PLAINTIFF'S SECOND MOTION TO COMPEL
AND MEMORANDUM IN SUPPORT THEREOF**

4

5                    ☐        By delivery via messenger, or otherwise by hand,

6                    ☒        By facsimile,

7                    ☐        By e-mail,

8                    ☒        By mailing same, postage paid

9        addressed to:

10

11        Bailey Pinney & Associates LLC
         Attorneys at Law
         1498 SE Tech Center Place

12        Suite 290
         Vancouver, WA  98683

13        Fax (360) 567-3331

14                         Of Attorneys for Plaintiff

15

16

17        By _____

18                    Savanna L. Stevens

19

20        Firmwide:85470358.1 013306.2124

21

22

23

24

25

26

PAGE 7 – DEFENDANT'S OBJ. TO PL'S 2ND MOTION TO COMPEL

RECEIVED
CIRCUIT COURT
MULTNOMAH COUNTY

08 JUN -5  PM 3: 54

FILED

JUN 1 0 2008
IN REGISTER BY

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**

**FOR THE COUNTY OF MULTNOMAH**

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,<br><br>                  Plaintiff,<br><br>    vs.<br><br>AUTOZONE INC., a Nevada Corporation,<br><br>                Defendant. | No. 0711-13531<br><br>**DECLARATION OF LEIGH ANN TIFT IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**<br><br>**DATED: JULY 11, 2008** |

I, Leigh Ann Collings Tift, hereby declare as follows:

    1.    I am an attorney representing Autozone Inc. in the above-captioned matter, and I make this declaration in support of Defendants' Opposition to Plaintiff's Motion to Enforce Court Order. I have personal knowledge of the statements contained herein.

    2.    Attached as **Exhibit 1** to this Declaration is a true and correct excerpt of Defendant's Fourth Supplemental Responses to Plaintiff's Requests for Admission 1-3 and First Requests for Production.

    3.    In addition to the summary chart of terminated employees, the documents produced by AutoZone in response to Plaintiff's first Requests for Production were termination reports for employees who terminated in the period November 2006 to November 2007, paycheck data for all employees who terminated between November 2006-2007, and AutoZone's store handbook, a memo

---

**DEC OF L. TIFT ISO OF DEF'S OPP. TO PLAINTIFF'S MTN TO ENFORCE COURT ORDER**            1

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA 98101
Phone: 206-623-3300 Fax:206-447-6965

from Mark Dessem, AutoZone's Director of Payroll, a memo from AutoZone's Director of Payroll (who is responsible for all payroll functions) reminding field officers of "our policy to call in all Oregon terminations on a timely basis so that we may issue the appropriate manual check for their final pay," and training materials for managers, which provide, in relevant part, that dismissal of an employee cannot take place on the spot. A copy of a recent letter from Ms. Alpern, outlining the efforts AutoZone has undertaken to respond to Plaintiff's discovery demands and requests for conferences is attached as **Exhibit 2** to this Declaration.

4.    Attached as **Exhibit 3** to this Declaration is a true and correct excerpt of Excerpt of March 8, 2008 transcript of a hearing before this Court relating to Defendant's production of documents.

5.    On April 22, 2008, after the Court denied AutoZone's request for an extension of time to produce termination reports, AutoZone made an extraordinary effort to find all termination reports, and did so principally on April 23, 2008, the date ordered by the Court, with the remainder of all documents that could be found on April 24. More than half of the reports cannot be located. However, that is not the result of negligence or a failure to search. AutoZone's store managers, the Regional HR manager, and I have searched period boxes in the stores and all personnel files for each terminated employee. Based upon the testimony of AutoZone's former Regional HR Manager, Nicole McCollum, whose deposition was taken by Plaintiff's counsel in the matter of Joarnt v. AutoZone, it is my understanding that the reports can be printed at the time they are filled out, but not necessarily after the information is sent to AutoZone's corporate records. Attached to this Declaration as **Exhibit 4** is a true and correct excerpt of the deposition transcript of Ms. McCollum,

DEC OF L. TIFT ISO OF DEF'S OPP. TO
PLAINTIFF'S MTN TO ENFORCE
COURT ORDER

2

pages 96 and 97. Plaintiff's Counsel in this matter, Mr. Bailey, was attorney for Plaintiffs Joarnt and Yamaoka, and examined Ms. McCollum.

6.     Attached as **Exhibit 5** to this Declaration is a true and correct excerpt of the deposition transcript of Plaintiff, Michael Migis, pages 106, 110, 113, 116, and 169.

7.     Attached as **Exhibit 6** to this Declaration is a true and correct copy of the termination report prepared for Mr. Migis. The document was produced in response to Plaintiff's discovery requests, and is Bates numbered 0001347.

8.     Attached as **Exhibit 7** to this Declaration is a true and correct copy of a Manager's Training Handbook, page 109. The document was produced in response to Plaintiff's discovery requests, and is Bates numbered 0002177.

9.     Attached as **Exhibit 8** to this Declaration is a true and correct excerpt of the deposition of Carlos Jon, pages 90, 92 and 103.

10.     Attached as **Exhibit 9** to this Declaration is a true and correct copy of a termination report, produced in response to Plaintiff's discovery requests. The document is Bates numbered 0001819.

Dated: June 5, 2008

Leigh Ann Collings Tift, OSB #05473
ltift@littler.com
LITTLER MENDELSON
A Professional Corporation

Attorneys for Defendant
AUTOZONE, INC.

DEC OF L. TIFT ISO OF DEF'S OPP. TO
PLAINTIFF'S MTN TO ENFORCE
COURT ORDER

3

**EXHIBIT 1**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

MICHAEL MIGIS, individually, and on
behalf of all other persons similarly
situated,,

               Plaintiff,

    vs.

AUTOZONE INC., a Nevada
Corporation,,

               Defendant.

No. 0711-13531

***DEFENDANT'S FOURTH SUPPLEMENTAL
OBJECTIONS AND RESPONSES TO
PLAINTIFF'S FIRST SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS***

Defendant AutoZone, Inc. ("Defendant") hereby submits its supplemental objections and responses to Plaintiff's First Set of Requests for Production of Documents as follows:

## SUPPLEMENTAL GENERAL OBJECTIONS

The following objections apply generally to all of Plaintiff's discovery requests in this lawsuit:

(a)    <u>Objections to Scope of Discovery Requests</u>. Defendant objects to all discovery requests to the extent they purport to require any actions not required by the Oregon Rules of Civil Procedure, the Uniform Trial Court Rules, or any local rules. Without limiting the generality of this objection, Defendant objects to all discovery requests to the extent that they (1) go beyond the scope of discovery provided by the Oregon Rules of Civil Procedure, (2) are not reasonably calculated to lead to the discovery of admissible evidence, and/or (3) purport to impose a duty of supplementation greater than that imposed by the Oregon Rules of Civil Procedure.

(b)    <u>Privilege and Trial Preparation Materials</u>. Defendant objects to all discovery requests to the extent they call for information or documents that fall within any relevant privilege (including

PAGE 1 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1          **SPECIFIC OBJECTIONS AND RESPONSES**

2          <u>**REQUEST FOR ADMISSION NO. 1**</u>:      Admit that Defendant failed to pay all wages

3    earned and unpaid by the end of the first business day after termination, to at least one involuntarily

4    terminated employee within the 12 months preceding the date of the filing of this lawsuit.

5          <u>**FIRST SUPPLEMENTAL RESPONSE**</u>:  Defendant incorporates by reference its General

6    Objections as though fully set forth herein and its specific objections to this request in Defendant's

7    Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further

8    objects to this request to the extent it is unduly burdensome and overbroad, is not limited to

9    employees who worked in the State of Oregon, seeks information that is beyond scope of proper pre-

10   certification discovery, and seeks information about individuals other than Plaintiff Migis.  Plaintiff

11   Migis was not involuntarily terminated.  Without waiving its objections, Defendant has not

12   knowingly failed to pay any employee final wages on time, is unaware of any instance where it has

13   done so, and therefore denies this Request on that basis.  Defendant further asserts that its policies

14   and procedures intend that employees be paid final wages within the time frames set out in the

15   applicable Oregon statutes.

16         <u>**THIRD SUPPLEMENTAL RESPONSE**</u>:  Defendant incorporates by reference its General

17   Objections as though fully set forth herein and specific answer and objections to this RFA as set

18   forth above.  Without waiving such objections, see, Response to RFP No. 2.

19         <u>**REQUEST FOR PRODUCTION NO. 1**</u>:  If Defendant admits RFA No. 1, produce all

20   documents and electronically stored information for all involuntarily terminated employees to whom

21   Defendant failed to pay all wages earned and unpaid by the end of the first business day after

22   termination, within the referenced time period.  Produce documents and electronically stored

23   information in electronic format.  If electronic format is not available, produce in original format.

24   This request includes, but is not limited to, Documents and Electronic Data as defined above.

25

26

PAGE 4 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1    **FIRST SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General
2    Objections as though fully set forth herein and its specific objections to this request in Defendant's
3    Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further
4    objects to this request to the extent it unduly burdensome and overbroad, is not limited to employees
5    who worked in the State of Oregon, seeks information that is beyond class certification issues, and
6    seeks information about individuals other than Plaintiff Migis.  Finally, Defendant objects to the
7    request for electronically stored information as overbroad and unduly burdensome given that any
8    need for such information is outweighed by the burden to Defendant of searching its electronic
9    records.  Without waiving its objections, see Answer to RFA 1.

10    **THIRD SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General
11    Objections as though fully set forth herein and its specific answer and objections to this RFP as set
12    forth above.  Without waiving such objections, see, Response to RFP No. 2.

13    **REQUEST FOR PRODUCTION NO. 2**:  If Defendant denies RFA No. 1, produce all
14    documents and electronically stored information for all involuntarily terminated employees within
15    the referenced time period which Defendant relies upon to support its denial.  Produce documents
16    and records in electronic format.  If electronic format is unavailable, produce in original format.
17    This request includes, but is not limited to, Documents and Electronic Data as defined above.

18    **FIRST SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General
19    Objections as though fully set forth herein and its specific objections to this request in Defendant's
20    Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further
21    objects to this request to the extent it unduly burdensome and overbroad, is not limited to employees
22    who worked in the State of Oregon, seeks information beyond the proper scope of pre-certification
23    discovery,  and seeks information about individuals other than Plaintiff Migis.  Defendant also
24    objects to the request for electronically stored information as overbroad and unduly burdensome

25

26

PAGE 5 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1  given that any need for such information is outweighed by the burden to Defendant of searching its

2  electronic records.

3      **SECOND SUPPLEMENTAL RESPONSE**:  With respect to Plaintiff Migis, Defendant

4  maintains that Plaintiff has all relevant documents; to wit, Plaintiff's final paycheck and Plaintiff's

5  personnel file reflecting the date his employment ended with AutoZone.

6      **THIRD SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

7  Objections as though fully set forth herein and its specific answer and objections to this RFP as set

8  forth above.  Without waiving such objections, *see*, documents previously produced to Plaintiff (i.e.,

9  those labeled AZ/Migis 000001-0001655), documents attached hereto, labeled AZ/Migis 0001656-

10  0001863, and electronic information provided on disk, labeled AZ/Migis 3rd Supplemental.

11      **FOURTH SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its

12  General Objections as though fully set forth herein and its specific answer and objections to this RFP

13  as set forth above.  Without waiving such objections, *see*, AZ/Migis 001864-0001881.

14      **REQUEST FOR ADMISSION NO. 2**:   Admit that Defendant failed to immediately pay

15  all wages earned and unpaid to at least one employee who gave not less than 48 hours' notice of their

16  intention to quit, within the 12 months preceding the date of the filing of this lawsuit.

17      **FIRST SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

18  Objections as though fully set forth herein and its specific objections to this request in Defendant's

19  Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further

20  objects to this request to the extent it unduly burdensome and overbroad, is not limited to employees

21  who worked in the State of Oregon, seeks information that is beyond the proper scope of pre-

22  certification discovery, and seeks information about individuals other than Plaintiff Migis.  Without

23  waiving its objections and limiting its response to Plaintiff Migis, Defendant has not knowingly

24  failed to pay any employee final wages on time, is unaware of any instance where it has done so, and

25  therefore denies this Request on that basis.  Defendant further asserts that its policies and procedure

26

---

PAGE 6 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1  intend that employees be paid final wages within the time frames set out in the applicable Oregon

2  statutes.

3  **THIRD SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

4  Objections as though fully set forth herein and specific answer and objections to this RFA as set

5  forth above.  Without waiving such objections, see, Response to RFP No. 2.

6

7  **REQUEST FOR PRODUCTION NO. 3**:  If Defendant admits RFA No. 2, produce all

8  documents and electronically stored information for all employees who gave not less than 48 hours'

9  notice of their intention to quit, to whom Defendant failed to pay all wages earned and unpaid

10  immediately at the time of quitting, within the referenced time period.  Produce documents and

11  electronically stored information in electronic format.  If electronic format is unavailable, produce in

12  original format.  This request includes, but is not limited to, Documents and Electronic Data as

13  defined above.

14  **FIRST SUPPLEMENTAL RESPONSE**:  Defendant incorporates by reference its General

15  Objections as though fully set forth herein and its specific objections to this request in Defendant's

16  Objections to Plaintiff's First Set of Requests for Production of Documents.  Defendant further

17  objects to this request to the extent it unduly burdensome and overbroad, is not limited to employees

18  who worked in the State of Oregon, seeks information that is beyond class certification issues, and

19  seeks information about individuals other than Plaintiff Migis.  Defendant also objects to the request

20  for electronically stored information as overbroad and unduly burdensome given that any need for

21  such information is outweighed by the burden to Defendant of searching its electronic records.

22  Without waiving its objections and limiting its response to Plaintiff Migis, *see* Answer to RFA 2.

23  **SECOND SUPPLEMENTAL RESPONSE**:  With respect to Plaintiff Migis, Defendant

24  maintains that Plaintiff has all relevant documents; to wit, Plaintiff's final paycheck and Plaintiff's

25  personnel file reflecting the date his employment ended with AutoZone.

26

PAGE 7 – DEFENDANT'S 4TH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

**EXHIBIT 2**

LITTLER MENDELSON®
A PROFESSIONAL CORPORATION

ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

OREGON

PENNSYLVANIA

RHODE ISLAND

SOUTH CAROLINA

TEXAS

VIRGINIA

WASHINGTON

June 3, 2008

Amy R. Alpern
Direct: 503.889.8878
Direct Fax: 503.914.1816
aalpern@littler.com

VIA MAIL AND FACSIMILE 360-567-3331 AND U.S. MAIL

Chey Powelson
Bailey Pinney & Associates, LLC
1498 SE Tech Center Place, Suite 290
Vancouver, WA 98683

Re:    Migis v. AutoZone, Inc.
       Multnomah County Circuit Court Case No. 0711-13531

Dear Chey:

This follows up on my May 23, 2008 letter to you in which I outlined what we were willing to do to resolve the outstanding discovery issues. In that letter I told you that I would get back to you by June 3, and I am now doing so. For reasons that cause me great concern, you continued to file motions to compel, and to ask for yet additional documents, while we are diligently working to produce those items outlined in my May 23 letter. Indeed, I do believe at this point that you are intentionally making things more difficult than they need to be. For example, I prepared a protective order and asked that you sign it. (I told you that the form of protective order I prepared had been approved by the Multnomah County Presiding Court.) Rather than signing my order, you sent me a different order and required that we submit that order, instead. I did not want to fight about the issue, so I agreed to sign your proposed order and then brought it to the scheduling conference to ask the Court to sign it per our discussion on May 23. When I asked you to sign the order at that scheduling conference, you said you could not do so because you prepared it for Mr. Bailey's signature. I then asked Mr. Bailey, who was also at the scheduling conference, to sign it. He said he could not do so because he had not read it. When I pointed out to him that it was on your firm's letterhead, and urged him to sign it, he finally agreed to do so. However, when I presented it to Judge Maurer at the scheduling conference, she had concerns about the language in the order and asked her assistant to review it. As it now stands, we do not have a signed protective order.

I have now enclosed another protective order that complies with the Multnomah County rules. I signed it, ask that you do so, and ask that you forward it to the Presiding Court.

Moving on to my May 23, 2008 letter, I respond as follows:

1.      We agreed to allow you to depose Mark Dessem as a corporate representative pursuant to ORCP 39(c)(6) even though you have already taken one 39(c)(6)

Chey Powelson
June 3, 2008
Page 2

deposition. We believe that Mr. Dessem is likely to be able to address some of the issues set forth in the 39(c)(6) notice that took place on May 15, 2008.

I also told you at the May 15 deposition that we would provide you with additional information regarding the total number of full- and part-time hourly AutoZone employees for the time periods set forth in your notice. We reviewed the W-2s for 2006 and can advise you that AutoZone employed 423 employee in Oregon that year. As you recall, we have already provided you with this information for the year 2007. I am still working on 2004 and 2005 and will respond to that request, although I am told that the information is on the payroll tax reports that were produced to your firm in the Joarnt matter. Nonetheless, I will review those reports as well, and get our answer to you promptly.

2.      As I suspected, the reference to "attendance calendars" in Mr. Jon's deposition is, in fact, a reference to the variance reports. Since we have already produced the variance reports, we have already satisfied this request.

With respect to Request for Production No. 5 (weekly schedule reports referencing Mr. Migis' work schedule, both approved and unapproved, for three years prior to the filing of the complaint), we have now double-checked the period boxes for the two stores in which Mr. Migis worked in Oregon and can confirm that no additional records responsive to this request exist.

We also agreed to send you a screen print of Mr. Migis' paycheck data. It is enclosed.

3.      See my May 23 letter.

4.      With respect to the May 9 letter you sent to us regarding the authenticity of documents, I can advise you that defendant will stipulate that each of the listed documents, with one exception, is authentic, i.e., that they are what they purport to be. The exception is AG-Migis 0002214. We do not have a copy of that and I suspect that we may have made a numbering mistake.

5.      We promised you that we would produce, in electronic Microsoft Excel format, the lunch variation reports that have been previously produced to you in hard copy. I understand that Leigh Ann Tift FedExed those to you yesterday and that you are in possession of those.

6.      Defendant has reconsidered its objection to your request for one year's worth of time records for hourly employees in the State of Oregon, but have two caveats. Defendant will seek to shift the cost of producing these records to plaintiff if we are

Chey Powelson
June 3, 2008
Page 3

able to establish that they are not relevant, and/or if the class is not certified. Second, we are agreeing to produce the documents pursuant to the terms of a mutually agreeable protective order. With that understanding, defendant will produce electronic records of time worked for each AutoZone employee from November 2006 to November 2007. Please let me know when you have signed the order and have forwarded it to the Court, and we will produce the documents.

7.    See my May 23 letter.

8.    Defendant has located and is willing to produce reports reflecting weekly summarizations of hours worked by AutoZone employees as requested in Plaintiff's Third Request for Production No. 4. Defendant is willing to produce this information pursuant to the terms of a protective order. Please let me know when you have signed that order and forwarded it to the Court, and we will provide you with the requested documents.

9.    As promised, defendant's store managers are making a second attempt at finding termination reports. We have looked at the personnel files of all employees to assure that no termination reports were missed, and the AutoZone's Store Managers have been asked to complete their review by June 5. I will let you know what, if anything, they are able to locate. Given Ms. Tift's experience in reviewing the period boxes for the last two stores in which Mr. Migis worked, I strongly doubt that we will find additional responsive documents. Nonetheless, we have taken the time consuming step of looking a second time.

Please understand that your discovery requests have been extremely cumbersome, that we have spent the last month telling you that we want to work cooperatively on discovery issues. As you can see, we have offered several concessions. Despite that, you continue to file motions to compel and motions for sanctions. At some point, I do hope that we are able to move this case in a direction that is likely to benefit our respective clients. That is what you want, right?

Very truly yours,

LITTLER MENDELSON

Amy R. Alpern

ARA/jrs
Enclosures

**EXHIBIT 3**

Page 1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

MICHAEL MIGIS, individually,      )
and on behalf of all others       )
similarly situated,               )
            Plaintiff,            )
            vs.                   )Case No. 0711-13531
AUTOZONE INC., A Nevada           )
corporation,                      )
            Defendants.           )

BE IT REMEMBERED THAT on the 8th day of

April, 2008, the above-entitled matter came on for

hearing before the HONORABLE JEROME LaBARRE, Circuit

Court Judge.

DEBORAH L. COOK, RPR, CSR
COOK COURT REPORTING, INC.
1102 N. Springbrook Road
Suite 136
Newberg, Oregon 97132
(503) 537-0339
deb@cookcourtreporting.com

87db286b-0ad6-483a-b058-5998ac3211e5

1  involuntary terminations.  Those are the people who have

2  been fired.

3          And the yellow ones, coded A-1, are

4  essentially those who quit with notice.  And these are

5  responsive to the Request for Production having to do

6  with the admissions.

7          What we asked for and what you ordered is

8  that in the denial of the admissions, that they produce

9  the documents that they relied on to make the denials.

10  And in this instance if you look at just the very first

11  line item, obviously this is a compilation.  Somebody

12  has taken some documents from somewhere and made a

13  spreadsheet.  I believe there's underlying documents

14  that go to this compilation.

15          But if you look at the ID that's apparently

16  an employee number, and we go straight across, the last

17  day I would interpret that the employee worked was

18  August 27th, '07.  The check cycle was an off-cycle

19  check or not.  The N/Y, we assume, is no or yes.  So

20  there was a regular check cut.

21          The check date, or the date the check was

22  likely cut would have been September 14th of 2007.  The

23  individual had been fired.  Our request was admit that

24  you have people that didn't get their check on the next

25  business day after they were fired.

87db286b-0ad6-483a-b058-5998ac3211e5

Page 13

1    would be a lot of production of documents.  And it would

2    go well beyond this.

3            Now, your interpretation -- I think it

4    could be argued that your interpretation is way overly

5    narrow on what is called for in that request.  However,

6    it is true it may have been poor drafting by the

7    plaintiff's counsel.  I want to essentially introduce as

8    a subject notion of all documents that you relied on in

9    support of your denial, that plaintiff may have -- may

10   be hoist by their own petard on that.

11           I guess I don't know if I have to decide

12   that question today.  Maybe I can.  Right this second I

13   see arguments both ways.  But I do know that employment

14   litigation involves production of -- there's been a lot

15   of employment litigation over the last 10, 20 years.

16   And the production by the employer is never so narrow as

17   to be this kind of a spreadsheet.

18           And if the spreadsheet is supplied, then it

19   always -- the relevant underlying documents that are

20   important for both sides in terms of developing the

21   facts in the case, those are always supplied.  So it

22   seems like it's going to have a pretty good argument

23   that there's game playing involved here, and that they

24   ought to get sanctions at some point.

25           And I don't -- I am on a special assignment

**EXHIBIT 4**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

RICHARD JOARNT AND BERT YAMAOKO,

individually, and on behalf of

all others similarly situated,

        Plaintiffs,

    vs.           No. 0503-02795

AUTOZONE, INC., a Foreign

Corporation,

        Defendant.

_____/

Deposition of

NICOLE LYNN McCOLLUM

Tuesday, October 25, 2005

Reported by:

SHARON CABELLO, RPR

CSR No. 3080

Job No. 632367

Esquire Deposition Services
949.440.7000

439ec2e4-d805-438b-9774-766d0c5edf5b

## Page 86

1 particular on a pay stub.
2 Q.    Okay, thank you.
3        Who has the authority to terminate an employee
4 as Autozone?
5 A.    Operations, management -- Operations
6 management.
7 Q.    Can a Store Manager terminate an employee at
8 Autozone?
9 A.    Yes.
10 Q.    Do they have a procedure or any kind of
11 authority that they have to get before they can make
12 that termination?
13 A.    Yes, standard chain of command, including
14 myself, that is needed.  And if we are going to be
15 terminating we also get a verbal recommendation from
16 Autozone Relations.
17 Q.    Okay.  If an individual Store Manager has an
18 employee that for whatever reason believes he wants to
19 terminate, what steps does he have to take to be able
20 to do that?  Can you just -- today the employee walks
21 through the door, he has had it, he is 15 minutes late
22 again, and he decides to terminate them on his own.
23 A.    Could they?
24 Q.    Could the manager do that?
25 A.    Could they do it?  It's not a policy, I mean,

## Page 87

1 they could -- the manager can terminate someone in the
2 system, that's their authority to do so.  Our process
3 is they would follow the chain of command, being
4 discussing the situation with their District Manager;
5 District Manager would partner with myself, typically I
6 would partner with Autozone Relations for a verbal
7 recommendation.
8 Q.    So it kind of goes up the order and then you
9 get a recommendation from Autozone Relations, and then
10 what happens?
11 A.    If it's the recommendation we agree with, we
12 would -- the Store Manager would then execute that
13 recommendation and termination.
14 Q.    So you get the recommendation yourself and
15 then pass it on to the District Manager, or does the
16 Autozone folks pass it directly on to the --
17 A.    It comes to myself, sometimes with the
18 District Manager attached, sometimes just to myself, it
19 depends on the person in Autozone Relations.
20 Q.    What about filling a position in a store, does
21 the manager have authority to go out and hire an
22 individual?
23 A.    Yes.
24 Q.    Can you do that without authority from other
25 individuals above you?

## Page 88

1 A.    Like termination they could.  Our process
2 would be they discuss it with their District Manager
3 for the pay reason.
4 Q.    Is there a -- if you know, is there a set
5 number of employees that a particular store can't have
6 on its payroll?
7 A.    It doesn't work that way.
8 Q.    Okay.  How does --
9 A.    There is no minimum/maximum for that reason.
10 When -- staffing in stores is dependent on volume.
11 That would be more a District Manager function than
12 myself.  Or the schedule versus -- our practice is a
13 70/30 mix, 70 percent full-time, 30 percent part-time.
14 It's a guide we use in the store for coverage.  It's
15 flexible.  You could have an abundance of part-time
16 people with very limited schedules, i.e. only working
17 two nights or only working weekends and, therefore,
18 inflate the number of employees versus another store of
19 similar volume that is a strict 70/30 mix.
20 Q.    Okay.  And the actual sales volume of the
21 store dictates the number of employees that would
22 typically be allocated for a particular store?
23      MS. TIFT:  Object to the form of the question,
24 misstates and mischaracterizes her testimony.
25      THE WITNESS:  Nothing dictates the number of

## Page 89

1 employees, it dictates the available hours allocated
2 based on store volume.  You hire accordingly based on
3 your geographic area, your market.
4 Q.    MR. BAILEY:  Okay.  So when I say dictates the
5 number of employees, the contradiction that I stated
6 there is that it's really the number of hours that the
7 store can utilize employees in; is that correct?
8 A.    The number of hours is a guide based on
9 expected volume.
10 Q.    Okay.  Can a Store Manager on his own decide
11 that he needs an additional 30 hours a week?
12      MS. TIFT:  Object to the form of the question,
13 calls for speculation.
14      THE WITNESS:  Could he decide that he needs
15 that?  Or could he use that?  They are two very
16 different questions.
17      He can use anything he wants, they have the
18 power in the store to do so.
19 Q.    MR. BAILEY:  If a Store Manager is allocated
20 through whatever function 200 hours, and believes that
21 he needs 250, it's up to him -- he has authority to go
22 ahead and hire -- put people on staff to use up the 250
23 hours?
24      MS. TIFT:  Object to the form of the question,
25 calls for speculation.

Esquire Deposition Services
949.440.7000

43bec2a4-d805-438b-9774-766d0c5edf6b

## Page 94

1  A.   It depends.  It would depend on where it came
2  from.  Some reports run by our analysts, like the HR
3  report I mentioned earlier, has numerous tabs.  That
4  comes in an email.
5       Sometime she will call it one thing, and
6  sometime another.  It's a query that she runs.  Other
7  information that I may get along with multiple other
8  Autozone employees may have an Autozone header on it.
9  Q.   Okay.  So with regard to this Exhibit 9, if
10 this is an Autozone report, there is no way to tell
11 from the document itself; is that correct?
12 A.   I have not seen it before, so I don't know,
13 not by just looking at it, no.
14 Q.   And there is nothing on here that you can look
15 at that would identify it as an Autozone report?
16 A.   Not without taking a guess, no.
17 Q.   And the same would be the case of Exhibit 8;
18 is that correct?
19 A.   Correct.
20 Q.   Looking at Exhibit 9, it identifies -- if you
21 just take the first person, it looks like Alejandro
22 Agala, A-l-e-j-a-n-d-r-o A-g-a-l-a.  It shows
23 Department ID 2227, and then it has Sales, Part-Time.
24 And then it says Action TER, I take that to mean
25 terminated, and reason A4, And then an effective date

## Page 95

1  8/6/2005.
2       Do you understand from what is on here what
3  that is intended to say?
4  A.   I could speculate.
5  Q.   Do you know what reason A4 means?
6  A.   No.
7       MS. TIFT: Object to the form of the question.
8  If you want to provide her the legend that was also
9  supplied with this, she could probably read it for you,
10 Mr. Bailey, this is misleading and unfair.
11      MR. BAILEY: Thank you.
12 Q.   You don't know what A4 is?
13 A.   No.
14 Q.   Do you have -- is there a document in Human
15 Resources from which you could draw the information of
16 why a person is terminated?
17 A.   Would you clarify that?
18 Q.   Sure.  When a person is terminated is there a
19 document that is filled out and stored in Human
20 Resources that identifies why a person is terminated?
21 A.   All separations are handled at the store level
22 or Operations level of appropriate nature.  I do not
23 separate anyone that doesn't work for me, that will be
24 entered into the store SMS system and would be along
25 with other data uploaded to the office in Memphis.

## Page 96

1       So I would not code it.  If you are asking me
2  if I could find out what this meant, I could call and
3  ask someone.
4  Q.   Do you have people that work for you?
5  A.   Yes.
6  Q.   If you terminate someone that works for you,
7  do you have a termination form that you fill out?
8  A.   Yes.  And it is not like the store's.
9  Q.   Does the store have a termination form?
10 A.   It's an internal form, it's in the computer.
11 They complete it electronically in the computer.
12 Q.   So the form itself exists, it's in the
13 computer?
14 A.   Correct.
15 Q.   If you want to print that form out it would be
16 in the computer?
17 A.   I don't know if it's printable in the way that
18 you are -- we do not have a print screen function.  So
19 if you are looking to just print out a blank page of
20 what you see on the screen, I don't know if that's
21 possible.
22 Q.   If I --
23 A.   Could you look at it?  Yes.
24 Q.   Could I print out a copy of what I see on the
25 screen?

## Page 97

1       MS. TIFT: Object to the form of the question,
2  asked and answered.
3       THE WITNESS: If it's not completed, I don't
4  know that you can.
5  Q.   MR. BAILEY: Let's say that we completed the
6  form.
7  A.   Yes, you can print that.
8  Q.   Alejandro Agala has now been terminated and
9  the form was filled out.  It was done on August 6,
10 2005.  Can I get a copy of that?
11 A.   Yes.  At that time, I believe.
12 Q.   Do you know if that is saved into the
13 computer?
14 A.   I don't know.
15 Q.   Well, do people have Human Resources files,
16 personnel files?
17 A.   Yes.
18 Q.   When someone is hired you put their hire
19 information in the file?
20 A.   Some of it, yes.
21 Q.   For example, you put in the file an
22 application?
23 A.   Yes.
24 Q.   And you put in the information, their W-4, and
25 that kind of stuff, W-2 Forms?

25 (Pages 94 to 97)

**EXHIBIT 5**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

MICHAEL MIGIS, individually,

and on behalf of all other

persons similarly situated,

          Plaintiff,

     vs.                    NO. 0711-13531

AUTOZONE, INC., a Nevada Corporation,

          Defendant.


VIDEOTAPED

DEPOSITION OF MICHAEL MIGIS


Taken on Behalf of the Defendant

Tuesday, May 20, 2008

Michael Migis          May 20, 2008

1    sorry.  Can -- can I retract that?

2  Q    Sure.

3  A    The telephone conversation did happen.  But it

4       was my first initial conversation with 401K,

5       and it was before I had actually quit AutoZone.

6  Q    Okay.

7  A    And what I had asked them is, I asked them if I

8       could take out a loan against my 401K.  And I

9       had an existing thousand-dollar loan from 2002

10      that I used to get my wife and I up to the

11      Portland area.  And because of that outstanding

12      loan, they could not give me a second loan on

13      my 401K.

14 Q    Okay.  So as best you know, did that happen on

15      the 6th, Monday?

16 A    Yes.

17 Q    Okay.  And then what was the next thing that

18      happened?

19 A    I called corporate.

20 Q    Okay.

21 A    And I asked them -- basically, I had the same

22      conversation with AutoZone corporate.  And

23      whoever I talked to told me that the only way

24      that I could access my 401K money was if either

25      I retire or I quit the company.  I hung up the

Michael Migis          May 20, 2008

1   Q     Okay.

2   A     You're talking on-the-clock, get paid

3         on-the-clock.

4   Q     Okay.  So you're pretty confident that you were

5         not paid for any days after February 4.

6   A     February 4th was the last day that I worked for

7         AutoZone.

8   Q     Okay.

9   A     February 6th was the day that I quit.

10  Q     Okay.  And you quit by informing your peer,

11        Scott Klein?

12  A     He's my equal.

13  Q     Right.

14  A     Yes.  I made an attempt to call Mike Italiano.

15        That was my first attempt.

16  Q     Typically, when would you have received the --

17        is there usually a three-week lag between when

18        you work and when you get paid?

19  A     Not three weeks.

20  Q     Okay.

21  A     There's a one-day -- you know, if I -- if I

22        were just to start the company today, I would

23        have to wait one week.  They hold one week's

24        pay back.  And -- but if payday was next week,

25        then I'd work this week, work the second week,

Beovich Walter & Friend

Michael Migis          May 20, 2008

Page 113

1   A   Exactly.

2   Q   And you also got the cash out of your 401K?

3   A   No, my 401K was sitting in the bank for a week

4       before I got my last check from AutoZone.

5   Q   Okay.  Do you recall about how much it was that

6       you received from your 401K?

7   A   Well, after 20 percent federal taken out of it,

8       it was approximately $9,000 -- $9,000.

9   Q   Okay.  And then did you get any other checks

10      from AutoZone besides these three, the last

11      paycheck, the stuff from the sale -- of the

12      stock purchase plan and the 401K proceeds?

13  A   The 401K proceeds did not come from AutoZone.

14  Q   Okay.  Right.  But beyond those three checks,

15      did you get any other payment from AutoZone or

16      the --

17  A   I -- I received one check for the sale of my

18      stocks.

19  Q   Right.

20  A   And then I -- I want to say three checks, as

21      far as relative to stock.

22  Q   Okay.  Three checks?

23  A   And that -- and that includes balanced.  There

24      wasn't enough moneys to buy stocks.  This is

25      what was left over, and that was the final

Beovich Walter & Friend

d4bf5154-1ee8-4713-889b-13fc3453a6d5

Michael Migis                    May 20, 2008

Page 116

```
 1        And I said, I need you to terminate me out of
 2        the system so that corporate can terminate me
 3        out of the system so that 401K can be notified
 4        I've been terminated so they can release my
 5        monies to me.
 6    Q   Okay.  And do you have an idea in your mind
 7        about when that conversation happened?
 8    A   I want to say Tuesday following the Monday that
 9        I -- that I left the company.  I think Mike
10        Italiano was off that Monday, I -- I think.
11    Q   And then the second time you talked to him?
12    A   Would have been more towards Friday.
13    Q   Okay.
14    A   But that was not because I did not try to get
15        ahold of him before that.
16    Q   Right.
17    A   I tried calling the store, he was not there.
18        It was his day off.
19    Q   Okay.  And the second --
20    A   But --
21    Q   Did you ask him if the check was at the store?
22    A   I hadn't even been terminated yet.
23    Q   Okay.
24    A   So there's no way that -- that the check would
25        be at the store at that point in time.
```

Beovich Walter & Friend

d4bf5154-1ee8-4713-889b-13fc3453a6d5

Michael Migis                 May 20, 2008

1     that I won't be terminated until sometime

2     later; correct?  My intentions --

3  A   If --

4  Q   -- might not be clear.

5  A   If one were to do that, then you would be

6     correct.

7  Q   Okay.  Did you ever know of any employees who

8     just stopped coming in and then came back and

9     said:  Look, I'm really sorry.  I just went off

10    with my girlfriend.  Or I did whatever, and I'm

11    sorry, and I'd like to be reinstated?

12  A   Not -- not the situation that -- that you

13    described, no.

14  Q   Anything like that?

15  A   I personally have walked off the job from

16    AutoZone, took three days off and came back and

17    assumed the same position with the company.

18  Q   Okay.

19     THE VIDEOGRAPHER:  Eight minutes.

20     MS. TIFT:  Okay.

21  Q  BY MS. TIFT:  Would you agree with me that hourly

22    employees are personally responsible -- your

23    job -- to clock in correctly at the register?

24  A   Yes.

25  Q   And if you don't clock in correctly at the

Beovich Walter & Friend

d4bf5154-1ee8-4713-889b-13fc3453a6d5

**EXHIBIT 6**

AutoZoner Termination Report          *** AutoZone 2236 ***          02/08/2006
                                                                     09:43:55
                                                                     Page   1

      AutoZoner Emp ID: 10090549
       AutoZoner Name: MIGIS, MICHAEL
     AutoZoner Address:
        AutoZoner City:
       AutoZoner State: OR                    REDACTED
         AutoZoner Zip: 97220
       AutoZoner Phone: (503)
    Termination Reason: Quit With Notice
      Last Day Worked: 02/10/2006
        Last Day Paid: 02/10/2006
    Would You Rehire ?: No

    *Comments

    MIKE FAILED TO SHOW FOR WORK THE STORE
    WAS NOT OPENED ON TIME

    WRONG KEY PRESSED SHOULD READ QUIT
    WITHOUT NOTICE


    Manager Signature:  _Michael Stein_
       Completed By: ITALIANO, MICHAEL
         Job Title: Manager
              Date: 02/08/2006

AZ/MIGIS 0001347

**EXHIBIT 7**

# Being a Manager





©2005 AutoZone, Inc. All Rights Reserved.

- 1 -
REV: 07/05

AZ/MIGIS 0002069

Types of disciplinary action (continued)

| Type of Action | Details |
|---|---|
| Termination | AutoZone is an at will employer. Termination may be a result of unsatisfactory or inefficient job performance or unacceptable personal conduct.<br><br>• Before considering termination of an AutoZoner,<br>  • the Store Manager should discuss the problem with the DM, RM or RHRM, and<br>  • the RHRM should discuss the problem with DHRM/AutoZoner Relations.<br><br>• Once an agreement is reached on the need to terminate an AutoZoner, a dismissal conference must be scheduled with the following people duly notified and in attendance,<br>  • the Manager or other person chosen by AutoZone management to conduct the conference<br>  • the AutoZoner, and<br>  • if the person conducting the conference chooses, security may also be present.<br><br>**IMPORTANT:** No attorney shall represent either side at the conference. The conference attendees will review the reasons for termination and documentation. |

*Continued On Next Page*

AZ/MIGIS Q002177

**EXHIBIT 8**

Page 90

1    Q    Under Last Date, what does that identify?

2    A    That would be the last date worked.

3    Q    That's the last day that an employee

4    performed labor?

5    A    That's the last date that the employee had

6    any time in the time clock.

7    Q    So this would be the last day an employee

8    worked?

9    A    Correct.

10   Q    Where there was time recorded for their

11   work?

12   A    Right.  If they worked the time recorded

13   for that date, that was the date.

14   Q    And then on the other side it says Off

15   Cycle.  What does that mean?

16   A    Off Cycle meaning that we have a period for

17   pay cycles.  "Yes" means it was paid during the pay

18   cycle; "no" means it was paid in between pay cycles.

19   Q    Let me back up and see if I can understand

20   that.  If it says Off Cycle, No, that means they

21   received their check on the next regular payday, or on a

22   regular payday?

23   A    That is correct.

24   Q    And if it says Off Cycle, Y, meaning yes,

25   it means the check was prepared, but not at a regular

COOK COURT REPORTING, INC. - 503-537-0339
www.cookcourtreporting.com

e0b89894-d645-4133-97f9-8b42808be509

Page 92

1          A    For net, right.

2          Q    When you look at one of these, would there

3     have been a gross pay?  If you looked at a screen print

4     when you said this might have been made up of screen

5     prints, would there have been a Gross Pay column?

6          A    I don't recall.

7          Q    And then over, the next thing is Reason

8     B-3?  Do you know what B-3 means?

9          A    There is a legend towards the back, and we

10    go to -- B-3 would be page 1218, and B-3 would be almost

11    past halfway.  B-3, violation of company policy.

12         Q    And over there it says VOL or INVOL in a

13    column across from that where you are looking at B-3 on

14    page 1218?

15         A    Yes.

16         Q    And it says Involuntary, does that mean

17    someone was fired?

18         A    Yes.

19         Q    Can you tell me from this particular

20    document, can you tell me what day the employee -- and I

21    am looking at employee 1004509, the first employee

22    listed on this document, can you tell me what day that

23    employee was fired?

24         A    No.

25         Q    The next one down, which is employee ID

COOK COURT REPORTING, INC. - 503-537-0339
www.cookcourtreporting.com
e0b89694-d645-4133-97f9-8b42808be509

1          A    If I would tell the manager to put quit

2    with notice?

3          Q    Yes.

4          A    Let me think about it.  I have never had

5    that question asked.  I couldn't tell what the manager

6    would do, but that's what I would tell the manager, quit

7    with notice.

8          Q    And from your background in working in

9    Oregon, do you know whether or not managers received any

10   training on when they are to make sure people get paid

11   if someone quits with notice or without notice?

12         A    Yes, there's a training manual for that,

13   terms, and they go through the training and they deal

14   with how to process if somebody, quote, unquote -- for

15   example, if somebody gets terminated.

16              And the HR manager will approve the

17   termination, and then will call the Payroll Department.

18   And they will process -- the Payroll Department will cut

19   a check within the guidelines of whatever state we're

20   operating.

21         Q    Okay.  Were you -- did you have any review

22   of the Request for Admissions that were made to Auto

23   Zone having to do with the production of this particular

24   document?  And I am talking about Exhibit No. 3.

25              MS. ALPERN:  Are you talking about at the

COOK COURT REPORTING, INC. - 503-537-0339
www.cookcourtreporting.com
e0b89694-d645-4133-97f9-8b42808be509

**EXHIBIT 9**

```
AutoZoner Termination Report        *** AutoZone 2203 ***        01/29/2007
                                                                 12:45:31
                                                                 Page   1

        AutoZoner Emp ID: 10346896
        AutoZoner Name: CADENA, BLADIMIR
     AutoZoner Address: 1412 N DEBORAH RD
        AutoZoner City: NEWBERG
       AutoZoner State: OR
         AutoZoner Zip: 97132
       AutoZoner Phone: (503)914-9171
    Termination Reason: Abandoned Job *
       Last Day Worked: 01/03/2007
         Last Day Paid: 01/03/2007
    Would You Rehire ?: No
```

*Comments

_NO CALL NO SHOW_
_Called left message 5 DAYS IN A ROW_
_NO REPLY_
_DIDN'T return any calls._

```
Manager Signature:  _____
        Completed By: NARAYAN, RAJ
           Job Title: Manager
                Date: 01/29/2007
```

AZ/MIGIS 0001819

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2008, I served a full, true, and correct copy of the following document:

**DECLARATION OF LEIGH ANN TIFT IN SUPPORT OF DEFENDANT'S**

**OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**

as indicated below:

☐    By delivery via messenger, or otherwise by hand,

☒    By facsimile,

☐    By e-mail,

☒    By mailing same, postage paid,

addressed to:

Bailey Pinney & Associates LLC
Attorneys at Law
1498 SE Tech Center Place
Suite 290
Vancouver, WA  98683
Fax (360) 567-3331

Of Attorneys for Plaintiff

By _____
Savanna L. Stevens

Firmwide:85446067.1 013306.2124

DEC OF L. TIFT ISO OF DEF'S OPP. TO
PLAINTIFF'S MTN TO ENFORCE
COURT ORDER

4

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1

2

3

4

5

### IN THE CIRCUIT COURT OF THE STATE OF OREGON
### FOR THE COUNTY OF MULTNOMAH

6

MICHAEL MIGIS, individually, and on
behalf of all others similarly situated,

7                                                    Case No. 0711-13531

8                    Plaintiff,          PLAINTIFF'S RESPONSE TO
                                         DEFENDANT'S MOTION FOR
9        v.                              PARTIAL JUDGMENT ON THE
                                         PLEADINGS
10

11    AUTOZONE, INC.,                    Date:   July 11, 2008
                                         Time:   1:30 p.m.
12                   Defendant.          Court:  The Hon. Jerome LaBarre
                                         Rm:     702

13

The Court should deny Defendant's motion for judgment on the pleadings on

14  Plaintiff's meal period claims. Plaintiff agrees that his rest period claim is no longer viable

15  based on the Oregon Supreme Court's decision in *Gafur v. Legacy Good Samaritan Hosp. &*

16  *Med. Ctr.*, ___ Or ___ (May 15, 2008). Defendant does not properly distinguish between

17  Plaintiff's meal and rest period claims. Rather, Defendant states that both claims must be

18  dismissed because "no private right of action for meal and rest period violations exists."

19  Def's Memo, p. 3. *Legacy* says no such thing.

20          In *Legacy*, the Supreme Court examined the Bureau of Labor & Industries' (BOLI's)

21  administrative rules that applied to rest periods and determined that they do not require

22  employers to pay **additional wages** in the event of their violation. 2008 Ore Lexis 329 *21.

23  *Legacy* does not hold that an employee cannot ever bring a "private" claim for missed breaks.

24  Neither *Legacy* opinion says what Defendant wanted the Court to say – that a worker cannot

25

26

Page 1 -    PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE
            PLEADINGS

1  bring a private lawsuit for violation of administrative rules governing rest or meals breaks.

2  On the contrary, the Supreme Court relied on BOLI's administrative rules to determine that

3  the employees in *Legacy* were not owed any wages.

4         For rest period claims, *Legacy* stands for the proposition that, so long as the employer

5  paid the employee wages for the entire work period, the employee cannot bring a wage claim

6  to collect "additional wages" if the employee did not receive a rest break.  By extrapolation, if

7  the employee took a break as allowed by BOLI rule and the employer reduced the employee's

8  pay by the amount of the break, the employee would have a wage claim and, therefore "a

9  private right of action," because the BOLI rule requires that the rest break be paid.  Plaintiff

10 agrees, however, that in this case the rest claims are extinguished under *Legacy* because

11 Defendant paid the employees for the entire work period, although the workers did not receive

12 a rest period.[1]

13        But *Legacy* does not affect Plaintiff's meal period claims.  They are still viable.

14 Defendant attempts to rely on the Court of Appeals' decision in *Legacy*, but that decision is

15 based on Plaintiff's pleadings in that case, which are different than the pleadings here.  In

16 *Legacy*, the plaintiff failed to allege that the defendant owed the plaintiff wages for improper

17 deductions.  Here, however, Plaintiff alleges that Defendant improperly deducted wages for

18 meal periods.  Unlike the complaint in *Legacy*, Plaintiff's complaint pleads a claim for unpaid

19 wages as the result of Defendant's unlawful reduction of his wages for meal periods of less

20 than 30 minutes in length in contravention of former OAR 839-020-0050.

21        Paragraph 32 of Plaintiff's complaint states,

22        "* * * AutoZone failed to pay wages to its employees for meal periods of less than 30
          minutes in length.  As a result, Plaintiff and other similarly situated class members are

23

24        [1]Plaintiff asked Defendant to agree to allow Plaintiff to amend the complaint to remove

25 the rest period claim, but Defendant did not agree.

26

Page 2 -  **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE
          PLEADINGS**

1   entitled to wages for the unprovided meal period violations, for the six-year period
    before the filing of this class action lawsuit * * *."

2

3   Similarly, under the class claims, paragraph 39 states:

4       "For Plaintiff and all similarly situated class members who worked for AutoZone in
        Oregon, within the six-year period before the filing of this complaint, from whom
        AutoZone deducted wages from the class members' wages for meal periods of less

5       than 30 minutes in length."

6   In other words, Plaintiff's claim is limited to wages that Defendant improperly deducted from

7   Plaintiff's pay – that is, Defendant owes Plaintiff wages where Plaintiff did not receive a 30-

8   minute meal period relieved of all duty, and Defendant deducted wages from Plaintiff's pay.

9       BOLI has long interpreted its administrative rule to require that the employer pay for

10  any meal period that does not allow the employee 30 minutes relieved of all duties.  For

11  example, the BOLI website provides FAQ's for employers, including:

12      Q:  "What is the nature or circumstances of the work that prevent me from giving my
        workers an uninterrupted 30-minute meal period?"

13

14      A:  "If, because of the nature or circumstances of the work, an employee is required to
        remain on duty or perform **any** task during the meal period, the employer must
        consider the meal period as hours worked and pay the employee for the period * * *."

15      (Emphasis supplied).  www.oregon.gov/BOLI/TA/T_FAQ-Restandmeals.html.

16  This requirement has been reprinted in BOLI's employer handbook for many years, *see e.g.*

17  *Wage and Hour Laws*, Handbook for Oregon Employers, 1996 revised edition, p. 50: "Meal

18  periods must be 30 minutes without interruption to be unpaid time."  Administrative decisions

19  by the Commissioner also illustrate BOLI's longstanding requirement that the employer pay

20  for a lunch period that does not meet the regulatory requirement of 30 minutes relieved of all

21  duty. *See, e.g., In the Matter of Judith Wilson*, 5 BOLI 219, 226 (1986) (OAR 839-20-050

22  does not allow an employer to deduct meal periods from an employee's wages when the

23  employee is not completely relieved from duty).

24      In short, unlike *Legacy*, where the Court found that BOLI's practice and prior

25  interpretations were inconsistent with BOLI's assertion that an employer would owe

26

Page 3 -   **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE
           PLEADINGS**

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1   "additional wages" for missed rest breaks, BOLI's longstanding policy is to require payment

2   for meal periods that are less than 30 minutes or for which the employee is not relieved of all

3   duty.  That is what former OAR 839-020-0050 required and that is what the recent

4   amendment to the rule requires.[2]  Neither *Legacy* appellate decision supports Defendant's

5   premise that Plaintiff cannot bring suit for unpaid wages caused by Defendant's failure to

6   properly pay employees for meal breaks.

### CONCLUSION

8       The Court should deny Defendant's motion for partial judgment on the pleadings for

9   Plaintiff's meal period claims.

12       Dated this 9th day of June, 2008.

14                           BAILEY, PINNEY & ASSOCIATES, LLC

17                           A.E. "BUD" BAILEY, OSB 87157

18                           CHEY POWELSON, OSB 03551

                        Of Attorneys for Plaintiffs

---

22       [2]Former OAR 839-020-0050 (1)(a) defines "appropriate meal period" to mean "(A) period of not less than 30 minutes during which the employee is relieved of all duties for each work period of not less than six or more than eight hours. * * *" OAR 839-020-0050 (B) distinguishes an appropriate meal period from "a period in which to eat" as one in which the employee continues "to perform duty" and "which is not deducted from the employee's hours worked." BOLI recently amended the rule, which now explicitly states, "The employee is paid for any and all meal periods in which the employee is not completely relieved of all duty." OAR 839-020-0050 (6) (g).

Page 4 -    **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing **Plaintiff's Response to Defendant's Motion for Partial Judgment on the Pleadings** upon:

Amy Alpern
Littler Mendelson
1750 SW Harbor Way, Suite 450
Portland , OR 97201

by the following indicated method or methods:

[X]    by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the person as shown above, the last-known office address of the person, and deposited with the United States Postal Service at Vancouver, Washington on the date set-forth below.

[X ]    by **faxing** a full, true, and correct copy thereof to the person at facsimile number 503-914-1816, which is the last-known fax number for the person, on the date set forth below.  The receiving fax machine was operating at the time of service and the transmission was properly completed.  Attached herewith is the confirmation of receipt which was generated by the transmitting machine.

DATED:    June 9, 2008

CHEY POWELSON, OSB 035512
Of Attorneys for Plaintiff

1

2

3

4

5

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

6    MICHAEL MIGIS, individually, and on
     behalf of all other persons similarly          No. 0711-13531
7    situated,,
                                                    **DEFENDANT'S OPPOSITION TO**
                                                    **PLAINTIFF'S MOTION TO "BIND OR**
8                       Plaintiff,                  **COMPEL ORCP 39C(6) DEPOSITION**
                                                    **ANSWERS**
9              vs.

10   AUTOZONE INC., a Nevada
     Corporation,,                                  **DATE:  JULY 11, 2008**
11
                        Defendant.
12

13   **I.    INTRODUCTION**

14         Plaintiff's motion, in essence, asks this court to require a corporation to prepare a corporate

15   representative to testify about legal defenses, such as laches, estoppel, and the technical requirements

16   for class certification under the auspices of ORCP 39C.  As was explained to Plaintiff's counsel,

17   there is simply no way to prepare a corporate witness—in this case, a Divisional Human Resources

18   Manager--to testify about legal matters without first educating the witness about the legal definition

19   of these terms.  If that is required, and as most courts agree, what happens is that attorneys must

20   disclose work product, and, probably more significantly, a lay person is charged with learning and

21   then explaining legal matters that are a challenge even for licensed attorneys.

22         AutoZone does not disagree with the basic premises set out by Plaintiff.  It is true that a

23   corporation must select a knowledgeable witness in response to a 39C deposition notice, and must

24   prepare the witness to testify about matters identified in the notice.  AutoZone did so.  However, that

25   duty does not stretch to require that a corporation provide a legal education to a lay witness nor that

26   the corporation's attorneys waive evidentiary privileges, and that is the disagreement here.

---

PAGE 1 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

## II.    RELEVANT FACTS

### A.    Plaintiff's Two 39C(6) Deposition Notices.

Plaintiff's first 39C(6) deposition notice is attached, in full, as Exhibit 1 to the Declaration of Tift.  Plaintiff's second 39C(6) deposition notice is attached, in full, as Exhibit 2 to the Declaration of Tift.  While Plaintiff's motion conflates the two, a witness, Carlos Jon, was produced in Oregon in response to the first notice.  AutoZone objected to the second notice, in that the witness with knowledge resides in Tennessee, works in Tennessee, was deposed prior to this time in Tennessee, would be subject to hardship should he be required to travel from Tennessee for the purpose of a relatively brief examination, and AutoZone offered less burdensome, less costly alternatives, i.e., a video deposition and/or stipulating to the witness's prior testimony.  Plaintiff's counsel agreed to move the date for the deposition on topics addressed in the second notice to May 30, while continuing to argue that the deposition was to take place in Oregon.  AutoZone filed a motion for protective order regarding the second notice prior to the re-scheduled date, and the deposition was not conducted.  Decl. of Tift.  Accordingly, this motion to "bind" a witness to his answers given at a deposition necessarily concerns only the first 39C(6) notice and the subjects addressed by that notice.

### B.    The Subjects Addressed by Plaintiff's First 39C(6) Notice.

In summary, the subjects noticed in the first 39C(6) notice were:

1.    All material facts related to Defendant's First Affirmative Defense that Plaintiff failed to state a claim for class-wide relief and that Plaintiff Migis was an inadequate class representative;

2.    All material facts related to Defendant's Second Affirmative Defense that Plaintiff was "treated fairly and in good faith" and were paid all monies due and/or believed to be due;

3.    All material facts related to Defendant's Third Affirmative Defense relating to estoppel;

4.    All material facts related to Defendant's Fourth Affirmative Defense relating to laches;

---

PAGE 2 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

5.      All material facts related to Defendant's Fifth Affirmative Defense relating to a bona fide dispute;

6.      All material facts related to Defendant's Sixth Affirmative Defense relating to the requirements set forth in ORCP 32 for certification of a class action lawsuit, and (a) the total number and location of AutoZone stores in Oregon; (b) the total number of full and part-time AutoZone employees in Oregon; (c) the total number of AutoZone employees who terminated in the six years preceding the complaint; (d) the total number of AutoZone employees whose "time records show one or more work weeks of more than 40 hours of work" for the six year period preceding the complaint; (e) the total number of AutoZone employees who delivered or picked up parts or other inventory; and (f) all other material facts relating to AutoZone's contention that class certification pursuant to ORCP 32 was not appropriate.

7.      All material facts related to Defendant's Eighth Affirmative Defense relating to the claim that Plaintiff's claims are barred because there is a prior action pending, i.e., Joarnt v. AutoZone;

8.      All material facts related to Defendant's denials to Plaintiff's First Requests for Admission;

9.      "The document(s) Bates-numbered AZ/Migis 0001212-1215 and... 1216-1219, including the identity of all persons involved in the creation, review and/or modification of such documents...";

10.     "The contents and authenticity of the documents Defendant has produces, as of the date of the deposition, during the course of this lawsuit;"

11.     "The contends and authenticity of the documents requested below."

**C.      AutoZone's Response to the First 39C(6) Deposition Notice.**

In response to this Notice, on April 21, 2008, nearly one month before the deposition was scheduled, counsel for AutoZone drafted a letter, outlining objections to the Notice. *See*, Exhibit 3,

---

PAGE 3 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

1   Decl. of Tift.  Plaintiff's motion trivializes the concerns set forth by AutoZone (for example, in

2   response to the second category, the *actual* discussion was about what was intended, and it was

3   explained that "we [AutoZone] can designate a payroll person to explain AutoZone's payroll

4   policies, if that is the crux of this inquiry.  You [Mr. Powelson] suggested that it would be best to file

5   a motion to make more definite and certain.  I think it is incumbent upon Plaintiffs to articulate the

6   topics upon which they wish to examine corporate witnesses.  If I do not hear from you with a

7   further explanation, the witness will be prepared to talk about payroll policies." *See*, Exhibit 3.)

8   Notably, Plaintiff's counsel did not ever offer clarification or give any additional specifics that were

9   intended by this inquiry.

10        On May 8, 2008, counsel for AutoZone again warned that Plaintiff's intention to examine a

11   lay witness about legal matters such as laches was likely outside the scope of a proper 39C

12   deposition.  *See*, Exhibit 4, Decl. of Tift.  Plaintiff's counsel again professed to differ, declined to

13   take any notice of AutoZone's objections, and indicated the deposition would go forward.  Decl. of

14   Tift.

15        **D.    Mr. Jon's Deposition.**

16        On May 15, 2008, Carlos Jon, a Divisional Human Resources Manager appeared for his

17   deposition, and was represented by Ms. Alpern, counsel for AutoZone.  Plaintiff, in this motion,

18   wholly distorts his testimony.

19        Topic 1, Failure to State a Claim:  Plaintiff complains that Mr. Jon "could not testify as to

20   any facts of which AutoZone was aware that would give rise to its contention that Plaintiff Migis

21   could not obtain relief in this lawsuit for meal breaks."  In point of fact, that was not the question

22   asked.  The question asked by Mr. Bailey was:

23        BY MR. BAILEY:  I don't want a legal conclusion.  I have asked you if you are aware of any
          facts that would give rise to this statement.  In other words, do you understand anything,
24        besides what you have talked about today, that would -- or ***have facts that would enhance or
          tell us why Mr. Migis could not obtain relief in his lawsuit for his allegations in connection***
25        ***with meal breaks?*** (emphasis added).

26

PAGE 4 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

1    *See*, Jon Tr. at 41:25-42:7. [1]  In response to counsel's question, Ms. Alpern explained:

2        MS. ALPERN:  Certain of the questions that you have in your notice, to the extent that they
         are fact based, this witness is prepared to answer.  Certain other questions, and I guess 104-A
3        is a good example, "failed to state any claim for which class-wide relief may be granted," I
         think categorically cannot be answered by a nonlawyer, because I think they require legal
4        knowledge and legal analysis.  So we're doing our best to answer factual questions that you
         put to the witness.  And to the extent that the factual part of your question is tied to the legal
5        theory, I think that's where it becomes hard for the witness.  *So you are not asking him
         about whether Migis missed meal breaks.  You are asking him whether plaintiff failed to
6        state a claim in which meaningful relief can be made with regard to alleged missed meal
         breaks.*  And I think that's where the deponent is having a hard time.  I could have sat down
7        and said to him, these are all of our legal theories and you go regurgitate that in a deposition,
         but he couldn't do that without revealing our theory and thought processes and
8        communications. (emphasis added)

9    *See*, Jon Tr. at 45:25-46:23.  To answer this inquiry, Mr. Jon would have to know the ins and outs,

10   and appellate history of *Gafur v. Legacy Good Samaritan Hosp. and Medical Center*, --P.3d--, 2008

11   WL 2054448 (OR).  This inquiry is inappropriate, and could not be answered by a lay person.

12       Topic 2, Good Faith Payment of Wages Due:  Plaintiff contends that Mr. Jon "did not know

13   how to answer whether Plaintiff Migis was 'paid or not paid,'" and that therefore Mr. Jon was

14   unprepared to testify concerning AutoZone's Second Affirmative Defense.  First, Mr. Jon's

15   testimony in regard to the Affirmative Defense was:

16       A  I don't understand the term lawful business reasons, but, yes, we pay according to -- in
         good faith.
17
         Q  Tell me what -- when you say Auto Zone pays in good faith, tell me what it is that you
18       believe AutoZone has done to establish the method in which it makes payments?

19       A  Time card is generated, goes to Payroll, paycheck is drawn and paid to the Auto Zoners.
         If there is discrepancies before submission, or what have you, then the manager needs to
20       correct it before submitting to Payroll.

21   Jon Tr. at 48:6-16.  Beyond this, Mr. Jon <u>was</u>, admittedly, unable to talk about Mr. Migis' pay in

22   specific instances, or whether he missed lunch or rest breaks.  As to the first topic, Migis' specific

23   pay records are not addressed in the 39C(6) Notice, and meal and rest break claims are governed by

24   *Gafur*.

25

26   ────────────────
     [1] Excerpts of the Deposition of Carlos Jon are attached as Exhibit 5 to the Declaration of Tift.

PAGE 5 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1     Topic 3, Estoppel:  Plaintiff's counsel, for obvious reasons, never asked Mr. Jon if he could

2     explain "estoppel."  Instead counsel asked Mr. Jon if he could testify about Migis' pay and his

3     failure to report compensable time, could explain "end of day" tasks performed by Store Managers,

4     and could address whether employees who were present at the end of the day failed to correctly

5     report their time.  *See*, generally, Jon Tr. at 64-65; 70-71.  None of these topics are addressed in the

6     Deposition Notice.  Even if they were, a corporate representative could not testify whether Mr. Migis

7     reported his time correctly—Migis must do that.

8     Topic 4, Bona Fide Dispute:  Questions from counsel to Mr. Jon on this topic are as follows:

9     Q  With respect to Mr. Migis and any claims that he made, do you have any understanding that Auto

10    Zone believes that there is a good faith dispute between Auto Zone and Mr. Migis over wages that are owed?

11

12    A  Wages owed to him?

13    Q  Yes.

14    A  Not in detail.

15    Q  If I asked you if you knew if there were some underlying facts that, while not admitting that wages are owed, but if Auto Zone were to say, if I did owe wages to Mr. Migis, there is a good faith belief on my part, Auto Zone's part, that I don't owe them.  You wouldn't know the facts surrounding the good faith believe that wages alleged to be owed are not owed, correct?

16

17    MS. ALPERN:  Objection; vague.

18    THE WITNESS:  I am not aware.

19    *See*, Jon Tr. at  80:4-20.  Once again, without specific instruction from a lawyer, no lay person can

20    give an explanation for a "good faith" or bona fide dispute sufficient to establish a defense to a wage

21    claim—yet that is the exact question that was asked of Mr. John.  managers, which provide, in

22    relevant part, that dismissal of an employee cannot take place on the spot.  Decl. of Tift; see, also

23    Exhibit 2 to Decl. of Tift.

24    Topic 5, Requirements for Class Certification:  Plaintiff's motion makes it clear that

25    counsel's intent was to question Mr. Jon about every element necessary to establish class

26

---

PAGE 6 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1   certification under ORCP 32.  For example, Plaintiff contends that Mr. Jon was an appropriate

2   witness to discuss "numerosity."  Not only is that incorrect legally, it is practically unnecessary.

3   Plaintiffs are well aware that there were more than 100 AutoZone employees who terminated

4   employment, for one reason or another, in the one year period 2006-2007.  In fact, AutoZone's

5   summary report that details all of those terminations is the subject of another motion pending before

6   this Court.  Presumably, Plaintiff's counsel is aware that this number is easily within most court's

7   parameters for satisfying numerosity.  Furthermore, the information Mr. Jon did provide shows that

8   in a single year, 2007 for example, AutoZone employed at least 411 employees.  *See*, Jon Tr. at 160.

9   Again, this is easily sufficient as a number to establish numerosity.

10         Topic 6, the RFA's.  Plaintiff's Deposition Notice asked that AutoZone produce a person

11   who could testify about why AutoZone denied Plaintiff's Requests for Admission 1-3.  Plaintiff's

12   counsel suggests that Mr. Jon never gave any answer to this line of inquiry, but he did.  Mr. Jon

13   testified:

14         A   Yes.  I just want to add that you asked me about if I can determine if people were paid on
              time or
15         not based on Exhibit 3.  Our Payroll Department, when they get a request for paychecks for
              the last – you know, they deal with 50 states.  So they are very qualified to tell when
16         everyone gets paid on time, and we do that very diligently.  If there's a mistake, for whatever
              reason, when it's brought to our attention we will rectify it appropriately.  So I wanted to
17         make sure I stated that.

18   Jon Tr. at 123:-124:7.  This answer is entirely consistent with AutoZone's specific denial of

19   Plaintiff's Requests for Production 1-3.

20         In regard to Plaintiff's questions about who created AutoZone's summary report, Plaintiff's

21   counsel was told:

22         The request seeks a witness to testify to the person who created the summary document Bates
           numbered AZ/Migis 0001212-1215.  If you want a witness to testify to the person who
23         prepared that report, we will produce a witness.  However, the report was created in
           Memphis, TN, and the witness will be located in Memphis, TN.  I also told you that we are
24         attempting to retrieve all termination reports and all final pay information for the employees
           on the summary list.
25

26

---

PAGE 7 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1   *See*, Exhibit 3, Declaration of Tift.

2   **III.    ARGUMENT AND AUTHORITY**

3          For all of the factual reasons set forth above, the Court should deny Plaintiff's motion to

4   "bind" AutoZone to insufficient answers.  The answers of Mr. Jon, to the extent they are insufficient,

5   are flawed because Plaintiff's inquiries concern legal matters or were so confusing that anyone

6   would be hard pressed to answer them.  As a legal matter, AutoZone complied with its obligations

7   under ORCP 39C.

8          **A.    Plaintiff's Deposition Notice was Flawed.**

9          In Oregon, parties are required to disclose documents that exist and are relevant to that

10  party's affirmative defenses.  *Asato v. Dunn*, 206 Or.App. 753 (2006) stands for that proposition, but

11  does not stand for the broad proposition that a party can serve a 39C(6) deposition notice and inquire

12  about legal theory, attorney client communication, or attorney work product.

13         In *Asato*, there was a discovery request directed to the plaintiffs to produce "financial and

14  investment-related documents."  The Court ordered discovery of these documents, the plaintiffs

15  refused, and sanctions were imposed.  Plaintiff's inquiries to AutoZone do not concern the same

16  kind of information.  Instead, Plaintiff asked that a lay witness testify about the "material facts" that

17  are the bases for legal defenses, i.e., estoppel, laches, and the rules related to class certification.  A

18  corporate defendant is not obliged to prepare a witness to testify about the theory that underlies an

19  legal defense.  Estoppel, laches, and the requirements for class certification are not topics that are

20  familiar to non-lawyers—unlike a party's own financial documents, as was the case in *Asato*.

21         AutoZone does not disagree that a 39C(6) representative must come prepared and be

22  knowledgeable, but does contend that just as a party is precluded from asking a lay witness what a

23  lawyer explained to him or her before a deposition, Plaintiff was precluded from exploring legal

24  theory, attorney client communications and attorney work product with a corporate witness.

25  AutoZone maintains that issuance of a 39C deposition notice doesn't change that.

26

PAGE 8 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

1    There is compelling case law to support AutoZone's position.  In *Ecrix v. Exabyte*, 95 F Supp

2    2d 1155 (DC Colorado 2000), for example, the court explained that questions which seek the

3    discovery of the theory of an affirmative defense or which "invade the privacy of the trial

4    preparation process" fall under the category of mental impressions and are impermissible inquiry.

5    *Ecrix* is based upon a long line of authority reinforcing a distinction between facts and legal

6    impression and legal theory:

> The distinction implicit in Rule 26(b) (3) between documents and tangible things, which are
> discoverable upon the proper showing, and facts for which no special showing is required, in
> no way intimates that Rule 26(b)(3) opens to discovery an attorney's mental impressions. On
> the contrary, the Rule provides that when discovery is ordered upon the proper showing, "the
> court shall protect against disclosure of the mental impressions, conclusions, opinions, or
> legal theories of an attorney or other representative of a party concerning the litigation."

*See, Ford v. Phillips Electronics Instruments Co., 82F.R.D. 359, 360* (E.D. Pa 1979).  *See, also,*

*Laxalt v. McLatchy*, 116 F.R.D. 438, 443 (DC Nevada 1987):

> The Court is mindful, however, that there is a possibility that a discussion of factual matters
> may reveal counsel's tactical or strategic thoughts. (citation omitted)  This appears to have
> been at least part of the impetus behind defendants' objections at deposition, in that the
> plaintiff's questions to the deponents asked them simply to recall all of the relevant facts in
> the litigation. Such broad based questions seem inappropriate...

**B.    Plaintiff's Motion should be Denied in its Entirety.**

AutoZone asks that Plaintiff's Motion be denied in its entirety.  AutoZone made a good faith

effort to produce a witness able to testify to the topics set forth in the first 39C(6) deposition notice.

Mr. Jon made a good faith effort to answer questions put to him.  However, no corporate witness

could be adequately prepared to discuss legal theory, such as that demanded by Plaintiff.

---

PAGE 9 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

1

Dated:  June 12, 2008

2

3

_____
Leigh Ann Collings Tift OSB No.05473
LITTLER MENDELSON
A Professional Corporation

4

5

Attorneys for Defendant
Autozone Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 10 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2008, I served a full, true, and correct copy of the foregoing:

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO "BIND**

**OR COMPEL ORCP 39C(6) DEPOSITION ANSWERS**

☐    By delivery via messenger, or otherwise by hand,

☒    By facsimile,

☐    By e-mail,

☒    By mailing same, postage paid

addressed to:

Bailey Pinney & Associates LLC
Attorneys at Law
1498 SE Tech Center Place
Suite 290
Vancouver, WA 98683
Fax (360) 567-3331

Of Attorneys for Plaintiff

By _____
            Savanna Stevens

Firmwide:85529811.1 013306.2124

---

PAGE 11 – DEFENDANT'S OPP. TO MTN TO BIND OR COMPEL

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA 98101
Phone: 206-623-3300 Fax:206-447-6965

1

2

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**

3

**FOR THE COUNTY OF MULTNOMAH**

4

5

6  MICHAEL MIGIS, individually, and on
   behalf of all other persons similarly

7  situated,

8                    Plaintiff,

9      vs.

10  AUTOZONE INC., a Nevada
    Corporation,

11

12                    Defendant.

No. 0711-13531

**DECLARATION OF LEIGH ANN TIFT IN
SUPPORT OF DEFENDANT'S
OPPOSITION TO PLAINTIFF'S SECOND
MOTION TO COMPEL**

**DATED: JULY 11, 2008**

13

I, Leigh Ann Collings Tift, hereby declare as follows:

14

        1.     I am an attorney representing Autozone Inc. in the above-captioned matter, and I

15

make this declaration in support of Defendants' Opposition to Plaintiff's Motion to Enforce Court

16

Order.  I have personal knowledge of the statements contained herein.

17

        2.     Plaintiff filed this action in November, 2007.  Since that time, Plaintiff has served

18

four separate sets of discovery requests.  In response, AutoZone has produced more than 2200 pages,

19

and I, AutoZone's store managers, and employees at AutoZone's corporate offices have reviewed

20

countless more.  Recently, we have communicated AutoZone's agreement to produce all time

21

records for every Oregon employee in a one year period of time, and this will result in thousands

22

more pages of information that will be produced to Plaintiff.  Further, Ms. Alpern and I met with

23

Plaintiff's counsel at their offices for a discovery conference and have participated in at least a dozen

24

telephone conferences with Plaintiff's counsel to discuss discovery matters.

25

26

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101

Phone: 206-623-3300 Fax:206-447-6965

854 75139

1      3.     This motion to compel follows one such conference, and was filed even though

2  Plaintiff's counsel had been told that AutoZone would review the demands made in a conference on

3  May 15, and would attempt to comply with them.  Mr. Powelson stated to Ms. Alpern and me that he

4  was going to file a motion to compel before we summarized our agreement to produce additional

5  documents and/or produced additional documents although he feared he would "no doubt be thrown

6  under the bus" because he filed the motion without waiting for the promised results of the discovery

7  conferences.  Mr. Powelson could not be persuaded to wait for the documents we agreed to produce

8  before filing a motion to compel.

9      4.     AutoZone provided more than 150 pages of time records for Mr. Migis, back through

10  2004.  Examples of the documents AutoZone produced are attached as **Exhibit 1** to this Declaration.

11      5.     AutoZone also produced Mr. Migis' weekly earnings records.  Examples of the

12  documents AutoZone produced are attached as **Exhibit 2** to this Declaration.

13      4.     Attached as **Exhibit 3** to this Declaration is a true and correct copy of a letter Ms.

14  Alpern sent to Plaintiff's counsel on May 23, 2008 summarizing our discovery conferences.

15      5.     Attached as **Exhibit 4** to this Declaration is a true and correct copy of a second letter

16  Ms. Alpern sent to Plaintiff's counsel discussing AutoZone's discovery and summarizing discovery

17  conferences held with Plaintiff's Counsel.

18      6.     Attached as **Exhibit 5** to this Declaration is a true and correct copy of an email

19  exchange between Ms. Alpern and Mr. Powelson.  AutoZone agreed to produce an expanded report

20  of weekly hours worked by AutoZone employees, but these records contain social security numbers

21  and other personal data.  Ms. Alpern asked that Mr. Powelson sign and return a stipulated protective

22  order because of the nature of the information contained in the employee records.  Rather than sign,

23  Mr. Powelson delayed, accused Ms. Alpern of holding documents "hostage" and generally made a

24  relatively simple exercise difficult.  This conversation occurred after the motion to compel was filed

25  and caused delay.

26

**DEC OF L. TIFT ISO OF DEF'S OPP. TO PLAINTIFF'S 2nd MTN TO COMPEL**     2

1

2     Dated:  June 6, 2008

3                                          Leigh Ann Collings Tift, OSB #05473
                                           ltift@littler.com
4                                          LITTLER MENDELSON
                                           A Professional Corporation
5
                                           Attorneys for Defendant
6                                          AUTOZONE, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DEC OF L. TIFT ISO OF DEF'S OPP. TO**              3
**PLAINTIFF'S 2nd MTN TO COMPEL**

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on June 6th, 2008, I served a full, true, and correct copy of the following

3   document:

4
5   **DECLARATION OF LEIGH ANN TIFT IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION TO COMPEL**

6   as indicated below:

7

8              ☐    By delivery via messenger, or otherwise by hand,

              ☒    By facsimile,

9
              ☐    By e-mail,

10
              ☒    By mailing same, postage paid,

11
    addressed to:

12

13             Bailey Pinney & Associates LLC
               Attorneys at Law
14             1498 SE Tech Center Place
               Suite 290
15             Vancouver, WA  98683
               Fax (360) 567-3331

16
               Of Attorneys for Plaintiff

17

18             By _____
                        Savanna L. Stevens

19

20   Firmwide:85472906.1 013306.2124

21

22

23

24

25

26

DEC OF L. TIFT ISO OF DEF'S OPP. TO          4
PLAINTIFF'S 2nd MTN TO COMPEL

**EXHIBIT 1**

```
PR2437   R01                              AUTOZONE, INC.                         PAGE NO. 25096
PRSMSFTR                                   SMS PAYROLL                           09:52 02/07/06
                                   SMS TIME FINAL HISTORICAL REPORT

                                    L1/L2: AS-71 CENTER: 2236
```

REDACTED

```
EMPLOYEE              MIGIS,  MICHAEL
    STORE SRC +-DATE/TIME IN--+ TRANSIN  +-DATE/TIME OUT-+ TRANSOUT    HOURS    PAY TYPE  RSN
    2236  ADJ 06/01/29 00:00:00 571509   06/01/29 00:00:00 571509      8:00     VACATION  03 ADD/CHG VAC HOURS
    2236  CRD 06/01/31 07:39:00 569607   06/01/31 17:12:00 569940      9:33     REGULAR
    2236  CRD 06/02/01 07:36:00 570122   06/02/01 12:19:00 570282      4:43     REGULAR
    2236  CRD 06/02/01 13:17:00 570360   06/02/01 18:11:00 570663      4:55     REGULAR
    2236  CRD 06/02/02 12:35:00 571002   06/02/02 18:26:00 571341      5:51     REGULAR
    2236  CRD 06/02/02 19:23:00 571396   06/02/02 21:14:00 571510      1:51     REGULAR
    **** EMPLOYEE HOURS           FISCAL WEEK 23                      34:53
```

AZ/MIGIS 0000552

AUTOZONE, INC.
SMS PAYROLL
SMS TIME FINAL HISTORICAL REPORT

**REDACTED**

L1/L2: AS-71 CENTER: 2236

EMPLOYEE              MIGIS,  MICHAEL

| STORE | SRC | +-DATE/TIME IN--+ | TRANSIN | +-DATE/TIME OUT-+ | TRANSOUT | HOURS | PAY TYPE | RSN |
|-------|-----|-------------------|---------|-------------------|----------|-------|----------|-----|
| 2236 | CRD | 06/01/22 11:43:00 | 563628 | 06/01/22 16:35:00 | 563975 | 4:53 | REGULAR | |
| 2236 | CRD | 06/01/22 16:36:00 | 563975 | 06/01/22 16:36:00 | 563975 | 0:00 | REGULAR | |
| 2236 | CRD | 06/01/23 12:38:00 | 564371 | 06/01/23 16:52:00 | 564607 | 4:14 | REGULAR | |
| 2236 | CRD | 06/01/23 18:01:00 | 564617 | 06/01/23 21:17:00 | 564860 | 3:16 | REGULAR | |
| 2236 | CRD | 06/01/24 07:32:00 | 564872 | 06/01/24 12:07:00 | 565040 | 4:34 | REGULAR | |
| 2236 | CRD | 06/01/24 13:15:00 | 565104 | 06/01/24 18:04:00 | 565401 | 4:49 | REGULAR | |
| 2236 | CRD | 06/01/26 12:34:00 | 566286 | 06/01/26 17:14:00 | 566523 | 4:40 | REGULAR | |
| 2236 | CRD | 06/01/26 18:22:00 | 566555 | 06/01/26 21:04:00 | 566705 | 2:42 | REGULAR | |
| 2236 | CRD | 06/01/27 07:41:00 | 566718 | 06/01/27 12:09:00 | 566869 | 4:28 | REGULAR | |
| 2236 | CRD | 06/01/27 13:17:00 | 566928 | 06/01/27 18:19:00 | 567203 | 5:02 | REGULAR | |

**** EMPLOYEE HOURS          FISCAL WEEK 22          38:38

**EXHIBIT 2**

```
                                                    PeopleSoft
Report ID:  PPS414 v1.1                EMPLOYEE 2003 QUARTER 1 EARNINGS RECORD                        Page No.  1
Company     AZO AUTOZONERS INC                                                                       Run Date 02/28/2008
10090549    MIGIS,MICHAEL                                                                            Run Time 13:12:33

            ----Regular/OT----    ----Other Earns---    ----------Taxes----------    Deductions    ----------- 2003 Quarter 1 Year To Date -------------
Paygrp  Payenddt   Hours   Earnings    Hours   Earnings    Fed      State    Local    Dedn          GrossYTD     TaxesYTD    DedYTD      NetPayYTD

OPH     2003-01-04 73.10   900.00      16.00   192.00      255.93   68.89    0.00     144.69        5,922.90     1,383.77    867.63      3,671.50
OPH     2003-01-18 80.65   971.70      0.00    0.00        220.53   59.68    0.00     144.81
OPH     2003-02-01 83.85   1029.30     0.00    0.00        236.80   63.91    0.00     147.11
OPH     2003-02-15 82.00   996.90      0.00    0.00        227.66   61.53    0.00     145.82
OPH     2003-03-01 76.75   921.00      0.00    0.00        206.19   55.96    0.00     142.78
OPH     2003-03-15 75.60   912.00      0.00    0.00        203.67   55.29    0.00     142.42


rand Total Line  471.95   5730.90     16.00   192.00      1350.78  365.26   0.00     867.63
```

AZ/MIGIS 0000282

**EXHIBIT 3**



ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF
COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

OREGON

PENNSYLVANIA

RHODE ISLAND

SOUTH CAROLINA

TEXAS

VIRGINIA

WASHINGTON

May 23, 2008

Amy R. Alpern
Direct: 503.889.8878
Direct Fax: 503.914.1816
aalpern@littler.com

**VIA FACSIMILE (360) 567-3331 AND U.S. MAIL**

Chey Powelson
Bailey Pinney & Associates LLC
1498 SE Tech Center Place, Suite 290
Vancouver, WA 98683

Re:  *Migis v. AutoZone, Inc.*
Multnomah County Circuit Court Case No. 0711-13531

Dear Chey:

On May 15, 2008, I suggested that we set up a telephone conference between you, Bud Bailey, me and Leigh Ann Tift to discuss ways in which we might resolve some of the discovery issues in this case. On May 16, 2008, the four of us spoke via telephone and agreed that the best way to proceed would be to have a face-to-face discovery conference on May 21. I suggested that both you and Mr. Bailey attend the discovery conference with Ms. Tift and I, but Mr. Bailey stated that you are responsible for discovery in the case and that his participation at the meeting was not necessary.

In preparation for the meeting, I asked you to identify for me those documents which plaintiffs believe are outstanding. You agreed, and in fact sent me a letter on May 16 outlining the issues which plaintiffs wished to address at the meeting. You also sent me a copy of the May 9, 2008 letter that you had sent to Ms. Tift regarding discovery. I reviewed those letters, all three document requests, defendant's responses to those requests, along with the documents produced to date, prior to our meeting.

As planned, on May 21, 2008, Ms. Tift and I met you (and Brad Griffin) at your office and discussed in detail all of the current discovery issues. I believe we made progress at that meeting and expect to make more progress as we proceed.

As you recall, we started our discussion by reviewing the documents requested in your May 16, 2008 letter. I set forth here my understanding of our discussion, and have done so in the order outlined in your letter.

1.    You asked if defendant will re-designate and produce in Oregon, at defendant's expense, one or more persons to respond to the questions previously asked in the May 15 ORCP 39(c)(6) deposition notice, but to which designee could not respond

Chey Powelson
May 23, 2008
Page 2

because he did not know. I responded by telling you that the objections we raised with respect to the categories listed in the notice still stand, and that we will not re-designate a witness on categories that we believe will result in impermissible inquiries into attorney-client privileged information. I did advise you that Mark Dessem, whose ORCP 39(c)(6) deposition has been noticed, should be able to address the issue set forth in category 9 of your May 15, 2008 deposition notice, along with a number of the payroll related questions put to Mr. Jon. I also told you at the May 15 deposition that we would provide you with additional information regarding the total number of full- and part-time hourly AutoZone employees for the relevant period of time set forth in the complaint. (This information relates to category 6 of the May 15 deposition notice.)

I have to say, Chey, that the questions asked at the May 15, 2008 deposition went even deeper into attorney-client areas than I had anticipated. To compound matters, on <u>more</u> than one occasion Mr. Bailey <u>re-asked</u> questions that I had already instructed the witness not to answer on the basis of attorney-client privilege. For example, on page 104 of the transcript – rough draft only – I instructed the witness not to answer a question regarding what documents were relied on in connection with the Request for Admissions. On pp. 105, 109 and 122, Mr. Bailey repeats the question even though he knew at that point that defendant had asserted the privilege as to that question. This conduct is extremely troubling.

2.     You asked when defendant will produce the "attendance calendars" referred to during the May 15 deposition. (You requested such calendars for all hourly employees for a one-year period.) You state in your May 16 letter that these records fall within the scope of plaintiffs' Second Set of Requests for Production Nos. 4, 5 and 6.

As we discussed, in Request for Production No. 4, you ask for documents reflecting dates and times when any AutoZone employees working in the State of Oregon <u>missed their meal periods</u> for the period of time from three years prior to the filing of the complaint, up to the present. Request No. 5 seeks <u>weekly schedule</u> reports referencing <u>Mr. Migis's</u> approved and unapproved work schedules and Request No. 6 seeks a <u>weekly summary of hours</u> worked by <u>Mr. Migis</u>. These requests do <u>not</u> seek "attendance calendars," and only Request No. 4 seeks records regarding any employee other than Mr. Migis. As you know, the parties had conferred in connection with the Court's order compelling discovery and agreed that documents responsive to Request No. 4 would be limited to the time periods covering May 1, 2005 through August 2005, November 1, 2005 through February 2006, and May 1, 2006 through August 2006. Documents containing information about missed meal periods for those time periods have already been produced, and defendant has fully satisfied Request for Production No. 4. Nonetheless, I agreed to provide you with an example of an "attendance calendar," assuming one exists. (In reviewing Mr. Jon's

Chey Powelson
May 23, 2008
Page 3

deposition transcript it occurs to me that he may have meant "variance reports" when he used the term "attendance calendar." Again, I will follow-up.)

With respect to Request for Production No. 5 (weekly schedule reports referencing Mr. Migis's work schedule, both approved and unapproved, for three years prior to the filing of the complaint), we advised you that we will double-check our records but we do not believe that additional responsive documents exist. We will let you know if we are able to find additional documents by June 3, 2008.

Defendant also agreed that it would double-check its records to determine if there are additional responsive documents to plaintiffs' Second Request for Production No. 6. In that request, plaintiffs seek a weekly summarization of hours worked by Mr. Migis. Once again, we believe that documents 281-486, Mr. Migis' weekly earnings records, and documents 708-753, fully respond to this request. Nonetheless, if we are able to locate "attendance calendars" for Mr. Migis for the time period requested, those documents will be produced. At the deposition of Mr. Migis, you asked for a screen print of his "paycheck data," presumably for his last paycheck. We will provide this.

3.    We advised you that defendant would not stipulate to the admissibility of the summary termination report for all purposes. For your information, that report is not even a business record under ORE 803.

4.    We told you that defendant will get back to you regarding defendant's willingness to stipulate to the authenticity of the documents set forth in your May 9, 2008 letter to Ms. Tift. We will do so by June 3, 2008.

5.    We told you that defendant will produce, in electronic Microsoft Excel format, the lunch variation reports that have been previously produced to you in hard copy. Please understand that we agreed to produce this information in Excel format only because Ms. Tift previously stated that she would do so. However, defendant cannot understand why plaintiffs believe they can continue to pursue the discovery of documents that relate solely to the missed meal period claim since it is very clear to us that that claim will soon be dismissed from the case. Nonetheless, and in the spirit of cooperation, defendant agrees to produce the requested documents in the requested format, and will have it to you by June 3, 2008.

6.    Plaintiffs asked whether defendant will produce one year's worth of time records for all hourly employees in the State of Oregon. (Plaintiffs' Third Set of Requests for Production No. 5.) As you know, I personally reviewed the correspondence in this case and could not help but notice your May 19, 2008 letter to Ms. Tift in which you proposed production of a random selection of time records, and gave, by way of

Chey Powelson
May 23, 2008
Page 4

example, one out of four or five employees' records. (You made this suggestion on the condition that defendant stipulate that such time records would be representative of the one year's worth.) You also state in that letter that if defendant would not stipulate that the random selection was in fact representative of the year, then you would have to compel the entire year's worth of records. You next proposed that if defendant did not agree to stipulate to the one in five suggestion, that you would propose accepting records on one out of three people, provided that defendant allow plaintiff to depose the IT person who compiled the time records. Finally, as you state in your letter, you had been willing to send defendant a proposal outlining those options to Ms. Tift. You then changed your mind and withdrew the offer to submit a proposal when Ms. Tift wrote you a follow up letter in which she stated that you had not agreed to send such a proposal. Your decision to withdraw your offer to send a written proposal outlining the one in three or one in five employee production scenarios, assuming you had so agreed, does not seem to be in the spirit of cooperation.

At our discovery conference, I suggested that a possible resolution would be for defendant to produce records for one month each quarter. This suggested resolution would eliminate any concerns about whether the information being provided was "representative." Plaintiffs not only refused this idea, but refused to agree to either of plaintiffs' earlier proposals regarding the one in three and one in five representative employees.

7.    You asked whether defendant preserved documents pursuant to Judge Kantor's order for the preservation of evidence, and whether defendant will attempt to produce all daily coverage reports for a two-year time period. First, as you have often pointed out, this case is not the Joarnt case. Second, we feel that we did comply with Judge Kantor's order, but your expectations about what was kept in period boxes does not match what was actually, routinely kept by Store Managers. Beyond that, AutoZone did not retain the coverage reports for the period you request, as we told you in our responses.

8.    Plaintiffs asked whether defendant will produce all reports reflecting weekly summarizations of hours worked by AutoZone employees pursuant to plaintiff's Third Set of Requests for Production No. 4. As we pointed out to you in the meeting, we produced such information to you on a disk identified as "AZ-Migis 2214." I understand that you would like the information in a different format, i.e., broken down by each individual employee, and we told you that that is not how we read the request but that we will determine how long it would take to put together responsive documents. We will let you know our position on this by June 3, 2008.

Chey Powelson
May 23, 2008
Page 5

9.    Plaintiff asked whether defendant has produced all prior versions of the summary
report produced in response to the first court order on plaintiff's First Request for
Production Nos. 2, 4 and 6, and defendant confirmed that there are no prior versions
of that report.

In addition to the above, defendant advised plaintiffs that defendant is making
another effort to find additional termination reports.

I am also able to advise you that Ms. Tift has now personally reviewed the contents
of the period boxes at the last two stores in which Mr. Migis worked. She found <u>no</u>
termination reports and no other responsive documents at either location.

All in all, I do have a much better understanding as to plaintiffs' outstanding discovery
concerns. I can say that I am somewhat surprised that, in some situations, plaintiffs are
asking for the same information, but in a different format, and am surprised that plaintiffs are
asking for documents that we believe relate exclusively to meal and break period claims.
Notwithstanding this, defendant will take all of the steps outlined above and will get back to
plaintiffs by June 3.

Very truly yours,

LITTLER MENDELSON

Amy R. Alpern

ARA/jrs

Firmwide:85301299.1 013306.2124

**EXHIBIT 4**



ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

OREGON

PENNSYLVANIA

RHODE ISLAND

SOUTH CAROLINA

TEXAS

VIRGINIA

WASHINGTON

June 3, 2008

Amy R. Alpern
Direct: 503.889.8878
Direct Fax: 503.914.1816
aalpern@littler.com

**VIA MAIL AND FACSIMILE 360-567-3331 AND U.S. MAIL**

Chey Powelson
Bailey Pinney & Associates, LLC
1498 SE Tech Center Place, Suite 290
Vancouver, WA 98683

Re:    Migis v. AutoZone, Inc.
        Multnomah County Circuit Court Case No. 0711-13531

Dear Chey:

This follows up on my May 23, 2008 letter to you in which I outlined what we were willing to do to resolve the outstanding discovery issues. In that letter I told you that I would get back to you by June 3, and I am now doing so. For reasons that cause me great concern, you continued to file motions to compel, and to ask for yet additional documents, while we are diligently working to produce those items outlined in my May 23 letter. Indeed, I do believe at this point that you are intentionally making things more difficult than they need to be. For example, I prepared a protective order and asked that you sign it. (I told you that the form of protective order I prepared had been approved by the Multnomah County Presiding Court.) Rather than signing my order, you sent me a different order and required that we submit that order, instead. I did not want to fight about the issue, so I agreed to sign your proposed order and then brought it to the scheduling conference to ask the Court to sign it per our discussion on May 23. When I asked you to sign the order at that scheduling conference, you said you could not do so because you prepared it for Mr. Bailey's signature. I then asked Mr. Bailey, who was also at the scheduling conference, to sign it. He said he could not do so because he had not read it. When I pointed out to him that it was on your firm's letterhead, and urged him to sign it, he finally agreed to do so. However, when I presented it to Judge Maurer at the scheduling conference, she had concerns about the language in the order and asked her assistant to review it. As it now stands, we do not have a signed protective order.

I have now enclosed another protective order that complies with the Multnomah County rules. I signed it, ask that you do so, and ask that you forward it to the Presiding Court.

Moving on to my May 23, 2008 letter, I respond as follows:

1.      We agreed to allow you to depose Mark Dessem as a corporate representative pursuant to ORCP 39(c)(6) even though you have already taken one 39(c)(6)

Chey Powelson
June 3, 2008
Page 2

deposition.  We believe that Mr. Dessem is likely to be able to address some of the issues set forth in the 39(c)(6) notice that took place on May 15, 2008.

I also told you at the May 15 deposition that we would provide you with additional information regarding the total number of full- and part-time hourly AutoZone employees for the time periods set forth in your notice.  We reviewed the W-2s for 2006 and can advise you that AutoZone employed 423 employee in Oregon that year.  As you recall, we have already provided you with this information for the year 2007.  I am still working on 2004 and 2005 and will respond to that request, although I am told that the information is on the payroll tax reports that were produced to your firm in the Joarnt matter.  Nonetheless, I will review those reports as well, and get our answer to you promptly.

2.      As I suspected, the reference to "attendance calendars" in Mr. Jon's deposition is, in fact, a reference to the variance reports.  Since we have already produced the variance reports, we have already satisfied this request.

With respect to Request for Production No. 5 (weekly schedule reports referencing Mr. Migis' work schedule, both approved and unapproved, for three years prior to the filing of the complaint), we have now double-checked the period boxes for the two stores in which Mr. Migis worked in Oregon and can confirm that no additional records responsive to this request exist.

We also agreed to send you a screen print of Mr. Migis' paycheck data.  It is enclosed.

3.      See my May 23 letter.

4.      With respect to the May 9 letter you sent to us regarding the authenticity of documents, I can advise you that defendant will stipulate that each of the listed documents, with one exception, is authentic, i.e., that they are what they purport to be.  The exception is AG-Migis 0002214.  We do not have a copy of that and I suspect that we may have made a numbering mistake.

5.      We promised you that we would produce, in electronic Microsoft Excel format, the lunch variation reports that have been previously produced to you in hard copy.  I understand that Leigh Ann Tift FedExed those to you yesterday and that you are in possession of those.

6.      Defendant has reconsidered its objection to your request for one year's worth of time records for hourly employees in the State of Oregon, but have two caveats.  Defendant will seek to shift the cost of producing these records to plaintiff if we are

Chey Powelson
June 3, 2008
Page 3

able to establish that they are not relevant, and/or if the class is not certified. Second, we are agreeing to produce the documents pursuant to the terms of a mutually agreeable protective order. With that understanding, defendant will produce electronic records of time worked for each AutoZone employee from November 2006 to November 2007. Please let me know when you have signed the order and have forwarded it to the Court, and we will produce the documents.

7.    See my May 23 letter.

8.    Defendant has located and is willing to produce reports reflecting weekly summarizations of hours worked by AutoZone employees as requested in Plaintiff's Third Request for Production No. 4. Defendant is willing to produce this information pursuant to the terms of a protective order. Please let me know when you have signed that order and forwarded it to the Court, and we will provide you with the requested documents.

9.    As promised, defendant's store managers are making a second attempt at finding termination reports. We have looked at the personnel files of all employees to assure that no termination reports were missed, and the AutoZone's Store Managers have been asked to complete their review by June 5. I will let you know what, if anything, they are able to locate. Given Ms. Tift's experience in reviewing the period boxes for the last two stores in which Mr. Migis worked, I strongly doubt that we will find additional responsive documents. Nonetheless, we have taken the time consuming step of looking a second time.

Please understand that your discovery requests have been extremely cumbersome, that we have spent the last month telling you that we want to work cooperatively on discovery issues. As you an see, we have offered several concessions. Despite that, you continue to file motions to compel and motions for sanctions. At some point, I do hope that we are able to move this case in a direction that is likely to benefit our respective clients. That is what you want, right?

Very truly yours,

LITTLER MENDELSON

Amy R. Alpern

ARA/jrs
Enclosures



Review Paycheck - Windows Internet Explorer

http://astro.autozone.com:8080/psp/HRPROD/EMPLOYEE/HRMS/c/MAINTAIN_PAYROLL_DATA_US.PAY_CHECK.USA?Folder=

File Edit View Favorites Tools Help

Review Paycheck

Home

ORACLE

Home

**Paycheck Information**

Paycheck Status: Confirmed Paycheck Option: Check

Issue Date: 02/15/2006 Paycheck Number: 59113

☑ Off Cycle ☐ Reprint ☐ Adjustment ☐ Corrected ☐ Cashed

**Paycheck Totals**

| | |
|---|---|
| Earnings: | 1,140.80 |
| Taxes: | 311.90 |
| Deductions: | 0.00 |
| Net Pay: | 828.90 |

**Earnings** Find | View All First 1 of 1 Last

Begin Date: 02/12/2006 End Date: 02/25/2006 Addl Line #: Reason: Not Specified

Employment Record Number: 0 Benefit Record Number: 0 Additional Data

**Salaried**

Hours: 0.00
Rate: 12.550000
Earnings: 0.00
Rate Code:

**Hourly**

Hours: 26.90
Rate: 12.550000
Earnings: 337.60
Rate Code:

**Overtime**

Hours: 0.00
Rate: 0.000000
Earnings: 0.00
Rate Code:

Rate Used: Hourly Rate Shift: N/A Shift Rate: FLSA Rate:

State: OR Locality:

**Other Earnings** Customize | Find | View All | First 1 of 1 Last

Other Earnings Details 1 | Other Earnings Details 2

| Code | Description | Rate Used | Hours | Rate | Amount |
|---|---|---|---|---|---|
| HVA | HOURLY VACATION | Hourly Rate | 64.00 | 12.550000 | 803.20 |

**Special Accumulators** Customize | Find | View All | First 1-3 of 3 Last

| Code | Description | Hours | Earnings | Empl Rcd # |
|---|---|---|---|---|
| 401 | 401k Eligible Earnings | 90.90 | 1,140.80 | 0 |
| PEN | Pension Eligible Earnings | 90.90 | 1,140.80 | 0 |
| PRH | PUERTO RICO BONUS HOURS | 26.90 | 337.60 | 0 |

Start | Review Paycheck - Wi... | AutoZone, Inc. | Investo... | 06/03/2008 11:54:54 A... | PUBLIC QUERY AZO_LA...

AZ-MGIS 0002222

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,<br><br>                 Plaintiff,<br><br>vs.<br><br>AUTOZONE, INC., a Nevada corporation,<br><br>                 Defendant. | Case No. 0711-13531<br><br>**STIPULATED PROTECTIVE ORDER** |

It is hereby ORDERED as follows:

1.    Any party to this action may designate as confidential any document sought to be discovered by any other party that is "confidential material" as defined by this order.  The terms of this order shall govern as to all aspects of the procedures to be followed in making or challenging such designations, and the terms, conditions, and restrictions on the use of confidential materials.

2.    When used in this order, the word "documents" includes, but is not limited to: documents produced by any party or non-party in this action pursuant to the Oregon Rules of Civil Procedure or by subpoena; responses to requests for admission; responses to interrogatories; deposition transcripts and exhibits; electronically stored information; and any portions of any court papers that quote from or summarize any of the foregoing.

3.    All documents or testimony designated as confidential in accordance with this order shall be treated as confidential by the parties, their attorneys, persons assisting their attorneys, and by

PAGE 1 – STIPULATED PROTECTIVE ORDER

anyone else to whom any such document or any such information is disclosed. Such documents and information shall be used only for purposes of this litigation and for no other purpose. Provided, further, that disclosure of Confidential Information is intended, at least preliminarily, for review only and may be subject to redaction to protect employee (non-class member) privacy.

4.    For purposes of this order, the term "confidential material" shall include any documents that contain or disclose confidential medical or financial information, personal information regarding non-parties to this litigation, and trade secrets. The parties may designate such documents as confidential by stamping such documents with the notice "CONFIDENTIAL" prior to their production or by otherwise designating in writing such documents as confidential.

5.    Any party to this action may designate as confidential that portion of any deposition testimony containing or disclosing confidential material. The reporter shall separately transcribe those portions of the testimony so designated and shall mark the face of the transcript as confidential as the designating person may direct. The designating person may also make such a designation after reading the deposition transcript if that person determines that testimony should have been but was not designated confidential during the deposition. The designating person shall pay all expenses related to such designation.

6.    The parties and their attorneys shall designate as confidential only such documents and information that reasonably require and necessitate confidential treatment in order to protect confidences. By this Protective Order, the parties do not waive their right to contest designation of any document or information as confidential. The parties agree to confer in good faith to resolve any dispute over the confidential designation of any document or information prior to bringing such matter to the attention of the Court.

PAGE 2 – STIPULATED PROTECTIVE ORDER

7.    Confidential documents or testimony may be referred to in pleadings, motions, and briefs, and may be used in depositions and marked as deposition exhibits in this action.  However, no such document or testimony shall be used for any of these purposes unless it, or the portion of the court paper in which it is revealed, is appropriately marked confidential and presented at ex parte to the Presiding Judge to be filed under seal with the Court.

8.    If a party seeks to file under seal any documents produced under this Protective Order, the party must present the documents during ex parte to the Presiding Judge and make the showing required pursuant to Fed. R. Civ. P. 26 and *Foltz v. State Farm Mutual Automobile Ins. Co.*, 331 F. 3d 1122 (9th Cir. 2003), in order to maintain the Protective Order as to such documents. Before seeking to maintain protection of documents filed with the Court, a party must assess whether redaction is a viable alternative to complete nondisclosure.

9.    Except as set forth above, or with prior written consent of the party or non-party asserting confidential treatment, no document or testimony designated as confidential and no information contained in it or obtained from it may be disclosed to any person other than:

a.    The court, its staff, and court reporters;

b.    Outside and in-house counsel for the parties in this action and their staff;

c.    Independent experts retained by counsel for the parties to assist them in this litigation;

d.    The parties in this action and their agents, including but not limited to their insurers, authorized to assist them in this litigation; and

e.    Actual and potential witnesses to the extent necessary to verify or challenge the information.  Before any non-party witness is given confidential information, such witness shall sign a declaration substantially in conformity with Exhibit A hereto.  Upon request by a party producing

PAGE 3 – STIPULATED PROTECTIVE ORDER

confidential information, any party disclosing such confidential information shall provide a list of all persons to whom such disclosure was made.

10.    This order shall not prevent the disclosure of documents to the persons who were authors or addressees of the documents or are shown as having received copies of them, nor does this order apply to testimony or exhibits offered at trail.

11.    Documents produced by parties or non-parties that are designated confidential and all copies of them (other than exhibits or records) shall either be destroyed or returned to the attorney of the party producing such documents when the action is concluded.  The attorney producing the confidential document may request the attorney representing the party who received the confidential document to prepare and deliver a letter containing a truthful assurance that all documents, copies, or reproductions of such documents (including data compilations and extracts) are being destroyed or returned to the party's counsel.

12.    The restrictions and obligations relating to documents or testimony designated as confidential in accordance with this order shall not apply to any document or information that all parties agree in writing or that this court rules was publicly known at the time it was produced to the receiving party or that has since become publicly known through no fault of the receiving party.

13.    Nothing in this order shall prevent any party or non-party to this action from seeking modification of this order or from objecting to discovery that it believes to be otherwise improper.  Any party or person may, at any time, file a request with the court to lift the restrictions of this order as to any and all information designated confidential.  The party designating the information as confidential shall bear the burden of proving by a preponderance of the evidence that such information is, in fact, confidential within the meaning of applicable law and that the interests of the

PAGE 4 – STIPULATED PROTECTIVE ORDER

1    party's confidentiality outweigh other relevant interests.

2

3    Dated: _____, 2008.

4

5

6                                                    _____
                                                     Judge

7    IT IS SO STIPULATED:

8

9    By: _____

10        Leigh Ann Collings Tift, OSB No. 054732
          Littler Mendelson, PC

11        Of Attorneys for Defendant

12

13    By: _____

14        A.E. Bud Bailey, OSB No. 871577
          Of Attorneys for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 5 – STIPULATED PROTECTIVE ORDER

**EXHIBIT 5**

**Tift, Leigh Ann C.**

| | |
|---|---|
| **From:** | Alpern, Amy R. |
| **Sent:** | Wednesday, June 04, 2008 9:57 AM |
| **To:** | Chey Powelson |
| **Cc:** | Tift, Leigh Ann C. |
| **Subject:** | RE: Protective Order |

Interesting, Chey. Without knowing what information is in the documents, you assume that we are holding them "hostage" rather than assuming that we have a legitimate basis for requesting a protective order. The fact is, the weekly summarizations of hours worked report contains social security numbers and other confidential information. If you do not sign and forward the protective order based on my representation that we have documents that are appropriately covered by such order, feel free. The delay, at this point, is due to your refusal to sign the protective order. Not much I can do at this point.

Amy R. Alpern|Littler Mendelson, PC
The National Employment & Labor Law Firm®

Telephone: 503.221.0309 | Fax: 503.242.2457
Cell: 503.539.9811

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Wednesday, June 04, 2008 9:45 AM
**To:** Alpern, Amy R.
**Cc:** Tift, Leigh Ann C.; Bud Bailey; Brad Griffin; Charity Shindle
**Subject:** RE: Protective Order

In other words, the time records are being held hostage?

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Wednesday, June 04, 2008 9:43 AM
**To:** Chey Powelson
**Cc:** Tift, Leigh Ann C.; Bud Bailey; Brad Griffin; Charity Shindle
**Subject:** RE: Protective Order

What I told you when we were at the case management conference was that the form of order I had submitted to you, and that you refused to sign, was signed by Judge Mauer in another case I had in Multnomah and that as a consequence, I knew the language was acceptable. What I suggest you do is sign and submit the protective order as is. If you object to the confidential designation of any documents we produce, we can discuss it at that time. There is, in the order, a mechanism for challenging the designation. I thought, based on the numerous motions to compel, that you want to move forward with document production. Your conduct is causing unnecessary delay. I have documents ready to produce as soon as I get the word from you that they order has been submitted and signed.

Amy R. Alpern|Littler Mendelson, PC
The National Employment & Labor Law Firm®

Telephone: 503.221.0309 | Fax: 503.242.2457
Cell: 503.539.9811

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Wednesday, June 04, 2008 9:36 AM
**To:** Alpern, Amy R.
**Cc:** Tift, Leigh Ann C.; Bud Bailey; Brad Griffin; Charity Shindle
**Subject:** RE: Protective Order

I appreciate that time is of the essence, but there are some problems with the proposed protective order you faxed yesterday evening. I will send you a letter this morning. In the meantime, please forward: (1) the Oregon state case you referenced after our case management conference with Judge Maurer last week, re: protective orders; and (2) your reasoning as to what "confidential" information the hourly employee time records. From the sounds of it, Defendant is anticipating that the entire class certification briefing be filed under seal. That is, as you know, contrary to the presumptive public access to court records. Thank you.

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Wednesday, June 04, 2008 9:11 AM
**To:** Chey Powelson
**Cc:** Tift, Leigh Ann C.
**Subject:** Protective Order

Chey,

Please advise as quickly as possible as to the status of the protective order I sent to you. As you know, the documents you requested are covered by that order and I cannot produce them until you sign the order.

Best regards,


Amy R. Alpern|Littler Mendelson, PC
The National Employment & Labor Law Firm®

1750 SW Harbor Way, Suite 450
Portland, OR 97201
Telephone: 503.221.0309 | Fax: 503.242.2457
Cell: 503.539.9811
Email: aalpern@littler.com


- - - -

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.


6/6/2008

This email may contain confidential and privileged material for the sole use of the
intended recipient(s).  Any review, use, distribution or disclosure by others is str
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.cc

Littler Mendelson, P.C.
http://www.littler.com


----


To ensure compliance with requirements imposed by the IRS, we inform you that
any U.S. federal tax advice contained in this document (including any attachments)
is not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the
intended recipient(s).  Any review, use, distribution or disclosure by others is str
prohibited.  If you are not the intended recipient (or authorized to receive for the
recipient), please contact the sender by reply email and delete all copies of this
message.

To reply to our email administrator directly, send an email to postmaster@littler.cc

Littler Mendelson, P.C.
http://www.littler.com

1
2
3
4
5
6

**IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH**

7   **MICHAEL MIGIS**, individually and on behalf          Case No.  **0711-13531**
    of all others similarly situated,

8                                        Plaintiff,        **PLAINTIFF'S REPLY IN SUPPORT
                                                           OF THE SUPPLEMENTAL
9        v.                                                BRIEFING RE: PLAINTIFF'S
                                                           MOTION TO ENFORCE COURT
10  **AUTOZONE, INC.**, a foreign corporation,             ORDER**

11                                       Defendant.

12
13                              **I.  INTRODUCTION**

14          The Court should grant the relief requested. AutoZone fails to rebut the fundamental

15  premise of Plaintiff's *Motion*: that despite this Court's warnings in the March 7, 2008 hearing,

16  Defendant has openly resisted the rules of discovery and failed to comply with two Court Orders.

17          The requested relief is consistent with Oregon law, and necessary to ensure that AutoZone

18  will not engage in future, similar conduct.

19                          **II.  POINTS & AUTHORITIES**

20  **A.       Overview**

21          This entire dispute may be reduced to the following question:  If, as Defendant presently

22  suggests, the Excel summary report cannot be relied upon to conclusively determine whether

23  AutoZone failed to timely pay at least one terminating employee, then why did AutoZone

24  belatedly produce it in response to the first Court Order and inform the Court it was the

25  information relied upon to deny Plaintiff's Requests For Admission addressing that very issue?

26

Page 1 -      **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO
              ENFORCE COURT ORDER**

1  Defendant's denials to the Requests For Admission also  presume AutoZone conducted the

2  reasonable inquiry ORCP 45 requires, and knew or knows when each employee within the

3  relevant time period terminated employment with the company.

4      It would have been more appropriate for AutoZone to simply admit the Requests For

5  Admission, or admit during either the March 7 or April 8 hearings (or both) that AutoZone did

6  not conduct any inquiry into these matters and therefore had no information or documents to

7  produce because AutoZone attorneys contrived the denials.

8      Now AutoZone tries to put the toothpaste back in the tube.

9      Defendant claims, essentially, that it has no idea when any of its employees on the Excel

10  summary report terminated employment.   This looks like a strategic decision by AutoZone to,

11  despite two Court orders, turn this matter into an "individualized inquiry."   So it appears

12  Defendant would rather be sanctioned by this Court, delay the proceedings, and defend Plaintiff's

13  attempts at class certification, rather than admitting the Requests for Admission.

14      "Modern discovery practices seek to facilitate (however haltingly) open, even-handed, and

15  efficient development of the relevant facts so that justice may be achieved and cases decided

16  fairly on the merits.  To that end, lawyers have a duty to act in good faith in complying with their

17  discovery obligations and to cooperate with and facilitate forthright discovery." *New Medium*

18  *Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 464 (N.D.Ill. 2007).

19      "'Belated compliance with discovery orders does not preclude the imposition of sanctions.

20  Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to

21  other litigants on a crowded docket the opportunity to use the courts.'" *Payne v. Exxon Corp.*, 121

22  F.3d 503, 508 (9th Cir. 1997) (internal cite omitted).

23      And as this Court reminded the parties during the April 8 hearing, "It's axiomatic that the

24  judges expect Court orders to be complied with."

25      AutoZone has undermined the efficient development of relevant facts relating to the

26  putative class' late pay claim.  This is no more evident than in reviewing Defendant's own

Page 2 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1    *Opposition*, wherein AutoZone:

2         1.    Fails to persuasively argue there are no more documents.

3         2.    Fails to understand Plaintiff's requests for non-monetary relief.

4         3.    Fails to rebut Plaintiff's request for an ORCP 46B(3) mandatory award of expenses

5              for AutoZone's violation of the first Court Order.

6         4.    Admits failing to fully comply with the second Court Order, and cannot demonstrate

7              such failure substantially justified.

8         But the most concerning aspect of this matter is AutoZone's dogged insistence that it "did

9    not fail or refuse to obey this Court's rulings on discovery matters." *Opposition* at p. 7:20-21.

10   That contention is contrary to: (a) AutoZone's conduct, (b) this Court's findings, and (c) Oregon

11   law governing the failure to obey court orders.[1]

12   **B.    AutoZone Fails to Persuasively Argue There Are No More Documents.**

13        AutoZone does not expressly rebut Plaintiff's argument there may be additional

14   documents not produced, such as "check requests" resulting in the "Off Cycle" checks identified

15   in the Excel summary report.  See Plaintiff's *Supplemental Briefing*, p. 13.  Instead, Defendant

16   innocently claims it "is unaware of any other kind of document that constitutes an 'underlying

17   document' related to the summary report * * * ." *Opposition* at p. 7:22-23.

18        This purported ignorance of additional documents does not withstand scrutiny.  For

19   example, AutoZone's own *Opposition* reveals that for an employee's involuntary termination,

20   a Human Resources and store manager must schedule a "dismissal conference." *Opposition* at

21

22        [1] See Plaintiff's: (1) April 4, 2008 *Motion to Enforce Court Order*, pp. 8 - 9; and (2) May
     22, 2008 *Supplemental Briefing*, p. 9.  See also, *Pamplin v. Victoria*, 319 Or 429, 433-34 (1994)
23   (Court looking to the U.S. Supreme Court decision set forth in *Societe Internationale*); *Belinskey
     v. Clooten*, 214 Or App at 180-182 (analyzing *Pamplin*); *SAIF Corp. v. Harris*, 161 Or App 1,
24   7-8, *rev. denied*, 329 Or 527 (1999); and *Societe Internationale v. Rogers*, 357 U.S. 197, 208
     (1958) ("For purposes of subdivision (b)(2) of Rule 37, we think that a party 'refuses to obey'
25   simply by failing to comply with an order.") (cited in *Belinsky*).  Cf. *Thomas v. Victoria's Secret
     Stores*, 141 F.R.D. 456, 458-59 (S.D.Ohio 1992) ("The failure to respond to a court order,
26   without justification, after being fully informed of the obligation to respond and the penalties for
     non-compliance can be deemed to be willful misconduct.").

Page 3 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO
           ENFORCE COURT ORDER**

1  p. 6:18-20.

2      AutoZone then admits that even prior to the dismissal conference, the "HR manager must

3  approve terminations and **request a check** from payroll * * * ." *Opposition* at p. 6:18-21 (bold

4  added). This presumes a document trail relating to the involuntary termination, and the creation

5  of the type of business record AutoZone testified to: a **check request** resulting in a manual, "Off

6  Cycle" check. See Plaintiff's *Supplemental Briefing*, p. 13:15-25. The check request would

7  presumably be dated the same day the store or Human Resource manager called corporate

8  headquarters regarding the impending termination, and could indicate the employee's anticipated

9  last day of employment.

10      But AutoZone has not produced a single check request or explained what information the

11  check request would or would not have. Instead, Defendant pretends they never existed. This

12  may be a strategic decision because if produced the documents may undermine Defendant's

13  denials.

14  **C.    Defendant Fails to Understand Plaintiff's Requests For Relief.**

15  **1.    Overview**

16      Oregon trial courts have discretion and flexibility "in framing an appropriate sanction

17  where a party fails to obey a discovery order." *Belinskey v. Clooten*, 214 Or App 172, 182

18  (2007), *rev. denied*, 344 Or 194 (2008).[2]

19      AutoZone continually refused to produce discovery in response to Plaintiff's November

20  2007 discovery requests,[3] and then failed to acknowledge its obligation to produce discovery as

21

22

23      [2] Cf. *Goldman v. Alhadeff*, 131 F.R.D. 188, 191 (W.D.Wash. 1990) ("The decision to
24  impose sanctions under Rule 37 is left to the court's discretion. **Exercise of that discretion has
    been 'encouraged'** when 'counsel or a party has acted willfully or in bad faith in failing to
    comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard
25  of those rules and orders.'" (bold added) (cites omitted)).

26      [3] See Plaintiff's February 2008 *First Motion for an Order Compelling Discovery*, pp. 3 -
    5.

Page 4 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO
            ENFORCE COURT ORDER**

1   required by this Court's first Order.[4]

2         The opportunity for AutoZone to conduct a reasonable inquiry when responding to the

3   Requests For Admission, and look for and produce all responsive documents, arose: (a) as early

4   as January 2008 when document production was initially due, and (b) as late as the first Court-

5   ordered deadline of March 28, 2008. Only after AutoZone consciously disregarded its obligations

6   does it attempt to explain why it has not facilitated forthright discovery.

7         **2.     Relief Under ORCP 45C and 46C**

8         Based on this Court's comments during the April 8 hearing (and as reflected in Plaintiff's

9   *Supplemental Briefing* at page 3, footnote 1), Plaintiff is not at this time expressly seeking relief

10  under ORCP 45C and 46C, but will wait until further on in the litigation, or after trial.

11        It also bears noting, however, that not only are the matters sought to be admitted

12  important,[5] but AutoZone's denials to Plaintiff's Requests For Admission also give rise to the

13  presumption that AutoZone knew when each one of those employees – approximately 150 on the

14  Excel report – terminated employment with AutoZone.

15        **3.     Preclusion of Evidence**

16        AutoZone ignores Plaintiff's argument that the Court preclude AutoZone from opposing

17  the Excel summary report information only for those employees Defendant has not provided any

18  Termination Reports.

19  ///

20

21        [4] See Defendant's June 5, 2008 *Opposition*, p. 2 (March 28, 2008 Second Supplemental
      Response to RFP No. 2: "With respect to Plaintiff Migis, Defendant maintains that Plaintiff has
22    all relevant documents * * * .").

23        [5] See also ORS 652.200(2): "In any action for the collection of wages, if it is shown that
      the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays,
24    after the wages became due and payable, the court shall, upon entering judgment for the plaintiff,
      include in the judgment, in addition to the costs and disbursements otherwise prescribed by
25    statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting the action * * * ."
      Cf. ORS 652.150(4) (stating that certain defenses to late payment of wages does not apply when
26    "The employer has violated ORS 652.140 * * * one or more times in the year before the
      employee's employment ceased * * * .").

Page 5 -      **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO
              ENFORCE COURT ORDER**

1    This type of sanction not only prevents a disobedient party from benefitting from its own

2    non-production, but is also "warranted for the purpose of facilitating the administration of justice,

3    even in the absence of prejudice."

4    Facilitating the administration of justice means the Court should hold AutoZone to the

5    representations it made during hearing on April 8 that the summary report is responsive to the

6    Court-ordered production, and is what Defendant looked to when denying the Requests For

7    Admission.

8    **4.    Designation of Facts**

9    When ordering the designation of facts as a sanction, courts "attempt to closely tailor the

10   **presumed** facts to the withheld information to the extent possible." *General Atomic Co. v. Exxon*

11   *Nuclear Co.*, 90 F.R.D. 290, 59 (S.D.Cal. 1981) (bold added).  That is, there must be a nexus

12   between the designation and the court-ordered discovery relating to the claim or defense.

13   *General Ins. Co. of Am. v. Eastern Consol. Utils*, 126 F.3d 215, 220-21 (3rd Cir. 1997) (citing

14   *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 707 (1909)).

15   The Court should hold Defendant to its April 8 representations and deem that for the

16   employees with no Termination Reports, the "Last Date" column in the Excel summary report

17   is the information to which both Plaintiff and Defendant must look in determining whether those

18   employees fall within the putative late pay class (i.e., presume that the "Last Date" is also the

19   termination date).

20   This requested designation will not contravene the interests of justice.  A review of those

21   persons on the summary report for whom AutoZone did not produce underlying termination

22   reports shows many of those people did not receive a manual, "Off Cycle" check.  Rather,

23   AutoZone appears to have issued those paychecks in the normal course of business, according

24   to their twice-monthly Friday payday cycle. *Reply Decl.*, Ex. A (2006-2007 annual calendars).

25   In sum, no matter when the listed employees' last day of employment, it appears that for

26   most of the employees on the Excel report, AutoZone managers did nothing to facilitate a an Off

Page 6 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO
ENFORCE COURT ORDER**

1   Cycle, manual check.[6]

2       In the alternative to the foregoing, Plaintiff suggests: (a) the Court designate the Last Date

3 as the Termination Date for those employees who are coded "A1" (Quit With Notice), regardless

4 of whether there are Termination Reports produced; and (b) allow Plaintiff to later pursue an

5 adverse inference (as opposed to a presumption) based on Defendant's failure to produce

6 discovery. See e.g., OEC 308 (presumptions); *State v. Dahl*, 336 Or 481, 486, *aff'd*, 336 Or 481

7 (2004); and *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 436 - 40 (S.D.N.Y. 2004) (court

8 permitting adverse inference jury instruction as a sanction for a party's failure to preserve and

9 produce evidence).[7]

10     **5.**    **Striking the Pleadings**

11       Plaintiff is not seeking to strike Defendant's entire Answer, only certain affirmative

12 defenses as they relate to the late pay claim, based on the nexus between those defenses and: (a)

13 Defendant's conduct, and (b) the content and nature of Defendant's "answers" to Plaintiff's

14 Requests For Admission.

15       Those answers place Defendant's corporate "state of mind" expressly at issue, which in

16 turn relate to both the putative class's late pay claim and AutoZone's affirmative defenses that

17

18

19

20

---

21     [6] The "purpose [of ORS 652.150 regarding penalties for untimely payment of wages] is
to protect employees from unscrupulous **or careless employers** who fail to compensate their

22 employees although they are fully aware of their obligation to do so." *State ex rel. Nilsen v. Johnston*, 233 Or 103, 108 (1962) (in context of earlier ORS) (bold added).

23     [7] "The distinction between [a presumption and an inference] is the difference between that
which is permitted and that which is demanded. An inference is permissible; a presumption is

24 required." *Simpson v. Gray Line Co.*, 226 Or 71, 73 (1961) (in context of former ORS 41.340).
For example, "[a]n inference is a deduction from facts which reason dictates, but a presumption,

25 in its true sense, is an arbitrary conclusion which the law directs to be made from certain facts.
If you look through the window and see someone carrying a raised umbrella you might reasonably

26 infer that it is raining, but there would be no presumption that it is raining." *Judson v. Bee Hive
Auto Service Co.*, 136 Or 1, 10-11 (1931) (in context of former Oregon Code 1930, Sec. 9-801)

Page 7 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO
ENFORCE COURT ORDER**

**BAILEY PINNEY & ASSOCIATES** LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1    any unpaid wages the result of a good faith dispute.[8]

2        Defendant's *Opposition* confuses this issue, and erroneously relies on case law regarding

3    ORCP 21 motions to dismiss.  Rule 21 does not address violations of court orders.

4        Conversely, Oregon cases addressing the striking of pleadings as a sanction for violating

5    court orders does not include analysis of the case law Defendant cites.  The analysis is much

6    simpler:  Oregon trial courts can strike the pleadings of litigants who disobeyed those courts'

7    orders.

8        In *Stauffer v. Or. Citizen's Alliance Educ. Found.*, the Court of Appeals affirmed a trial

9    court's discovery sanction of striking the defendants' pleadings, and later granting default

10    judgment against defendants after the trial court found that "The time and cost to plaintiff in delay

11    and the obstruction of the orderly conduct of the court's business remain." 211 Or App 11, 15-16

12    (2007).

13        In *Budden v. Dykstra*, after the trial court already ordered production of documents and

14    cautioned defendants about timely production, defendants lodged additional objections and

15    informed the plaintiff that the documents ordered were beyond their control.  The court in turn

16    ordered that a particular affirmative defense be stricken for failure to follow the court's discovery

17    orders. 181 Or App 523, 526-27 (2002). The Court of Appeals affirmed the trial court's decision.

18        Nonetheless, this Court should note that "the validity of an order striking a pleading

19    pursuant to the statute under consideration is restricted to those cases where the failure to answer

20    obviously withholds a fact or facts material to his adversary's case and is limited to the effect that

21    ensues from any reasonable presumption which may be drawn from the refusal to discover such

22    fact or facts." *Anderson v. Stanwood*, 178 Or 306, 317 (1946) (in context of defendant witness

23    refusing to answer a question under oath).  This concept also applies to the refusal or failure to

24    

25        [8] This issue also overlaps with Defendant's ORCP 39C(6) deposition testimony on May 15, 2008, wherein AutoZone was not, for example, aware of any facts supporting or surrounding a good faith belief whether AutoZone owed or did not owe unpaid wages to Plaintiff Migis.  See

26    Plaintiff's *Motion to Bind and/or Compel ORCP 39C(6) Deposition Answers*, p. 19.  Plaintiff by this reference hereby incorporates herein that *Motion to Bind*.

Page 8 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**

1   produce documents,[9] although eventual document production is not determinative.

2       Should the Court decline to strike Defendant's affirmative defenses as to either (a) the

3   entire putative late pay class; or (b) the persons listed in the Excel summary report (see

4   *Supplemental Briefing* at p. 15), then another alternative exists: striking the affirmative defenses

5   for those persons in the Excel summary report who are coded "A1" ("Quit with notice") and for

6   whom there is no corresponding termination report. For those people it can readily be determined

7   from their last day worked whether AutoZone paid them on that same date, as Oregon law

8   requires.

9       **6.    Deposing AutoZone via ORCP 39C(6)**

10      Oregon Rule of Civil Procedure 36B(1) expressly allows discovery into "the existence,

11  * * * and location of any * * * documents * * * ."

12      In response to Plaintiff's *Motion* and supplemental briefing, Defendant failed to submit

13  a single affidavit or declaration from any AutoZone employee or manager, describing the efforts

14  undertaken to search for, locate, preserve, and produce all information (including "Termination

15  Reports") responsive to Plaintiffs' First Set of Requests For Production Nos. 2, 4 and 6, both

16  before and after the March 7, 2008 hearing on Plaintiff's Motion to Compel.

17      Instead, Defendant's counsel only generally assures the Court that they are "prepared to

18  represent that a good faith search has been conducted * * * ."

19      Plaintiff must obtain discovery, not accept AutoZone's assurances on the record, because

20  AutoZone has also assured Plaintiff:

---

22      [9] See *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 350-51 (1909): "This case
23  presents failure by the defendant to produce what we must assume was material evidence in its
    possession and a resulting striking out of an answer and a default. The proceeding here taken may
24  therefore find its sanction in the undoubted right of the lawmaking power to create a presumption
    of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to
25  produce the proof ordered, when such proof concerned the rightful decision of the cause. In a
    sense, of course, the striking out of the answer and default was a punishment, but it was only
26  remotely so, as the generating source of the power was the right to create a presumption flowing
    from the failure to produce." See also, *Collazos v. United States*, 368 F.3d 190, 203 (2nd Cir.
    2004) (citing *Hammond*); and *SEC v. Seaboard Corp.*, 666 F.2d 414 (9th Cir. 1982) (same).

Page 9 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO
            ENFORCE COURT ORDER**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1      (a)     That it denied the Requests For Admission in good faith;

2      (b)     That it acted in good faith in response to the first Court Order, even though it

3                   produced no documents by the deadline, and apparently created the Excel

4                   summary report after that deadline; and

5      (c)     That, by means of the May 15 ORCP 39C(6) deposition, Defendant must look to

6                   "additional documents or reports," apart from the Termination Report and final

7                   paycheck data, to determine whether an employee who gave two weeks' notice of

8                   intent to quit was paid on their last day of work.  See e.g., Plaintiff's *Motion to*

9                   *Bind and/or Compel ORCP 39C(6) Deposition Answers*, pp. 15 - 16.

10  **D.**    **Defendant Fails to Rebut Plaintiff's Request for the Mandatory ORCP 46B(3)**

11       **Award of Expenses for Autozone's Violation of the First Court Order.**

12      Plaintiff clearly articulated the justification for a mandatory award of expenses resulting

13  from AutoZone's lack of good faith compliance with the first Court Order.

14      AutoZone completely failed to address this issue and explain why, by the first Court-

15  ordered deadline, Defendant did not produce any documents but instead referred Plaintiff to his

16  own.

17      Defendant also failed to dispute when the Excel summary report was created, and whether

18  it or the information therein was in fact relied upon to deny Plaintiff's Requests For Admission.

19      But the answer is evident: the Excel summary report is an after-the-fact creation upon

20  which AutoZone could not have relied on that information deny the Requests.  This is supported

21  by Defendant's instructions not to answer Request For Admission-related questions during the

22  May 15 ORCP 39C(6) deposition, and Defendant's later admission that made such instructions

23  to prevent Plaintiff from inquiring into what documents AutoZone relied on in connection with

24  the Request For Admissions.  See Plaintiff's *Motion to Bind and/or Compel ORCP 39C(6)*

25  *Deposition Answers*, p. 19.

26  ///

Page 10 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**

**E.**    **Defendant Admits it Failed to Fully Comply with the Second Court Order.**

"The party against whom an award of expenses is sought has the burden of showing the special circumstances that make his failure to comply 'substantially justified.'" *Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981) (citing, in part, 1970 Advisory Committee Notes to Fed.R.Civ.Pro. 37).[10]

AutoZone did not timely produce all documents that exist and are responsive to the second Court Order. Even for those existing Termination Reports, Defendant produced some of them after the second Court-ordered deadline. Based on the Court's denial of Defendant's *Motion for Extension of Time* and comment that the *Motion* was not well taken, AutoZone was not substantially justified in the late production of those Reports. ORCP 46B(3).

Furthermore, as already indicated, there are or should be other responsive documents, such as check requests and termination documentation, the non-production of which Defendant fails to explain.

### III. CONCLUSION

For all the reasons set forth herein and all prior, related briefing, Plaintiff respectfully requests the Court grant all relief as is just and proper under the circumstances.

SIGNED this _16th_ day of June 2008.        BAILEY, PINNEY & ASSOCIATES, LLC

CHEY POWELSON, OSB 03551
Of Attorneys for Plaintiff

---

[10] See also, *Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.*, 212 F.R.D. 94, 102 (E.D.N.Y. 2002) ("Rule 37 allows for the imposition of sanctions in the form of reasonable fees and costs incurred by reason of a party's discovery failures. This court finds that the plaintiff was forced to expend wholly unnecessary time and effort in its unsuccessful attempts to get the defendants to comply with their discovery obligations. This waste of time and resources was caused by the defendants' bad conduct, which required the plaintiff to make motions to compel and motions for sanctions.").

Page 11 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing *Plaintiff's Reply in Support of the Supplemental Briefing Re: Plaintiff's Motion to Enforce Court Order* upon:

> Leigh Ann Tift
> Littler Mendelson
> One Union Square
> 600 University St, Ste 3200
> Seattle WA 98101-3122
> Attorney for Defendant AutoZone

by the following indicated method or methods:

[X]    by causing a full, true, and correct copy thereof to be deposited in the U.S. regular mail service to the person listed above on the date set forth below.

DATED June 16, 2008

BAILEY, PINNEY & ASSOCIATES, LLC


CHEY POWELSON, OSB 035512
Attorney for Plaintiff

Page 12 -    **REPLY SUPPORTING SUPPLEMENTAL BRIEFING SUPPORTING PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**

1

2

3

4

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

5

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,, | No. 0711-13531 |
| Plaintiff, | **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT** |
| vs. | |
| AUTOZONE INC., a Nevada Corporation,, | **[ORAL ARGUMENT REQUESTED]** |
| Defendant. | |

6

7

8

9

10

11

12

13

### I. INTRODUCTION

14

Plaintiff Michael Migis ("Migis") concedes that he has no private right of action for his rest

15

period claim in light of the Oregon Supreme Court's recent holding in *Gafur v. Legacy Good*

16

*Samaritan Hosp. & Med. Center*, 344 Or 525 (May 15, 2008) ("*Gafur II*"). Those claims must be

17

dismissed. However, with respect to his meal period claims, Migis attempts to distinguish his claims

18

from those asserted by the plaintiffs in *Gafur* by recasting and rephrasing his claims. Migis is

19

simply wrong on the law and unable to meaningfully distinguish the meal claims in his Complaint

20

from those in *Gafur*. Thus, Migis's claim for unpaid meal periods must also be dismissed as a matter

21

of law.

22

### II. ARGUMENT AND AUTHORITY

23

ORCP 21B authorizes the court to enter judgment on the pleadings: "'when the pleadings,

24

taken together, affirmatively show that the plaintiff has not stated a claim for relief' motion for

25

judgment on the pleadings should be granted." *Slogowski v. Lyness*, 324 Or 436, 439, 927 P2d 587

26

1    (1996) (quotation omitted).  For purposes of an ORCP 21B motion, a court must accept the

2    allegations of the pleading as true.  *Beason v. Harcleroad*, 105 Or App 376, 379-80, 805 P2d 700

3    (1991).  Judgment on the pleadings should be entered when, given the well-pleaded facts, the

4    defendant is entitled to judgment as a matter of law.  *Smith, et al. v. Washington County, et al.*, 180

5    Or App 505, 523-24, 43 P3d 1171 (2002).  Here, there is simply no legal basis for Migis's meal and

6    rest period claims.

7    **A.    Migis's Rest Period Claim Must Be Dismissed**

8          Migis concedes that he has no private right of action for his rest period claim.  Plaintiff's

9    Response at 1-2.  Thus, this claim must be dismissed as a matter of law.

10    **B.    Migis's Meal Period Claim Should Be Dismissed**

11          The Complaint filed by Migis makes the following allegations relative to the meal period

12    claims:

13          ¶7.  Oregon law requires employer to provide employees an appropriate meal
14    period which is uninterrupted for not less than 30 minutes....*If the meal period is
     interrupted by work or is less than 30 minutes in length the employer may not
     deduct any portion of the meal period from the employee's wages.*

15

16          ¶8.  AutoZone failed to provide Plaintiff...with meal periods of at least 30
     uninterrupted minutes...AutoZone wrongfully deducted time and failed to pay
17    Plaintiff...for meal periods taken that were interrupted by work  or were less than
     30 minutes long.  *As a result, Plaintiff and class members are entitled to those
     wages improperly deducted...*

18

19          ¶32 (Unpaid Meal Periods).  AutoZone failed to provide Plaintiff...30 minute
     uninterrupted meal periods...*AutoZone failed to pay wages to its employees for
20    meal periods of less than 30 minutes in length.  As a result Plaintiff and other
     similarly situated class members are entitled to wages for the unprovided meal
21    period violations...*

22          ¶39 (Unpaid Meal Period Class).  For Plaintiff and all similarly situated class
     members who worked for AutoZone in Oregon, within the six year period before
23    the filing of this complaint, *from whom AutoZone deducted wages from the class
     members' wages for meal periods of less than 30 minutes in length.*  (emphasis
     added)

24

25    Despite the gloss Plaintiff currently attempts to put on these claims, these are exactly the allegations

26    that were made at the trial court in *Gafur.*

PAGE 2 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1      Accordingly, AutoZone maintains that the Court of Appeals decision in *Gafur v. Legacy*

2    *Good Samaritan Hosp. & Med. Center*, 213 Or App 343 (2007) (rev'd on other grounds) ("*Gafur I*"),

3    governs the meal period claims set forth in Migis's lawsuit.  That is, as recited in *Gafur I*, the meal

4    period claims alleged by the Plaintiff were:

5
> 42. ORS 653.261 provides for minimum employment conditions to be established by the Commissioner of the Oregon Bureau of Labor and Industries. OAR 839-020-0050 requires that employees receive an uninterrupted meal period of not less than thirty (30) minutes for each shift worked of six hours or greater.

6

7

8
> 43. ***Defendant failed to provide Plaintiffs and all other similarly situated class members an uninterrupted meal period* * * ** in violation of ORS 653.261 and OAR 839-020-0050 and failed to pay Plaintiffs and similarly situated class members for those meal periods not provided.

9

10
> 44. ***As a result of Defendant's failure to provide uninterrupted meal periods as required, Plaintiffs and similarly affected class members are due wages for those meal periods which defendant failed to provide* * * *.**

11

12    *Id.* at 348.  (emphasis added).

13       In regards to the *Gafur* plaintiffs' claim for missed meal periods, the Court of Appeals held as

14    follows:

15
> Neither those statutes [cited in the complaint] nor the rules promulgated to implement them state that an employee is entitled to wages for meal breaks; ***OAR 839-020-0050(1)(a) requires meal breaks but not paid meal breaks.*** Therefore, the [trial] court did not err in dismissing plaintiffs' claims based on entitlement to wages for unreceived meal breaks.

16

17

18

19    *Id.* (emphasis added).  It simply cannot be argued that the law in Oregon supports a private right of

20    action for alleged "intrusions" into 30 minute unpaid meal periods[1] such as are alleged in this

21    lawsuit.

22       While the Oregon Supreme Court did not consider the meal period claims that had been

23    dismissed by the trial court in *Gafur* (and which decision was affirmed by the Court of Appeals in

24

25

26
---
[1] Migis does make an allegation in his Complaint that he was forced to work off the clock.  That claim, per Migis's deposition testimony did not relate to having to record meal breaks but then working through them, but to an assertion that he had to deliver parts to other stores off the clock.  Should an attempt be made later to amend this complaint to allege off the clock work during recorded meal periods, Migis will face the insurmountable hurdle of his own contrary testimony.  *See* Declaration of Amy R. Alpern at Exhibit 1 (Migis Deposition Testimony at 154:1-15).

PAGE 3 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS

1   *Gafur I*), the Supreme Court's reasoning in regard to rest periods mandates dismissal of Plaintiff's

2   meal period claims in this case.  That is, the Oregon Supreme Court made it clear that Oregon law

3   requires employers to pay employees for work time.  Employers need <u>not</u> pay employees for time

4   that is <u>not</u> work time.  If an employee clocks out at AutoZone for lunch, but is called back after

5   eighteen minutes, for example, the employee is not entitled to pay for the eighteen minutes that he

6   did not work—however, he <u>is</u> entitled to be paid for every minute he spends "working" on his return

7   from the abbreviated meal break.

8       *Gafur I* resolves the issue currently before this Court.  The Court of Appeals holding in

9   *Gafur I* that employees cannot sue their employers for missed meal periods has not been vacated,

10  reversed or overturned, and there is no Oregon Supreme Court authority to the contrary.  AutoZone

11  asks that the Court dismiss Migis's meal period claims.

12                          **III.    CONCLUSIONS**

13      For the foregoing reasons, AutoZone respectfully requests that this Court dismiss Migis's rest

14  and meal period claims in their entirety.

15

16  Dated:  June 19, 2008.

17

18                                  Leigh Ann Collings Tift OSB No. 054732

19                                  Amy R. Alpern OSB No. 840244
                                    LITTLER MENDELSON

20                                  A Professional Corporation

21                                  Attorneys for Defendant
                                    Autozone Inc.

22

23

24

25

26

PAGE 4 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on June 19, 2008, I served a full, true, and correct copy of the foregoing:

3

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON**

4

**THE PLEADINGS AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT**

5

☐    By delivery via messenger, or otherwise by hand,

6

☒    By facsimile,

7

☐    By e-mail,

8

☒    By mailing same, postage paid

9

addressed to:

10

11

James Dana Pinney
Bailey Pinney & Associates LLC
Attorneys at Law
1498 SE Tech Center Place
Suite 290
Vancouver, WA 98683
Fax (360) 567-3331

12

13

14

Of Attorneys for Plaintiff

15

16

17

18

By _*Laura M Lucero*_

19

Laura Lucero
Secretary for Amy R. Alpern

20

21

22

23

24

25

26

---

PAGE 5 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,<br><br>           Plaintiff,<br><br>   vs.<br><br>AUTOZONE INC., a Nevada Corporation,<br><br>           Defendant. | No. 0711-13531<br><br>**DECLARATION OF AMY R. ALPERN IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** |

I, Amy R. Alpern, hereby declare as follows:

1.    I am an attorney representing Autozone Inc. in the above-captioned matter, and I make this declaration in support of Defendant's Reply in Support of Motion for Partial Judgment on the Pleadings. I have personal knowledge of the statements contained herein.

2.    Attached as Exhibit 1 are true and correct excerpts of the deposition transcript of Michael Migis.

Dated: June 19, 2008

Amy R. Alpern, OSB #840244
aalpern@littler.com
LITTLER MENDELSON
A Professional Corporation

Attorneys for Defendant
AUTOZONE, INC.

ALPERN DEC. IN SUPPORT OF REPLY
IN SUPPORT OF MOT FOR JUDGMENT
ON THE PLEADINGS

1

# EXHIBIT 1

Page 1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

MICHAEL MIGIS, individually,

and on behalf of all other

persons similarly situated,

　　　　Plaintiff,

　　　vs.　　　　　　　　NO. 0711-13531

AUTOZONE, INC., a Nevada Corporation,

　　　Defendant.

VIDEOTAPED

DEPOSITION OF MICHAEL MIGIS

Taken on Behalf of the Defendant

Tuesday, May 20, 2008

d4bf5154-1ee8-4713-889b-13fc3453a6d5

Michael Migis          May 20, 2008

1    Q    Okay.  And then were you ever on the lunch
2         exception report for taking a short lunch?
3    A    Yes.
4    Q    And why would that happen?
5    A    Customer service required me to go back on the
6         counter --
7    Q    And when you --
8    A    -- sooner than expected.
9    Q    Sorry.
10   A    I'm sorry.
11   Q    No, my fault.
12            When -- and when you went back because a
13        customer needed you, you'd go back on the
14        clock?
15   A    Yes.
16   Q    Were you -- did you ever work in a store where
17        there wasn't lunch coverage, where there
18        weren't enough people physically present?
19   A    Yes.
20   Q    And where was that?
21   A    All the stores I worked in, up here in Oregon.
22        And also down in Phoenix.
23   Q    Was that because the stores weren't staffed
24        correctly or because people quit or people were
25        sick?  What was the reason for it usually?

Beovich Walter & Friend

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on June 19, 2008, I served a full, true, and correct copy of the following

3
document:

4
**DECLARATION OF AMY R. ALPERN IN SUPPORT OF DEFENDANT'S REPLY IN**
5      **SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

6 as indicated below:

7
          ☐      By delivery via messenger, or otherwise by hand,
8
          ☒      By facsimile,
9
          ☐      By e-mail,
10
          ☒      By mailing same, postage paid,
11
addressed to:
12

13          James Dana Pinney
            Bailey Pinney & Associates LLC
14          Attorneys at Law
            1498 SE Tech Center Place
15          Suite 290
            Vancouver, WA  98683
16          Fax (360) 567-3331

17                    Of Attorneys for Plaintiff

18                    By  _Laura M Lucero_
19                         Laura Lucero

20
Firmwide:85617288.1 013306.2124
21

22

23

24

25

26

**ALPERN DEC. IN SUPPORT OF REPLY**          2          Littler Mendelson, PC
**IN SUPPORT OF MOT FOR JUDGMENT**                       600 University Street, Suite 3200
**ON THE PLEADINGS**                                     Seattle, WA  98101

Phone: 206-623-3300 Fax:206-447-6965

1
2
3
4
5
6
7      **IN THE CIRCUIT COURT OF THE STATE OF OREGON**
       **FOR THE COUNTY OF MULTNOMAH**
8
9
10     **MICHAEL MIGIS**, individually and on          Case No. **0711-13531**
       behalf of all others similarly situated,
11
12                              Plaintiff,              **REPLY DECLARATION OF**
                                                        **CHEY K. POWELSON**
13           v.                                         **SUPPORTING SUPPLEMENTAL**
                                                        **BRIEFING ON PLAINTIFF'S**
14     **AUTOZONE, INC.,**                              **MOTION TO ENFORCE COURT**
                                                        **ORDER**
15
16                              Defendant.
17
18     I, Chey K. Powelson, hereby declare as follows:

19     1.   I am one of the attorneys for Plaintiff herein.  I am competent to testify in this matter,

20          and base the contents of this declaration on my own personal knowledge and/or the

21          litigation files and documents my firm maintains for this litigation.

22     2.   Attached hereto as **Exhibit A** is a true and correct printout of two annual calendars

23          for  2006  and  2007,  which  I  personally  printed  from  the  website:

24          www.timeanddate.com/calendar.  A comparison of these calendars with those Excel

25          summary report checks (see "Check Dt" column) having a corresponding "N" in the

26

Page 1 -     **REPLY DECLARATION OF CHEY K. POWELSON SUPPORTING SUPPLEMENTAL BRIEFING**
             **ON PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**

1    "Off Cycle" column, demonstrate that almost without exception that the checks relate

2    to a Friday, which upon information and belief is the established weekday for

3    AutoZone's twice-monthly employee paydays.

4

5    I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST
     OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE
6    FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR
     PERJURY.

7

8    Dated this ___16ᵗʰ___ day of June 2008 at Vancouver, Washington.

9

10                                 CHEY POWELSON, OSB 03551
                                   Attorney for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 2 -    **REPLY DECLARATION OF CHEY K. POWELSON SUPPORTING SUPPLEMENTAL BRIEFING
            ON PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

# Calendar for year 2007 (United States)

## January

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    | 1  | 2  | 3  | 4  | 5  | 6  |
| 7  | 8  | 9  | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |    |    |    |

3:◐ 11:◑ 18:● 25:◐

## February

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    |    |    |    | 1  | 2  | 3  |
| 4  | 5  | 6  | 7  | 8  | 9  | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 |    |    |    |

2:◐ 10:◑ 17:● 24:◐

## March

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    |    |    |    | 1  | 2  | 3  |
| 4  | 5  | 6  | 7  | 8  | 9  | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

3:◐ 11:◑ 18:● 25:◐

## April

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| 1  | 2  | 3  | 4  | 5  | 6  | 7  |
| 8  | 9  | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |    |    |    |    |    |

2:◐ 10:◑ 17:● 24:◐

## May

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    |    | 1  | 2  | 3  | 4  | 5  |
| 6  | 7  | 8  | 9  | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |    |    |

2:◐ 10:◑ 16:● 23:◐ 31:◐

## June

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    |    |    |    |    | 1  | 2  |
| 3  | 4  | 5  | 6  | 7  | 8  | 9  |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

8:◐ 14:◑ 22:● 30:◐

## July

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| 1  | 2  | 3  | 4  | 5  | 6  | 7  |
| 8  | 9  | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |    |    |    |    |

7:◐ 14:◑ 22:● 29:◐

## August

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    |    |    | 1  | 2  | 3  | 4  |
| 5  | 6  | 7  | 8  | 9  | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |    |

5:◐ 12:● 20:◐ 28:◐

## September

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    |    |    |    |    |    | 1  |
| 2  | 3  | 4  | 5  | 6  | 7  | 8  |
| 9  | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |    |    |    |    |    |    |

3:◐ 11:● 19:◐ 26:◐

## October

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    | 1  | 2  | 3  | 4  | 5  | 6  |
| 7  | 8  | 9  | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |    |    |    |

3:◐ 11:● 19:◐ 26:◐

## November

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    |    |    |    | 1  | 2  | 3  |
| 4  | 5  | 6  | 7  | 8  | 9  | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |    |

1:◐ 9:● 17:◐ 24:◐

## December

| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
|    |    |    |    |    |    | 1  |
| 2  | 3  | 4  | 5  | 6  | 7  | 8  |
| 9  | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |    |    |    |    |    |

1:◐ 9:● 17:◐ 23:◐ 31:◐

### Holidays and Observances:

| | | |
|---|---|---|
| Jan 1 New Year's Day | May 28 Memorial Day | Nov 11 Veterans Day |
| Jan 15 Martin Luther King Day | Jul 4 Independence Day | Nov 12 'Veterans Day' observed |
| Feb 14 Valentine's Day | Sep 3 Labor Day | Nov 22 Thanksgiving Day |
| Feb 19 Presidents' Day | Oct 8 Columbus Day | Dec 25 Christmas Day |
| Apr 8 Easter Sunday | Oct 31 Halloween | |

Calendar generated on www.timeanddate.com/calendar

EXHIBIT _A_

Page _1-2_

# Calendar for year 2006 (United States)

## January
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

6:◑ 14:○ 22:◐ 29:●

## February
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | | | | |

5:◑ 12:○ 21:◐ 27:●

## March
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

6:◑ 14:○ 22:◐ 29:●

## April
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

5:◑ 13:○ 20:◐ 27:●

## May
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

5:◑ 13:○ 20:◐ 27:●

## June
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

3:◑ 11:○ 18:◐ 25:●

## July
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

3:◑ 10:○ 17:◐ 25:●

## August
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

2:◑ 9:○ 15:◐ 23:● 31:◑

## September
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

7:○ 14:◐ 22:● 30:◑

## October
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

6:○ 13:◐ 22:● 29:◑

## November
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

5:○ 12:◐ 20:● 28:◑

## December
| Su | Mo | Tu | We | Th | Fr | Sa |
|----|----|----|----|----|----|----|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

4:○ 12:◐ 20:● 27:◑

### Holidays and Observances:

| | | |
|---|---|---|
| Jan 1 New Year's Day | May 29 Memorial Day | Nov 10 'Veterans Day' observed |
| Jan 2 'New Year's Day' observed | Jul 4 Independence Day | Nov 11 Veterans Day |
| Jan 16 Martin Luther King Day | Sep 4 Labor Day | Nov 23 Thanksgiving Day |
| Feb 14 Valentine's Day | Oct 9 Columbus Day | Dec 25 Christmas Day |
| Feb 20 Presidents' Day | Oct 31 Halloween | |
| Apr 16 Easter Sunday | Nov 7 Election Day | |

EXHIBIT _A_
Page _2-2_

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing *Reply Declaration of Chey K.*

*Powelson Supporting Supplemental Briefing Re: Plaintiff's Motion to Enforce Court Order* upon:

        Leigh Ann Tift
        Littler Mendelson
        One Union Square
        600 University St, Ste 3200
        Seattle WA 98101-3122
        Attorney for Defendant AutoZone

by the following indicated method or methods:

[X]    by causing a full, true, and correct copy thereof to be deposited in the U.S. regular mail service to the person listed above on the date set forth below.

DATED June 16, 2008

BAILEY, PINNEY & ASSOCIATES, LLC

CHEY POWELSON, OSB 035512
Attorney for Plaintiff

Page 3 -    **REPLY DECLARATION OF CHEY K. POWELSON SUPPORTING SUPPLEMENTAL BRIEFING ON PLAINTIFF'S MOTION TO ENFORCE COURT ORDER**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**
**FOR THE COUNTY OF MULTNOMAH**

**MICHAEL MIGIS**, individually and on
behalf of all others similarly situated,

                    Plaintiff,

    v.

**AUTOZONE, INC.,**

                 Defendant.

Case No. **0711-13531**

**PLAINTIFF'S REPLY**
**SUPPORTING PLAINTIFF'S**
**STATEMENT OF EXPENSES**
**(RE: DEFENDANT'S MOTION**
**FOR EXTENSION OF TIME)**

16       Through his attorneys herein, PLAINTIFF submits this *Reply* supporting his previously-

17   filed *Statement of Expenses* relating to Defendant's *Motion for Extension of Time*, upon which

18   this Court heard oral argument on April 22, 2008, and denied AutoZone's *Motion*.

19       First, despite Plaintiff's numerous requests, AutoZone's counsel has not corrected her

20   May 1, 2008 *Declaration* containing information this Court cannot rely upon to consider

21   AutoZone's objections to Plaintiff's fees.  For example, Exhibit 1 (an April 16 letter) to Ms.

22   Tift's *Declaration* is <u>not</u> the correct exhibit for which Plaintiff billed the time and to which

23   Defendant now objects.  The correct letter an April 17, 2008 letter, which Plaintiff's counsel had

24   drafted on April 16.  Plaintiff's counsel pointed this out to Defendant's counsel, but to no avail.

25   ///

26

Page 1 -      **PLAINTIFF'S REPLY SUPPORTING STATEMENT OF EXPENSES (RE: DEFENDANT'S MOTION**
            **FOR EXTENSION OF TIME)**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1          Second, Plaintiff's April 21, 2008 billing for drafting the *Response* to Defendant's *Motion*

2    also included time for drafting the supporting declaration, and reviewing a hearing transcript form

3    the *Joarnt v. AutoZone* case, which involved similar issues to those in this Court's Orders.

4    Plaintiff used portions of that transcript as an exhibit to the declaration.

5          Finally, Defendant tries to characterize Plaintiff's billing rate as "$16,000/hour."

6    *Defendant's Objections to May 22, 2008 Statement of Attorney Fee Request*, p. 1.  Since Plaintiff

7    requests less than $9,000 for all expenses incurred as a result of Defendant's *Motion*, to achieve

8    a rate of $16,000 per hour Plaintiff would have had to perform all work in just over half an hour.

9    Defendant's objection on this ground is therefore not reasonable.

10          Plaintiff respectfully requests the award of expenses, including attorneys' fees, incurred

11    as a result of AutoZone's *Motion*, as set forth in the Statement of Expenses.

12

13

14    DATED this *16* day of JUNE 2008.

15

16    BAILEY, PINNEY & ASSOCIATES, LLC

17

18    _____

     CHEY POWELSON, OSB 035512

19    Attorney for Plaintiff

20

21

22

23

24

25

26

**PLAINTIFF'S REPLY SUPPORTING STATEMENT OF EXPENSES (RE: DEFENDANT'S MOTION FOR EXTENSION OF TIME)**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that I caused to be served the foregoing *Plaintiff's Reply Supporting*

4   *Plaintiff's Statement of Expenses (Re: Defendant's Motion for Extension of Time)* upon:

5                        Leigh Ann Tift
                         Littler Mendelson
6                        One Union Square
                         600 University St, Ste 3200
7                        Seattle WA 98101-3122
                         Attorney for Defendant AutoZone
8

9   by the following indicated method or methods:

10
        [X]    by causing a full, true, and correct copy thereof to be deposited in the U.S. regular
11             mail service to the person listed above on the date set forth below.

12

13

14                      DATED June 16, 2008

15                      BAILEY, PINNEY & ASSOCIATES, LLC

16

17

18                      CHEY POWELSON, OSB 035512
                        Attorney for Plaintiff
19

20

21

22

23

24

25

26

Page 3 -    **PLAINTIFF'S REPLY SUPPORTING STATEMENT OF EXPENSES (RE: DEFENDANT'S MOTION
            FOR EXTENSION OF TIME)**

1

2

3

4

5          IN THE CIRCUIT COURT OF THE STATE OF OREGON

6              FOR THE COUNTY OF MULTNOMAH

7

8

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated, | No. 0711-13531 |
| | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER** |
| Plaintiff, | |
| vs. | **NOTED FOR JULY 11, 2008** |
| AUTOZONE INC., a Nevada Corporation, | |
| Defendant. | |

16              **I.      ARGUMENT**

17          Defendant, AutoZone Inc. ("AutoZone"), has a motion pending before this Court seeking a

18   protective order related to plaintiff's 39C(6) deposition notice demanding that AutoZone produce a

19   nonresident corporate witness for the purpose of a deposition.  In support of this motion, AutoZone

20   relies on the following Points and Authorities, the Declarations of Leigh Ann Collings Tift ("Tift

21   Decl.") and Mark Dessem ("Dessem Decl."), and the pleadings and records on file herein.

22          Plaintiff insists that he must depose defendant's 39C(6) designee, Mark Dessem, in Oregon

23   despite the facts that (1) it is well settled that corporate witnesses are generally deposed at the

24   principle place of business of the company, which, in this case, is Memphis, Tennessee; (2) Plaintiff

25   has previously traveled to Memphis to depose this very witness in a related lawsuit, *Joarnt v.*

26   *AutoZone, Inc.*; (3)  plaintiff's attorney has already deposed several AutoZone witnesses on many of

PAGE 1 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
Firmwide:85516361.1 013306.2124

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

the exact topics noted in his 39C(6) deposition notice, and AutoZone has offered to stipulate that their answers apply with equal force now as they did in 2005, when plaintiff asked the first time; and (3) Oregon law provides no right of action for certain of the topics noted for deposition regarding Oregon wage and hour laws.

A.    **Plaintiff Has Not Demonstrated "Peculiar" or "Extraordinary" Circumstances Sufficient to Require Mr. Dessems's Deposition in Portland**

It is well settled that the deposition of a corporation by its agents and officers should ordinarily be taken its principal place of business, especially where the corporation is a defendant. *Salter v. The Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Moore v. Pyrotech Corp.*, 137 F.R.D. 356, 357 (D. Kan. 1991) (stating that corporate depositions "are ordinarily taken at the corporation's principal place of business unless justice requires otherwise"); *Farquhar v. Shelden*, 116 F.R.D. 70, 73 (E.D. Mich. 1987) (court refused to depart from "general rule requiring a defendant to be deposed where he resides"); *Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001)(court refused to make two "high ranking executives of a major corporation" travel outside of their home forum for a deposition); *See,* also, 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*: Civil § 2112 (2d ed. 2006)("The deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business"). Indeed, courts have repeatedly opined that because plaintiffs choose where to bring the lawsuits, they "normally cannot complain if they must take discovery at great distances from the forum." *See, Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987)(granting protective order requiring plaintiff to take defendant's deposition in the Netherlands); *Payton v. Sears, Roebuck and Co.*, 148 F.R.D. 667, 669 (N.D. Ga. 1993)(granting a protective order protecting Sears and Sanyo from being deposed in Atlanta, Georgia, where the plaintiff in that action did not present any "compelling reason to depart from the general rule that a corporate defendant's agent be deposed at the corporations principal place of business").

PAGE 2 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
Firmwide:85516361.1 013306.2124

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1    Plaintiffs bears the burden of demonstrating that corporate depositions should not be held at

2    the defendant's principal place of business, and can only overcome that presumption by

3    demonstrating "peculiar," "exceptional" or "unusual" circumstances. *See*, *Salter*, 593 F.2d 649, at

4    652; *Six West* 203 F.R.D. at 107; *Metrex Research Corp. v. U.S.*, 151 F.R.D. 122 (D. Colo. 1993);

5    *see, also*, *O'Sullivan v. Rivera*, 229 F.R.D. 187, 187 (D. N.M. 2004)(stating that plaintiff failed to

6    establish "undue hardship" or "exceptional circumstances" demonstrating that defendant should be

7    deposed outside of his home state).

8    Here, plaintiff has done nothing to overcome the presumption that Mr. Dessem's deposition

9    should take place in Memphis, Tennessee. Plaintiff has not even attempted to identify any peculiar,

10   exceptional, or unusual circumstances justifying a Portland deposition of a Memphis resident.

11   Indeed, in a similar and related action, plaintiff traveled to Memphis to depose this *very same*

12   *witness* without complaint. Tift Decl. ¶ 8; Dessem Decl. ¶ 12.

13   Plaintiff identifies several factors that he believes are in favor of conducting Mr. Dessem's

14   deposition in Portland, none of which are either peculiar or extraordinary, and some of which are

15   baseless. First, although plaintiff states in his Opposition that counsel for both parties reside "in or

16   very near the litigation forum," he is well aware that Ms. Tift lives and works in the Seattle area. He

17   is also aware that following Plaintiff's counsel's complaint that there were too many attorneys

18   involved on behalf of AutoZone in this matter, Ms. Tift became the principal contact in the case.

19   Finally, in actual fact, Plaintiff's counsel's office is not in Portland, so all three parties will have to

20   travel to Portland for a Portland deposition. Tift Decl. ¶¶ 5,6.

21   Second, Plaintiff suggests that "there is undoubtedly a strong likelihood that significant

22   discovery disputes may occur during the deposition," thus making the Portland location necessary.

23   However, to date, two depositions have been taken in this case, and neither party has felt it necessary

24

25

26

PAGE 3 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
Firmwide:85516361.1 013306.2124

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1    to call the judge during either deposition.[1]  Tift Decl. ¶ 7.  In *Joarnt*, the parties took a total of

2    twelve depositions.  Ms. Tift attended the majority of those depositions, and is familiar with the

3    transcripts of all of the depositions in *Joarnt*.  Not a single call was made to the Court in the course

4    of these depositions.  Tift Decl. ¶ 9.  In fact, a review of the transcript of Mr. Dessem's previous

5    deposition shows that there were no discovery disputes, no calls to the Court, and no appearances

6    before the Court relating to Mr. Dessem's testimony.  Tift Decl. ¶ 8.  Unless plaintiff's counsel is

7    determined that a dispute will occur this time, there is no historical reason to believe that there will

8    be a discovery dispute requiring physical access to the Multnomah Courthouse.  In any event, should

9    there be a discovery dispute requiring Court intervention, it is as simple to call the Court from

10   Memphis, Tennessee as it is from Portland, Oregon.

11           Third, as stated in the declaration of Mark Dessem, Mr. Dessem rarely travels for business.

12   Because of his job responsibilities, Mr. Dessem spends the great majority of his time in AutoZone's

13   corporate office so that he is readily available to subordinates and others who need him.  Dessem

14   Decl. ¶¶ 5, 9-10.

15           Fourth, although plaintiff tries to make it sound as though there are legions of plaintiffs

16   whose very fate hangs on the whereabouts of the deposition at issue, the fact that there is a putative

17   class in this action that has not been certified has no bearing on where Mr. Dessem's deposition

18   should take place.

19           Finally, and importantly, traveling to have his deposition taken would be extremely

20   disruptive for Mr. Dessem.  Dessem Decl. ¶¶ 6, 8, 10.  In *Six West*, the Court granted a protective

21   order stating that  two high level corporate officers did not have to travel to have their depositions

22   taken where their "absence at work would [] adversely affect the defendants' affairs," 203 F.R.D. at

23   107.  The same holds true for Mr. Dessem, a busy executive running the payroll department for a

24

25   _____

     [1] Admittedly, Plaintiff filed a motion regarding the first of the 39C(6) depositions that were conducted of AutoZone

26   witnesses, but the remedies requested by Plaintiff, i.e., to "bind" AutoZone to the witness' answers or to require another
     witness to appear in Oregon, don't militate a Portland location for the deposition of Mark Dessem.

PAGE 4 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
Firmwide:85516361.1 013306.2124

1    large corporation for whom a three day, 2,000 mile plus trip from Memphis to Portland during an

2    extremely busy time would constitute an undue burden. Dessem Decl. ¶¶ 9-11. Thus, in light of the

3    well-settled case law and the equities of this case, Mr. Dessem's deposition should take place in

4    AutoZone's principal place of business, Memphis, Tennessee.

**B.      Mr. Dessem's Testimony Could be More Easily Done By Other Means.**

6        As an initial matter, it should be noted that the information sought in plaintiff's topics 1 and

7    2, regarding the payment of final wages between November 16, 2006 and November 16, 2007, don't

8    relate to Plaintiff Migis at all.[2]  As plaintiff well knows, plaintiff Migas left AutoZone in *February*

9    *of 2006*, eight months *before* plaintiff's topics of inquiry. Tift Decl. ¶ 10.

10       Despite this anomaly, Mr. Dessem has already testified regarding AutoZone's policies and

11   practices for the payment of final wages in the *Joarnt* matter, as has AutoZone employee Kevin

12   Bussey, and defendant will stipulate that such testimony is still accurate, with only slight

13   modification (which Mr. Dessem swears to in his Declaration). *See*, Tift Decl. ¶ 11, Dessem Decl.

14   ¶¶ 12-14. Testimony has also already been taken from AutoZone Managers relating to topics 6 and

15   7, and defendant will stipulate to the accuracy of that testimony as well. *See*, Exhibits B, C and D to

16   Declaration of Tift.

17       Topics 8 and 9 are completely irrelevant to this case, as the Oregon Supreme Court has

18   recently decided that employees do not have a private right of action against their employees to

19   recover unpaid wages for missed rest and meal periods. *Gafur v. Legacy Good Samaritan Hospital*

20   *and Medical Center*, 344 Or. 525, 2008 WL 2054448 (Or.). This decision, which had not issued at

21   the time that plaintiff noticed his 39C(6) deposition, completely obviates the need for any testimony

22   on these topics.[3]

23

24   _____
     [2] A true and correct copy of Plaintiff's First Amended ORCP 39C(6) Notice of Deposition of Defendant is attached to
25   the Tift Decl. as Exhibit A (however, this notice actually schedules Plaintiff's second ORCP 39C(6) deposition of an
     AutoZone witness. The first witness appeared on May 15, 2008).
     [3] It should be noted that Defendant filed a Motion for Partial Judgment on the Pleadings on this very topic on May 22,
26   2008, which has yet to be decided by the Court.

PAGE 5 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
Firmwide:85516361.1 013306.2124

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1    Consequently, as few of plaintiff's topics actually need to be explored with Mr. Dessem, it

2    cannot be argued that his deposition should be very short.  This is further evidence that equity

3    demands Mr. Dessem not be forced to travel over 2,000 miles and take 3 days off of work for a half-

4    day deposition that could easily be taken by video conference.  However, a video deposition is one

5    of the options that plaintiff has already rejected out of hand.

6                                    **II.     CONCLUSION**

7        For all of the reasons stated above, AutoZone respectfully requests that the Court grant its

8    motion for a protective order, and command plaintiff to depose Mr. Dessem in Memphis, Tennessee.

9

10   Dated: June 16, 2008

11

12                                     Leigh Ann Tift OSB No.54732
13                                     LITTLER MENDELSON
                                       A Professional Corporation
14
                                       Attorneys for Defendant
15                                     Autozone Inc.

16

17

18

19

20

21

22

23

24

25

26

PAGE 6 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
Firmwide:85516361.1 013306.2124

                                                        Littler Mendelson, PC
                                                        1750 SW Harbor Way, Suite 450
                                                        Portland, OR  97201
                                                        Phone: 503-221-0309 Fax: 503-242-2457

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2008 I served a full, true, and correct copy of the foregoing

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**:

☐    By delivery via messenger, or otherwise by hand,

☒    By facsimile,

☐    By e-mail,

☒    By mailing same, postage paid,

addressed to:

Bailey Pinney & Associates LLC
Attorneys at Law
1498 SE Tech Center Place
Suite 290
Vancouver, WA 98683
Fax (360) 567-3331

Of Attorneys for Plaintiff

By _____
Sally Swearinger

PAGE 7 – DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER
Firmwide:85516361.1 013306.2124

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-2457

1

2

3

4

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,<br><br>         Plaintiff,<br><br>  vs.<br><br>AUTOZONE INC., a Nevada Corporation,<br><br>         Defendant. | No. 0711-13531<br><br>**DECLARATION OF LEIGH ANN TIFT IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**<br><br>   **NOTED FOR JULY 11, 2008** |

I, Leigh Ann Collings Tift, hereby declare as follows:

    1.     I am an attorney representing AutoZone Inc. in the above-captioned matter, and I make this declaration in support of AutoZone's Motion for a Protective Order. I have personal knowledge of the statements contained herein.

    2.     Attached as Exhibit A is a true and correct of plaintiff's First Amended ORCP 39(C) Notice of Deposition of Defendant. This was the second ORCP 39C(6) deposition noticed by Plaintiff of an AutoZone witness.

    3.     I live in Bainbridge Island, Washington, a suburb of Seattle. My office is located in Seattle, Washington.

    4.     In addition to being AutoZone's counsel in this action, I was also AutoZone's counsel in a related action, *Joarnt v. AutoZone*.

Firmwide:85570401.1 013306.2124

---

PAGE 1 – DECL OF TIFT ISO DEF'S REPLY
IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER

1    5.    At a hearing before Judge LaBarre in April, Mr. Bailey stated that he'd dealt with a

2    number of attorneys from my firm in the *Migis v. AutoZone* matter, and that he found that

3    frustrating.  At the hearing, the Court asked which attorney would be principally responsible for

4    AutoZone's defense, and I stated that I would be that person.  I know that Plaintiff's counsel is

5    aware that I do not live in Portland nor work in my firm's Portland office, and, in fact, when we

6    were attempting to schedule a review of period boxes at Mr. Migis' last store last week, Plaintiff's

7    counsel, Mr. Powelson, gave an estimate for how long he believed it took for me to drive to

8    Portland.

9    6.    I have been to Plaintiff's counsel's offices, which are in Vancouver, Washington.

10   Should a Portland deposition of Mr. Dessem be set, both attorneys would have to travel to Portland--

11   as would Mr. Dessem.

12   7.    I took the deposition of Mr. Migis in this case, and have read the transcript of the

13   deposition of AutoZone's first 39C witness, Mr. Jon.  In neither case did anyone call the Court to

14   resolve a discovery dispute.

15   8.    Mark Dessem, the witness designated as AutoZone's 39C(6) in this action, was

16   deposed in *Joarnt*.  That deposition took place in Memphis, Tennessee, AutoZone's principal place

17   of business.  I do not recall that plaintiff's attorney, Mr. Bailey, lodged any complaint about

18   traveling to Memphis for that deposition.  There were no disputes in the course of that deposition

19   (which lasted about two hours) no calls to the Court, and no appearances before the Court as a result

20   of the deposition.

21   9.    I either took or defended the majority of the depositions in the *Joarnt* matter,

22   including the first deposition of Mr. Dessem, and Mr. Bailey represented Plaintiffs in all of those

23   depositions.  In those cases where I was not present, I received and reviewed the transcripts.  Not a

24   single call was made to the Court to request resolution of a discovery dispute.  We never appeared at

25   the Multnomah County Circuit Court to resolve any disputes in any of those depositions.

26

Firmwide:85570401.1 013306.2124

PAGE 2 – DECL OF TIFT ISO DEF'S REPLY
IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1         10.    Mr. Migis testified at his deposition that he quit his job at AutoZone in February,

2    2006.

3         11.    I offered, on behalf of AutoZone, to stipulate to Mr. Dessem's prior testimony

4    relating to AutoZone's pay policies and practices regarding payment of final wages.  Further, with

5    regard to topics 6 and 7 in the Amended 39C(6) deposition notice (policies, practices and procedures

6    relating to review, correction or adjustment of reported work hours and/or scheduling, tracking or

7    payment of overtime), Plaintiff's counsel previously obtained deposition testimony of several store

8    managers on these subjects.  *See*, e.g., Exhibits B, C and D to this Declaration, which are true and

9    accurate excerpts of the deposition testimony of AutoZone Store Managers Suhl and Carrera and

10    District Manager Ken Wesner.  AutoZone will also stipulate to this testimony as the Company's

11    policies on correcting or adjusting incorrect time entries and payment of overtime.

12

13    Dated: June 16, 2008

14

15                                          Leigh Ann Tift OSB No.54732

16                                          LITTLER MENDELSON
                                      A Professional Corporation

17                                          Attorneys for Defendant

18                                          Autozone Inc.

19

20

21

22

23

24

25

26

Firmwide:85570401.1 013306.2124

PAGE 3 – DECL OF TIFT ISO DEF'S REPLY
IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on June 16th, 2008, I served a full, true, and correct copy of the foregoing

3

**DECLARATION OF LEIGH ANN TIFT IN SUPPORT OF DEFENDANT'S REPLY IN**

4

**SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**

5

6

☐    By delivery via messenger, or otherwise by hand,

7

☒    By facsimile,

8

☐    By e-mail,

9

☒    By mailing same, postage paid,

10

addressed to:

11

12

Bailey Pinney & Associates LLC
Attorneys at Law
1498 SE Tech Center Place

13

Suite 290
Vancouver, WA  98683

14

Fax (360) 567-3331

15

Of Attorneys for Plaintiff

16

17

18

By _____

19

Sally Swearinger

20

21

22

23

24

25

26

Firmwide:85570401.1 013306.2124

PAGE 4 – DECL OF TIFT ISO DEF'S REPLY
IN SUPPORT OF MOTION FOR
PROTECTIVE ORDER

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax: 503-242-2457

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**
**FOR THE COUNTY OF MULTNOMAH**

MICHAEL MIGIS, on behalf of himself and
all others similarly situated,

                   Plaintiffs,

    v.

AUTOZONE, INC.,

                   Defendant.

Case No. **0711-13531**

**FIRST AMENDED ORCP 39C(6)**
**NOTICE OF DEPOSITION OF**
**DEFENDANT**

TO:   **AUTOZONE, INC.,** by and through your attorney, Ms. Leigh Ann Tift, One Union Square, 600 University Street, Suite 3200, Seattle, WA 98101-3122

     **PLEASE TAKE NOTICE:** that on **Friday, May 30, 2008**, commencing at **9:00 a.m.** PDT, Plaintiff will take the deposition of Defendant AutoZone, Inc., pursuant to ORCP 39C(6). The deposition will be conducted at 1750 SW Harbor Way, Ste 450, Portland Oregon, or some other local location if agreed upon in advance by the parties. The deposition will be recorded by a licensed and qualified court reporter, and may additionally be recorded by audio/videotape.

     Plaintiff requests examination relating to the following matters:

1.   All AutoZone policies, procedures, and practices for processing and providing the payment of final wages to all Oregon hourly employees whose employment terminated in any manner with AutoZone between November 16, 2006 and November 16, 2007. See e.g., Defendant's Bates Nos. AZ/MIGIS 0001212 -

Page 1 -    **FIRST AMENDED ORCP 39C(6) NOTICE OF DEPOSITION**

00001215; and AZ/MIGIS 0001656 - 1836 (and other related documents Defendant will presumably produce under the Court's order during the April 8, 2008 hearing on Plaintiff's *Motion to Enforce Court Order*).

2. All AutoZone efforts (such as training, seminars, orientation, review of any documents, and reminders or updates – such as memoranda in any form – created, reviewed or used by, or otherwise sent by or to AutoZone managers with actual or apparent authority over any aspect of AutoZone operations in the State of Oregon) to comply with Oregon State laws and regulations governing the payment of final wages to all Oregon hourly employees whose employment terminated in any manner with AutoZone between November 16, 2006 and November 16, 2007.

3. All performance-based financial incentive(s) and/or compensation AutoZone provided to Oregon Store, District, and/or Regional Manager(s).

4. All AutoZone termination information relating to Plaintiff Michael Migis, including all material facts relating to his termination from employment, the processing of his final wages, and issuance of his final paycheck.

5. How time worked by hourly AutoZone employees in the State of Oregon was tracked, recorded, transmitted, and otherwise computed, between April 1, 2005 and November 16, 2007.

6. All AutoZone policies, practices, and/or procedures relating to the review, adjustment or correction, and approval of Oregon hourly employee time records created between April 1, 2005 and November 16, 2007.

7. All AutoZone policies, practices, and/or procedures relating to the scheduling, tracking, and payment of overtime wages to hourly employees in the State of Oregon between April 1, 2005 and November 16, 2007.

8. All AutoZone policies, procedures, and/or practices relating to the scheduling and tracking of hourly employee rest periods in the State of Oregon between April 1,

Page 2 -    **FIRST AMENDED ORCP 39C(6) NOTICE OF DEPOSITION**

1    2005 and November 16, 2007.

2    9.   All AutoZone policies, procedures, and/or practices relating to the scheduling and

3      tracking of hourly employee meal periods in the State of Oregon between April 1,

4      2005 and November 16, 2007.

5    10.   The document(s) Bates-numbered AZ/MIGIS 0001220 - 1235, and AZ/MIGIS

6      0001253 - 1288, including the date(s) of creation, identity of all persons involved in

7      the creation, review and/or modification of such document(s), and identification and

8      meaning of all terms, fields, sources of data found therein.

9    11.   The identification (including name and date) and purpose of all reports/queries

10      AutoZone created or obtained from its electronic data relating to the compensation

11      and hours worked by hourly AutoZone employees in the State of Oregon between

12      April 1, 2005 and November 17, 2007.

13 **NOTE:** PURSUANT TO ORCP 39C(6), DEFENDANT'S HAS AN AFFIRMATIVE DUTY TO

14 DESIGNATE, PREPARE AND PRODUCE THE PERSON(S) NEEDED TO TESTIFY AS TO

15 THE TOPICS LISTED ABOVE. IF THE PERSON OR PERSONS PRODUCED DO NOT

16 HAVE ADEQUATE KNOWLEDGE TO TESTIFY, PLAINTIFFS WILL SEEK

17 APPROPRIATE REMEDIES, INCLUDING SANCTIONS.

18      Defendant should, by no later than five (5) business days prior to the date of this

19 deposition, set forth for Plaintiff each person designated and the issue or issues on which such

20 person will testify. The deposition will continue from hour to hour and day to day until complete.

21

22 SIGNED this 29ᵗʰ day of April 2008.      BAILEY, PINNEY & ASSOCIATES, LLC

23

24

25      A.E. "BUD" BAILEY, OSB 87157
     R. BRADLEY GRIFFIN, OSB 072390

26      CHEY POWELSON, OSB 03551
     Attorneys for Plaintiffs

Page 3 -      **FIRST AMENDED ORCP 39C(6) NOTICE OF DEPOSITION**

# EXHIBIT B

Page 1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH


RICHARD JOARNT and BERT    )
YAMAOKA, individually and  )
on behalf of All Persons   )
similarly situated,        )
            Plaintiffs,)
        vs.                )No. 0503-02795
                           )
AUTOZONE, INC., a          )
Foreign Corporation,       )
            Defendant. )




DEPOSITION OF DAVID SUHL

Taken in behalf of Plaintiff

Hillsboro, Oregon

November 11, 2005




DEBORAH L. COOK
COURT REPORTING
1102 N. Springbrook Road
No. 136
Newberg, Oregon  97132
(503) 537-0339
deb@cookcourtreporting.com

de46a066-cd2e-4bf0-a93a-14db8382063d

1   Q    Do you have anybody that works for you that
2   does that?

3   A    No.

4   Q    If I don't want my check to be paid through
5   direct deposit, can I just get a check?

6   A    Not that I am aware of.

7   Q    Paragraph 4 says, "If an employee forgets to
8   clock in or clock out, employees can bring this to
9   my attention during the workday and I can clock
10  them out and make the note in the records."  Can
11  you also clock an employee in?

12  A    No.  I don't have their password.

13  Q    So you can -- can you override an
14  individual's time records so you can change it?

15  A    Yeah.

16  Q    How do you do that?

17  A    I go under the payroll menu in the computer.
18  If they say they forget to clock in, obviously we
19  give them the benefit of the doubt and see what
20  time they are supposed to start, or what time they
21  say they started and make an adjustment.

22  Q    Same thing goes with somebody that doesn't
23  clock out?

24  A    Right.

25  Q    You indicated in here, the second thing, "If

de46a066-cd2e-4bf0-a93a-14db8382063d

Page 60

1    a store closes without an employee clocking out,

2    the computer automatically clocks them out at that

3    time."

4         Does that mean that the computer

5    automatically clocks out when --

6    A    Yeah, when it does the end-of-day

7    processing, and it processes, it will clock them

8    out.  And what happens is we get a report.  We see

9    a report of the hours, and we know we're out of

10   line, and that's when we have to go in and make the

11   adjustments and contact the employee, and say what

12   time did you leave.

13   Q    So if the employee doesn't clock out, the

14   computer locks them out automatically.  What

15   triggers that?

16   A    What triggers it?  When they run the

17   end-of-day processing, there's also end-of-day

18   payroll.  They have to run end-of-day payroll.  If

19   the management on duty forgets to run end-of-day

20   process or payroll, it can still do the process.

21   And what it does, the time will continue until the

22   next morning.  Because then you have to do

23   end-of-day payroll before you can do the opening

24   paperwork.

25   Q    So he just remains on the clock?

de46a066-cd2e-4bf0-a93a-14db8382063d

1    A    Technically, yeah.  If we close at 9:00, and

2    he's supposed to come in at 9:00 in the morning,

3    there's 12 extra hours of pay.  And that has to be

4    adjusted.

5    Q    So that shows up on the report, and you can

6    go back in and make a manual adjustment?

7    A    Right.

8    Q    Is it possible to clock out and stay in the

9    store?

10   A    To stay in the store?  You can stay in the

11   store all you want after you clock out.  But it

12   ain't going to let you process anything, unless you

13   have got somebody's password.  And if you have

14   somebody's password, you are violating policy.

15   Q    Is it possible for someone to clock out and

16   stay in the store, and then go out of the store and

17   at some other point -- I mean, the fact that you

18   remain in the store off the clock, for example,

19   would just not be recorded.  The time record thing

20   isn't attached to the security system?

21   A    It's not attached to the individual either,

22   so obviously --

23   Q    So essentially if someone clocked out and

24   continued to work, if that occurred -- and I'm not

25   saying it did, but if that did occur, there would

de46a066-cd2e-4bf0-a93a-14db8382063d

1      A    Yeah.

2      Q    And then you say down here, "Our orientation

3  process is called Foundations, and is pretty

4  closely scripted.  Attached is Exhibit 2 as an

5  example of the orientation script for store

6  managers."

7           Now, when I look at Exhibit No. 2, this

8  Foundation Basics, on page 1 of Exhibit 2, it says,

9  "Foundations Training Facilitator Guide, effective

10 May 2005."  Do you see that?

11     A    Yeah.

12     Q    So this document probably wouldn't be the

13 document that you would have used in October of

14 2003?

15     A    No, it is not.

16     Q    Let's skip down to paragraph 14.  In

17 paragraph 14 you are kind of talking about

18 generally overtime in this paragraph.  But I am

19 looking at the beginning of the end of -- excuse

20 me, line 10 and following on line 11, you say, "I

21 do monitor the amount of overtime and try to

22 prevent unscheduled overtime.  But anytime an

23 employee has worked overtime, he or she is paid

24 overtime wages."  Do you see that?

25     A    Yes.

de46a066-cd2e-4bf0-a93a-14db8382063d

1    Q    What is -- when you make this statement in

2    this declaration, is it in reference to anything in

3    particular?

4    A    No.  It's just, I control overtime as much

5    as possible in my store.  Everybody else is

6    different.  My store is my store.  So I try to

7    follow as close as I probably can not to have

8    overtime.  If have I overtime, it has to be

9    approved by me.

10    Q    Does this statement have anything to do with

11    either Mr. Joarnt or Mr. Yamaoka?

12    A    No.

13    Q    Have you ever had an employee -- you go on

14    to state in here that if someone doesn't -- works

15    off the clock and didn't report their time

16    accurately that there would be discipline that

17    would occur.  Have you ever had an employee that

18    you had to discipline for working off the clock?

19    A    Yeah.  One time back in Florida.

20    Q    Back in Florida, but not in Oregon?

21    A    Not in Oregon.

22    Q    Since you have been in Oregon, specifically

23    at the Aloha store, have you had to discipline

24    anybody?

25    A    I have not.  I will not allow them to work

de46a066-cd2e-4bf0-a93a-14db8382063d

# EXHIBIT C

Page 1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH


RICHARD JOARNT and BERT    )
YAMAOKA, individually and  )
on behalf of All Persons   )
similarly situated,        )
             Plaintiffs,)
        vs.                )No. 0503-02795
                           )
AUTOZONE, INC., a          )
Foreign Corporation,       )
             Defendant.  )


DEPOSITION OF FELIPE CARRERA

Taken in behalf of Plaintiff

Hillsboro, Oregon

November 14, 2005


DEBORAH L. COOK
COURT REPORTING
1102 N. Springbrook Road
No. 136
Newberg, Oregon  97132
(503) 537-0339
deb@cookcourtreporting.com

1    A    Well, I don't know if that's truthful.  It
2    either gets printed at the end of the night, after
3    the computer has done, has closed and done all of
4    the backup, and all of that, or it gets printed in
5    the morning.  I believe it gets printed in the
6    morning, but I'm not certain.  I am not there after
7    midnight, and the computer service is spewing all
8    the paperwork.
9    Q    Eventually, though, you get time records
10   that are for the week that are in a paper schedule?
11   A    Yes.
12   Q    Are those the time records that the
13   employees sign?
14   A    That's correct.
15   Q    On Saturday night when the store is closing,
16   is there a computerized weekly closing that you go
17   through?
18   A    That the manager -- that's at that time,
19   yes.
20   Q    What is that?  What do you do on Saturday
21   night when the store closes to close out the week?
22   A    You do the closing tasks, which are the
23   closing of the tills.  And then you review an
24   exceptions report.  And it states if anybody came
25   in early or late, or didn't do it on time, it

59a8e7b4-e068-4b73-ad2a-253bc34392e3

1    reviews that.

2         And then after that it gives you -- you go

3    into -- weekly time, into payroll.  And I don't

4    recall now.  I haven't closed in such a long time

5    on Saturdays.  But it's in payroll and you are

6    going to weekly -- weekly schedule, closing.  I

7    think that's the wording of it.  Approve it.

8    Anybody can -- it goes through other people,

9    whoever, whatever they worked, and if they worked

10   and you can see right there what their time was.

11   And it gets approved, and that's it.  You clock

12   out, and that clocks everybody out, and you hit the

13   last key and you are out.

14       Q    When you close, is it the practice that you

15   are supposed to review those documents as they come

16   up?  When they tell you what the individuals

17   worked, are you supposed to review those or do you

18   check them and say it's okay?

19       A    Well, it's common practice that you can

20   review them.  You can see the hours that people

21   worked, yeah.

22       Q    Well, what is the policy?  Are you supposed

23   to review them?  When you okay them, are you

24   supposed to have reviewed them, and okay them as

25   being accurate?

59a8e7b4-e068-4b73-ad2a-253bc34392e3

1     A    To the best of our knowledge, they are

2    accurate.   So we look at the hours that the person

3    has worked, and we approve them.

4     Q    So if I am hearing right, the answer to my

5    question is you are supposed to review them to make

6    sure that they are accurate before you approve

7    them?

8     A    That's correct.

9     Q    When you closed, did you do that?

10     A    Yes, I did.

11     Q    Now, people who close for you, your

12    employees, have you instructed them that that is

13    what they are supposed to do?

14     A    To a certain extent.

15     Q    What part of the policy or practice did you

16    tell them that they don't have to do?

17     A    They have to approve the weekly schedule.

18    And they can review it, but there's no -- to my

19    understanding, what I told them was not to -- they

20    are not authorized to change any hours.   Only I can

21    do that.   Only the manager is authorized to change

22    the hours for any person or persons.   So they

23    approve it, they can review it, and they can

24    approve it and send it out and close the night.

25     Q    Let's suppose they review it, and somebody

59a8e7b4-e068-4b73-ad2a-253bc34392e3

1    forgot to punch out, and there's an exception code

2    that comes up.  What are they supposed to do with

3    that?

4        A    It doesn't come out.

5        Q    I am sorry.  What doesn't come out?

6        A    An exception.

7        Q    Well, why would they -- have you --

8        A    We're talking about the end of the week,

9    right?

10       Q    Exactly.  End of the week, yeah.  So let's

11   say on Saturday somebody didn't punch out right.

12   They worked -- they worked too many hours or didn't

13   work enough hours.  And when that comes up, what

14   can the person who is closing do?

15       A    At the time, nothing.  Well, they can do a

16   lot -- they can do it, but the Auto Zone policy

17   says that only the manager can override at any

18   time.

19       Q    So they can't override.  Do they review it

20   and leave it for you to fix then?

21       A    That's correct.

22       Q    So they are supposed to review this stuff so

23   anything that comes up they would know about, and

24   then you would be able to fix it when you come in

25   the next day or Monday?

59a8e7b4-e068-4b73-ad2a-253bc34392e3

Page 54

1     A    Uh-huh, yes.

2     Q    Do you work on Sundays?  Do you come in on

3  Sundays?

4     A    Not regularly.

5     Q    So when you fix something like that from

6  Saturday, you would do that on Monday?

7     A    That's correct.

8     Q    Has that ever happened, the example I have

9  given you, where you come in on Monday and you have

10  to override something?

11     A    Yes.

12     Q    And is it generally when you have to come in

13  on Monday and do the override, has the PSM that

14  closed on Saturday made a note to you to let you

15  know that something was amiss and you have to fix

16  it?

17     A    Yes.

18     Q    Now, on the Saturday closing, how many

19  people have to be in the store while this is all

20  taking place?

21     A    Two minimum.

22     Q    Can these individuals -- let us say there's

23  three in the store.

24     A    Uh-huh.

25     Q    Can the third person just go home and not be

# EXHIBIT D

Page 1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

RICHARD JOARNT and BERT    )
YAMAOKA, individually and  )
on behalf of All Persons   )
similarly situated,        )
            Plaintiffs,)
        vs.                )No. 0503-02795
                           )
AUTOZONE, INC., a          )
Foreign Corporation,       )
            Defendant.  )

DEPOSITION OF KENNETH WESNER

Taken in behalf of Plaintiff

Portland, Oregon

September 20, 2005

DEBORAH L. COOK
COURT REPORTING
1102 N. Springbrook Road
No. 136
Newberg, Oregon  97132
(503) 537-0339
deb@cookcourtreporting.com

f42d23dd-bcdb-4568-8b2d-042f852ab9d7

1       A    No, sir.

2       Q    And meal breaks are recorded how?

3       A    By clocking in and out.

4       Q    Is there any other method in Oregon to

5    record meal breaks that you are aware of?

6       A    Not that I am aware of.

7       Q    And in California, then, it would be a

8    handwritten log, also, for meal breaks, or is

9    that also by clocking in and out?

10      A    Clocking in and out.

11      Q    So in California there would be a meal

12   break log -- excuse me, a rest break log?

13      A    That's correct.

14      Q    And then the meal breaks would be based

15   on the computer clock in and clock out?

16      A    That's correct.

17      Q    Look at the next section.  It talks

18   about overtime.  It says, "You may be required

19   overtime."  And then it says, "All overtime,"

20   and there's a bullet, "must be approved by the

21   store or district manager."

22           In all practicality, do you, as a

23   district manager, approve overtime?

24      A    I do.

25      Q    On an individual basis?

f42d23dd-bcdb-4568-8b2d-042f852ab9d7

1      A    On an individual basis depending on the

2  store.

3      Q    How does that work?

4      A    Normally the store will call me if they

5  anticipate running into any kind of overtime,

6  and I will try to work out another solution if

7  I can.  And if I can't, we will run the

8  overtime.

9      Q    So store managers essentially -- let me

10  strike that.  When does the store manager know

11  that he needs to call you to get approval of

12  his overtime?

13      A    When -- well, let me back up a little

14  bit.  It can be either one.  I can only speak

15  for my district.  I can't speak for the other

16  districts.  The store manager is ultimately

17  responsible for that overtime.  So the store

18  manager, if it's been set up with the store

19  manager and the district manager, communicate

20  that prior to usage, that's one thing.  That is

21  the way it is in my district, is to control the

22  overtime that way.  If it's not, then the store

23  manager makes the ultimate decision at that

24  time.

25      Q    In your district, just speaking for your

f42d23dd-bcdb-4568-8b2d-042f852ab9d7

Page 68

1    district, does a store manager have authority

2    to approve overtime without giving you --

3    getting your authorization?

4        A    Sure.  Under certain circumstances,

5    sure.  If they can't get ahold of me, or if

6    it's something that is just unforeseen.

7        Q    When you say unforeseen, someone gets

8    sick and they have to man the store?

9        A    Ultimately I like to be involved in the

10   decision if it's going to require a certain

11   number of hours.  If we're talking about a half

12   hour, 45 minutes, no.

13       Q    Half hour, 45 minutes per day, or half

14   hour, 45 minutes per week?

15       A    No, it would be per day, if that would

16   be the case.  I would leave that up to the

17   manager.

18       Q    And how is the overtime recorded in

19   terms of the authorization?  Is there

20   something -- is there a log that is kept that

21   authorizes the overtime?

22       A    No.

23       Q    Look over at AZ 000183, and it's page 46

24   of the document itself.

25       A    (Complies.)

f42d23dd-bcdb-4568-8b2d-042f852ab9d7

1  Q  Do you see that -- are you on that page?

2  A  Yes, I am.

3  Q  Down at the bottom where it talks about

4  time records --

5  A  Okay.

6  Q  -- there's a provision there that says,

7  "Your responsible -- responsibilities related

8  to time records are listed below."  I will read

9  that again so the record is clearer.  "Your

10  responsibilities related to time records are

11  listed below."

12  And then the first bullet says, "Clock

13  in and out when you report to and leave work."

14  Do you see that?

15  A  I see that.

16  Q  And then the next one says, "Clock in

17  and out for your meal break."  Do you see that?

18  A  I see that.

19  Q  Is there any other reason that an

20  employee would clock in and out that is set out

21  in the policy manual that is required by the

22  company?

23  A  For them to clock in and out?

24  Q  Yes.

25  A  No, not that I am aware of.

1    Q    Are you aware of any practice to have

2    people clock in and out for several minutes at

3    a time because they might be out smoking, or

4    doing something besides working?

5    A    Oh, absolutely not.

6                    (Deposition Exhibit No. 3 was

7                    marked for identification.)

8    Q    BY MR. BAILEY:  Handing you what we have

9    marked as Exhibit No. 3.  Once again, it's

10   entitled at the top, Auto Zone, Inc., SMS

11   Payroll, SMS Time Final Historical Report.

12        Is this the same type of computerized

13   document that we looked at in the first exhibit

14   we looked at?

15   A    It is.

16   Q    This is for employee Bert Yamaoka.  Do

17   you see that?

18   A    Yes, I do.

19   Q    I am going to look at the time record,

20   which is the third time record down, and it

21   starts out, Store 2203, and it's for October 19

22   of 2004.

23   A    I see that.

24   Q    It shows that he clocked in at 12:53 and

25   he clocked out at 17:04.  Do you see that?

f42d23dd-bcdb-4568-8b2d-042f852ab9d7

1    reports is a summary for the actual store

2    hours, and then it breaks it down to individual

3    hours for each person.

4         And on that sheet there's a spot for

5    that person, the employee to sign.  They are

6    required to sign that and verify the hours.  If

7    there's no change, or if they have not -- if

8    they agreed to those, then they obviously move

9    on.

10        If they don't agree, they have until

11   Monday to notify the manager to make any

12   changes in the system.

13   Q    And if there is a mistake, the manager

14   would immediately correct that?

15   A    Exactly.  They go into what they call

16   adjustment to payroll.

17   Q    And any overtime hours are also checked

18   on these records, as well?

19   A    Oh, absolutely.

20   Q    So there's no way an employee could work

21   overtime, and not have those records showing,

22   those overtime hours?

23   A    If he's clocked in and out properly,

24   absolutely.

25   Q    And what is the overtime policy and

1    practice?

2        A    Overtime, anybody that -- the length of

3    anything over eight hours in a 40-hour work

4    week is overtime, period.  And we pay, we

5    don't -- you know, we don't have anybody work

6    off the clock, that I am aware of, and that's

7    not a policy of Auto Zone.

8        Q    So if an employee works more than 40

9    hours in a given work week, he or she would be

10   paid overtime?

11       A    Absolutely.

12       Q    What are overtime --

13       A    Time and a half.

14       Q    If an employee is asked to deliver parts

15   to another store, or perform any other work

16   business, would they be on the clock or be paid

17   for that time?

18       A    Oh, absolutely.  Yeah.

19       Q    You mentioned earlier that lunch periods

20   are scheduled on the weekly schedule.  Where is

21   that posted?

22       A    Well, when you make up the schedule, the

23   schedule prints out quite a few different

24   reports.  And one of those reports is called

25   the daily coverage report.  That is to be

f42d23dd-bcdb-4568-8b2d-042f852ab9d7

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,

          Plaintiff,

    vs.

AUTOZONE INC., a Nevada Corporation,

          Defendant.

No. 0711-13531

**DECLARATION OF MARK DESSEM IN SUPPORT OF DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

I, MARK DESSEM, declare as follows:

1.    I make this declaration in support of Defendant's Motion for a Protective Order. I have personal knowledge of the facts set forth below, and could competently testify thereto.

2.    I am an employee of Defendant AutoZone, Inc. ("AutoZone"), where I have worked for more than twenty-six years. I presently hold the position of Director of Payroll.

3.    As the Director of Payroll, I am responsible for the management, collection, and maintenance of payroll data and the production of payroll payments. I am responsible for payroll for all of the United States and Puerto Rico, including all of AutoZone's subsidiary corporations.

4.    I have a staff of approximately eighteen people. Together, we are responsible for producing a timely and accurate payroll each period for more than 55,000 AutoZone employees.

5.    I am ultimately responsible for ensuring that payroll is timely and correct. Consequently, it is important that I be in the office each day to ensure that everything is running smoothly and address any problems that may arise.

**DECLARATION OF MARK DESSEM IN SUPPORT OF DEF'S MOTION FOR A PROTECTIVE ORDER (CASE NO. 0711-13531)**    1

LITTLER MENDELSON P.C.
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 3200
SEATTLE, WA 98101.3122
206.623.3300

6.    This summer is an especially busy time for me at work, and it would be very disruptive for me to have to travel cross-country for a deposition. We just implemented a new version of our payroll system and, as a result of that, there are still issues that I am addressing concerning the upgrade on a daily basis.

7.    Also, we are about to put in a new time and attendance system in the stores. This system is what employees will use to clock in and clock out, and the entire payroll department is very busy preparing for this installation. I will personally be heavily involved in this process for the next several months, and it would be difficult for me to be out of the office during that time.

8.    The end of that second quarter is June 30th, and there is unique quarter end work that has to be done in the month of July. Also, the fiscal year end is on August the 31st, and there is a great deal of work that I need to do before and after that happens to ensure that everything runs smoothly.

9.    Because I am ultimately responsible for payroll, it is important that my staff and others be able to reach me and that I be able to do work if necessary.

10.    Traveling to Portland from my residence in Cordova, Tennessee, to be deposed would be a three day trip, and three days absent from work. I do almost all of my work in my office, and almost never travel for business.

11.    I do have a laptop, but I mostly only use it for emergencies, and I don't have access to all of the information that I need to do my job via the laptop.

12.    I have previously testified in the predecessor to this case, *Joarnt v. AutoZone*. The plaintiffs' attorney in that case, who I am told is the same attorney in this case, came to Memphis, where I work and where AutoZone has its principal place of business, to take my deposition. That deposition was less than two hours long.

DECLARATION OF MARK DESSEM IN SUPPORT OF DEF'S          2
MOTION FOR A PROTECTIVE ORDER (CASE NO. 0711-13531)

LITTLER MENDELSON P.C.
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 3200
SEATTLE, WA 98101.3122
206.623.3300

13.     From what I can determine from the current deposition notice, some of the topics that the plaintiff attorney seeks to depose me on this time are the same as those he asked me about the last time, except for a different time period.

14.     I know that I previously testified in *Joarnt* regarding AutoZone's "policies, procedures and practices" for processing and providing payment to terminated AutoZone employees. I have reviewed my testimony on that subject, and my explanation regarding that processes and policies is equally true for the time period specified by plaintiff in the current deposition notice, with one exception. Since the time of that deposition, we now check a report each day to determine if there have been any terminations in Oregon that were not reported by telephone.

I declare under penalty of perjury under the laws of the State of Tennessee that the foregoing is true and correct.

Executed this __\16__ day of June, 2008 at Memphis, Tennessee.



_____
MARK DESSEM

LITTLER MENDELSON P.C.
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 3200
SEATTLE, WA  98101.3122
206.623.3300

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on June 16, 2008, I served a full, true, and correct copy of the foregoing

3

**DECLARATION OF MARK DESSEM IN SUPPORT OF DEFENDANT'S MOTION FOR A**

4

**PROTECTIVE ORDER**

5

6
&#9744;     By delivery via messenger, or otherwise by hand,

7
&#9746;     By facsimile,

8
&#9744;     By e-mail,

9
&#9746;     By mailing same, postage paid, addressed to:

10

11
Bailey Pinney & Associates LLC
Attorneys at Law

12
1498 SE Tech Center Place
Suite 290
Vancouver, WA  98683

13
Fax (360) 567-3331
Of Attorneys for Plaintiff

14

15
By

Sally Swearinger

16

17

18

19

20

21

22

23

24

25

26

**DECLARATION OF MARK DESSEM IN SUPPORT OF DEF'S
MOTION FOR A PROTECTIVE ORDER  (CASE NO. 0711-13531)**
FIRMWIDE:85517029.1 013306.2124

4

LITTLER MENDELSON P.C.
ONE UNION SQUARE
600 UNIVERSITY STREET, SUITE 3200
SEATTLE, WA  98101.3122
206.623.3300

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR *Multnomah* COUNTY

Division - *1021 SW 4th Ave, Portland, OR 97204*

_(court's address and phone number)_

Case name: *Michael Migis*

Plaintiff Name

v. *AutoZone, Inc.*

1st Defendant Name

CASE No. *0711-13531*

**UTCR 2.110 AFFIDAVIT, REQUEST TO REDACT PROTECTED PERSONAL INFORMATION FROM DOCUMENT EXISTING IN CASE FILE**

)
)
)
)
)

**IMPORTANT NOTE TO PERSON COMPLETING THIS AFFIDAVIT:** Except as specifically ordered by a court, this affidavit and UTCR Form 2.100.4b **cannot be used for contact information** (addresses, telephone numbers, employer identification, and similar information that can be used to contact someone, *see UTCR 2.110*). The type of information that can be protected by this form is limited to what is listed in UTCR 2.100.

**To the court:** By this affidavit under UTCR 2.110, I request that the protected personal information in the form attached to this affidavit be redacted from a document in the case file for the case noted above that the general public can see.

The protected personal information I request to be segregated is as follows:

| A. The following is a **general** description of the protected personal information (*example description: "my social security number" or "father's bank account number"*). **Do not include specific protected personal information here.** | B. The following is the legal authority by which I believe this information may be exempt from public inspection (*cite to statute, rule, case, etc.*). Row numbers correspond to those in column A. Add rows in both columns as necessary. |
|---|---|
| 1. *Michael Migis' social security number* | 1. *UTCR 2.100* *Stipulated protective order, signed by Judge Maurer on 5/27/08* |
| 2. | 2. *see attached* |
| 3. | 3. |
| 4. | 4. |

Page 1 - Form 2.110.4a – AFFIDAVIT, REQUEST TO REDACT PROTECTED PERSONAL INFORMATION FROM EXISTING CASE FILE – UTCR 2.110 (4)(a) (8-1-05)

UTCR App. Page 9

**PERSON MAKING REQUEST MUST COMPLETE ALL THE FOLLOWING AS INDICATED:**

1. *(Initial to confirm)* _CKP_. The specific protected personal information described above is provided on the attached UTCR 2.100 segregated information sheet.

2. The specific protected personal information is in the document in the case file that the following identifies:

   a. Case file number where found: _0711 – 13531_ . _Dec 00 Tiff re Def's Opp to PIP's 2nd Mtn to Compel_

   b. Description of document containing the information: _SMS Time Final Historical Report_

   c. Page number *(identification)* of the page(s) containing the information: _Pages 1-2 & Exh. 1_

   d. A copy of the object page(s) showing specifically the information to be redacted is attached *(required)*:
      ☑ Yes   ☐ No

3. I have attached the required fee of $ _1_ per page for all of the _2_ *(number of pages)* pages I have requested be redacted for a total amount of $ _27_ *(total amount of check or money order attached)*.
   ☑ Yes   ☐ No

4. I *(initial one)* _CKP_ have OR _____ have not attached a self-addressed, stamped postcard with language required by UTCR 2.110 so that the court can inform me of its response to this request.

5. *(Initial to confirm)* _CKP_. I understand that while the protected personal information may be withheld from the general public if this request is granted, it may still be available to some persons and government agencies for purposes described in UTCR 2.100.

6. *(Initial to confirm, write "na" if not applicable)* _N/A_. If this document was prepared by someone who is not an attorney, I have attached a completed document preparation certification that applies to both this affidavit and the attached form as required by UTCR 2.010(7).

7. *(Initial to confirm)* _CKP_. I have mailed or delivered copies of this request *(not including the attached UTCR Form 2.100.4b and its attachments)* to the persons required by UTCR 2.080.

I hereby declare that the above statement, the attached information sheet, and any attachments to the information sheet are true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

Date _20 June 2008_     Signature _____
OSB# *(if applicable)* _035512_     Type or print name _Chey Powelson_

For office use:

Segregation _____ granted OR _____ denied *(state reason)* _____
_____.

Date: _____     TRIAL COURT ADMINISTRATOR
                          By _____

Page 2 - Form 2.110.4a – AFFIDAVIT, REQUEST TO REDACT PROTECTED PERSONAL INFORMATION FROM EXISTING CASE FILE – UTCR 2.110 (4)(a)
(8-1-05)

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing **UTCR 2.110 Affidavit - Request to Redact Protected Personal Information from Document Existing in Case File** upon:

Ms. Leigh Ann Tift
Littler Mendelson
One Union Square
600 University St, Ste 3200
Seattle, WA 98101


by the following indicated method or methods:


[X]     by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the person as shown above, the last-known office address of the person, and deposited with the United States Postal Service at Vancouver, Washington on the date set-forth below.


DATED:    June 20, 2008

_____
CHEY POWELSON, OSB 035512
Of Attorneys for Plaintiff



1

2

3

4        IN THE CIRCUIT COURT OF THE STATE OF OREGON
                 FOR THE COUNTY OF MULTNOMAH

5

6   **MICHAEL MIGIS**, individually, and on          Case No. **0711-13531**
    behalf of all others similarly situated,

7

8                       Plaintiff,                   **REPLY SUPPORTING
                                                     PLAINTIFF'S MOTION TO BIND
9       v.                                           AND/OR COMPEL ORCP 39C(6)
                                                     DEPOSITION ANSWERS**

10  **AUTOZONE, INC.**,                              Date:  **July 11, 2008**
                                                     Time:  1:30 p.m.
11                      Defendant.                   Court: The Hon. Jerome LaBarre

12                          **I. INTRODUCTION**

13          PLAINTIFF MICHAEL MIGIS hereby requests that the Court grant all relief requested

14  in his *Motion* because:

15          1.  Defendant offers no justification why it failed to answer questions relating to either

16              (a) its denials to the Requests For Admission, or (b) the meaning of the information

17              set forth in the Excel summary report.

18          2.  Defendant fails to justify why its instructions not to answer were appropriate.

19          3.  Defendant fails to distinguish between information prepared in anticipation of

20              litigation, and information prepared or arising from the normal course of business.

21                       **II. POINTS & AUTHORITIES**

22  **A.      Overview**

23          AutoZone did not adequately prepare its May 15 designee for any of the deposition

24  topics, including those seeking inquiry into: (a) facts and documents upon which Defendant relied

25

26
Page 1 -    REPLY  SUPPORTING  PLAINTIFF'S  MOTION  TO  BIND  AND/OR  COMPEL  ORCP  39C(6)
            DEPOSITION ANSWERS

1 to deny Plaintiff's Requests For Admission, and (b) the meaning of the Excel summary report

2 termination codes.  The Court should overrule Defendant's instructions not to answer, and bind

3 AutoZone to its own failures to answer questions on those topics.

4      Moreover, it is well-settled that Oregon's work product "rule protects only those things

5 which are prepared in 'anticipation of litigation' and not those prepared in the regular course of

6 business." *United Pacific Ins. Co. v. Trachsel*, 83 Or App 401, 404, *rev. denied*, 303 Or 332

7 (1987).

8      AutoZone's ignores not only this fundamental point, but also the conclusions set forth

9 in the very case law it cites.  For example, the *Ecrix* court concluded that "[t]he information

10 sought [in plaintiff's 30(b)(6) notice] * * * relates to facts which [defendant] has in its possession

11 which led it to make its threats of patent infringement and to file a counterclaim for patent

12 infringement.  Such information is relevant and discoverable and * * * is not protected by the

13 work-product doctrine."  95 F.Supp.2d 1155, 1158-59 (D.Colo. 2000).  As a result, the court

14 denied the defendant's motion for a protective order.  *Id.* at 1159.

15      During its own deposition, AutoZone failed to answer numerous questions regarding

16 what facts Defendant possesses (or should possess), and which relate to its affirmative defenses.

17 Those facts, such as knowledge of the good faith dispute between the company and one or more

18 putative class members, are not facts or information created in anticipation of litigation.  Rather,

19 they are facts arising from AutoZone's normal course of business.

20      A recent Federal Eastern District of Pennsylvania case is almost identical to the

21 circumstances in this case.  In *State Farm Mut. Ins. Co. v. New Horizont, Inc.*, the 30(b)(6)

22 designee: did not have knowledge of facts underlying the company's claims; had made no inquiry

23 to other employees, and had conversations only with and received information from counsel; and

24 was improperly instructed not to answer questions into the facts underlying the corporation's

25 claims.  2008 U.S. Dist. LEXIS 37571, *5-17 (E.D.Pa. May 8, 2008).

26

Page 2 -  **REPLY SUPPORTING PLAINTIFF'S MOTION TO BIND AND/OR COMPEL ORCP 39C(6) DEPOSITION ANSWERS**

**BAILEY PINNEY & ASSOCIATES** LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

After surveying case law on the matter, the *New Horizont* court stated:

> [T]he vast majority of State Farm's instructions to Bowles not to respond were improper. * * * [T]he mere fact that counsel for State Farm may have provided such information to the witness in preparation for the Rule 30(b)(6) deposition does not convert the information into attorney work product. Were State Farm's logic followed to its full extent, anytime an attorney is involved in preparing a Rule 30(b)(6) witness, such preparation would be futile because the witness would inevitably be precluded from testifying to anything learned from the attorney. Were this the rule, every Rule 30(b)(6) deposition in which an attorney was involved in preparing the witness would be doomed from the start.

2008 U.S. Dist. LEXIS at *30-31. The court further noted that "State Farm bears responsibility for the failure to prepare [the designee] as required by Rule 30(b)(6), in that it did not require him to confer with employees, review pertinent documents, or at least have more extensive meetings with counsel." *Id.* *43. The court imposed monetary sanctions and allowed another deposition of the corporation. *Id.* at *59.

**B.    The Court Should Overrule Defendant's Instructions Not to Answer Questions Relating to the Facts and Documents Upon Which AutoZone Relied to Deny Plaintiff's Requests For Admission (39C(6) Notice, ¶ 8).**

Defendant failed to raise any privilege or work product objections and arguments before or after the March 7, 2008 hearing on Plaintiff's motion to compel documents supporting AutoZone's denials to Plaintiff's Requests For Admission Nos. 1 - 3. For the first time during the May 15 deposition, AutoZone's counsel raised such objections and instructed the designee not to answer.

Page 3 -    **REPLY SUPPORTING PLAINTIFF'S MOTION TO BIND AND/OR COMPEL ORCP 39C(6) DEPOSITION ANSWERS**

1      Those instructions were improper because Plaintiff's questions did not seek privileged

2  or work product information. Moreover, many of those questions related merely to the existence

3  of responsive documents. Rule 36B(1) allows such inquiry, and AutoZone's violation of two

4  Court Orders provides further justification for that inquiry.[1]

5      Nonetheless, AutoZone's counsel made instructions not to answer in response to

6  questions such as:

7      1.  Q: "Did you look at any documents that were the basis for AutoZone's denial of the

8          Requests For Admission?" (*Powelson Declaration*, Ex. A, 106:17 - 107:23)

9      2.  Q: "No one has instructed you with regard to the documents that were used for the

10         Request for Admissions, I take it?" (*Id.*)

11      3.  Q: "Did anyone provide you documents that were the basis for denying Request for

12         Admission[] No. 2?" (*Id.*)

13      4.  Q: "Do you have an understanding of the facts related to the determination by

14         AutoZone that they should deny Request For Admission No. 1?" (*Id.*, 117:6-11).

15      5.  "With regard to Request for Admission No. 1, what other reports were utilized that

16         you are aware of, that – besides [the Excel summary report] to make a denial of that

17         [Request]?" (*Id.*, 126:13-25)

18      The only justification AutoZone offers on the issue of the Requests For Admission,

19  generally, and instructions not to answer is to direct the Court to an evasive deposition answer

20  that, "when [AutoZone's Payroll Department] get a request for paychecks for the last – you know,

21  they deal with 50 states. So they are very qualified to tell when everyone gets <u>paid on time</u>, and

22

23

24

---

25      [1] Even if this information is nominally privileged or work product, Defendant has put it at issue in the lawsuit by virtue of its "answers" to Plaintiff's Requests For Admission 1 - 3.

26
     **REPLY SUPPORTING PLAINTIFF'S MOTION TO BIND AND/OR COMPEL ORCP 39C(6) DEPOSITION ANSWERS**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1    we do that very diligently." *Opposition* at p. 7:14-17 (underline added).[2]

2          But that testimony undermines AutoZone's implied opposition to the *Motion to Enforce*

3  *Court Order*:  that from the Excel summary report, AutoZone has no idea whether any of those

4  terminating employees were paid on time.  See Defendant's June 5, 2008 *Opposition to Motion*

5  *to Enforce Court Order* pp. 6:12-17; and 7:12-17.

6          Based on Defendant's lack of justification for instructing the designee not to answer, and

7  for not having raised privilege and work product objections before, during or after the March 7

8  hearing on Plaintiff's motion to compel, the Court should order AutoZone to answer all questions

9  relating to ¶ 8 of the 39C(6) Notice of Deposition.

10  **C.**    **The Court Should Bind AutoZone to Its Non-Responsive Answers in Response to**

11        **Plaintiff's Questions Regarding the Content and Meaning of the Excel Summary**

12        **Report (39C(6) Notice, ¶ 9).**

13          Plaintiff's ORCP 39C(6) deposition topic in Paragraph 9 was clear: to obtain AutoZone

14  testimony on the Excel summary report, including "the form and content of those document(s)

15  (e.g., identification and meaning of all fields, * * * and the definition of all PeopleSoft Action

16  Codes)." Those Action (termination) Codes include "quit with notice," "quit without notice," and

17  "job abandonment," which are relevant to determining class certification and liability.

18          Despite AutoZone's claims that it did not knowingly pay any putative class member their

19  final wages in an un-timely manner and is unaware of any instance in which it did, the May 15

20  AutoZone designee – with coaching from AutoZone counsel – testified he had no idea what the

21  company's own termination codes meant.  Instead he speculated that only the store managers

22   

_____

23      [2] Somewhat inconsistently, the designee also testified he could not tell from the other
Court-ordered documents (upon which AutoZone purportedly relied upon to deny Plaintiff's

24  Requests For Admission) whether certain employees were paid on time at termination. See e.g.,
*Powelson Decl.*, Ex. A (pp. 111:22 - 112:8; 112:24 - 113:13; 114:9-16; 115:6-22; 120:9 - 121:19;

25  131:11-25; 129:25 - 132:3; 134:14 - 135:1; and 139:3-18).  See also *Reply Declaration of Chey*
*K. Powelson*, Ex. A (Exhibit 5 to the May 15 deposition).

26   

Page 5 -  **REPLY SUPPORTING PLAINTIFF'S MOTION TO BIND AND/OR COMPEL ORCP 39C(6)**
**DEPOSITION ANSWERS**

1  would know.  This is entirely inconsistent with the intent of Rule 39C(6): to prevent the designee

2  from feigning ignorance of the corporation's own documents and events, and instead referring

3  to others within the corporation who would know.

4      While this could have been AutoZone's tactical decision instead of a simple failure to

5  prepare the witness, the result is the same: the responses were failures to answer under ORCP

6  46A, and arguably constituted a failure to appear under ORCP 46D.

7      The Court should therefore bind AutoZone to the following answers:

8      1.  Q: "And what does quit with notice mean?" *   *   * "How much notice would they

9          [the employee] give?"

10         A: "**I would not know.**" (*Powelson Decl.*, Ex. A, p. 91:13-20).

11     2.  Q: "Do you use quit with notice for individuals who come in on the last day they

12         work and say, 'I am quitting today?'"

13         [Defendant's counsel objected it called for speculation]

14         A: "**I do not know.**" (*Id.*, p. 93:22 - 94:2).

15     3.  Q: "[W]here we have someone who has A-1 [on the Excel summary report] by their

16         name where is says, quit with notice, would that quit with notice * * * be triggered

17         by somebody giving more than 48 hours' notice or giving 48 hours' notice?"

18         [Defendant's counsel objected it called for speculation]

19         A: "**I would not know.**"  (*Id.*, p. 96:8-15).

20     4.  Q: "So what is the difference between quit without notice and job abandonment?"

21         [Defendant's counsel objected it was vague and called for speculation]

22         A: "**I would not know that.**" (*Id.*, p. 97:8-12).

23     5.  Q: "Do you know if a manager called you up and said, 'I have got somebody who

24         came in today and said, I quit, I am not coming in to work,' would that be a quit

25         without notice?"

26

Page 6 -    **REPLY SUPPORTING PLAINTIFF'S MOTION TO BIND AND/OR COMPEL ORCP 39C(6)
DEPOSITION ANSWERS**

1    [Defendant's counsel objected that it was vague and called for speculation]

2    A: "**I would not know that.**" (*Id.*, p. 97:13-20).

3    6.   Q: "If a person calls up , and/or doesn't show up for work and they just don't come

4        back, would that be job abandonment?"

5    [Defendant's counsel objected that it was vague and called for speculation]

6    A: "**I do not know.**" (*Id.*, Ex. A, p. 97:21 - 98:2)

7        Binding AutoZone to these answers will mean that Defendant cannot later offer

8    contradictory testimony. Cf. *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996) ("[I]f

9    a party states it has no knowledge or position as to a set of alleged facts or area of inquiry at a

10   Rule 30(b)(6) deposition, it cannot argue for a contrary position at trial without introducing

11   evidence explaining the reasons for the change.").

12       If the Court declines to bind AutoZone to this testimony, then Plaintiff requests the

13   opportunity to, at Defendant's sole expense, re-depose AutoZone in Oregon on these questions

14   and the meaning of the other termination codes.  ORCP 46D; ORCP 46A.

15   **D.    The Court Should Either Bind AutoZone or Order That it Provide Complete**

16   **Answers to Plaintiff's Questions Into the Affirmative Defenses.**

17       AutoZone's *Opposition* ignores the fact-based questions Plaintiff asked during the May

18   15 deposition.

19       The attorney-client privilege does not protect facts, and "where a document may be

20   insulated from discovery because of the work product doctrine, the facts contained therein must

21   be disclosed in response to a properly worded * * * deposition question." *Protective Nat'l Ins.*

22   *Co. v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 279-80 (D.Neb. 1989).  "The courts have

23   consistently held that the work product concept furnishes no shield against discovery * * * of the

24   facts that the adverse party's lawyer has learned, or the person from whom he has learned such

25   facts, or the existence or nonexistence of documents, even though the documents themselves may

26

Page 7 -   **REPLY SUPPORTING PLAINTIFF'S MOTION TO BIND AND/OR COMPEL ORCP 39C(6) DEPOSITION ANSWERS**

1    not be subject to discovery." *Id.* at 280-81 (cite omitted).  Thus, "[i]t is no answer to say that the

2    facts constituting the basis for the conclusionary allegation are within the knowledge of counsel."

3    *Protective* at 281 (internal cite omitted).

4         By means of the 39C(6) deposition, Plaintiff sought to discover the facts upon which

5    AutoZone relies to affirmatively contend that: (1) AutoZone has at all times treated the putative

6    class members in good faith, and did not knowingly or carelessly fail to pay those members all

7    wages due and owing; and (2) the class members are estopped from recovering damages because

8    they failed to report compensable time.

9         During the deposition the AutoZone designee could not offer facts supporting those

10    contentions, in part because the designee had not made any inquiry into the matter.  See e.g.,

11    *Powelson Decl.*, Ex. A (p. 63:6-16).

12         This does not mean there are no facts relating to the affirmative defenses.  For example,

13    a subjective claim of good faith that all wages have been paid is not purely a legal contention.

14    Presumably in response to class certification and summary judgment, Defendant will set forth

15    facts and circumstances arguing why it believes Plaintiff Migis received his final wages timely,

16    and why Plaintiff Migis is not entitled to any additional compensation.[3]

17         Moreover, Oregon case law is clear: a party pleading estoppel as an affirmative defense

18    has "the burden to prove each element of that defense.  Estoppel requires reasonable reliance on

19    the part of the party claiming its protection." *Kahl v. Pool*, 47 Or App 43, 49 (1980).  "[T]he

20    doctrine only protects those who materially change their position in reliance upon another's acts

21    or representations." *Id.*  See also *Guardian Mgmt., LLC v. Zamiello*, 194 Or App 524, 530 (2004)

22    _____

23         [3] See e.g., *Wales v. Walt Stallcup Enters.*, 167 Or App 212, 214-17 (2000) (discussing
     facts relating to final payment of wages, and surveying case law regarding an employer's burden
24    to pay final wages); *Wyatt v. Body Imaging, PC*, 163 Or App 526, 531-32 (1999).  Cf. *Lauderdale
     v. Eugene Water & Elec. Bd.*, 217 Or App 551, 565-67 (2008) ("Whether an accord and
25    satisfaction exists depends on the intent of the parties as 'determined from all the circumstances
     attending the transaction.'" (internal cite omitted)).
26
Page 8 -    **REPLY SUPPORTING PLAINTIFF'S MOTION TO BIND AND/OR COMPEL ORCP 39C(6)
            DEPOSITION ANSWERS**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1    ("To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false

2    representation; (2) it must be made with knowledge of the facts; (3) the other party must have

3    been ignorant of the truth; (4) it must have been made with the intention that it should be acted

4    upon by the other party; and (5) the other party must have been induced to act upon it." (internal

5    cite and quotes omitted)). This is, in part, a factual inquiry.

6         Thus, AutoZone cannot on the one hand claim with its Third Affirmative Defense that

7    the class members are estopped from recovering damages because they failed to report

8    compensable time, but then on the other hand refuse to offer facts supporting that defense. Such

9    tactics are contrary to the spirit and intent of the discovery rules.

10        Since AutoZone could not explain its good faith belief, or how it reasonably relied upon

11   or knew whether the putative class failed to report time worked, then AutoZone should be bound

12   to its non-responsive answers as follows:

13        1.  Q: "[D]o you have any understanding of whether or not Mr. Migis failed to report

14            compensable time?."

15            A: "**No**." (*Powelson Decl.*, Ex. A, pp. 64:25 - 65:3).

16        2.  Q: "Do you have any independent understanding, or any understanding that you

17            learned through some sort of inquiry, that during the class period there were

18            employees who did not report their time appropriately?."

19            A: "**No, I don't have that information**."

20            Q: "Do you have information that Mr. Migis failed to properly report his

21            compensable time?"

22            A: "**No, I don't**."

23            Q: "Do you have any understanding that employees, Mr. Migis himself or members

24            of the class that he is seeking to represent, failed to properly report their compensable

25            time?"

26

Page 9 -    **REPLY SUPPORTING PLAINTIFF'S MOTION TO BIND AND/OR COMPEL ORCP 39C(6) DEPOSITION ANSWERS**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1    A: "**No, I am not aware of that.**" (*Id.*, pp. 74:7-24; and 79:7-11).

2    3.   Q: "If someone fails to report compensable time, does AutoZone have a practice or

3         policy to discipline employees who failed to report all time they work?"

4         [Defendant's counsel objected to it as vague.]

5    A:   "**I'm not aware of that.**"

6    Q: "You are not aware of any practice or procedure that would require discipline?"

7         [same objection]

8    A: "**I would not know that.**" (*Id.*, p. 79:12-21).

9    4.   Q: "[W]hile not admitting that wages are owed, but if AutoZone were to say, 'If I did

10        owe wages to Mr. Migis, there is a good faith belief on * * * AutoZone's part, that

11        I don't owe them[,]' [y]ou wouldn't know the facts surrounding the good fath believe

12        [sic] that wages alleged to be owed are not owed, correct?" (internal quotes added).

13        [Defendant's counsel objected that it was vague]

14   A: "**I am not aware.**" (*Id.*, p. 80:11-20; see also pp. 80:21 - 81:2).

15

16                              **III.  CONCLUSION**

17        Plaintiff respectfully requests the Court either bind AutoZone to its non-responsive

18   answers, or order AutoZone to appear for deposition in Oregon within five (5) business days of

19   hearing on this matter to give complete and non-evasive answers to the questions at issue.

20

21   DATED this 23ʳᵈ day of June 2008.         BAILEY, PINNEY & ASSOCIATES, LLC

22

23                                            CHEY POWELSON, OSB 03551
                                             Attorneys for Plaintiff

24

25

26

Page 10 -   **REPLY SUPPORTING PLAINTIFF'S MOTION TO BIND AND/OR COMPEL ORCP 39C(6) DEPOSITION ANSWERS**

1

2                    **CERTIFICATE OF SERVICE**

3

       I hereby certify that I caused to be served the foregoing *Reply Supporting Plaintiff's*

4

*Motion to Bind and/or Compel ORCP 39C(6) Deposition Answers* upon:

5

6                    Leigh Ann Tift
                     Littler Mendelson
7                    One Union Square
                     600 University St, Ste 3200
8                    Seattle WA 98101-3122
                     Attorney for Defendant AutoZone
9

10   by the following indicated method or methods:

11

       [X]    by causing a full, true, and correct copy thereof to be **deposited in the U.S. mail**
12            **service** to the person listed above on the date set forth below.

13

14

15                                        DATED June 23, 2008

16

17                                        BAILEY, PINNEY & ASSOCIATES, LLC

18

19                                        _____

20                                        CHEY POWELSON, OSB 035512
                                          Attorney for Plaintiff

21

22

23

24

25

26

Page 11 -   **REPLY  SUPPORTING  PLAINTIFF'S  MOTION  TO  BIND  AND/OR  COMPEL ORCP 39C(6)**
            **DEPOSITION ANSWERS**

1

2

3

4

5

**IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH**

6

7  **MICHAEL MIGIS**, individually and on behalf
of all others similarly situated,

Case No. 0711-13531

8

9  Plaintiff,

**PLAINTIFF'S THIRD MOTION
FOR ORDER COMPELLING
DISCOVERY**

10  v.

11  **AUTOZONE, INC.**,

12  Defendant.

**EXPEDITED CONSIDERATION
REQUESTED**

13

14  **REQUEST FOR ORAL ARGUMENT:** Pursuant to UTCR 5.050, Plaintiff estimates

15  the time needed for oral argument to be 30 minutes. Court reporter services are not required.

16  **UTCR 5.010 CERTIFICATION OF COMPLIANCE:** Plaintiff's counsel certifies he

17  made good faith efforts to confer and did confer with opposing counsel to resolve the issues in

18  this *Motion*, but the parties are unable to reach resolution. See *Declaration of Chey K. Powelson*

19  *Supporting Plaintiff's Third Motion for Order Compelling Discovery* ("*Powelson Decl.*"), ¶ 2.

20  **I. MOTION**

21  **PLAINTIFF MICHAEL MIGIS,** through his attorneys, moves this Court for an order

22  compelling Defendant AutoZone to, within five (5) business days of hearing on this matter,

23  produce the following information: (1) weekly summarization of employee hours reports

24  (*Powelson Decl.*, Ex. A (RFP No. 4)); (2) documents referencing AutoZone's efforts to preserve

25  potentially discoverable documents (*Id.* (RFP No. 9)); (3) documents relating to Defendant's

26  affirmative defense of laches (*Id.* (RFP No. 10)); and (4) a document in electronic Excel format,

Page 1 -  **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1 | which Defendant previously produced under Court Order only in .pdf format.

2 | **II. ARGUMENT & AUTHORITIES**

3 | **A.    Plaintiff's Third Set of Requests For Production**

4 | Defendant responded to Plaintiff's Third Set of Discovery Requests on or about May 5,

5 | 2008. *Powelson Decl.*, Ex. A.

6 | **1.    Request For Production No. 4 (weekly summarizations of hours worked)**

7 | ***a.    Background***

8 | Despite conducting a number of discovery conferences on Request For Production No.

9 | 4, and an express commitment by AutoZone to produce the information at issue, Defendant

10 | subsequently declined to produce the information. Request For Production No. 4 sought:

11 | [A]ll documents and reports reflecting any weekly summarization of hours
worked by AutoZone hourly employees in stores located in the State of Oregon,

12 | for the period of time from two (2) years prior to the filing of the Complaint,
through the date of that filing.

13 | AutoZone did not object that the request was overly broad or unduly burdensome. Instead,

14 | Defendant produced one report in electronic format showing only the total number of employee

15 | hours worked in each store. *Powelson Decl.*, Ex. B. This was wholly inadequate, and later

16 | AutoZone counsel stated it would not stipulate to the authenticity of that report. *Powelson Decl.*,

17 | ¶ 3.

18 | During a May 8 discovery conference, Plaintiff referred AutoZone counsel to an example,

19 | hard copy "Payroll Weekly Hours Summary Report," which expressly shows, by store, each

20 | individual employee's hours worked, hours paid, total overtime, and the time spent at the store

21 | by hourly-paid AutoZone truck drivers. *Powelson Decl.*, ¶¶ 2, 4, and Ex. C. Defendant did not

22 | produce the documents.

23 | On June 3 AutoZone's counsel informed Plaintiff, "Defendant has located and is willing

24 | to produce reports reflecting weekly summarizations of hours worked by AutoZone employees

25 | as requested in Plaintiff's Third Request for Production No. 4." *Powelson Decl.*, Ex. C-1.

26 |

Page 2 -    **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1      The next day, AutoZone's counsel confirmed impending production of the reports, stating:

2         **I have documents ready to produce** as soon as I get the word from you

3         that the[] [stipulated protective] order has been submitted and signed. * *

        * The fact is, **the weekly summarizations of hours worked report**

4         contains social security numbers and other confidential information. If you

5         do not sign and forward the protective order based on my representation

6         that we have documents that are appropriately covered by such order, feel

        free. The delay, at this point, is due to your refusal to sign the protective

7         order. Not much I can do at this point.

8   *Powelson Decl.*, Ex. D (p. 3) (emphases added). That same day Plaintiff forwarded a copy of a

9   previously-signed Stipulated Protective Order, and requested production of the weekly hours

10   reports. *Id.*, Exs. D (p. 1) and E.

11      By June 19, Defendant still had not produced the weekly summarization reports. Plaintiff

12   again followed up on the anticipated production of the information. *Powelson Decl.*, Ex. F. In

13   response, Defendant's counsel told Plaintiff, "we have already produced documents and answered

14   your questions." *Id.*, Ex. G (p. 4). Plaintiff replied and again requested an update on the

15   production of the weekly hours report. *Id.*, Ex. G (pp. 3 - 4).

16      That next week on June 24 AutoZone's counsel stated, "So * * * unless you can identify

17   what INFORMATION you don't have, I believe we have produced the requested documents *

18   * * ." *Powelson Decl.*, Ex. G (pp. 1 - 2) (capital case original).

19      Plaintiff then again requested on June 25 that Defendant indicate its availability for

20   hearing on a motion to compel either July 31 or August 1 on the issue of the weekly reports.

21   AutoZone's counsel would not provide a date, but instead stated, "It looks to me like we are still

22   conferring. * * * We will get back to you once we have looked into the questions you raise. In

23   the meantime, put your motion to compel back in your pocket." *Powelson Decl.*, Ex. G (p. 1).

24      By the end of that same day, Defendant's counsel faxed Plaintiff a letter setting forth

25   identical arguments, but did not disclose whether it was available for a hearing on a motion to

26   compel. *Powelson Decl.*, Ex. M.

Page 3 -     **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1       Plaintiff then communicated additional reasons why AutoZone should produce the weekly

2 reports as it previously committed, and made a third request for Defendant's availability for

3 hearing. *Powelson Decl.*, ¶¶ 13 - 14.

4       In an effort to run out the clock before Plaintiff's August 15 deadline for filing a motion

5 for class certification, on June 26 AutoZone counsel again failed to indicate whether it was

6 available for a hearing. *Powelson Decl.*, ¶ 14.

7           *b.*     *Argument (RFP No. 4)*

8       The weekly reports are relevant for several reasons. First, they contain information

9 relating to the wage and hour issues that are the subject matter of this lawsuit, and are categorized

10 by store, unlike the hourly time records. The reports also show hours "paid," and discrete, total

11 overtime by employee. This cuts down on the work needed to analyze various aspects of

12 employee hours worked.

13       In addition, the summarizations expressly reflect the AutoZone truck drivers' time spent

14 at each store, a topic upon which AutoZone counsel deposed Plaintiff Migis. *Powelson Decl.*,

15 Ex. C and Ex. H (Migis Dep., pp. 77:24 - 83:23) (Defendant's counsel inquiring into truck driver

16 work schedules, and their tracking of work start time at the stores). Defendant's own discovery

17 has made this information relevant.

18       Finally, the weekly reports are relevant because, according to AutoZone's counsel, the

19 reports contain Social Security Numbers, which can be used to locate witnesses. See p. 4,

20 Multnomah County Circuit Court's "Civil Motion Panel Statement of Consensus" (November

21 2, 2004). Cf. ORCP 32F(2)(iii) (allowing a court to direct notice to class members when the

22 "names and addresses of the class members can reasonable be determined from the defendant's

23 business records * * * .").

24       AutoZone has been "ready to produce" the requested information – and indicated a

25 willingness to do so – as early as June 4. The Court should therefore order AutoZone to produce

26 the weekly summarization of hours worked report in electronic format.

Page 4 -      **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1    **2.    Request For Production No. 9 (AutoZone efforts to preserve information)**

2        **a.    *Background***

3    Plaintiff's Request For Production No. 9 sought: "all documents, reflecting, containing,

4    or otherwise relating to Defendant's efforts to preserve all potentially discoverable information

5    relating to the subject matter of this lawsuit." *Powelson Decl.*, Ex. A.

6        The information sought is relevant because AutoZone has failed to produce all documents

7    as ordered by the Court.    This includes the "Termination Reports" (see p. 7, Plaintiff's

8    *Supplemental Briefing Supporting Motion to Enforce Court Order*), as well as all 'Weekly

9    Schedule' reports referencing Plaintiff's work schedule * * *," which the Court on March 7, 2008

10    ordered Defendant to produce. *Powelson Decl.*, Ex. I (April 2, 2008 Order). With respect to the

11    Weekly Schedule reports, Defendant responded that "they are not retained as a matter of practice

12    or policy." *Powelson Decl.*, Ex. J.

13        And in response to other discovery requests, AutoZone has: (a) stated that "documents

14    are not retained for the period requested," and (b) otherwise not produced other responsive

15    documents known to exist. See e.g., *Powelson Decl.*, Ex. A (Third Set, RFP No. 3).

16        **b.    *Argument (RFP No. 9)***

17    AutoZone also had difficulty preserving potentially discoverable information in the *Joarnt*

18    *v. AutoZone, Inc.* matter.  In that case, upon motion by the plaintiffs setting forth evidence of

19    AutoZone's destruction of potentially discoverable information, Multnomah County Circuit Court

20    Judge Henry Kantor ordered AutoZone to preserve certain categories of information. *Powelson*

21    *Decl.*, Ex. K (Court Order).

22        It is not an unusual proposition for a litigant to seek discovery regarding the efforts an

23

24

25

26

Page 5 -    **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1   opposing litigant took to locate and produce responsive documents.[1]

2       It is also not unusual to request a litigant to timely submit a declaration or signed

3   verifications to discovery responses stating that all responsive, existing documents have been

4   produced.[2]

5       Based on AutoZone's inability to produce all discoverable documents in this case, the

6   Court should also: (a) order AutoZone to produce documents relating to its efforts to preserve

7   those documents; (b) order AutoZone to submit a declaration as referenced above; and/or (c)

8   order AutoZone to take affirmative steps to now preserve documents and information, and to

9   inform the Court of those steps. This is even more important in light of AutoZone's recent

10   indication it is now installing a new time-keeping system at AutoZone stores.[3]

11     **3.**     <u>Request For Production No. 10 (AutoZone's affirmative defense of laches)</u>

12         ***a.***   ***Background***

13       Plaintiff's Request For Production No. 10 sought "all documents supporting, refuting or

14   relating to Defendant's Fourth Affirmative Defense (Laches)." Defendant only objected and

15

16       [1] See e.g., *In re NTL Sec. Litig.*, 244 F.R.D. 179, 183-085 (S.D.N.Y. 2007); *Cache La
17   Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC*, 244 F.R.D. 614, 619-620 (D.Colo.
    2007); and *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1055-56 (N.D.Cal. 2006).
18   Cf. *Doe v. District of Columbia*, 230 F.R.D. 47, 55-56 (D.D.C. 2005) (Court stating, "* * * Rule
    26(b)(1) may be construed to allow for discovery of document production policies and procedures
19   in allowing 'parties [to] obtain discovery regarding any matter, ... including the existence,
    description, nature, custody, condition, and location of any ... documents.' Plaintiff may,
20   therefore, request information [under Fed.R.Civ.Pro. 30(b)(6)] as to the 'existence,' 'custody,'
    or 'condition' of documents, thereby establishing defendant's policies and procedures of
21   document retention and production." (cite omitted)).

22       [2] See e.g., *Soto v. City of Concord*, 162 F.R.D. 603, 623 (N.D.Cal. 1995) (ordering
    defendants to provide "clear and proper verification that the documents, or parts thereof,
23   previously supplied to Plaintiff * * * are all such documents of that kind obtainable by the
    defense."); and *Norman v. Young*, 422 F.2d 470, 473 (10th Cir. 1970) ("But records which are
24   normally kept in the business of the party, as these were, are presumed to exist, absent a sworn
    denial * * *.").

25       [3] See ¶ 7 of the June 16, 2008 *Declaration of Mark Dessem* offered in support of
26   Defendant's *Motion for Protective Order* ("* * * we are about to put in a new time and
    attendance system in the stores.").

Page 6 -     **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1  referred Plaintiff to his own documents. *Powelson Decl.*, Ex. A.

2          **b.      Argument (RFP No. 10)**

3          "For all forms of discovery, parties may inquire regarding any matter, not privileged,

4  which is relevant to * * * the claim or defense of any other party * * * ." ORCP 36B(1).

5          "Laches depends on the circumstances of each case and will not be 'applied mechanically

6  to every situation' merely because a party has acted with neglect. In that sense, laches differs

7  from legal defenses, such as the statute of limitations." *Hilterbrand v. Carter*, 175 Or App 335,

8  343 (2001).  The Oregon State Court of Appeals has also recently recognized that "[t]he

9  importance of discoverable documents to affirmative defenses is a sufficient ground for dismissal

10  as a sanction for failing to produce [them]." *Asato v. Dunn*, 206 Or App 753, 757-58 (2006) (in

11  context of litigant's failure to produce "relevant information concerning several 'core issues' in

12  the case, including defendants' * * * laches defense[] * * * .").

13          By asserting a laches defense, AutoZone bears the burden of proving the defense applies

14  under the circumstances of this specific case. This requires demonstration of fact showing why

15  AutoZone is substantially prejudiced by this lawsuit.

16          The Court should therefore order AutoZone to produce all documents responsive to

17  Plaintiff's Request For Production No. 10.

18  **B.      April 2, 2008 Court Order**

19          **1.      Background**

20          The Court's Order on Plaintiff's *First Motion for Order Compelling Discovery* required

21  AutoZone to produce:

22          [A]ll documents and reports reflecting dates and times when any AutoZone
           employees working in the State of Oregon missed their meal periods, for [a
23          period of one year as modified by the Court Order]. This Request includes
           any and all, if applicable, "Missed Lunch Reports" and "Lunch Variance
24          Reports."

25  See *Powelson Decl.*, Exs. I (Order) and J (Plaintiff's Second Set RFP No. 4) (bold added).

26  AutoZone eventually produced two different documents only in .pdf format, including the one

Page 7 -      **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1    at issue. See *Id.*, Ex. L.

2        During a discovery conference on May 8, Plaintiff requested the current document at issue

3    in Excel format. Defendant's counsel committed to producing it. Then during a subsequent May

4    21 in-person discovery conference, Defendant re-committed to producing the Excel file.

5    *Powelson Decl.*, ¶ 2.

6        Between May 21 and June 19, however, Plaintiff followed up with Defendant's counsel

7    on at least three separate occasions, requesting production. *Powelson Decl.*, Exs. E (p. 2), F, and

8    G (pp. 4 - 5). On June 24, Defendant claimed it had no idea what Plaintiff was asking for. *Id.*,

9    Ex. G (p. 1).

10       Plaintiff again reiterated and identified the specific document, by Bates number, to be

11    produced in Excel format. Defendant claimed it was looking into the issue. *Powelson Decl.*, Ex.

12    G (p. 1). But later that same day AutoZone counsel simply indicated that the information sought

13    is a "subset" of other Excel information, and so Plaintiff had virtually everything. *Id.*, Ex. M.

14       **2.**    **Argument**

15       AutoZone is not substantially justified in refusing to produce the information in Excel

16    format because: (a) the Court order requires production of "all" documents and reports; (b)

17    Plaintiff's definition of "documents" includes the information requested; and (c) AutoZone has

18    twice committed to producing the information.

19       A fundamental problem is AutoZone's unwillingness to recognize the Court's order

20    requiring production of all documents and reports. Plaintiff's definition of "documents" further

21    supports the notion that Defendant produce the document in electronic Excel format.

22       The Court has already decided a matter similar to this issue. During the April 22, 2008

23    hearing Defendant's *Motion for Extension of Time*, the Court re-ordered AutoZone to re-produce

24    another .pdf document in Excel format.

25       The Court should order production of the document Bates-numbered 0001220 - 1235..

26    ///

Page 8 -      **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

# III. CONCLUSION

For all the reasons set forth herein, Plaintiff requests that the Court order production of the documents at issue.

DATED this 27th day of June 2008.

BAILEY, PINNEY & ASSOCIATES, LLC

A.E. "BUD" BAILEY, OSB 87157
CHEY POWELSON, OSB 03551
Attorneys for Plaintiffs

Page 9 -    **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1    **CERTIFICATE OF SERVICE**

2    I hereby certify that I caused to be served the foregoing Plaintiff's *Third Motion for Order*

3    *Compelling Discovery* upon:

4

5               Leigh Ann Tift
             Littler Mendelson
             One Union Square

6               600 University St, Ste 3200
             Seattle WA 98101-3122

7               Fax: (206) 447-6965
             Attorney for Defendant AutoZone

8
     by the following indicated method or methods:

9

10           [X]        by facsimile transmission to the above-listed fax number.

11           [X]        by causing a full, true, and correct copy thereof to be **deposited in the U.S.
                      mail service** to the person listed above on the date set forth below.

12

13               Amy Alpern
             Littler Mendelson

14               1750 SW Harbor Wy, Ste 450
             Portland OR 97201

15               Fax: (503) 914-1816
             Attorney for Defendant AutoZone

16   by the following indicated method or methods:

17           [X]        by facsimile transmission to the above-listed fax number.

18

19

20                              DATED June 27, 2008

21                              BAILEY, PINNEY & ASSOCIATES, LLC

22

23                              _____

24                              CHEY POWELSON, OSB 035512
                              Attorney for Plaintiff

25

26

Page 10 -    **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1

2

3

4

5

6

7

8

**IN THE CIRCUIT COURT OF THE STATE OF OREGON**
**FOR THE COUNTY OF MULTNOMAH**

9

10 | **MICHAEL MIGIS**, individually and on behalf of all others similarly situated,    Case No. 0711-13531

11

12 | Plaintiff,    **DECLARATION OF CHEY K. POWELSON SUPPORTING**

13 | v.    **PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING**

14 | **AUTOZONE, INC.,**    **DISCOVERY**

15

16 | Defendant.

17

18    I, Chey K. Powelson, hereby declare as follows:

19    1.   I am one of the attorneys for Plaintiff herein. I am competent to testify in this

20         matter, and base the contents of this declaration on my own personal knowledge

21         and/or the litigation files and documents my firm maintains for this litigation.

22    2.   On May 8, 2008, I conferred via telephone with AutoZone counsel Leigh Ann Tift

23         on Defendant's objections and responses to Plaintiff's Third Set of Requests For

24         Production, including Request Nos. 4, 9 and 10. Attached hereto as **Exhibit A** is

25         a true and correct copy of portions of the Third Set of Requests For Production, at

26

Page 1 -    **DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1  issue in the instant *Motion*. During that phone conversation I also: (a) referred Ms.

2  Tift to AutoZone "Payroll Weekly Hours Summary Reports; and (b) received a

3  commitment from her to produce the meal period reports in Excel format. Then on

4  May 21, 2008, I conducted an in-person discovery conference with AutoZone

5  counsel Leigh Ann Tift and Amy Alpern, during which I again referred them to the

6  weekly hours summary reports. Also on that date Defendant's counsel re-committed

7  to producing in electronic Excel format the meal period reports previously produced

8  under Court Order in .pdf format. On or about June 11, 2008, I again conferred with

9  opposing counsel Tift via telephone regarding production of all meal period reports

10  in Excel format.

11  3.  Attached hereto as **Exhibit B** is a true and correct copy of the first page of a

12  summarization "report" AutoZone produced in Excel format in response to

13  Plaintiff's Third Set Request For Production No. 4. During a discovery conference

14  I informed Defendant's counsel that the production was not adequate. In a June 3,

15  2008 letter from AutoZone counsel, Defendant indicated it would not stipulate to

16  that report as being authentic.

17  4.  Attached hereto as **Exhibit C** is a true and correct hard copy version of a "Payroll

18  Weekly Hours Summary Report[s]" Defendant AutoZone had produced in the 2005

19  Multnomah County Circuit Court case, *Joarnt v. AutoZone, Inc.* (Case No. 0503-

20  0275). This report is a matter of public record, filed in the *Joarnt* case.

21  5.  Attached hereto as **Exhibit C-1** is a true and correct copy of AutoZone attorney

22  Amy Alpern's June 3, 2008 letter to Plaintiff in which she confirms that AutoZone

23  will produce "reports reflecting weekly summarizations of hours worked by

24  AutoZone employees as Requested in Plaintiff's Third Request for Production No.

25  4. Defendant is willing to produce this information pursuant to the terms of a

26

Page 2 –    **DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1    protective order." (p. 3). In that same letter Defendant also committed to producing

2    other employee time records.

6.   On June 4, 2008, I forwarded via e-mail to AutoZone counsel Amy Alpern a signed,

4    Stipulated Protective Order. Attached hereto as **Exhibit D** is a true and correct copy

5    of the first (relevant) page my June 4, 2008 e-mail exchange with Ms. Alpern, in

6    which the "Attachments" line reflect that I sent the Stipulated Protective Order. I

7    also attached a letter to that e-mail, requesting that Defendant produce the weekly

8    reports, as well as the meal period report Bates Nos. AZ/MIGIS 0001220-1235 in

9    Excel format. Attached hereto as **Exhibit E** is a true and correct copy of the June

10   4 letter.

7.   Attached hereto as **Exhibit F** is a true and correct copy of the first (relevant) page

12   that is my June 19, 2008 e-mail to AutoZone counsel, requesting an update of

13   AutoZone's impending production of the weekly summarizations of hours reports.

8.   Attached hereto as **Exhibit G** is a true and correct copy of the first five pages on an

15   e-mail exchange between myself and AutoZone counsel, occurring between June 9

16   and June 25, 2008, in which we discussed Defendant's non-production of Bates

17   Nos. 0001220-1235 in Excel format, and the weekly summarization of hours

18   reports. It also reflects that on the morning of Monday, June 23, I asked Defendant's

19   counsel whether they were available for hearing on a motion to compel either July

20   31 or August 1. Defendant did not indicate its availability.

9.   Attached hereto as **Exhibit H** are true and correct excerpts from Defendant's

22   deposition of Plaintiff Michael Migis, during which AutoZone counsel Leigh Ann

23   Tift asked Mr. Migis about practices regarding AutoZone drivers' recording of time

24   worked.

25   ///

26

Page 3 -     DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S THIRD MOTION FOR
             ORDER COMPELLING DISCOVERY

1    10. Attached hereto as **Exhibit I** is a true and correct copy of an April 2, 2008 Court

2         Order entered by the Honorable Jerome LaBarre in response to hearing on Plaintiff's

3         First Motion to Compel discovery, and which modifies Plaintiff's Second Set

4         Request For Production No. 4 (see Exhibit J, infra) as to time period only. Attached

5         hereto as **Exhibit J** are true and correct portions of Defendant's March 28, 2008

6         First Supplemental Responses to Plaintiff's Second Set of Requests For Production

7         of Documents.

8    11. Attached hereto as **Exhibit K** is a true and correct copy of an order issued by the

9         Honorable Henry Kantor in the *Joarnt v. AutoZone, Inc.* case, wherein he ordered

10       AutoZone to preserve all contents of boxes retained at Oregon AutoZone stores.

11       Judge Kantor entered this part of the order in response to a motion brought by

12       plaintiffs in that case, setting forth evidence of AutoZone's destruction of potentially

13       discoverable documents.

14    12. Attached hereto as **Exhibit L** are true and correct portions of the .pdf document

15       Defendant produced in response to the Court's April 2, 2008 Court Order to produce

16       all documents responsive to Plaintiff's Second Set of Requests For Production, No.

17       4. Defendant will not produce this document in electronic Excel format, despite a

18       similar issue that arose during the April 22, 2008 hearing on *Defendant's Motion for*

19       *Extension of Time,* in which Judge LaBarre ordered Defendant to produce a .pdf

20       document in Excel format.

21    13. Attached hereto as **Exhibit M** is a true and correct copy of AutoZone counsel Leigh

22       Ann Tift's June 25, 2008 faxed letter to Plaintiff's counsel, in which Ms. Tift

23       reiterates that Defendant will not produce Exhibit L in Excel format, nor the weekly

24       summarization of hours worked reports. After receiving this letter, I e-mailed and

25       faxed a response letter, indicating additional reasons why Defendant should produce

26

Page 4 -      **DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S THIRD MOTION FOR ORDER COMPELLING DISCOVERY**

1   the hours worked reports, and again requested Defendant indicate whether it was

2   available for hearing on a motion to compel either July 31, or August 1.

3   14. As of the end of the day on Thursday, June 26, 2008, despite my three separate

4   requests to Defendant's counsel for their availability for hearing on a motion to

5   compel, counsel had still responded by confirming or denying their availability.

6

7   I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE
    BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS
8   MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY
    FOR PERJURY.
9

10  Dated this 27th day of June 2008 at Vancouver, Washington.

11

12                                      BAILEY, PINNEY & ASSOCIATES, LLC

13

14                                      CHEY K. POWELSON
                                        Attorney for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

Page 5 -    **DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S THIRD MOTION FOR
ORDER COMPELLING DISCOVERY**

1    **CERTIFICATE OF SERVICE**

2    I hereby certify that I caused to be served the foregoing *Declaration of Chey K. Powelson*

3    supporting Plaintiff's *Third Motion for Order Compelling Discovery* upon:

4

5    Leigh Ann Tift
     Littler Mendelson
     One Union Square
6    600 University St, Ste 3200
     Seattle WA 98101-3122
7    Fax: (206) 447-6965
     Attorney for Defendant AutoZone
8

9    by the following indicated method or methods:

10        [X]    by facsimile transmission to the above-listed fax number.

11        [X]    by causing a full, true, and correct copy thereof to be **deposited in the U.S.
                 mail service** to the person listed above on the date set forth below.
12

13        Amy Alpern
          Littler Mendelson
14        1750 SW Harbor Wy, Ste 450
          Portland OR 97201
15        Fax: (503) 914-1816
          Attorney for Defendant AutoZone
16

     by the following indicated method or methods:
17

18        [X]    by facsimile transmission to the above-listed fax number.

19

20                          DATED June 27, 2008

21

22                          BAILEY, PINNEY & ASSOCIATES, LLC

23

24                          CHEY POWELSON, OSB 035512
                            Attorney for Plaintiff
25

26

Page 6 -    **DECLARATION OF CHEY K. POWELSON SUPPORTING PLAINTIFF'S THIRD MOTION FOR
            ORDER COMPELLING DISCOVERY**

1

2

3 **IN THE CIRCUIT COURT OF THE STATE OF OREGON**
**FOR THE COUNTY OF MULTNOMAH**

4

5

| | |
|---|---|
| 6  **MICHAEL MIGIS**, *et al.* | Case No. 0711-13531 |
| 7              Plaintiff, | (Filed as a Class Action) |
| 8 | |
| 9      v. | **DEFENDANT'S RESPONSES TO** |
| 10  **AUTOZONE, INC.,** | **PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| 11              Defendant. | |

12

13 **TO:    Defendant AutoZone, Inc.,** c/o your attorneys **Douglas Parker** and **Neil Olsen**, 1750 SW
14       Harbor Way, Ste 450, Portland OR 97201

15       Plaintiff hereby requests that Defendant make the following documents, as requested in

16  Exhibit "A," available for inspection and copying at the time, date and place set forth below:

17          <u>**TIME, DATE AND PLACE FOR PRODUCTION**</u>

18

19 **TIME:**      5:00 p.m.

20 **DATE:**      April 25, 2008

21 **PLACE:**     Bailey Pinney & Associates LLC
22            1498 SE Tech Center Place, Ste 290
             Vancouver, WA 98683

23 ///

24 ///

25

26                                    EXHIBIT __A__
                                     Page _1 of 9_

LITTLER MENDELSON
A Professional Corporation
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Page   1    DEFENDANT'S RESPONSES TO PLAINTIFF'S THIRD SET OF REQUESTS FOR

## DEFINITIONS

a.        The term "document" or "documents" as used herein is to be construed broadly and shall mean any kind of hard copy and/or electronic written, recorded or graphic matter in any form of physical media, however produced or reproduced, of any kind of description, whether sent or received or neither, including originals, non-identical copies (whether different from the original because of marginal notes, or other material inserted therein or attached thereto, or otherwise), drafts and both sides thereof, including, but not limited to: agreements, communications, correspondence, telegrams, cables, telex messages, electronic mail messages ("e-mail"), memoranda, records, books, summaries of records or personal conversations or interviews, desk calendars, appointment books, diaries, journals, forecasts, statistical statements, tabulations, accountants' work papers, graphs, charts, accounts, analytical records, affidavits, minutes, records or summaries of meetings or conferences, reports or summaries of interviews or telephone conversations, reports or summaries of investigations, opinions or reports of consultants, appraisals, records, reports or trade letters, press releases, contracts, notes, projections, drafts of any documents, working papers, checks (front and back), check stubs or receipts, sound recordings, data processing records, microfilm, photographs, maps, financial statements or reports thereof, promissory notes, loan agreements, loan files and all notes contained with loan files, revolving credit agreements, deeds of trust, guaranty agreements or indemnification agreements, real estate contracts for sale or lease, pleadings, or any other documents or writings of whatever description, including any information contained in any computer (even if not previously printed out) within the custody or control of you or any of your employees, agents, including attorneys, accountants, investment bankers or advisors, or any other person acting or purporting to act on your behalf.

EXHIBIT $\underline{A}$
Page $\underline{2}$ of $\underline{9}$

LITTLER MENDELSON
A Professional Corporation
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206.623.3300

Page - 2        DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD SET OF REQUESTS FOR
                PRODUCTION OF DOCUMENTS

1    b.    Produce all non-identical copies of all responsive documents including copies that

2    bear marks, notations or changes not present on the original.

3    c.    If any documents are withheld on grounds of attorney/client privilege or attorney

4    work product immunity, identify the author, each recipient thereof, the nature of the document and

5    the basis upon which the privilege is asserted.

6

7    d.    **If any document requested was, but no longer is in the possession, custody, or**

8    **control of Defendant, or in existence, state whether it** (a) is missing or lost, (b) has been

9    destroyed, (c) has been transferred, voluntarily or involuntarily, to others, or (d) has been otherwise

10   disposed of. For each such instance, explain the circumstances surrounding such disposition, give

11   the date or approximate date thereof, and the names and last known home and business addresses of

12   these persons with knowledge of such circumstances.

13

14   e.    "Defendant" as used herein refers to all parties named in this action, and all agents,

15   employees or other persons with an interest in any party.

16   f.    These Requests For Production are continuing and, in the event you discover further

17   information that is responsive to them, you must supplement your responses.  If you fail to

18   supplement your responses in a reasonable fashion, requestor will move the Court for an order

19   excluding from evidence at trial any matter which is responsive and not furnished.

20

21   g.    The phrase "Electronic Data" includes information from Defendant's computer

22   systems, removable electronic media and other locations.  This further includes, but is not limited to,

23   all documents, text files, e-mail and other electronic communication (including logs of e-mail history

24   and usage, header information and "deleted" files), word processing documents, spreadsheets,

25   databases, calendars, telephone logs, fax logs, alarm or security logs or records, video security or

26

EXHIBIT___A___
Page 3 of 9

LITTLER MENDELSON
A Professional Corporation
One Union Square
600 University Street, Suite 2700
Seattle, WA  98101.3122
206.623.3300

Page - 3    **DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD SET OF REQUESTS FOR**
**PRODUCTION OF DOCUMENTS**

1  other tapes or recordings, contact manager information, internet usage files, backup files and tapes,

2  image files, and network access information. This also includes data on personal, home or laptop

3  computers of personnel containing potentially discoverable information. With respect to all of the

4  above, produce the data in native file format with any metadata intact.

5

6

7  **EXHIBIT A  -  DOCUMENTS REQUESTED**

8

9  **REQUEST FOR PRODUCTION NO. 1:** Produce all documents containing, referencing or

10  otherwise relating to Defendant's efforts (including training materials), to ascertain and/or comply

11  with the requirements of ORS 652.140 in the two (2) year time period prior to the filing of the

12  Complaint in this matter, through the date of filing, for those Oregon hourly employees who left

13

14  AutoZone employment during that period.

15   **RESPONSE:** *See*, generally, Exhibit 8 to Deposition of Mark Dessem (publication is

16  periodically updated), Response to RFP 7, AZ/Migis 0002215. Further, each store posts required

17  BOLI notices regarding Oregon wage and hour requirements.

18

19

20

21  **REQUEST FOR PRODUCTION NO. 2:** Produce all documents in effect within the two (2) year

22  time period prior to the filing of the Complaint in this matter, through the date of that filing,

23  containing, referencing, or otherwise relating to Defendant's policies, procedures, and/or practices

24  for the termination, voluntary or involuntary, of Oregon AutoZone hourly employees.

25   **RESPONSE:** *See*, generally, Response to RFP 7, and Defendant's response to Plaintiffs'

26  EXHIBIT _A_

Page _4 of 9_

1  earlier Requests for Production, notable AZ/Migis 0001621-1655.

2

3

4
5  **REQUEST FOR PRODUCTION NO. 3:** Produce any and all Daily Coverage Lists for (or used in
6  or by) all Oregon AutoZone stores, for the period of time from two (2) years prior to the filing of the
7  Complaint, through the date of that filing.

8    **RESPONSE:** These documents are not retained for the period requested.

9

10

11
12  **REQUEST FOR PRODUCTION NO. 4:** Produce all documents and reports reflecting any weekly
   summarization of hours worked by AutoZone hourly employees in stores located in the State of
13  Oregon, for the period of time from two (2) years prior to the filing of the Complaint, through the
14  date of that filing.
15

16    **RESPONSE:** *See*, attached disk, identified as AZ/Migis 0002214.

17

18

19  **REQUEST FOR PRODUCTION NO. 5:** Produce in electronic format all time sheets reflecting
20  the hours each Oregon hourly employee worked for Defendant, including but not limited to, all time
21  records, time cards, punch clock records, time sheets, work time schedules, for the period of time
22  from one (1) year prior to the filing of the Complaint, through the date of that filing.
23

24    **RESPONSE:** Objection. This Request is vague, overbroad and irrelevant, and exceed the
25  proper scope of pre-certification discovery. Defendant will produce the records should a class be
26

EXHIBIT ___A___
Page 5 of 9

1    certified.

2

3    **REQUEST FOR PRODUCTION NO. 6:** Produce all documents that are, or that reference

4    Defendant's policies, procedures, and/or practices containing, referencing, or otherwise relating to
5
     the review, correction, modification, alteration, and/or approval (by any AutoZone employee) of
6
7    time cards and hours worked by AutoZone hourly employees in Oregon, in effect for the time period

8    three (3) years prior to the filing of the Complaint in this matter, through the date of that filing.

9         **RESPONSE:** *See*, generally, documents identified in Response to RFP No. 7.

10

11

12
     **REQUEST FOR PRODUCTION NO. 7:** Produce all documents, reflecting, containing, or
13
14   otherwise relating to any and all discussions (including communications in any form) between, or

15   any training given or taken by, any AutoZone employees, regarding the hours worked (including but

16   not limited to start and end times, rest breaks, meal periods, and overtime) by AutoZone hourly

17   Oregon employees, during the period of time from two (2) years prior to the filing of the Complaint,

18   through the date of that filing.

19
          **RESPONSE:** *See*, AZ/Migis 0001882-00002213.
20

21

22

23   **REQUEST FOR PRODUCTION NO. 8:** Produce all documents that are, or that reflect, contain or

24   otherwise relate to any and all policies, procedures, and/or practices implemented, modified or

25   changed, and/or any other actions taken, directed, approved, reviewed or otherwise implemented by

26
                                                        EXHIBIT _A_
                                                        Page 6 of 9

LITTLER MENDELSON
A Professional Corporation
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101 3122
206 623.3300

Page - 6    DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD SET OF REQUESTS FOR
            PRODUCTION OF DOCUMENTS

1   any AutoZone manager or officer regarding the hours worked (including but not limited to start and

2   end times (recorded or unrecorded), rest breaks, meal periods, and overtime) by AutoZone hourly

3   Oregon employees, during the period of time from two (2) years prior to the filing of the Complaint,

4   through the date of that filing.

5

6   **RESPONSE:** *See*, generally, documents attached to preceding Requests for Production.

7

8

9   **REQUEST FOR PRODUCTION NO. 9:** Produce all documents, reflecting, containing, or

10  otherwise relating to Defendant's efforts to preserve all potentially discoverable information relating

11  to the subject matter of this lawsuit.

12  **RESPONSE:** Objection. This Request is vague, overbroad and irrelevant. Defendant is

13  unable to ascertain which information Plaintiff might perceive as "potentially discoverable." This

14  Request requires the disclosure of privileged and confidential attorney client communications.

15  Without waiving such objection, see answers to preceding Requests.

16

17

18

19  **REQUEST FOR PRODUCTION NO. 10:** Produce all documents supporting, refuting or relating

20  to Defendant's Fourth Affirmative Defense (Laches).

21  **RESPONSE:** Objection. This Request calls for the disclosure of privileged attorney work

22  product. Without waiving such objection, the documents that support this defense are pay and time

23  records from Plaintiff Migis that show he was paid in accordance with hours reported, which have

24  already been produced to Plaintiff, and an absence of documents from Plaintiff Migis to indicate he

25

26

EXHIBIT __A__
Page __7 of 9__

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206 623.3300

1  had any issues, complaints or shortages throughout his entire period of employment.

2

3

4

5  **REQUEST FOR PRODUCTION NO. 11:** Produce all documents supporting, refuting or relating

6  to Defendant's Sixth Affirmative Defense (Failure to Comply with ORCP 32).

7      **RESPONSE:** Objection. This Request calls for the disclosure of privileged attorney work

8  product.

9

10

11  **REQUEST FOR PRODUCTION NO. 12:** Produce all documents supporting, refuting or relating

12  to Defendant's Eighth Affirmative Defense (Pending Claims).

13

14

15      **RESPONSE:** Objection. This Request calls for the disclosure of privileged attorney work

16  product. Without waiving such objection, see, pleadings and responses filed by AutoZone in

17  response to the complaint of *Joarnt et al. v. AutoZone*.

18

19

20

21  **REQUEST FOR PRODUCTION NO. 13:** Produce all documents supporting Defendant's

22  contention in its Eighth Affirmative Defense that "Plaintiff and many of the putative class members

23  in this action are also putative class members in *Joarnt et al. v. AutoZone, Inc.*"

24      **RESPONSE:** Objection. This Request calls for the disclosure of privileged attorney work

25  product. Without waiving such objection, *see*, pleadings and responses filed by AutoZone in

26  

EXHIBIT _A_
Page _8_ of _9_

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101.3122
206 623.3300

Page - 8      **DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD SET OF REQUESTS FOR**

1  response to the complaint of *Joarnt et al. v. AutoZone. See,* also, pleadings filed by Plaintiff which

2  acknowledge that "some people may be members of both classes," identified, for this purpose, as

3  AZ/Migis 0002216-2218.

4

5

6

7  Dated: May 5, 2008

8

9  Leigh Ann Collings Tift OSB No.05473

10  LITTLER MENDELSON
   A Professional Corporation

11
   Attorneys for Defendant
12  Autozone Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26  EXHIBIT _A_
   Page _9 of 9_

LITTLER MENDELSON
A Professional Corporation
One Union Square
70 University Street, Suite 3300
Seattle, WA 98101.3122
206.623.3300

Page - 9      **DEFENDANT'S RESPONSE TO PLAINTIFF'S THIRD SET OF REQUESTS FOR
               PRODUCTION OF DOCUMENTS**

| Store | Fiscal Year | Fiscal Period | Fiscal Week | Worked Hours |
|---|---|---|---|---|
| 1689 | 2006 | 3 | 2 | 161 |
| 2203 | 2006 | 3 | 2 | 178 |
| 2213 | 2006 | 3 | 2 | 120 |
| 2214 | 2006 | 3 | 2 | 186 |
| 2216 | 2006 | 3 | 2 | 194 |
| 2217 | 2006 | 3 | 2 | 176 |
| 2219 | 2006 | 3 | 2 | 219 |
| 2222 | 2006 | 3 | 2 | 279 |
| 2223 | 2006 | 3 | 2 | 157 |
| 2225 | 2006 | 3 | 2 | 360 |
| 2226 | 2006 | 3 | 2 | 254 |
| 2227 | 2006 | 3 | 2 | 324 |
| 2228 | 2006 | 3 | 2 | 246 |
| 2229 | 2006 | 3 | 2 | 229 |
| 2231 | 2006 | 3 | 2 | 188 |
| 2232 | 2006 | 3 | 2 | 143 |
| 2233 | 2006 | 3 | 2 | 225 |
| 2235 | 2006 | 3 | 2 | 71 |
| 2236 | 2006 | 3 | 2 | 207 |
| 2237 | 2006 | 3 | 2 | 152 |
| 2238 | 2006 | 3 | 2 | 142 |
| 2245 | 2006 | 3 | 2 | 208 |
| 2246 | 2006 | 3 | 2 | 160 |
| 3751 | 2006 | 3 | 2 | 166 |
| 1689 | 2006 | 3 | 3 | 165 |
| 2203 | 2006 | 3 | 3 | 173 |
| 2213 | 2006 | 3 | 3 | 131 |
| 2214 | 2006 | 3 | 3 | 176 |
| 2216 | 2006 | 3 | 3 | 204 |
| 2217 | 2006 | 3 | 3 | 162 |
| 2219 | 2006 | 3 | 3 | 226 |
| 2222 | 2006 | 3 | 3 | 266 |
| 2223 | 2006 | 3 | 3 | 154 |
| 2225 | 2006 | 3 | 3 | 391 |
| 2226 | 2006 | 3 | 3 | 319 |
| 2227 | 2006 | 3 | 3 | 323 |
| 2228 | 2006 | 3 | 3 | 241 |
| 2229 | 2006 | 3 | 3 | 229 |
| 2231 | 2006 | 3 | 3 | 220 |
| 2232 | 2006 | 3 | 3 | 172 |
| 2233 | 2006 | 3 | 3 | 235 |
| 2235 | 2006 | 3 | 3 | 160 |
| 2236 | 2006 | 3 | 3 | 190 |
| 2237 | 2006 | 3 | 3 | 164 |
| 2238 | 2006 | 3 | 3 | 141 |
| 2245 | 2006 | 3 | 3 | 207 |
| 2246 | 2006 | 3 | 3 | 187 |
| 3751 | 2006 | 3 | 3 | 164 |
| 1689 | 2006 | 3 | 4 | 171 |
| 2203 | 2006 | 3 | 4 | 148 |

EXHIBIT _B_

Page _l of l_

Per 12 wk (

Payroll Weekly Hours Summary Report    *** AutoZone 2229 ***    07/12/2003
21:09:04
Page    1

| AUTOZONER | REG HRS | VAC HRS | INV HRS | SCK HRS | PRO NEW | TRN HRS | COM HRS | OTH HRS | HRS PD | TOT OT |
|---|---|---|---|---|---|---|---|---|---|---|
| ASTURIAS, | 12:01 | - | - | - | - | - | - |  | 12:01 | - |
| CABRERA, | 8:12 | - | - | - | - | - | - |  | 8:12 | - |
| COSTACHE, | 42:02 | - | - | - | - | - | - |  | 42:02 | 2:02 |
| FLORES, J | 28:50 | - | - | - | - | - | - | 6:20 | 35:10 | - |
| GEMBRIC M | - | - | - | - | - | - | - | - | - | - |
| LAVIOLETT | 29:19 | - | - | - | - | - | - | - | 29:19 | - |
| NARAYAN, | 39:35 | - | - | - | - | - | - | 7:09 | 46:42 | 6:42 |
| NAVA GOME | 20:40 | - | - | - | - | - | - | - | 20:40 | - |
| SALIORS, | 7:00 | - | - | - | - | - | - | - | 7:00 | - |
| SUHL, DAV | 50:00 | - | - | - | - | - | - | - | 50:00S | - |
| **Total** | **237:39** | - | - | - | - | - | - | 13:27 | 251:06 | 8:44 |

| AUTOZONER. | MAINT TECH | TRUCK DR | CONTR SEC | OTHER HRS |
|---|---|---|---|---|
| 99-9999 | - | 0:23 | - | - |

S - Salaried AutoZoner.

AZPB001520

EXHIBIT C

Page 1 of 1



ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

OREGON

PENNSYLVANIA

RHODE ISLAND

SOUTH CAROLINA

TEXAS

VIRGINIA

WASHINGTON

June 3, 2008

Amy R. Alpern
Direct: 503.889.8878
Direct Fax: 503.914.1816
aalpern@littler.com

**VIA MAIL AND FACSIMILE 360-567-3331 AND U.S. MAIL**

Chey Powelson
Bailey Pinney & Associates, LLC
1498 SE Tech Center Place, Suite 290
Vancouver, WA 98683

Re:  Migis v. AutoZone, Inc.
     Multnomah County Circuit Court Case No. 0711-13531

Dear Chey:

This follows up on my May 23, 2008 letter to you in which I outlined what we were willing to do to resolve the outstanding discovery issues. In that letter I told you that I would get back to you by June 3, and I am now doing so. For reasons that cause me great concern, you continued to file motions to compel, and to ask for yet additional documents, while we are diligently working to produce those items outlined in my May 23 letter. Indeed, I do believe at this point that you are intentionally making things more difficult than they need to be. For example, I prepared a protective order and asked that you sign it. (I told you that the form of protective order I prepared had been approved by the Multnomah County Presiding Court.) Rather than signing my order, you sent me a different order and required that we submit that order, instead. I did not want to fight about the issue, so I agreed to sign your proposed order and then brought it to the scheduling conference to ask the Court to sign it per our discussion on May 23. When I asked you to sign the order at that scheduling conference, you said you could not do so because you prepared it for Mr. Bailey's signature. I then asked Mr. Bailey, who was also at the scheduling conference, to sign it. He said he could not do so because he had not read it. When I pointed out to him that it was on your firm's letterhead, and urged him to sign it, he finally agreed to do so. However, when I presented it to Judge Maurer at the scheduling conference, she had concerns about the language in the order and asked her assistant to review it. As it now stands, we do not have a signed protective order.

I have now enclosed another protective order that complies with the Multnomah County rules. I signed it, ask that you do so, and ask that you forward it to the Presiding Court.

Moving on to my May 23, 2008 letter, I respond as follows:

1.   We agreed to allow you to depose Mark Dessem as a corporate representative pursuant to ORCP 39(c)(6) even though you have already taken one 39(c)(6)

**EXHIBIT** C-1

**Page** 1 of 15

Chey Powelson
June 3, 2008
Page 2

deposition. We believe that Mr. Dessem is likely to be able to address some of the
issues set forth in the 39(c)(6) notice that took place on May 15, 2008.

I also told you at the May 15 deposition that we would provide you with additional
information regarding the total number of full- and part-time hourly AutoZone
employees for the time periods set forth in your notice. We reviewed the W-2s for
2006 and can advise you that AutoZone employed 423 employee in Oregon that year.
As you recall, we have already provided you with this information for the year 2007.
I am still working on 2004 and 2005 and will respond to that request, although I am
told that the information is on the payroll tax reports that were produced to your firm
in the Joarnt matter. Nonetheless, I will review those reports as well, and get our
answer to you promptly.

2.    As I suspected, the reference to "attendance calendars" in Mr. Jon's deposition is, in
fact, a reference to the variance reports. Since we have already produced the variance
reports, we have already satisfied this request.

With respect to Request for Production No. 5 (weekly schedule reports referencing
Mr. Migis' work schedule, both approved and unapproved, for three years prior to the
filing of the complaint), we have now double-checked the period boxes for the two
stores in which Mr. Migis worked in Oregon and can confirm that no additional
records responsive to this request exist.

We also agreed to send you a screen print of Mr. Migis' paycheck data. It is
enclosed.

3.    See my May 23 letter.

4.    With respect to the May 9 letter you sent to us regarding the authenticity of
documents, I can advise you that defendant will stipulate that each of the listed
documents, with one exception, is authentic, i.e., that they are what they purport to
be. The exception is AG-Migis 0002214. We do not have a copy of that and I
suspect that we may have made a numbering mistake.

5.    We promised you that we would produce, in electronic Microsoft Excel format, the
lunch variation reports that have been previously produced to you in hard copy. I
understand that Leigh Ann Tift FedExed those to you yesterday and that you are in
possession of those.

6.    Defendant has reconsidered its objection to your request for one year's worth of time
records for hourly employees in the State of Oregon, but have two caveats.
Defendant will seek to shift the cost of producing these records to plaintiff if we are

EXHIBIT C - 1
Page 2 of 3

Chey Powelson
June 3, 2008
Page 3

able to establish that they are not relevant, and/or if the class is not certified. Second, we are agreeing to produce the documents pursuant to the terms of a mutually agreeable protective order.    With that understanding, defendant will produce electronic records of time worked for each AutoZone employee from November 2006 to November 2007. Please let me know when you have signed the order and have forwarded it to the Court, and we will produce the documents.

7.    See my May 23 letter.

8.    Defendant has located and is willing to produce reports reflecting weekly summarizations of hours worked by AutoZone employees as requested in Plaintiff's Third Request for Production No. 4. Defendant is willing to produce this information pursuant to the terms of a protective order. Please let me know when you have signed that order and forwarded it to the Court, and we will provide you with the requested documents.

9.    As promised, defendant's store managers are making a second attempt at finding termination reports. We have looked at the personnel files of all employees to assure that no termination reports were missed, and the AutoZone's Store Managers have been asked to complete their review by June 5. I will let you know what, if anything, they are able to locate. Given Ms. Tift's experience in reviewing the period boxes for the last two stores in which Mr. Migis worked, I strongly doubt that we will find additional responsive documents. Nonetheless, we have taken the time consuming step of looking a second time.

Please understand that your discovery requests have been extremely cumbersome, that we have spent the last month telling you that we want to work cooperatively on discovery issues. As you an see, we have offered several concessions. Despite that, you continue to file motions to compel and motions for sanctions. At some point, I do hope that we are able to move this case in a direction that is likely to benefit our respective clients. That is what you want, right?

Very truly yours,

LITTLER MENDELSON

*Amy M-alpern*

Amy R. Alpern

ARA/jrs
Enclosures

EXHIBIT _C-1_
Page _3 of 3_

## Chey Powelson

| From: | Chey Powelson |
|---|---|
| Sent: | Wednesday, June 04, 2008 12:50 PM |
| To: | 'Alpern, Amy R.' |
| Cc: | Tift, Leigh Ann C.; Bud Bailey; Brad Griffin; Charity Shindle |
| Subject: | RE: Protective Order |
| Attachments: | To Defendant_Signed SPO_06-04-2008.pdf; AutoZone St Ore Migis.Stipulated Protective Order (signed by Judge Maurer).6-4-08 fax.lg.pdf |

Ms. Alpern:

See attached, also to arrive via fax.

---

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Wednesday, June 04, 2008 9:57 AM
**To:** Chey Powelson
**Cc:** Tift, Leigh Ann C.
**Subject:** RE: Protective Order

Interesting, Chey. Without knowing what information is in the documents, you assume that we are holding them "hostage" rather than assuming that we have a legitimate basis for requesting a protective order. The fact is, the weekly summarizations of hours worked report contains social security numbers and other confidential information. If you do not sign and forward the protective order based on my representation that we have documents that are appropriately covered by such order, feel free. The delay, at this point, is due to your refusal to sign the protective order. Not much I can do at this point.

Amy R. Alpern|Littler Mendelson, PC
The National Employment & Labor Law Firm®

---

Telephone: 503.221.0309 | Fax: 503.242.2457
Cell: 503.539.9811

---

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Wednesday, June 04, 2008 9:45 AM
**To:** Alpern, Amy R.
**Cc:** Tift, Leigh Ann C.; Bud Bailey; Brad Griffin; Charity Shindle
**Subject:** RE: Protective Order

In other words, the time records are being held hostage?

---

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Wednesday, June 04, 2008 9:43 AM
**To:** Chey Powelson
**Cc:** Tift, Leigh Ann C.; Bud Bailey; Brad Griffin; Charity Shindle
**Subject:** RE: Protective Order

What I told you when we were at the case management conference was that the form of order I had submitted to you, and that you refused to sign, was signed by Judge Mauer in another case I had in Multnomah and that as a consequence, I knew the language was acceptable. What I suggest you do is sign and submit the protective order as is. If you object to

**EXHIBIT** D

**Page** 1 of 1

# BAILEY, PINNEY & ASSOCIATES, LLC

Attorneys at Law
1498 SE TECH CENTER PLACE, SUITE 290
VANCOUVER, WA 98683

**CHEY POWELSON**
Telephone  (360) 567-2551
Facsimile   (360) 567-3331
e-mail:  CPowelson@wagelawyer.com

\* Washington License WSBA 34593
\* Oregon License OSB 03551

June 4, 2008

## VIA E-MAIL & FAX: 503 - 914 - 1816

**Ms. Amy Alpern**
Aalpern@littler.com
1750 SW Harbor Wy, Ste 450
Portland, OR  97201

> **Re:**    *Migis v. AutoZone, Inc.* (Multnomah Co. Case No. 0711-13531)
> Discovery Issues / Your Letter of June 3

Ms. Alpern:

### Stipulated Protective Order

In early May 2008, Defendant agreed to sign Plaintiff's proposed Stipulated Protective Order.  On May 15 I personally provided you a copy of that Order, which you then presented to Judge Maurer during the case management conference on May 27, although immediately after such presentment you informed Judge Maurer that Plaintiff refused to sign your proposed order.

Yesterday evening you then sent another proposed, stipulated protective order and, in conjunction with various e-mails this morning, insisted that: (a) I immediately sign it, (b) my conduct of not immediately signing it was causing "unnecessary delay;" and (c) there was not much else you could do at this point.

Plaintiff will not sign your newest proposed Order sent yesterday evening because Presiding Court signed Plaintiff's Stipulated Protective Order, with modifications, that you presented during the management conference on May 27.  For your convenience, enclosed is a copy of that signed Order.

### Employee Time Records

Based on the existence of that signed Order, please immediately produce the employee time records as requested in Plaintiff's Third Set Request For Production No. 5 (see also my April 1 letter to Defendant).

Based on the content of Defendant's communications this morning to Plaintiff, it is apparent that both sides agree AutoZone's immediate production of the employee time records will help the parties avoid any further, unnecessary delay.  Cost-shifting is not appropriate at this time.  After producing

EXHIBIT  _E_
Page _1of3_

Ms. Amy Alpern – *Migis v. AutoZone, Inc.* (Discovery Issues / June 3 Letter)
4 June 2008
2

the information and if Defendant still seeks reimbursement, Defendant can address this matter with the Court.

### Other Discovery Issues as Addressed in the May 21 Discovery Conference

Your June 3 letter appears to respond to your May 23 letter. I will address certain issues based on the record and my recollection of the issues. (Any omission from the following does not constitute a waiver of Plaintiff's right to address them at a later date.)

1. ORCP 39C(6) Issues: Plaintiff looks forward to Defendant's production of the information as requested from AutoZone in the May 15 deposition.

2. Attendance Calendars (Plaintiff's Second Set RFP No. 4; Court Order): During the May 21 conference you expressly committed to providing Plaintiff with a redacted copy of an actual Attendance Calendar. You confirmed this commitment in your May 23 letter.

   But your June 3 letter failed to include any calendar. Please produce a redacted copy by the end of the day this Friday, June 6.

3. Plaintiff's Proposed Stipulation of the Excel Summary Report: You advised in your May 23 letter that the document "is not even a business record under ORE 803." However, I refer you to the April 8, 2008 hearing on this matter, during which Defendant seemed to suggest that the report was, as its name suggests, a summary of other documents. As you may know, Evidence Code 1006 addresses such evidence.

   Ms. Tift's comments on the record during the April 22 hearing bolsters this conclusion.

4. Excel Format Variance & Exception Reports (Plaintiff's Second Set RFP No. 4; Court Order): Unless I am mistaken, Defendant has still not produced in Excel format the exceptions report(s). See Bates Nos. AZ/MIGIS 0001220-35. Please do so by the end of the day this Friday, June 6.

5. Weekly Summarizations of Hours Worked (Plaintiff's Third Set RFP No. 4): As an initial matter, the one Excel file Defendant produced in response to this Request was Bates No. AZ/MIGIS 0002214, which you identify in your June 3 letter as a document that Defendant will not stipulate to as authentic.

   Moreover, now that Plaintiff's Stipulated Protective Order is signed, Defendant should produce the additional reports so as to avoid unnecessary delay.

This is also to confirm that after 3:00 p.m. today I will call Ms. Tift to confer on the perceived position Defendant has taken regarding the Excel Summary Report and its responsiveness to Plaintiff's First Set Request For Production No. 24 ("* * *all documents and electronically stored



EXHIBIT __E__
Page __2 of 3__

Ms. Amy Alpern – *Migis v. AutoZone, Inc.* (Discovery Issues / June 3 Letter)
4 June 2008
3

information, which evidence the date on which any employee's employment terminated, in the year proceeding [sic] this lawsuit.").

Finally, it is disappointing that Defendant has recently resorted to making personal attacks on Plaintiff's counsel, while at the same time urging the need to work in a collaborative fashion.

This undoubtedly sends mixed messages, and clouds the real issues that must be addressed and resolved if the Court is to make reasoned determinations on a fully-developed record.

I would also like to remind you that, in the context of the last paragraph in your June 3 letter, you inadvertently put the cart before the horse. Therefore, to clarify:

1.  After several discovery conferences, Defendant remained steadfast in its refusal to produce certain information.

2.  Then Plaintiff filed motions to compel that information.

3.  Only then did Defendant in its June 3 letter offer to make concessions (with certain strings attached), but at the same time accused Plaintiff of continuing to file motions.

Be advised Plaintiff has not filed any motions since June 3.

I hope that in the future we may agree on additional matters without Court intervention. Thank you for your time.

Sincerely,

/s/

Chey K. Powelson
Attorney for Plaintiff

Enclosure

cc: Ms. Leigh Ann Tift (via e-mail only, with encl. as attachment)

EXHIBIT _E_
Page _3 of 3_

**Chey Powelson**

| From: | Chey Powelson |
|---|---|
| Sent: | Thursday, June 19, 2008 9:35 AM |
| To: | 'Alpern, Amy R.'; Tift, Leigh Ann C. |
| Cc: | Bud Bailey; Sharon D. Cousineau; Megan Treseder |
| Subject: | FW: Protective Order |
| Importance: | High |

Counsel:

Please advise as to the below-referenced item Nos. (2) and (3). As for (3), see also my June 4 e-mail to Ms. Tift, and June 4 letter to Ms. Alpern.

Please also advise, as I alluded to on Tuesday and on June 9, the whereabouts of the weekly reports (summarizations), which Defendant on June 4 promised via e-mail to produce, and which are responsive to Plaintiff's Third Set RFP No. 4. Defendant has not responded to Plaintiff's multiple inquiries.

Thanks.

Chey

---

**From:** Chey Powelson
**Sent:** Monday, June 09, 2008 10:41 AM
**To:** 'Tift, Leigh Ann C.'; 'Alpern, Amy R.'
**Cc:** Charity Shindle; Brad Griffin; Sharon D. Cousineau; Bud Bailey
**Subject:** RE: Protective Order

Counsel:

Please advise as to when the following events will occur:

   (1) Defendant's responses, due the week before last, to Plaintiff's Fourth Set of Requests For Production. I did not receive word or an update last Thursday, nor did I receive the responses Friday, despite Defendant's assurances.

   (2) Defendant's production of an attendance calendar, as promised on May 21.

   (3) Defendant's production of the exceptions report in MS Excel format, as promised in early May.

   (4) Defendant's remedying of its filing of my client's SSN into the public record, to the extent Defendant was unable to prevent such filing Friday afternoon after faxing those documents to Plaintiff.

Thank you for your attention to these matters.

Chey Powelson

---

**From:** Tift, Leigh Ann C. [mailto:LTift@littler.com]
**Sent:** Friday, June 06, 2008 11:55 AM
**To:** Chey Powelson
**Subject:** RE: Protective Order

EXHIBIT ___F___
Page _1 of 1_

6/25/2008

## Chey Powelson

| | |
|---|---|
| **From:** | Alpern, Amy R. [AAlpern@littler.com] |
| **Sent:** | Wednesday, June 25, 2008 10:45 AM |
| **To:** | Chey Powelson |
| **Cc:** | Tift, Leigh Ann C.; Sharon D. Cousineau; Bud Bailey; Megan Treseder; Dana Pinney; Stewart, Joanna R. |
| **Subject:** | RE: Protective Order |

Hi Chey,

It looks to me like we are still conferring. I sent you the email below on Tuesday, you responded later that same day, and Leigh Ann and I were on the phone talking about your response this morning when you emailed asking for dates so that you could file yet another motion to compel. It is all too clear that you do not read emails, do not want to work through these issues, and that you do not appreciate the fact that the court would prefer that we work these matters out on our own. We will get back to you on this once we have looked into the questions you raise. In the meantime, put your motion to compel back in your pocket.

Amy R. Alpern|Littler Mendelson, PC
The National Employment & Labor Law Firm®

Telephone: 503.221.0309 | Fax: 503.242.2457
Cell: 503.539.9811

---

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Wednesday, June 25, 2008 10:32 AM
**To:** Alpern, Amy R.
**Cc:** Tift, Leigh Ann C.; Sharon D. Cousineau; Bud Bailey; Megan Treseder; Dana Pinney; Stewart, Joanna R.
**Subject:** RE: Protective Order
**Importance:** High

Please confirm or deny, as requested below, that Defendant is available on July 31 or August 1.

---

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Tuesday, June 24, 2008 4:56 PM
**To:** Chey Powelson
**Cc:** Tift, Leigh Ann C.; Sharon D. Cousineau; Bud Bailey; Megan Treseder; Dana Pinney; Stewart, Joanna R.
**Subject:** RE: Protective Order

Dear all,

It appears that we are now down to two discovery matters. The first relates to "exceptions reports," which as I understand based on you June 19 email were produced but not in the excel format you would like, and the weekly hours summary report. (Recall, as well, that we have already produced the weekly hours summary report - see disk AZ Migis 2214. After receiving that report you said you wanted the information broken down by employee even though it is not set forth in your document request that way.)

Frankly, neither Leigh Ann nor I have any idea what you are referring to by "exceptions reports." You have identified these reports as having been produced to plaintiff at AZ 0001220 -35. I have those documents and they are what I have referred to as the variance reports. We have already produced the variance reports, and then reproduced them in excel format, so I don't think there is anything else to be produced here. Keep in mind that the reports you referenced are not referred to as "exceptions reports" on the documents or anywhere else that I am aware of. Keep in mind, as well, that the variance reports, and the time records that we produced for ALL employees, show exactly when employees clocked in

EXHIBIT G
Page 1 of 5

6/26/2008

and clocked out, so you have the information that I believe you are after in at least two different formats.

The information in the weekly hours summary report you seek, i.e., the summary of hours by employee, is, like the variance reports, in the time records that we produced. Frankly, we produced one full year's worth of the time records, even though we do not think they are relevant, because we believed you would recognize that we were not only willing to compromise our position, but that we were willing to give you virtually all of the information that we believe you have been asking for. Unfortunately, you appear to have ignored the information in the documents produced, preferring instead to pursue motions to compel. I have yet to figure out why you need the information in multiple formats, and why you expect defendant to format the information in exactly the manner that is most convenient to you, but that is not what is required. And, although we have on several occasions given you the information in the preferred format hoping that you would be satisfied, that is never the case. So, unless you can better identify the "exceptions reports", and unless you can identify what INFORMATION you don't have, I believe we have produced the requested documents and, in some cases, produced it multiple times.

Best regards,

Amy R. Alpern|Littler Mendelson, PC
The National Employment & Labor Law Firm®

Telephone: 503.221.0309 | Fax: 503.242.2457
Cell: 503.539.9811

---

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Monday, June 23, 2008 4:43 PM
**To:** Alpern, Amy R.
**Cc:** Tift, Leigh Ann C.; Sharon D. Cousineau; Bud Bailey; Megan Treseder; Dana Pinney
**Subject:** RE: Protective Order

Compelling on the promised weekly summarization of hours reports, and the exceptions/variance reports in Excel format. We've been conferring on these matters since early May (I don't want to spend any more time, and I'm sure you don't either), and we are done conferring unless Defendant actually produces them. Last I heard regarding the summarization of hours issue was on June 4, at which time Defendant said it would produce them once it had a signed stipulated protective order.

---

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Monday, June 23, 2008 4:27 PM
**To:** Chey Powelson
**Cc:** Tift, Leigh Ann C.
**Subject:** RE: Protective Order

Hi,

I just called Leigh Ann to follow up on the matter set forth in the second paragraph of your June 19th email of 1:55 pm. I will get back to you later today or tomorrow after I have spoken to her about that. As to the "attendance reports," there are none. Please let me know what items you are seeking to compel with respect to the July 31 or August 1 dates so I may determine if we have conferred.

Amy R. Alpern|Littler Mendelson, PC
The National Employment & Labor Law Firm®

Telephone: 503.221.0309 | Fax: 503.242.2457
Cell: 503.539.9811

EXHIBIT G
Page 2 of 5

6/26/2008

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Monday, June 23, 2008 9:18 AM
**To:** Alpern, Amy R.; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Sharon D. Cousineau; Megan Treseder; Lucero, Laura M.
**Subject:** RE: Protective Order

Counsel:

Please advise as to Defendant's availability for hearing on a motion to compel either July 31 or August 1 at 9:00 a.m. Thanks.

---

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Thursday, June 19, 2008 2:08 PM
**To:** Chey Powelson; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Sharon D. Cousineau; Megan Treseder; Lucero, Laura M.
**Subject:** RE: Protective Order

Chey,

Paragraph one below is classic. If a witness describes a document as an attendance calendar and later states that his reference was in fact to a Variance report, what that means is that there is no such thing as an "attendance calendar" and that the witness simply misspoke. I explained this to you on June 3, and your claim that I am "reneging" is preposterous. You will not get anywhere with me, Chey, if you continue to mischaracterize events and assume evil where no evil lies.

In Multnomah County, making a claim that an attorney has "reneged" is serious. In the future, please do not accuse me of reneging unless you mean it. I know, and you know, that you do not mean it.

I will respond to your other questions in a bit. I have a summary judgment filing that is pressing.

I am placing this email, and others like it, in my examples of "Chey running up fees needlessly" file.


Amy R. Alpern|Littler Mendelson, PC
The National Employment & Labor Law Firm®

Telephone: 503.221.0309 | Fax: 503.242.2457
Cell: 503.539.9811

---

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Thursday, June 19, 2008 1:55 PM
**To:** Alpern, Amy R.; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Sharon D. Cousineau; Megan Treseder
**Subject:** RE: Protective Order

I am familiar with your letters and e-mails. Your follow up letter to the May 21 in-person conference confirmed your commitment to send me an attendance calendar. This goes back to, once again, Defendant doing what it commits to. Defendant then tried to back out of that deal with your June 3 letter. I'm going with our earlier agreement, not a later, unilateral decision to renege on an agreement.

EXHIBIT G
Page 3 of 5

6/26/2008

This also goes for the Lunch Variance reports and Exceptions Reports. Again, while you are correct you have produced the Variance report in Excel format (upon my request and Defendant's commitment to do so, then attempted reneging of that commitment), Defendant has not produced the Exceptions Report in Excel format. The Court ordered the production of these reports back in March.

Finally, while I realize you are busy, so am I, and its tiring to follow up with the same questions. You have still not answered my question regarding the production of the weekly hours summary report that you expressly committed to producing. Please do so.

Chey

---

**From:** Alpern, Amy R. [mailto:AAlpern@littler.com]
**Sent:** Thursday, June 19, 2008 12:49 PM
**To:** Chey Powelson; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Sharon D. Cousineau; Megan Treseder
**Subject:** RE: Protective Order

Chey,

Please see my June 3, 2008 letter to you regarding (2) and (3). And yes, I reviewed your June 4 letter to me and June 4 email to Ms. Tift. I have concluded, however, that you must not have read my June 3 letter to you stating that Mr. Jon's reference to "attendance calendars" is in fact a reference to the Variance reports which have already been produced.

In addition, per my June 3 letter, we have already produced the lunch variance reports in hard copy, and when you requested them in an excel spreadsheet, we complied with that request by FedExing them to you on June 2.

I realize that you are very busy, but please review our letters and document production before letting emails fly. It is quick and easy to send emails, but it is really a bit frustrating for me to have to have to remind you that we have already produced documents and answered your questions. Before sending me another email about document production, please read what we have sent to you and ask yourself if you in fact have the information requested. I, too, am busy.

Best regards,

Amy R. Alpern|Littler Mendelson, PC
The National Employment & Labor Law Firm®

---

Telephone: 503.221.0309 | Fax: 503.242.2457
Cell: 503.539.9811

---

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Thursday, June 19, 2008 9:35 AM
**To:** Alpern, Amy R.; Tift, Leigh Ann C.
**Cc:** Bud Bailey; Sharon D. Cousineau; Megan Treseder
**Subject:** FW: Protective Order
**Importance:** High

Counsel:

Please advise as to the below-referenced item Nos. (2) and (3). As for (3), see also my June 4 e-mail to Ms. Tift, and June 4 letter to Ms. Alpern.

EXHIBIT _G_
Page _4 of 5_

Please also advise, as I alluded to on Tuesday and on June 9, the whereabouts of the weekly reports (summarizations), which Defendant on June 4 promised via e-mail to produce, and which are responsive to Plaintiff's Third Set RFP No. 4. Defendant has not responded to Plaintiff's multiple inquiries.

Thanks.

Chey

---

**From:** Chey Powelson
**Sent:** Monday, June 09, 2008 10:41 AM
**To:** 'Tift, Leigh Ann C.'; 'Alpern, Amy R.'
**Cc:** Charity Shindle; Brad Griffin; Sharon D. Cousineau; Bud Bailey
**Subject:** RE: Protective Order

Counsel:

Please advise as to when the following events will occur:

(1) Defendant's responses, due the week before last, to Plaintiff's Fourth Set of Requests For Production. I did not receive word or an update last Thursday, nor did I receive the responses Friday, despite Defendant's assurances.

(2) Defendant's production of an attendance calendar, as promised on May 21.

(3) Defendant's production of the exceptions report in MS Excel format, as promised in early May.

(4) Defendant's remedying of its filing of my client's SSN into the public record, to the extent Defendant was unable to prevent such filing Friday afternoon after faxing those documents to Plaintiff.

Thank you for your attention to these matters.

Chey Powelson

---

**From:** Tift, Leigh Ann C. [mailto:LTift@littler.com]
**Sent:** Friday, June 06, 2008 11:55 AM
**To:** Chey Powelson
**Subject:** RE: Protective Order

You said you would wait to hear from me until the end of the week. I told you this morning you will get the answers to the 4th RFPs. I did not ever say the rules don't apply or anything like that, and you are just inventing an outrageous position for reasons I can't begin to fathom.

---

**From:** Chey Powelson [mailto:cpowelson@wagelawyer.com]
**Sent:** Friday, June 06, 2008 10:53 AM
**To:** Tift, Leigh Ann C.
**Subject:** RE: Protective Order

No, I was just looking at ORCP 43.

Nonetheless, just as Defendant has done during the entire course of this lawsuit, it appears once again AutoZone contends that the Rules don't apply to it.

EXHIBIT $\underline{G}$
Page $\underline{5 \text{ of } 5}$

6/26/2008

```
 1              IN THE CIRCUIT COURT OF THE STATE OF OREGON

 2                    FOR THE COUNTY OF MULTNOMAH

 3

 4    MICHAEL MIGIS, individually,

 5    and on behalf of all other

 6    persons similarly situated,

 7              Plaintiff,

 8         vs.                      NO. 0711-13531

 9    AUTOZONE, INC., a Nevada Corporation,

10              Defendant.

11

12

13                        VIDEOTAPED

14              DEPOSITION OF MICHAEL MIGIS

15

16

17            Taken on Behalf of the Defendant

18                 Tuesday, May 20, 2008

19

20

21

22

23

24

25
```

EXHIBIT H
Page 1 of 6

Michael Migis                                                    May 20, 2008

1          BE IT REMEMBERED THAT, the deposition of

2     MICHAEL MIGIS was taken before Charlotte A. Powers,

3     Certified Shorthand Reporter and Registered Merit

4     Reporter, on Tuesday, May 20, 2008, commencing at

5     the hour of 9:08 a.m., the proceedings being

6     reported in the offices of BAILEY PINNEY &

7     ASSOCIATES, LLC, 1498 SE TECH CENTER PLACE, K SUITE

8     290, Vancouver, Washington.

9

10                        APPEARANCES

11    BAILEY PINNEY & ASSOCIATES, LLC

12    By Mr. A. E. Bud Bailey and

13         Mr. Chey Powelson

14         1498 SE Tech Center Place, Suite 290

15         Vancouver, Washington  98683

16    Appearing on behalf of Plaintiff

17

18    LITTLER MENDELSON, P.C.

19    By Ms. Leigh Ann Tift

20         701 5th Avenue, Suite 6500

21         Seattle, Washington  98104

22    Appearing on behalf of Defendant

23

24    ALSO PRESENT:  John Jay, Videographer

25                     *  *  *  *  *

EXHIBIT #
Page 2 of 6

Michael Migis                                                   May 20, 2008

Page 74

1    Q   Okay.
2    A   I — I don't recall saying there wasn't a
3        schedule for lunches.
4    Q   Okay. Okay. Continuing on down the page, it
5        says "overtime."
6    A   Okay.
7    Q   Do you see that?
8    A   Uh-huh.
9    Q   And it says: Because we're a successful
10       company, your supervisor may require you to
11       stay beyond your scheduled work time to finish
12       an important job and to meet the customer
13       service needs of the store. You may be
14       required to work overtime.
15           Did you understand that you were, at
16       times, going to be required to work overtime?
17   A   Yes.
18   Q   Did you report your overtime?
19   A   Well, with the exception of the — the — you
20       know, the times I took it upon myself to come
21       in on my — on my day off and — and try to get
22       things caught up because of visits that we had
23       coming up, my overtime was recorded.
24   Q   Okay. And could you turn to the next page,
25       please, in the handbook. At the bottom of the

Page 75

1        page on the right-hand side, it's talking about
2        work schedules. Do you see that?
3    A   Yes.
4            MR. BAILEY: For the record, what page are
5        we on, Counsel?
6            MS. TIFT: 000050.
7    Q BY MS. TIFT: And the very last two sentences
8        say: Each AutoZone store sets its working
9        hours based on the needs of AutoZone customers.
10       All work hours, shift schedules and work areas
11       are subject to change.
12           Do you see that?
13   A   Yes.
14   Q   Now, there were things that were generated by
15       AutoZone that were work schedules; correct?
16   A   Yes.
17   Q   Okay. And would you agree with me that a work
18       schedule is a plan, it's what you're planning
19       for?
20   A   Yeah.
21   Q   But things might change.
22   A   Yes. It's a guideline.
23   Q   Right. And also it might happen that someone
24       is ill or needs to take leave or can't work
25       their scheduled hours?

Page 76

1    A   That's correct.
2    Q   Okay. So the more accurate record of who
3        worked when are the hourly time records that
4        come from the computer; correct?
5            MR. BAILEY: Objection. Vague. It calls
6        for speculation.
7            THE WITNESS: Can — can I answer the
8        question?
9            MR. BAILEY: You can answer it, if you
10       can, yeah.
11           THE WITNESS: That — that would be
12       correct. That — that would be most — most
13       accurate of what — what took place during the
14       day, as far as payroll goes.
15           MS. TIFT: Okay.
16   Q BY MS. TIFT: Did you participate in the AutoZone
17       stock purchase program?
18   A   Yes, I did.
19   Q   For how long?
20   A   Well, I — I've been a part of that program on
21       more than one occasion. But all of my time
22       that I spent here in Oregon, I — I believe
23       that — that I had monies coming out of my
24       check to participate in that program.
25   Q   Okay. And when you left AutoZone in February

Page 77

1        of 2006, did you cash your stock in?
2    A   Yes.
3    Q   Okay. And did you get a check for that?
4    A   Yes.
5    Q   Did you ever participate in any sales incentive
6        programs where you get a — I think they call
7        it a spiff or a —
8    A   Yes.
9    Q   Okay. Did you get a check for that, ever?
10   A   It was part of my payroll check.
11   Q   Okay.
12   A   Yes. There was an itemized line on there
13       that — that showed what — what you received.
14       But it was part of your payroll check.
15   Q   Did you receive any of those incentive payments
16       after you left AutoZone?
17   A   As far as a spiff?
18   Q   Yeah. Right.
19   A   No.
20   Q   Okay. Would you agree with me that the spiff
21       was not due until the sales promotion ended;
22       that was how it worked?
23   A   I — I would agree with that.
24   Q   What job titles are you aware of in AutoZone in
25       Oregon; what kinds of employees are there?

20 (Pages 74 to 77)

EXHIBIT __H__
Page __3 of 6__

Michael Migis                                                                                        May 20, 2008

Page 78

1   A   AutoZoners.
2   Q   Okay. So, hourly employees?
3   A   Hourly employees. Parts sales managers,
4       manager, area advisor, district advisor,
5       regional advisor, loss prevention, human
6       resources, commercial specialists, commercial
7       drivers. I don't know if they've implemented
8       that, the merchandising pro. But if -- if --
9       if that's been implemented again, then
10      merchandising pro. Truck driver -- or --
11      "truck driver" meaning the driver that brings
12      the store's weekly truck from the DC, from the
13      AutoZone warehouse. And I'm sure the regional
14      adviser has secretaries and, you know, whatever
15      positions are filled in -- in a district or
16      regional office.
17  Q   Now, it's true, isn't it, that you never worked
18      as a manager?
19  A   That's true.
20  Q   Okay. Or an area or district or regional
21      advisor?
22  A   That's correct.
23  Q   Okay. And you never worked in loss prevention?
24  A   No, but I took a training class on it.
25  Q   Okay. You didn't work in human resources?

Page 79

1   A   No.
2   Q   And you didn't have any of the administrative
3       positions in -- like the secretaries or --
4   A   No.
5   Q   All right. You are not a commercial
6       specialist?
7   A   No.
8   Q   You were not a commercial driver?
9   A   No.
10  Q   You were not a merchandising pro?
11  A   Not in Oregon.
12  Q   Okay. And you were not a truck driver?
13  A   That's correct.
14  Q   Okay. What's the difference between a
15      commercial driver and a truck driver?
16  A   The commercial driver is a driver that delivers
17      parts to small businesses around their area
18      from the store level, from a hub store.
19  Q   Okay.
20  A   Whereas the -- the other truck driver I was in
21      reference to is one that drives up in the 18 --
22      or the -- you know, the 18-footers and -- and
23      unloads eight pallets to your store. That's
24      your freight for the week.
25  Q   Okay. Do you know, are truck drivers hourly

Page 80

1       employees? If you know.
2   A   I do not know.
3   Q   Okay. Merchandising pros, are they hourly
4       employees?
5   A   To my knowledge, they are.
6   Q   Okay. Commercial drivers, are they hourly
7       employees?
8   A   Yes.
9   Q   Okay. Commercial specialists, are they hourly?
10  A   I believe they're salary.
11  Q   Okay. The administrative employees, they would
12      probably be hourly?
13  A   I -- administrative?
14  Q   The secretaries and the file clerks.
15  A   I -- I -- to be honest with you, I -- I do not
16      know.
17  Q   Okay. Human resources employees, do you know
18      if they're salaried or --
19  A   That would be sal -- any -- any position
20      manager and above would be a salaried position.
21  Q   How about loss prevention employees?
22  A   That's a salaried position.
23  Q   Do you know anything about work schedules or
24      how truck drivers or commercial drivers,
25      commercial -- or merchandising pros are paid?

Page 81

1   A   I -- I don't understand the question.
2   Q   Do you know anything about their rules or how
3       they keep track of their time?
4   A   It would be just clocking in and out, just like
5       a regular employee, if it's a merchandising
6       pro.
7   Q   Okay.
8   A   They would have a password and they -- they
9       would be able to type in their password and --
10      and if it's an hourly employee, they would have
11      to clock in on the register, just like any
12      other employee.
13  Q   And how do you know that that would apply to
14      the truck drivers and the commercial drivers?
15  A   Well, the truck drivers, the -- the people that
16      bring the weekly freight to the stores, they
17      have to clock in at the register. And they
18      have to clock out at the register.
19  Q   When?
20  A   When they arrive to the store --
21  Q   Okay.
22  A   -- to drop off the shipment, and after -- or
23      when they're ready to leave the store after the
24      shipment has been unloaded.
25  Q   And how do you know what they use to record

EXHIBIT  H

Page 4 of 6

Page 82

1      their start times?
2   A  Because a member of management has to be at the
3      register with them to give them a password so
4      that they can access the clock-in and clock-out
5      procedure.
6   Q  Would a commercial truck driver -- correct me
7      if I'm wrong -- but wouldn't they start at the
8      warehouse?
9   A  A commercial truck driver?
10  Q  Yeah, a truck driver. I'm sorry. Just a truck
11     driver.
12  A  No, I -- I -- a commercial truck driver is just
13     an hourly employee.
14  Q  Okay.
15  A  He's just another employee in the store.
16  Q  Okay.
17  A  But his primary duties are to deliver
18     merchandise to small businesses around the
19     area.
20  Q  Okay.
21  A  But he's still an hourly employee.
22  Q  And do you know how those people organize their
23     lunch times or take breaks?
24  A  They're part of the -- the store schedule.
25     They're two different departments. But when it

Page 83

1      comes to scheduling, they're the same -- it's
2      the same.
3   Q  So there would be a schedule that said when
4      they were expected -- about when they were
5      expected?
6   A  The same matrix as for the rest of the
7      employers or employees.
8   Q  Okay. Now, the truck drivers that bring eight
9      pallets to the store, do you know how they
10     record their start times?
11  A  At the register.
12  Q  Wouldn't they arrive at the store with stuff
13     already on the truck?
14  A  Yes.
15  Q  So where did they start?
16  A  From an AutoZone distribution center.
17  Q  Okay. So do you know how they record their
18     time at the AutoZone distribution center, if
19     they do?
20  A  I'm sure they do, but I -- I don't know the
21     exact procedure. It may be just signing a log
22     at the check-in/checkout booth as they're
23     leaving the building.
24  Q  Okay. Do you know anything about how those
25     people keep track of their lunches or breaks?

Page 84

1   A  No.
2   Q  Okay. Let's say that we were working at an
3      AutoZone store and a customer came in, a good
4      customer, who needed a part, but there isn't
5      one in stock. What would happen?
6   A  Well, we would try to locate the part for them
7      locally. If -- and then send the customer to
8      another location to get that part. But, you
9      know, there's all kinds of different scenarios
10     for that.
11  Q  In your experience, how often did that happen;
12     two times a week, 10 times a week?
13  A  Did what happen?
14  Q  Customer comes in and wants a particular thing,
15     and it's not in stock.
16  A  All the time.
17  Q  Okay. You mentioned early on that there were
18     times when employees would drive a part from
19     one store to another.
20  A  That's correct.
21  Q  Why would you do that?
22  A  To help a customer.
23  Q  And how often did that occur, that an employee
24     would drive a part from one store to another?
25  A  Many times.

Page 85

1   Q  How many times did you do it?
2   A  I could not tell you with any amount of
3      accuracy how times I did it.
4   Q  Did you do it more than once a week, do you
5      think, on average?
6   A  Probably two or three times a week, would be
7      more accurate.
8   Q  And do you think you did it more or less than
9      other employees?
10  A  That's hard for me to determine, if I'm only at
11     one location -- I --
12  Q  Okay.
13  A  -- I -- I would not be able to see what they're
14     doing, or see their paperwork.
15  Q  And you said you didn't record your time for
16     that?
17  A  No.
18  Q  Why not?
19  A  I wasn't on the clock when I was doing it.
20  Q  Well, couldn't you ask to be paid?
21  A  I suppose I could have. It -- it was
22     situations where I -- give you a example. I
23     would be called at home at 7:30 in the morning,
24     for example. I was scheduled to work at 8:00.
25     And it was: Mike, stop at this store. Pick

22 (Pages 82 to 85)

EXHIBIT  H
Page 5 of 6

Page 180

1                  C E R T I F I C A T E

2

3        I, Charlotte A. Powers, CSR No. 90-0050, do

4    hereby certify that, pursuant to stipulation of

5    counsel hereinbefore set out, MICHAEL MIGIS

6    personally appeared before me at the time and place

7    mentioned in the caption herein; that the witness

8    was by me first duly sworn on oath, and examined

9    upon oral interrogatories propounded by counsel;

10   that said examination, together with the testimony

11   of said witness, was taken down by me in stenotype

12   and thereafter reduced to typewriting; and, that the

13   foregoing transcript, pages 1 to 179, both

14   inclusive, constitutes a full, true and accurate

15   record of said examination of and testimony given by

16   said witness, and all other proceedings had during

17   the taking of said deposition, and of the whole

18   thereof, to the best of my ability.

19       Witness my hand at Portland, Oregon, this 28th

20   day of May, 2008.

21                    Charlotte A. Powers

22           Charlotte A. Powers, RMR

23                        CSR No. 90-0050

24

25

EXHIBIT   H
Page 6 of 6

JM

ENTERED

APR - 7 2008

IN REGISTER BY EG

RECEIVED
CIRCUIT COURT
MULTNOMAH COUNTY

08 APR -3 AM 11:54

FILED

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

|  |  |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AUTOZONE, INC.,<br><br>Defendant. | Case No. 0711-13531<br><br>**ORDER ON PLAINTIFF'S FIRST MOTION FOR AN ORDER COMPELLING DISCOVERY, AND DETERMINING THE SUFFICIENCY OF DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION**<br><br>[PROPOSED] |

**THIS MATTER** having come before this Court upon Plaintiff's *First Motion for an Order Compelling Discovery, and Determining the Sufficiency of Defendant's Responses to Plaintiff's Requests for Admission,* and the Court having heard oral argument on March 7, 2008, reviewed the file, and being fully advised of the premise thereof, for the reasons stated on the record:

It is HEREBY ORDERED that:

(1)   Plaintiff's motion to deem Plaintiff's Requests For Admissions admitted is DENIED.

(2)   Defendant produce all documents in response to Request For Production Nos. 2, 4 and 6 in Plaintiff's First Set of Requests For Production, within 15

Page 1 -   ORDER ON PLAINTIFF'S FIRST MOTION FOR ORDER COMPELLING DISCOVERY

EXHIBIT I
Page 1 of 4

1  business days from the date of hearing on this matter, provided that these
2  Requests shall be limited to Oregon-based AutoZone employees paid on an hourly
3  basis.

5  (3)  Defendant produce all documents responsive to **Request For Production Nos.**
6  **7 and 8 in Plaintiff's Second Set of Requests for Production,** within 15 business
7  days from the date of hearing on this matter.

9  (4)  The parties confer on the scope of production for **Request For Production Nos.**
10  **1 - 6 in Plaintiff's Second Set of Requests For Production.** The Court has
11  subsequently been informed that Plaintiff and Defendant agree to the scope of
12  those Requests as follows, and Defendant shall produce all documents responsive
13  to the Requests, as modified, within 20 business days from the date of hearing on
14  this matter.

15  (a) **Request No. 1** (transportation and driving polices and/or procedures): The
16  temporal scope of this Request shall be a total of one (1) year comprised of
17  the following time periods: from May 1, 2005 through August 2005; from
18  November 1, 2005 through February 2006; and from May 1, 2006 through
19  August 2006. This Request will be limited to documents representing a
20  complete set of the requested policies and procedures from the earliest date
21  set forth above, through the latest date set forth above, inclusive of any
22  changes to those policies and procedures.

23  (b) **Request No. 2** (mileage reimbursement policy and/or procedure): The
24  temporal scope of this Request shall be a total of one (1) year comprised of
25  the following time periods: from May 1, 2005 through August 2005; from
26  November 1, 2005 through February 2006; and from May 1, 2006 through

Page 2 -  ORDER ON PLAINTIFF'S FIRST MOTION FOR ORDER COMPELLING DISCOVERY

EXHIBIT I
Page 2 of 4

1     August 2006. This Request will be limited to documents representing a

2     complete set of the requested policies and procedures from the earliest date

3     set forth above, through the latest date set forth above, inclusive of any

4     changes to those policies and procedures.

5     (c) **Request No. 3** (merchandise and/or parts delivery and pick-up schedule(s)):

6     No changes; Defendant shall respond to the Request as drafted.

7     (d) **Request No. 4** (documents and reports including Missed Lunch Reports and

8     Lunch Variance Reports): The temporal scope of this Request will be a total

9     of one (1) year comprised of the following time periods: from May 1, 2005

10     through August 2005; from November 1, 2005 through February 2006; and

11     from May 1, 2006 through August 2006.

12     (e) **Request No. 5** (Weekly Schedule reports referencing Plaintiff Migis's

13     approved and unapproved work schedules): No changes; Defendant shall

14     respond to the Request as drafted.

15     (f) **Request No. 6** (documents and reports reflecting weekly summarization of

16     hours worked by Plaintiff Migis): No changes; Defendant shall respond to the

17     Request as drafted.

18

19

20     SIGNED on this ___ day of _____ 2008.

21

22     THE HON. JEROME LABARRE

23     Multnomah Co. Circuit Court

24     ///

25     ///

26     ///

Page 3 –     ORDER ON PLAINTIFF'S FIRST MOTION FOR ORDER COMPELLING DISCOVERY

EXHIBIT I
Page 3 of 4

1 | APPROVED AS TO FORM:

2 | BAILEY, PINNEY & ASSOCIATES, LLC

3

4 |   /s/
    A.E. "BUD" BAILEY, OSB NO. 87157
5 | bbailey@wagelawyer.com
    CHEY K. POWELSON, OSB NO. 03551
6 | cpowelson@wagelawyer.com
    1498 SE Tech Center Pl, Ste 290
7 | Vancouver, WA 98683
    Phone: 360.567.2551
8 | Fax: 360.567.3331
    Attorneys for Plaintiff
9

10 | LITTLER MENDELSON

11

12 |   /s/

13 | DOUG PARKER, OSB NO. 821017
    NEIL OLSEN, OSB NO. 053378
14 | LITTLER MENDELSON, P.C.
    1750 S.W. Harbor Way, Suite 450
15 | Portland, Oregon 97201
    Phone: 503-221-0309
16 | Fax: 503-242-2457
    Of Attorneys for Defendant
17

18

19

20

21

22

23

24

25

26

Page 4 -        ORDER ON PLAINTIFF'S FIRST MOTION FOR ORDER COMPELLING DISCOVERY

EXHIBIT I
Page 4 of 4



IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOZONE INC., a Nevada Corporation,,<br><br>Defendant. | No. 0711-13531<br><br>***DEFENDANT'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS*** |

Defendant AutoZone, Inc. ("Defendant") hereby submits its objections and responses to Plaintiff's Second Set of Requests for Production of Documents as follows:

### GENERAL OBJECTIONS

The following objections apply generally to all of Plaintiff's discovery requests in this lawsuit:

(a)  <u>Objections to Scope of Discovery Requests.</u>  Defendant objects to all discovery requests to the extent they purport to require any actions not required by the Oregon Rules of Civil Procedure, the Uniform Trial Court Rules, or any local rules. Without limiting the generality of this objection, Defendant objects to all discovery requests to the extent that they (1) go beyond the scope of discovery provided by the Oregon Rules of Civil Procedure, (2) are not reasonably calculated to lead to the discovery of admissible evidence, and/or (3) purport to impose a duty of supplementation greater than that imposed by the Oregon Rules of Civil Procedure.

(b)  <u>Privilege and Trial Preparation Materials.</u>  Defendant objects to all discovery requests to the extent they call for information or documents that fall within any relevant privilege (including

PAGE 1 – DEFENDANT'S 1ST SUPPL. OBJECTIONS AND RESPONSE
TO PLAINTIFF'S SECOND RFP'S

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-2457

EXHIBIT ___
Page 1 of 6

1   without limitation the attorney-client privilege), that are within the work product doctrine, or that

2   constitute trial preparation materials.

3       (c)    No Waiver.  Nothing set forth in Defendant's specific objections, general objections

4   or responses is intended as or should be construed as a waiver of these general objections, or of any

5   specific objections set forth.

6       (d)    Reservation of Rights.  Defendant reserves the right to move later for a protective

7   order or otherwise to seek relief from the court if the parties are unable to resolve Defendant's

8   objections by agreement.

9       (e)    Publicly Available Documents.  Defendant objects to producing publicly available

10  documents (including without limitation court records) that are, due to their public availability,

11  equally available to the requesting party.

12      (f)    Pending Motion to Consolidate and Stay.  Defendant objects to responding to these

13  requests in their entirety in light of Defendant's Motion to Consolidate and Stay, which is currently

14  pending before the Court.  If this matter survives Defendant's Motion to Consolidate and Stay,

15  Defendant will supplement its responses to these requests.

16      (g)    Pending Stay of Discovery.  Defendant further objects to these discovery requests to

17  the extent that they seek to evade Judge Kantor's January 27, 2006 ruling in *Joarnt et al. v.*

18  *AutoZone, Inc.* ("Joarnt Action") that all discovery in that matter has been stayed during the

19  pendency of an appeal to the Oregon Court of Appeals in the Joarnt Action.

20      (h)    Objections to Requests Exceeding Pre-Certification Issues.  Defendant objects to the

21  discovery requests to the extent they (1) seek information about current and former employees who

22  are not class representatives and (2) exceed the issue of class certification.  To the extent not

23  objectionable for other reasons, Defendant will answer and respond to the requests as they apply to

24  the class representative, Plaintiff Migis.

25

26

PAGE 2 – DEFENDANT'S 1ST SUPPL. OBJECTIONS AND RESPONSE
TO PLAINTIFF'S SECOND RFP'S

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309, Fax: 503-242-2457

EXHIBIT
Page 2 of 6

1      (i)    Amendment/Supplementation. This matter presently is still being investigated by

2 Defendant and its counsel, and Defendant therefore reserves the right to amend and supplement its

3 responses as reasonably may be necessary.

4      (j)    No Private Right of Action. Defendant further objects to these discovery requests to

5 the extent they seek information about alleged meal period violations insofar as Plaintiffs do not

6 have a private right of action for such a claim. *See Gafur v. Legacy Good Samaritan Hospital and*

7 *Medical Center*, 213 Or. App. 343 (2007).

8      (k)    Electronic Discovery. Defendant objects to these discovery requests to the extent

9 they seek electronic discovery as being overbroad and unduly burdensome and the need for any

10 electronic discovery does not outweigh the burdens and hardships to Defendant of searching

11 electronic information.

12      (l)    To the extent that any discovery request seeks documents that are also sought by or

13 identified pursuant to any other request, Defendant declines to produce or identify multiple copies of

14 such documents, and Defendant states that each document produced or identified pursuant to any

15 request is also produced pursuant to any other request to which it is responsive.

16      Defendant's response to each request specifically incorporates these General Objections by

17 this reference.

18

19

20

21

22

23

24

25

26

PAGE 3 – DEFENDANT'S 1ST SUPPL. OBJECTIONS AND RESPONSE
TO PLAINTIFF'S SECOND RFP'S

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-2457

EXHIBIT J

Page 3 of 6

1  *AutoZone, Inc.* Without waiving such objection, see Defendant's Response to Plaintiff Joarnt and

2  Yamaoka's Third Requests for Production, RFP No. 8, in Cause No. 053-02795.

3      **SUPPLEMENTAL RESPONSE**: The policies referenced above are attached in response to

4  RFP No. 1. No other policies on these topics has been located, but Defendant continues to search

5  and will provide any updated policies.

6

7      **REQUEST FOR PRODUCTION NO. 3**:  Produce all documents containing or referencing

8  Defendant's daily merchandise and/or parts delivery and pick-up schedule in place during the course

9  of Plaintiff's employment with Defendant for all Defendant Stores where Plaintiff worked and

10  delivered.

11      **RESPONSE**: Defendant incorporates by reference its General Objections as though fully set

12  forth herein. Defendant further objects to this request to the extent it is overbroad, unduly

13  burdensome, and overlaps with discovery that has been stayed by Judge Kantor in *Joarnt et al. v.*

14  *AutoZone, Inc.* Without waiving such objection, see Defendant's Response to Plaintiff Joarnt and

15  Yamaoka's Third Requests for Production, RFP No. 9, in Cause No. 053-02795.

16      **SUPPLEMENTAL RESPONSE**:  The delivery schedules are not retained as a matter of

17  practice or policy.  AutoZone has conducted a diligent search for these schedules at its headquarters,

18  and none were located.  Defendant believes that some copies may be retained, on an individual basis

19  and in no particular order, at various stores where Plaintiff worked.  Defendant will search for these

20  schedules at individual stores to determine whether any examples are in existence.

21

22      **REQUEST FOR PRODUCTION NO. 4**:  Produce all documents and reports reflecting

23  dates and times when any AutoZone employees working in the State of Oregon missed their meal

24  periods, for the period of time from three (3) years prior to the filing of the Complaint, up to present.

25

26

PAGE 5 – DEFENDANT'S 1ST SUPPL. OBJECTIONS AND RESPONSE
TO PLAINTIFF'S SECOND RFP'S

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR  97201
Phone: 503-221-0309 Fax 503-242-2457

**EXHIBIT** I

Page 4 of 6

1  This Request includes any and all, if applicable, "Missed Lunch Reports" and "Lunch Variance

2  Reports."

3      **RESPONSE**: Defendant incorporates by reference its General Objections as though fully set

4  forth herein. Defendant further objects to this request to the extent it is overbroad, unduly

5  burdensome, and overlaps with discovery that has been stayed by Judge Kantor in *Joarnt et al. v.*

6  *AutoZone, Inc.* Without waiving such objection, see Defendant's Response to Plaintiff Joarnt and

7  Yamaoka's Fourth Requests for Production, RFP No. 7, in Cause No. 053-02795.

8      **SUPPLEMENTAL RESPONSE**: With respect to Plaintiff Migis, *see*, attached AZ/MIGIS

9  000551.

10

11     **REQUEST FOR PRODUCTION NO. 5**: Produce all "Weekly Schedule" reports

12  referencing Plaintiff's work schedule, both approved and unapproved, for the period of time from

13  three (3) years prior to the filing of the Complaint, up to present.

14     **RESPONSE**: Defendant incorporates by reference its General Objections as though fully set

15  forth herein. Defendant further objects to this request to the extent it is overbroad, unduly

16  burdensome, and overlaps with discovery that has been stayed by Judge Kantor in *Joarnt et al. v.*

17  *AutoZone, Inc.* Without waiving such objection, see Defendant's Response to Plaintiff Joarnt and

18  Yamaoka's Third Requests for Production, RFP No. 11, in Cause No. 053-02795.

19     **SUPPLEMENTAL RESPONSE**: Work schedules are not retained as a matter of practice

20  or policy. AutoZone has conducted a diligent search for these schedules at its headquarters, and

21  none were located. Defendant believes that some copies may be retained, on an individual basis and

22  in no particular order, at various stores where Plaintiff worked. Defendant will search for these

23  schedules at individual stores to determine whether any examples are in existence.

24

25

26

PAGE 6 – DEFENDANT'S 1ST SUPPL. OBJECTIONS AND RESPONSE
TO PLAINTIFF'S SECOND RFP'S

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-7457

EXHIBIT
Page 5 of 6

1     **REQUEST FOR PRODUCTION NO. 8**: Produce all documents that identify, or which

2 record or can be used to identify, the names of the persons activating and/or deactivating security

3 systems at stores in which Plaintiff worked for AutoZone during Plaintiff's employment period.

4     **RESPONSE**: Defendant incorporates by reference its General Objections as though fully set

5 forth herein. Defendant further objects to this request to the extent it is overbroad, unduly

6 burdensome, and overlaps with discovery that has been stayed by Judge Kantor in *Joarnt et al. v.*

7 *AutoZone, Inc.* Without waiving such objection, see Defendant's Response to Plaintiff Joarnt and

8 Yamaoka's Fourth Requests for Production, RFP No. 12, in Cause No. 053-02795.

9     **SUPPLEMENTAL RESPONSE**: Defendant has been unable to identify records related to

10 Plaintiff Migis responsive to this request. Defendant continues to search and will supplement to the

11 extent that records are identified.

12

13 Dated: March 28, 2008

14

15 Leigh Ann Collings Tift OSB 05473

16 Douglas S. Parker OSB No.82101
LITTLER MENDELSON

17 A Professional Corporation

18 Attorneys for Defendant
Autozone Inc.

19

20

21

22

23

24

25

26

PAGE 8 – DEFENDANT'S 1ST SUPPL. OBJECTIONS AND RESPONSE
TO PLAINTIFF'S SECOND RFP'S

Littler Mendelson, PC
1750 SW Harbor Way, Suite 450
Portland, OR 97201
Phone: 503-221-0309 Fax: 503-242-2457

EXHIBIT
Page 6 of 6

ENTERED

MAR 2 9 2006

IN REGISTER BY RK

FILED

06 MAR 27 AM 11: 23

FOR MULTNOMAH COUNTY

# IN THE CIRCUIT COURT OF THE STATE OF OREGON
## FOR THE COUNTY OF MULTNOMAH

RICHARD JOARNT and BERT
YAMAOKO, individually and on behalf of all
others similarly situated,

                         Plaintiffs,

    v.

AUTOZONE, INC., a Foreign Corporation,

                         Defendant.

No. 0503-02795

ORDER ON PLAINTIFFS' MOTIONS
FOR ORDER REQUIRING
DEFENDANT TO PRESERVE
EVIDENCE AND FOR PROTECTIVE
ORDER, AND ON DEFENDANT'S
MOTION TO ENJOIN PLAINTIFFS
FROM CONTACTING
REPRESENTED PARTIES AND
MOTION FOR PROTECTIVE
ORDER LIMITING PLAINTIFFS'
CONTACT WITH PUTATIVE CLASS
MEMBERS

    **THIS MATTER,** having come before the Court upon Plaintiffs' and Defendant's above-referenced Motions, and the Court having reviewed the file, and being fully advised of the premise thereof during hearing of these Motions on January 27, 2006; the Court hereby **ORDERS** that:

    1.    Defendant's Motion to Enjoin Plaintiffs from Contacting Represented Parties and Motion for Protective Order Limiting Plaintiffs' Contact with Putative Class Members, is **DENIED.** Plaintiffs are allowed to conduct investigation and contact AutoZone employees and store managers as part of such investigation; PROVIDED, however, that such contact include a disclosure that the investigation is related to the employee's experience as an hourly employee. MOREOVER, Plaintiffs are not entitled to directly contact current district managers or other current employees occupying positions of authority above the district manager level, regarding this case without permission of Defendant and/or the Court except to

Page 1 -    ORDER ON PLAINTIFFS' MOTIONS FOR ORDER REQUIRING DEFENDANT TO PRESERVE EVIDENCE
              AND FOR PROTECTIVE ORDER, AND ON DEFENDANT'S MOTION TO ENJOIN PLAINTIFFS FROM
              CONTACTING REPRESENTED PARTIES AND MOTION FOR PROTECTIVE ORDER LIMITING PLAINTIFFS'
              CONTACT WITH PUTATIVE CLASS MEMBERS

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

EXHIBIT _K_
Page _1 of 3_

1　determine if the person is a district manager or other person with whom contact is restricted.

2　Defendant shall provide Plaintiffs with a list of such individuals whom Defendant believes

3　Plaintiffs are not entitled to contact, PROVIDED, HOWEVER, that Defendant's duty to

4　provide this information is STAYED in accordance with Paragraph 4 of this Order.

5　　　2.　　In regards to Plaintiffs' Motion for Order Requiring Defendant to Preserve

6　Evidence and Motion for Protective Order:

7　　　　　a.　　Plaintiffs' Motion for Protective Order (restricting Defendant's

8　communications with putative class members) is **DENIED**. Defendant may conduct

9　investigation to prosecute and defend their claims and defenses; PROVIDED, however,

10　Defendant does not try to persuade any putative class members to not participate in the class.

11　　　　　b.　　Plaintiffs' Motion for Order Requiring Defendant to Preserve Evidence

12　is hereby **GRANTED** to the extent that Defendant will preserve all contents of currently-

13　existing (from November 2004 and later) Oregon AutoZone store "period boxes," or any

14　future boxes that are created and maintained during the course of this lawsuit, for all

15　AutoZone stores in the State of Oregon. FURTHERMORE, Defendant will arrange for the

16　storage of those boxes and their contents in such a way that provides Plaintiffs reasonable

17　access to review and copy the contents of those boxes. Plaintiffs are not entitled to documents

18　containing confidential information that is entirely unrelated to the claims or defenses in this

19　lawsuit. If the parties disagree over the discoverability of one or more documents contained

20　in any of the period boxes, Plaintiffs are entitled to copy that document or documents and

21　move the Court for a ruling as to the disputed document or documents' discoverability.

22　　　3.　　All requests for costs and attorneys fees and/or sanctions as made in the above-

23　referenced Motions are DENIED.

24　///

25　///

26　///

Page 2 - 　ORDER ON PLAINTIFFS' MOTIONS FOR ORDER REQUIRING DEFENDANT TO PRESERVE EVIDENCE AND FOR PROTECTIVE ORDER, AND ON DEFENDANT'S MOTION TO ENJOIN PLAINTIFFS FROM CONTACTING REPRESENTED PARTIES AND MOTION FOR PROTECTIVE ORDER LIMITING PLAINTIFFS' CONTACT WITH PUTATIVE CLASS MEMBERS

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

EXHIBIT _K_
Page _2 of 3_

1      4.    This case is STAYED in its entirety pending resolution of Plaintiff's appeal of

2   this Court's order on Defendant's Motion for Judgment on the Pleadings. This stay, however,

3   does not affect the parties' respective rights to conduct appropriate investigation.

4

5       ORDERED this ___ day of _____ 2006.

6

7

8            THE HONORABLE HENRY KANTOR
                MULTNOMAH CO. CIRCUIT COURT JUDGE

9

10  SUBMITTED BY:

11

12  SHAUNA M. SJOSTROM, OSB 04418
     Of Attorney for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 3 --    ORDER ON PLAINTIFFS' MOTIONS FOR ORDER REQUIRING DEFENDANT TO PRESERVE EVIDENCE
         AND FOR PROTECTIVE ORDER, AND ON DEFENDANT'S MOTION TO ENJOIN PLAINTIFFS FROM
         CONTACTING REPRESENTED PARTIES AND MOTION FOR PROTECTIVE ORDER LIMITING PLAINTIFFS'
         CONTACT WITH PUTATIVE CLASS MEMBERS

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

EXHIBIT K
Page 3 of 3

| STORE | MAIL_ID | EMP_NAME | NO_LUNCH | SHORT_LUNCH | LONG_LUNCH |
|---|---|---|---|---|---|
| 2203 | TPqGlr | HAHAJ, BRANDON | 2 | 0 | 0 |
| 2203 | TXNqi7 | LUNA, NOE | 1 | 0 | 0 |
| 2203 | TXsCpS | DE LA VEGA, JAVIER | 2 | 4 | 0 |
| 2203 | TYmHgM | BAZANTE, PEDRO | 1 | 0 | 0 |
| 2203 | Te8GlU | ECHEVERRIA, ANDRES | 2 | 0 | 0 |
| 2203 | TeKf0H | SARDINETA, DICK | 2 | 1 | 0 |
| 2203 | TeUBl5 | RHEE, BRIAN | 1 | 0 | 0 |
| 2203 | TeWWEc | LEACH, JOE | 12 | 1 | 2 |
| 2203 | TzpTm1 | TREJO, ABRAHAM | 4 | 0 | 0 |
| 2213 | TtDjli | PAGARIGAN, JOHN | 0 | 1 | 2 |
| 2213 | TfX5Ex | STRINGER, CALEB | 1 | 2 | 0 |
| 2213 | TzBe0l | ACKERMAN, CHRISTOPHER | 1 | 0 | 1 |
| 2213 | TzJbTk | KEY, ROBERT | 0 | 1 | 2 |
| 2214 | TMK8Lw | BARNHURST, JOHN | 2 | 0 | 0 |
| 2214 | TYvyVr | THOMAS, ANDREW | 0 | 0 | 1 |
| 2214 | TeMyoK | CRAMER, JOSHUA | 6 | 3 | 2 |
| 2214 | Ted9nn | JAIMES, JODI | 4 | 3 | 3 |
| 2214 | TedZ8l | RICHMOND, JEFFREY | 1 | 2 | 0 |
| 2214 | TetBE1 | COSTA, MEGAN | 3 | 1 | 2 |
| 2214 | TewNF7 | DOOGE, JUSTIN | 3 | 4 | 3 |
| 2216 | TZbeVP | HEREDIA, JONATHAN | 7 | 4 | 1 |
| 2216 | TeKo0y | VEGA, NERI | 6 | 0 | 0 |
| 2216 | TeMTZ4 | KEITHLEY, MARION | 2 | 12 | 1 |
| 2216 | TeUidR | WHITING, JOSHUA | 1 | 3 | 2 |
| 2216 | TeXUtA | SANFILIPPO, VICTORIA | 5 | 2 | 6 |
| 2216 | TeaMdH | LIBAL, DAMIEN | 2 | 6 | 0 |
| 2216 | Tew7S3 | PEARCE, SARAH | 1 | 1 | 0 |
| 2216 | TewOif | FORSYTHE, JON | 11 | 7 | 3 |
| 2216 | Texry1 | THIERRY, SHELBY | 8 | 5 | 1 |
| 2216 | Tubft8 | DAVILA, RAFAEL | 1 | 0 | 0 |
| 2216 | TzfoGe | TREJO, ROMUALDO | 9 | 0 | 0 |
| 2217 | TYtqGl | BENAVIDES, HERIBERTO | 3 | 5 | 0 |
| 2217 | TeKLai | PEREZ, ADRIAN | 3 | 2 | 0 |
| 2217 | TeaEVo | ENSEY, EVAN | 1 | 0 | 0 |
| 2217 | Tet0MC | UPTON, CONAN | 3 | 0 | 2 |
| 2217 | Tx1cki | MONACO, NICHOLAS | 3 | 2 | 0 |
| 2219 | TMe3Zp | BAIRD, JOSHUA | 1 | 7 | 1 |
| 2219 | Tetncz | JACKMAN, RYAN | 2 | 13 | 5 |
| 2219 | Tebxd8 | DUHRKOOP, CARISSA | 3 | 11 | 4 |
| 2219 | Tew63g | BRUNER, MICHAEL | 1 | 0 | 0 |
| 2219 | TexSli | WEEDMAN, EMILY | 7 | 1 | 5 |
| 2219 | TnqagL | BRAUN, JAMES | 0 | 1 | 0 |
| 2219 | TsPlup | GUERRERO, ALFREDO | 4 | 2 | 0 |
| 2222 | TY2pBs | GOMEZ, ERICA | 4 | 0 | 0 |
| 2222 | TeUW23 | WITT, MATTHEW | 1 | 0 | 0 |
| 2222 | TeYkcC | HASKELL, JANELLE | 4 | 0 | 1 |
| 2222 | TetiNc | JACK, RACHEL | 4 | 0 | 0 |
| 2222 | TtDjli | PAGARIGAN, JOHN | 0 | 4 | 3 |
| 2222 | TfX5Ex | STRINGER, CALEB | 0 | 2 | 1 |
| 2222 | TtaXVV | AGUILAR, JOE | 1 | 3 | 1 |
| 2222 | Ttaplz | STEENBURGH, GLEN | 6 | 5 | 1 |



EXHIBIT 1
Page 1 of 6
AZ/MIGIS 0001220

| SHORT LUNCH | NO LUNCH | LONG LUNCH |
|---|---|---|
| 335 | 334 | 246 |

EXHIBIT ___L___
Page 2 of 6
AZ/MIGIS 0001223

| STORE | MAIL ID | EMP_NAME | AT_ACTION_DESC | AT_REASON_DESC | num_occurances |
|---|---|---|---|---|---|
| 2216 | Texzvr1 | THIERRY, SHELBY | LONG LUNCH | AUTOZONER TRADED SHIFT | 1 |
| 2222 | TtDll | PAGARIGAN, JOHN | LONG LUNCH | AUTOZONER TRADED SHIFT | 1 |
| 2213 | Tz8e0l | ACKERMAN, CHRISTOPHER | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 1 |
| 2216 | TeXUtA | SANFILIPPO, VICTORIA | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 2 |
| 2216 | TewOlf | FORSYTHE, JON | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 1 |
| 2225 | TedrY1 | HAGEN, ADAM | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 1 |
| 2225 | TezS2G | BIGGS, KELLY | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 1 |
| 2229 | TewHJT | HAYASHI, PATRICK | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 1 |
| 2229 | Tti2qt | MARTINEZ, GUADALUPE | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 1 |
| 2232 | TtE2B | MCCARTER, DAVE | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 1 |
| 2233 | TeWisu | LANE, GARY | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 1 |
| 2214 | TewNF7 | DODGE, JUSTIN | LONG LUNCH | DEFER | 1 |
| 2226 | TQQKZ5 | HOPPER, RYAN | LONG LUNCH | DEFER | 1 |
| 2226 | TedjLs | HADLEY, JUSTIN | LONG LUNCH | DEFER | 1 |
| 2226 | TtORYm | COLE, CONRAD | LONG LUNCH | DEFER | 1 |
| 2213 | TtDll | PAGARIGAN, JOHN | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2213 | TzJbTk | KEY, ROBERT | LONG LUNCH | EXCUSED - JOB RELATED | 2 |
| 2214 | TeMyoK | CRAMER, JOSHUA | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2214 | TewNF7 | DODGE, JUSTIN | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2216 | TeXUtA | SANFILIPPO, VICTORIA | LONG LUNCH | EXCUSED - JOB RELATED | 3 |
| 2216 | TewOlf | FORSYTHE, JON | LONG LUNCH | EXCUSED - JOB RELATED | 2 |
| 2217 | TetOMC | UPTON, CONAN | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2225 | TezS2G | BIGGS, KELLY | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2225 | TtVDlv | TENNYSON, NICHOLE | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2226 | TtORYm | COLE, CONRAD | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2227 | TeUWis | MORALES, CARLOS | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2228 | TLsIGB | MARTINEZ, HERMAN | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2228 | TePyod | FEROE, DARWIN | LONG LUNCH | EXCUSED - JOB RELATED | 2 |
| 2228 | TersnS | NASH, TRAVIS | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2228 | Tetbfl | THARP, MICHELLE | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2228 | Tex3Xd | PERSONS, KIMBERLY | LONG LUNCH | EXCUSED - JOB RELATED | 2 |
| 2228 | TzfTSw | SHARTNER, DIANA | LONG LUNCH | EXCUSED - JOB RELATED | 4 |
| 2232 | TLGkaA | CLEVINGER, DUSTIN | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2232 | TtE2B | MCCARTER, DAVE | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2233 | TeWisu | LANE, GARY | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2233 | TeWw3R | HIEB, ROBERT | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2235 | TetbDg | EASTLUND, PATRICK | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2236 | Ted5Nr | KLEIN, SCOTT | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2236 | Tez9sO | MIGIS, MICHAEL | LONG LUNCH | EXCUSED - JOB RELATED | 3 |
| 2238 | TeqQLV | KREICK, KENNETH | LONG LUNCH | EXCUSED - JOB RELATED | 1 |
| 2203 | TeWWEc | LEACH, JOE | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2214 | Ted8nn | JAIMES, JODI | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2216 | TeXUtA | SANFILIPPO, VICTORIA | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2217 | TetOMC | UPTON, CONAN | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2219 | TexSll | WEEDMAN, EMILY | LONG LUNCH | EXCUSED - PERSONAL | 2 |
| 2225 | TePfEb | PARGA JR, JUAN | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2225 | Tex8wK | HOLDIMAN, KELLY | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2226 | TQQKZ5 | HOPPER, RYAN | LONG LUNCH | EXCUSED - PERSONAL | 2 |
| 2228 | TLsIGB | MARTINEZ, HERMAN | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2228 | TePyod | FEROE, DARWIN | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2228 | Tex3Xd | PERSONS, KIMBERLY | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2233 | TeWisu | LANE, GARY | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2235 | TetbDg | EASTLUND, PATRICK | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2236 | Ted5Nr | KLEIN, SCOTT | LONG LUNCH | EXCUSED - PERSONAL | 6 |
| 2236 | Tez9sO | MIGIS, MICHAEL | LONG LUNCH | EXCUSED - PERSONAL | 2 |
| 2238 | TeqQLV | KREICK, KENNETH | LONG LUNCH | EXCUSED - SICK/ACCIDENT | 1 |
| 2233 | TeWisu | LANE, GARY | LONG LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |
| 2203 | TeWWEc | LEACH, JOE | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2213 | TtDll | PAGARIGAN, JOHN | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2214 | TYvyVr | THOMAS, ANDREW | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2214 | Ted8nn | JAIMES, JODI | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2214 | TetBB1 | COSTA, MEGAN | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2214 | TewNF7 | DODGE, JUSTIN | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2216 | TZbsVP | HEREDIA, JONATHAN | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2216 | TeMTZ4 | KEITHLEY, MARION | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2216 | TeLlldR | WHITING, JOSHUA | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2219 | Tetnoz | JACKMAN, RYAN | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 5 |
| 2219 | Tetxu8 | DUNRKOOP, CARISSA | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 4 |

EXHIBIT L
Page 3 of 6

AZ/MIGIS 0001224

| | | | | |
|---|---|---|---|---|
| 2226 | TedlLs | HADLEY, JUSTIN | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2226 | TzY4En | TRAVER, RAYMOND | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2227 | THCCPy | WALKER, ANDREW | SHORT LUNCH | EXCUSED - JOB RELATED | 2 |
| 2228 | TePyod | FEROE, DARWIN | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2228 | TevMTn | ROSS, FRANK | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2229 | TI8Zqt | MARTINEZ, GUADALUPE | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2233 | TeWfed | LANE, GARY | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2233 | TeWx9R | HIEB, ROBERT | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2235 | TetbOg | EASTLUND, PATRICK | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2235 | Tew7B1 | GILLESPIE, HEATHER | SHORT LUNCH | EXCUSED - JOB RELATED | 2 |
| 2236 | TeqQLV | KREICK, KENNETH | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2216 | TeMTZ4 | KEITHLEY, MARION | SHORT LUNCH | EXCUSED - PERSONAL | 1 |
| 2216 | Texry1 | THIERRY, SHELBY | SHORT LUNCH | EXCUSED - PERSONAL | 1 |
| 2231 | TXRWb1 | MUNOZ, CARLOS | SHORT LUNCH | EXCUSED - SUSPENSION | 1 |
| 2214 | Ted9nn | JAIMES, JODI | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 2 |
| 2214 | TedZ61 | RICHMOND, JEFFREY | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |
| 2214 | TewNF7 | DODGE, JUSTIN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |
| 2216 | TeXUtA | SANFILIPPO, VICTORIA | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |
| 2228 | TQQKZ5 | HOPPER, RYAN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |
| 2229 | TYFFu1 | GONZALEZ, CARLOS | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 2 |
| 2229 | TYNtHD | NARAYAN, RAJ | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |
| 2229 | TYmHgM | BAZANTE, PEDRO | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |
| 2228 | TevHJT | HAYASHI, PATRICK | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |
| 2232 | TLGkqA | CLEVINGER, DUSTIN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |
| 2203 | TXsCpS | DE LA VEGA, JAVIER | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 4 |
| 2203 | TeKI0H | SARDINETA, DICK | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2203 | TeWWEc | LEACH, JOE | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2213 | TIX5Ex | STRINGER, CALEB | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2213 | TzJbTk | KEY, ROBERT | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2214 | TeMyoK | CRAMER, JOSHUA | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2214 | Ted9nn | JAIMES, JODI | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2214 | TewNF7 | DODGE, JUSTIN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2216 | TZbeVP | HEREDIA, JONATHAN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2216 | TeMTZ4 | KEITHLEY, MARION | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2216 | TeUidR | WHITING, JOSHUA | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 3 |
| 2216 | TewOif | FORSYTHE, JON | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 3 |
| 2216 | Texry1 | THIERRY, SHELBY | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2217 | TYtqGI | BENAVIDES, HERIBERTO | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2217 | Tx1ckI | MONACO, NICHOLAS | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2219 | TMe3Zp | BAIRD, JOSHUA | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 6 |
| 2219 | Tstnoz | JACKMAN, RYAN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 12 |
| 2219 | Tebxi8 | DUHRKOOP, CARISSA | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 11 |
| 2219 | TexdSll | WEEDMAN, EMILY | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2219 | TngagL | BRAUN, JAMES | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2219 | TePkup | GUERRERO, ALFREDO | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2222 | TiOIll | PAGARIGAN, JOHN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2222 | TIX5EX | STRINGER, CALEB | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2222 | TizXVV | AGUILAR, JOE | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 3 |
| 2222 | Ttaptz | STEENBURGH, GLEN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 5 |
| 2222 | TzI6lD | ROBERTS, SANDRA | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 6 |
| 2223 | TeUv91 | HICKEY, KAPTAAN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2223 | TevH0d | HARTMAN, NEAL | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2225 | TeFIEb | PARGA JR, JUAN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2225 | Teqy0l | COLVARD, CHERYL | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2225 | TiR2SS | SEMRAD, DANIEL | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2228 | TQQKZ5 | HOPPER, RYAN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 5 |
| 2228 | TiORYm | COLE, CONRAD | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2227 | THCCPy | WALKER, ANDREW | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 4 |
| 2227 | TMA2Vq | TTEET, JAMES | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 3 |
| 2227 | TMxt1Z | ENG, EDWARD | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2227 | TeDzHr | TITARENKO, ALEKSANDR | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 3 |
| 2227 | TeUWfa | MORALES, CARLOS | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 6 |
| 2227 | TeaPoi | TOMPKINS, JASON | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2227 | TecoHd | TOTTEN, RYAN | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 6 |
| 2227 | Tzt0X0E | VALENZUELA, PALMIRA | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 4 |
| 2228 | TevMTn | ROSS, FRANK | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2229 | TMrEOB | EVANS, JASON | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2229 | TYFFu1 | GONZALEZ, CARLOS | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 4 |
| 2229 | TYNtHD | NARAYAN, RAJ | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 11 |
| 2229 | TYmHgM | BAZANTE, PEDRO | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 6 |

EXHIBIT L
Page 4 of 6
AZ/MIGIS 0001229

| STORE | AT_ACTION_DESC | AT_REASON_DESC | num_occurances |
|---|---|---|---|
| 2203 | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2203 | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2203 | NO LUNCH | EXCUSED - SICK/ACCIDENT | 1 |
| 2203 | NO LUNCH | EXCUSED - JOB RELATED | 3 |
| 2203 | NO LUNCH | EXCUSED - PERSONAL | 1 |
| 2203 | NO LUNCH | UNEXCUSED - DID NOT FOLLOW SCH | 6 |
| 2203 | NO LUNCH | DEFER | 1 |
| 2203 | NO LUNCH | UNEXCUSED SICK/ACCIDENT | 2 |
| 2203 | NO LUNCH | MANAGEMENT CHANGE DUE TO SALES | 13 |
| 2203 | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 6 |
| 2213 | LONG LUNCH | EXCUSED - JOB RELATED | 3 |
| 2213 | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2213 | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 1 |
| 2213 | NO LUNCH | EXCUSED - SICK/ACCIDENT | 1 |
| 2213 | NO LUNCH | MANAGEMENT CHANGE DUE TO SALES | 1 |
| 2213 | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2213 | SHORT LUNCH | UNEXCUSED - DID NOT FOLLOW SCH | 1 |
| 2213 | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 2 |
| 2214 | LONG LUNCH | EXCUSED - JOB RELATED | 2 |
| 2214 | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2214 | LONG LUNCH | UNEXCUSED - DID NOT FOLLOW SCH | 1 |
| 2214 | LONG LUNCH | DEFER | 1 |
| 2214 | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 6 |
| 2214 | NO LUNCH | EXCUSED - SICK/ACCIDENT | 3 |
| 2214 | NO LUNCH | EXCUSED - JOB RELATED | 2 |
| 2214 | NO LUNCH | EXCUSED - PERSONAL | 1 |
| 2214 | NO LUNCH | MANAGEMENT CHANGE DUE TO SALES | 8 |
| 2214 | NO LUNCH | COVERED FOR ABSENT AUTOZONER | 3 |
| 2214 | NO LUNCH | AUTOZONER TRADED SHIFT | 2 |
| 2214 | SHORT LUNCH | EXCUSED - JOB RELATED | 1 |
| 2214 | SHORT LUNCH | UNEXCUSED - DID NOT FOLLOW SCH | 2 |
| 2214 | SHORT LUNCH | DEFER | 1 |
| 2214 | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 5 |
| 2214 | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 4 |
| 2216 | LONG LUNCH | EXCUSED - JOB RELATED | 5 |
| 2216 | LONG LUNCH | EXCUSED - PERSONAL | 1 |
| 2216 | LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 4 |
| 2216 | LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 3 |
| 2216 | LONG LUNCH | AUTOZONER TRADED SHIFT | 1 |
| 2216 | NO LUNCH | EXCUSED - JOB RELATED | 20 |
| 2216 | NO LUNCH | UNEXCUSED - DID NOT FOLLOW SCH | 2 |
| 2216 | NO LUNCH | UNEXCUSED - PERSONAL | 1 |
| 2216 | NO LUNCH | MANAGEMENT CHANGE DUE TO SALES | 17 |
| 2216 | NO LUNCH | MANAGEMENT CHANGE DUE TO COVER | 3 |
| 2216 | NO LUNCH | COVERED FOR ABSENT AUTOZONER | 5 |
| 2216 | NO LUNCH | AUTOZONER TRADED SHIFT | 5 |
| 2216 | SHORT LUNCH | EXCUSED - JOB RELATED | 14 |
| 2216 | SHORT LUNCH | EXCUSED - PERSONAL | 2 |
| 2216 | SHORT LUNCH | DEFER | 1 |
| 2216 | SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 11 |
| 2216 | SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 |

EXHIBIT L

Page 5 of 6

AZ/MIGIS 0001231

| AT_ACTION_DESC | AT_REASON_DESC | num_occurances | Percentage by Total of Action Desc |
|---|---|---|---|
| LONG LUNCH | AUTOZONER TRADED SHIFT | 2 | 0.81% |
| LONG LUNCH | COVERED FOR ABSENT AUTOZONER | 10 | 4.07% |
| LONG LUNCH | DEFER | 4 | 1.63% |
| LONG LUNCH | EXCUSED - JOB RELATED | 39 | 15.85% |
| LONG LUNCH | EXCUSED - PERSONAL | 23 | 9.35% |
| LONG LUNCH | EXCUSED - SICK/ACCIDENT | 1 | 0.41% |
| LONG LUNCH | MANAGEMENT CHANGE DUE TO COVER | 1 | 0.41% |
| LONG LUNCH | MANAGEMENT CHANGE DUE TO SALES | 151 | 61.38% |
| LONG LUNCH | UNEXCUSED - DID NOT FOLLOW SCH | 12 | 4.88% |
| LONG LUNCH | UNEXCUSED - FAILURE TO REPORT | 2 | 0.81% |
| LONG LUNCH | UNEXCUSED - PERSONAL | 1 | 0.41% |
| NO LUNCH | AUTOZONER TRADED SHIFT | 16 | 4.78% |
| NO LUNCH | COVERED FOR ABSENT AUTOZONER | 12 | 3.58% |
| NO LUNCH | DEFER | 5 | 1.49% |
| NO LUNCH | EXCUSED - JOB RELATED | 66 | 19.70% |
| NO LUNCH | EXCUSED - PERSONAL | 10 | 2.99% |
| NO LUNCH | EXCUSED - SICK/ACCIDENT | 18 | 5.37% |
| NO LUNCH | EXCUSED - SUSPENSION | 1 | 0.30% |
| NO LUNCH | MANAGEMENT CHANGE DUE TO COVER | 7 | 2.09% |
| NO LUNCH | MANAGEMENT CHANGE DUE TO SALES | 176 | 52.54% |
| NO LUNCH | UNEXCUSED - DID NOT FOLLOW SCH | 19 | 5.67% |
| NO LUNCH | UNEXCUSED - PERSONAL | 2 | 0.60% |
| NO LUNCH | UNEXCUSED SICK/ACCIDENT | 3 | 0.90% |
| SHORT LUNCH | AUTOZONER TRADED SHIFT | 7 | 2.10% |
| SHORT LUNCH | COVERED FOR ABSENT AUTOZONER | 11 | 3.29% |
| SHORT LUNCH | DEFER | 4 | 1.20% |
| SHORT LUNCH | EXCUSED - JOB RELATED | 69 | 20.66% |
| SHORT LUNCH | EXCUSED - PERSONAL | 2 | 0.60% |
| SHORT LUNCH | EXCUSED - SUSPENSION | 1 | 0.30% |
| SHORT LUNCH | MANAGEMENT CHANGE DUE TO COVER | 12 | 3.59% |
| SHORT LUNCH | MANAGEMENT CHANGE DUE TO SALES | 214 | 64.07% |
| SHORT LUNCH | UNEXCUSED - DID NOT FOLLOW SCH | 14 | 4.19% |

EXHIBIT ___L___

Page 6 of 6

AZ/MIGIS 0001235

## LITTLER MENDELSON®
### A PROFESSIONAL CORPORATION

ALABAMA
ARIZONA
ARKANSAS
CALIFORNIA

June 25, 2008

Leigh Ann Tift
Direct: 206.381.4905
Direct Fax: 206.447.6965
ltift@littler.com

COLORADO
CONNECTICUT

### VIA EMAIL AND REGULAR MAIL

DISTRICT OF COLUMBIA

Chey Powelson
Bailey Pinney & Associates LLC
1498 SE Tech Center Place, Suite 290
Vancouver, WA 98683

FLORIDA
GEORGIA
ILLINOIS
INDIANA

Re:     *Migis v. AutoZone, Inc.*
        Multnomah County Circuit Court Case No. 0711-13531

MASSACHUSETTS

Dear Mr. Powelson:

I received your notice of deposition for Mike Italiano. Unfortunately, we are unable to produce Mr. Italiano, as he is no longer employed by AutoZone. In any event, I'm not available either July 1 or July 2. If you plan to reschedule and subpoena Mr. Italiano, who I understand is working for NAPA, please give me more than one week's notice, as I do need to plan the trip to Portland.

MICHIGAN
MINNESOTA
NEVADA
NEW JERSEY
NEW YORK
NORTH CAROLINA
OHIO
OREGON
PENNSYLVANIA

i was also copied on the emails about the lunch variance reports. The documents you mention, Bates labeled 1220-1235, are a subset of the information we sent in excel format. I think even a cursory look at the spreadsheet that corresponds to Bates 1253-1288 would show you that it is just a more comprehensive compilation of short/long lunch period data for Oregon employees. If you can explain one thing that is missing from the 1253-1288 spreadsheet, i.e., one substantive bit of information that you might find on 1220-1235, other than differently labeled columns or summaries of information (listing each occasion an employee took a long lunch rather than the total number of times), I could understand your demand for supplementation. It's obvious to me, though, that you have an electronic copy of the most comprehensive spreadsheet, that there is no missing information, and that the demand for more excel spreadsheets is nothing more than pointless insistence on having the same information in a variety of formats. I think that discovery should be directed to a more meaningful result.

RHODE ISLAND
SOUTH CAROLINA
TEXAS
VIRGINIA

The same is true of the weekly summary hours reports. You have every employee's time records for the entire time period you requested. I do not understand why you are bringing a motion to compel a document summarizing information that has already been provided to you—at considerable time and expense and in electronic format, I might add. If I'm missing something, let me know and we can discuss this request.

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM®

600 University Street, Suite 3200, Seattle, Washington 98101-3122 Tel: 206.623.3300 Fax: 206.447.6965 www.littler.com

EXHIBIT M
Page 1 of 2

Chey Powelson
June 25, 2008
Page 2


Sincerely,


Leigh Ann Tift


cc:     Tanya Holmes
        Amy Alpern


Firmwide:85674888.1 013306.2124

EXHIBIT __M__
Page 2 of 2

RECEIVED

JUL 0 6 2008

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| **MICHAEL MIGIS**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**AUTOZONE, INC.**, a Foreign Corporation,<br><br>Defendant. | No. 0711-13531<br><br>**SUPPLEMENTAL MEMORANDUM RE EFFECT OF** *GAFUR* **AND** *JOARNT* |

The Court of Appeals recently declined to decide the "meal period" question posed under ORS 19.225. *Joarnt v. AutoZone*, A131776, Order Partially Vacating Order to Show Cause, Denying Application for Interlocutory Appeal, and Order of Dismissal (Appeal dismissed June 25, 2008)  The Court vacated its order and dismissed the appeal "on the ground that the case no longer presents questions of law as to which there is substantial grounds for difference of opinion."  The Court believed that *Gafur v. Legacy Good Samaritan Hospital*, 344 Or 525 (2008), "resolved the questions of law certified by the trial court." Order, p. 2.  Unfortunately, the Court did not explain how it thought *Gafur* resolved the meal period issue.  Needless to say, the parties have opposite points of view.

Plaintiff understands *Gafur* to hold that an employee may sue his or her employer for unpaid wages and, in the case of missed rest breaks, there are no unpaid wages due if the employer paid for the entire work period.  Defendant misses this point and tells the Court that Plaintiff concedes that "he has no private right of action for his rest period claim * * *." Defendant's Reply, p. 1.  This is untrue.  Plaintiff makes no such concession, and *Gafur* does

Page 1 -    Supplemental Memorandum re Effect of *Gafur* and *Joarnt*

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1  not hold that Plaintiff does not have a "private right of action." On the contrary, *Gafur* does

2  not question whether an employee can bring a private lawsuit for unpaid wages. *Gafur*

3  addresses whether wages are due when an employer pays for "work time," but the employee

4  does not get a rest break during that time. Under *Gafur*, an employee who misses a break but

5  is paid for the entire work period is not "missing" any wages. But the same is not true for

6  meal periods. *Gafur* permits an employee to sue for missing wages, including those due to

7  truncated meal breaks.[1]

8           Neither does *Gafur* stand for the proposition that the Court must ignore all rules issued

9  by the Bureau of Labor and Industries (BOLI) in determining whether an employee is owed

10  wages. On the contrary, *Gafur* recognizes the authority of the Bureau to promulgate rules,

11  including those that require payment of wages. What Defendant wants *Gafur* to say is that the

12  employer need only pay for minutes that are actually worked – that is, physical labor.

13  Unfortunately for Defendant, *Gafur* rules to the contrary.

14           *Gafur* recognizes that "the fact that an employer may not deduct wages from the

15  employee's pay for the rest break also supports the idea that employees are working during

16  rest periods, even if they are **not performing duties at that time**." (Emphasis supplied.)  344

17  Or at 534.  The Court explains that other BOLI regulations establish that employees are not

18  required to be working "(in the colloquial sense) the entire time that they are considered to be

19  'working' for purposes of wage and hour laws." *Id.*  The Court then contrasts rules that

20  explicitly require payment of wages with the rest period requirement that does "not suggest an

21  intention that [BOLI] requires employers to pay additional wages if the rule[s] are violated."

22  344 Or at 536, note 8 (OAR 839-020-0030 specifically provides that overtime wages must be

23  _____

24      [1]Defendant wants to rely on the meal period claim alleged in *Gafur*. The claims are
    different. In *Gafur*, the Court of Appeals found that the pleading did not allege any unpaid

25  wages. Here, Defendant does not pay employees for meal periods during which the employee
    performed work, and Plaintiff alleged that Defendant failed to pay wages due because Defendant

26  deducted time for meal periods of less than 30 minutes and those wages remain due and
    outstanding.

Page 2 -    Supplemental Memorandum re Effect of *Gafur* and *Joarnt*

1  paid).

2       Former OAR 839-020-0050 (2) (b)  requires the employer to pay the employee wages

3  for the entire meal period if the employee does not receive one half hour of interrupted time:

4  "A period in which to eat food * * * while continuing to perform duties or remain on call,

5  **which is not deducted from the employee's hours worked.**"[2]  This rule is an explicit

6  requirement to pay just wages as the overtime rule specifically requires payment of wages.

7  The meal period rule is like the overtime rule in this regard.

8       Finally, the *Gafur* court did not give credence to BOLI's support of the Court of

9  Appeals' decision regarding rest period violations because it held that BOLI had not

10  previously interpreted the rest period provision to require additional wages and had not

11  previously enforced it that way.  But BOLI has a long history of interpreting the meal period

12  provision to require employers to pay wages to employees who do not receive a full 30-

13  minute meal period uninterrupted by work.  See cases and authorities cited in Plaintiff's

14  Response to Defendant's Motion for Partial Summary Judgment on the Pleadings, p. 3.

15

16             DATED  July 8, 2008.

17

18

19             A. E. BUD BAILEY, OSB 871577

20             Of Attorneys for Plaintiffs

21

22

23      [2]Former OAR 839-020-0050 (2) (a) defines a meal period to require 30 minutes of
uninterrupted time.  Subsection B discusses a meal period that requires the employee to work

24  during some portion of it or to remain on call.  In that case the meal period must be paid.
Recently, the Bureau revised this rule, and the new language makes it even more clear that the

25  Bureau insists that employers pay for the entire 30 minute period if any portion of it is worked.
OAR 839-020-00050 (6) (g) states "the employee is paid for any and all meal periods in which

26  the employee is not completely relieved of all duty."

Page 3 -   Supplemental Memorandum re Effect of *Gafur* and *Joarnt*

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing **Supplemental Memorandum Re Effect of *Gafur* and *Joarnt*** upon:

Amy Alpern
Littler Mendelson
1750 SW Harbor Way, Suite 450
Portland, OR 97201

by the following indicated method or methods:

[X]    by causing a full, true, and correct copy thereof to be **hand-delivered** to the person listed above on the date set forth below.

DATED:    July 8, 2008

CHEY POWELSON, OSB 035512
Of Attorneys for Plaintiffs



IN THE COURT OF APPEALS OF THE STATE OF OREGON

RICHARD JOARNT and BERT YAMAOKO, individually and on behalf of all
others similarly situated,
Plaintiffs-Appellants,

v.

AUTOZONE, INC., a foreign corporation,
Defendant-Respondent.



Multnomah County Circuit Court
050302795

A131776

## ORDER PARTIALLY VACATING ORDER TO SHOW CAUSE, DENYING APPLICATION FOR INTERLOCUTORY APPEAL, AND ORDER OF DISMISSAL

Before Wollheim, P. J., and Schuman and Rosenblum, JJ.

This matter is before us on remand from the Supreme Court. *Joarnt v. Autozone, Inc.*, 343 Or 187, 166 P3d 525 (2007).

Appellants have applied pursuant to ORS 19.225 for leave to proceed with an interlocutory appeal of the trial court's order granting partial summary judgment in an action that appellants may seek to have certified as a class action. The trial judge has certified certain questions for review on appeal.

By order dated April 9, 2008, the court directed the appeal to proceed, but also directed appellants to show cause why the trial court's decision should not be summarily reversed and remanded for further proceedings in light of this court's decision in *Garfur v. Legacy Good Samaritan Hospital*, 213 Or App 343, 161 P3d 319 (2007), *rev allowed*, 343 Or 467 (2007).

Thereafter, the Supreme Court decided *Garfur v. Legacy Good Samaritan Hospital*, 344 Or 525, ___ P3d ___ (2008), and resolved the questions of law certified by the trial court.

Therefore, the court vacates the part of the April 9, 2008, order granting the application and directing the appeal to proceed. Further, the court denies the application for

ORDER - Page 1 of 2

leave to proceed and dismisses the appeal on the ground that the case no longer presents questions of law as to which there is substantial ground for difference of opinion, as required by ORS 19.225.

Appeal dismissed.

JUN 2 5 2008
_____
Date

_____
Robert Wollheim, Presiding Judge

c:    James C. Webber
      Jacqueline L. Koch
      Douglas S. Parker
      David A. Schuck
      James Dana Pinney

---

## DESIGNATION OF PREVAILING PARTY AND AWARD OF COSTS

Prevailing party:  Respondent

[X]  No costs allowed            [ ]    Costs allowed, payable by:

---

REPLIES SHOULD BE DIRECTED TO THE STATE COURT ADMINISTRATOR, RECORDS
SECTION, SUPREME COURT BUILDING, 1163 STATE STREET, SALEM, OR  97301-2563

061008ca.wpd,p2,odsc

ORDER - Page 2 of 2

RECEIVED
JUL   2008

# IN THE CIRCUIT COURT OF THE STATE OF OREGON
## FOR THE COUNTY OF MULTNOMAH

MICHAEL MIGIS, individually, and on
behalf of all other persons similarly situated,

                    Plaintiff,

          v.

AUTOZONE, INC.,

                    Defendant.

Case No. **0711-13531**

**PLAINTIFF'S MOTION FOR
COORDINATION WITH *JOARNT
v. AUTOZONE, INC.* (Mult. Co.
Case No. 0503-02795)

## I.  MOTION

**PLAINTIFF** through his attorneys herein, move this Court under ORCP 32 for an order requesting coordination of this cause of action with *Joarnt, et al. v. AutoZone, Inc.*, Multnomah Co. Case No. 0503-02795.  In the alternative, Plaintiffs request consolidation with the *Joarnt* case, pursuant to ORCP 53A.

Plaintiff's counsel has conferred with Defendant's counsel regarding this issue, and Defendant's counsel responded, "I have explained why the procedural postures of those cases <u>may</u> make that possible.  That remains to be seen."  See attached letter (underline original).

## II. BACKGROUND

On November 16 2007, Michael Migis filed this case as a putative class action against AutoZone, alleging various wage and hour violations in the State of Oregon.

On March 17, 2005, Plaintiffs Richard Joarnt and Bert Yamaoka  filed *Joarnt v. AutoZone, Inc.*, alleging a class action and various wage and hour violations by AutoZone in the

Page 1 -    **PLAINTIFF'S MOTION FOR COORDINATION**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1   State of Oregon.  In early 2006, the Honorable Henry Kantor ordered *Joarnt* stayed at the trial

2   court level, pending resolution of certain issues on appeal pursuant to ORS 19.225.  On June 25,

3   2008 the Court of Appeals issued an order dismissing the *Joarnt* case from appeal.  See attached

4   Order.

### III.  ARGUMENT & AUTHORITIES

6   Even prior to a court order expressly certifying a class action, the provisions of ORCP 32

7   "indicate that the entire proceeding *is* a class action[.]"  *Joarnt v. AutoZone, Inc.*, 343 Or 187, 192

8   (2007) (italics original).  Oregon Revised Statute 1.004 states:

> Notwithstanding any other provision of law or the Oregon Rules of
> Civil Procedure, the Supreme Court shall provide by rule the practice
> and procedure for coordination of class actions under ORCP 32 in
> convenient courts, including provision for giving notice and presenting
> evidence.

Oregon Rule of Civil Procedure 32 provides, in part:

> When class actions sharing a common question of fact or law are
> pending in different courts, the presiding judge of any such court, upon
> motion of any party or on the court's own initiative, may request the
> Supreme Court to assign a Circuit Court, Court of Appeals, or Supreme
> Court judge to determine whether coordination of the actions is
> appropriate, and a judge shall be so assigned to make that
> determination.

19  ORCP 32L(1)(a).  See also ORCP 32L(1)(b) - (3).  Cf. ORCP 53A.

20  There are common questions of law or fact between these two cases, and the parties in

21  both actions are represented by the same attorneys.  The cases should therefore be coordinated

22  to assist in avoiding unnecessary costs and delay by the parties, their attorneys, and the courts.

23

24  ///

25  ///

26  ///

Page 2 -    **PLAINTIFF'S MOTION FOR COORDINATION**

1

## III. CONCLUSION

2

3       For all the reasons set forth herein, the Court should request or otherwise grant

4   coordination of this cause of action with *Joarnt v. AutoZone, Inc.*, or consolidate this case with

5   *Joarnt*.

6

7

8   DATED this 18ᵗʰ day of JULY 2008.          BAILEY, PINNEY & ASSOCIATES, LLC

9

10                                              _____
                                                A.E. "BUD" BAILEY, OSB 871577
11                                              Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 3 -    **PLAINTIFF'S MOTION FOR COORDINATION**

1

## CERTIFICATE OF SERVICE

2   I hereby certify that I caused to be served the foregoing Plaintiffs' MOTION FOR

3   COORDINATION upon:

4

5            Leigh Ann Tift
             Littler Mendelson
             One Union Square
6            600 University St, Ste 3200
             Seattle WA 98101-3122
7            Fax:  (206) 447-6965
             Attorney for Defendant AutoZone
8

9   by the following indicated method or methods **on the date set forth below**:

10       [X]        by facsimile transmission to the above-listed fax number.

11       [X]        by causing a full, true, and correct copy thereof to be **deposited in the U.S.**
                    **mail service.**

12

13

14                              DATED July 18, 2008

15

16                              BAILEY, PINNEY & ASSOCIATES, LLC

17

18                              A.E. "BUD" BAILEY, OSB 871577
                                Attorney for Plaintiffs

19

20

21

22

23

24

25

26

Page 4 -      **PLAINTIFF'S MOTION FOR COORDINATION**

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

## LITTLER MENDELSON®
A PROFESSIONAL CORPORATION

ALABAMA

ARIZONA

ARKANSAS

CALIFORNIA

COLORADO

CONNECTICUT

DISTRICT OF COLUMBIA

FLORIDA

GEORGIA

ILLINOIS

INDIANA

MASSACHUSETTS

MINNESOTA

MISSOURI

NEVADA

NEW JERSEY

NEW YORK

NORTH CAROLINA

OHIO

OREGON

PENNSYLVANIA

RHODE ISLAND

SOUTH CAROLINA

TEXAS

VIRGINIA

WASHINGTON

July 15, 2008

Leigh Ann Tift
Direct: 206.381.4905
Direct Fax: 206.447.6965
ltift@littler.com

**VIA EMAIL AND REGULAR MAIL**

Mr. A.E. Bud Bailey
Bailey Pinney & Associates LLC
1498 SE Tech Center Place, Suite 290
Vancouver, WA 98683

Re:    *Migis v. AutoZone, Inc.*
       Multnomah County Circuit Court Case No. 0711-13531

Dear Mr. Bailey:

Following our telephone conference yesterday, and as you requested, I reviewed the lunch variance reports that AutoZone was to provide. I believe you have all lunch variance reports for the year 2005, as they were produced in the AutoZone/Joarnt matter. If you are unable to locate them or believe those records are not sufficient, please let me know.

You also asked that I check the status of our production of the payroll tax reports. I'm told that the 2007 reports are on their way. Assuming they arrive tomorrow, I will have them sent out to you tomorrow, and if not, as soon as they arrive. However, AutoZone does not have a copy of the 2006 report because, apparently, the software provided by the State of Oregon does not allow AutoZone to re-open a report that has been filed with the state. I believe that you can request a copy of that report from the State, or AutoZone will request a copy on Plaintiff's behalf.

You also asked if I would stipulate that the lunch variance reports, which you referenced as AZ 1253-1288, were business records. I will stipulate that these records are authentic, as I've previously stated to Mr. Powelson. Beyond that, I do not wish to stipulate to a legal characterization.

You asked, again, what our position is on the weekly summarization of hours reports. I believe this is a subject in one of the many motions to compel you've filed, and I do not think it is appropriate, cost effective, or in my client's interest to continually revisit issues that have been brought to the Court's attention and heard.

I understand you wish to consolidate the Joarnt and Migis matters, and I have explained why the procedural postures of those cases may make that impossible. That remains to be seen.

Chey Powelson
July 15, 2008
Page 2

Finally, I am checking with Mr. Dessem regarding his availability for a deposition in Memphis.

Sincerely,

Leigh Ann Tift

cc:    Tanya Holmes
        Amy Alpern

Firmwide:85919850.1 013306.2124



IN THE COURT OF APPEALS OF THE STATE OF OREGON

RICHARD JOARNT and BERT YAMAOKO, individually and on behalf of all
others similarly situated,
Plaintiffs-Appellants,

v.

AUTOZONE, INC., a foreign corporation,
Defendant-Respondent.



Multnomah County Circuit Court
050302795

A131776

## ORDER PARTIALLY VACATING ORDER TO SHOW CAUSE, DENYING APPLICATION FOR INTERLOCUTORY APPEAL, AND ORDER OF DISMISSAL

Before Wollheim, P. J., and Schuman and Rosenblum, JJ.

This matter is before us on remand from the Supreme Court. *Joarnt v. Autozone, Inc.*, 343 Or 187, 166 P3d 525 (2007).

Appellants have applied pursuant to ORS 19.225 for leave to proceed with an interlocutory appeal of the trial court's order granting partial summary judgment in an action that appellants may seek to have certified as a class action. The trial judge has certified certain questions for review on appeal.

By order dated April 9, 2008, the court directed the appeal to proceed, but also directed appellants to show cause why the trial court's decision should not be summarily reversed and remanded for further proceedings in light of this court's decision in *Garfur v. Legacy Good Samaritan Hospital*, 213 Or App 343, 161 P3d 319 (2007), *rev allowed*, 343 Or 467 (2007).

Thereafter, the Supreme Court decided *Garfur v. Legacy Good Samaritan Hospital*, 344 Or 525, ___ P3d ___ (2008), and resolved the questions of law certified by the trial court.

Therefore, the court vacates the part of the April 9, 2008, order granting the application and directing the appeal to proceed. Further, the court denies the application for

**ORDER – Page 1 of 2**

leave to proceed and dismisses the appeal on the ground that the case no longer presents questions of law as to which there is substantial ground for difference of opinion, as required by ORS 19.225.

     Appeal dismissed.


JUN 2 5 2008
_____
Date

_____
Robert Wollheim, Presiding Judge

c:    James C. Webber
      Jacqueline L. Koch
      Douglas S. Parker
      David A. Schuck
      James Dana Pinney

---

### DESIGNATION OF PREVAILING PARTY AND AWARD OF COSTS

Prevailing party:  Respondent

[X]  No costs allowed          [ ]    Costs allowed, payable by:

---

REPLIES SHOULD BE DIRECTED TO THE STATE COURT ADMINISTRATOR, RECORDS SECTION, SUPREME COURT BUILDING, 1163 STATE STREET, SALEM, OR 97301-2563

061008ca.wpd,p2,odsc

**ORDER - Page 2 of 2**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOZONE INC., a Nevada Corporation,,<br><br>Defendant. | No. 0711-13531<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR COORDINATION WITH JOARNT V. AUTOZONE (CASE NO. 0503-02795)** |

## I.    INTRODUCTION

Plaintiff asks that this Court coordinate this cause of action with *Joarnt et al. v. AutoZone*, Case No. 0503-02795, or in the alternative consolidate the cases.  Defendant, AutoZone, Inc., maintains that this Motion is premature, for the reasons set forth below.  Further, not even four months ago, Plaintiff's counsel vigorously opposed this very relief, and AutoZone asks that the Court address the tactics that Plaintiff has employed in this case to increase costs and prolong the litigation.

## II.    LEGAL STANDARD

The Oregon Rules of Civil Procedure provide that a "Coordination of class actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes ...will promote the ends of justice..., the convenience of the parties..., the relative development of the actions...[and] the disadvantages of duplicative and inconsistent rulings...".  As with a class action in the federal courts, the court must "look to the claims Plaintiffs seek to litigate in the factual context

---

PAGE 1 – DEFENDANT'S RESP. TO MTN FOR COORDINATION

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1  of the case and determine whether the Plaintiffs' claims lend themselves to common proof." *In re*

2  *NCAA I-A Walk-On Football Players Litigation*, 2006 WL 1207915, at *9 (W.D. Wash. 2006).

3        Likewise, the rules permit consolidation when "more than one action involving a common

4  question of law or fact is pending before the court [so as to] avoid unnecessary costs or delay."

5  ORCP 53A. In *Atkeson v. Cupp*, 68 Or. App. 196 (1984), the Court of Appeals analyzed the

6  propriety of consolidating 63 habeas corpus petitions into three petitions. The Court of Appeals

7  upheld consolidation because "[t]he 63 petitions were identical, the same attorney was appointed to

8  represent all the prisoners and the issues and necessary discovery would be the same or nearly the

9  same in each case." *Id.* at 198. The Court of Appeals further noted the absence of any prejudice to

10  the prisoners for the consolidation and, in fact, commented that "we are unable to conceive of any

11  possible prejudice, at least at this point in the proceedings." *Id.*

12  **III.   RELEVANT FACTS**

13        The current posture of these cases does not lend itself to coordination or to consolidation.

14  That is so because, in *Joarnt*, Judge Kantor dismissed the Plaintiffs' rest and meal break claims as a

15  matter of law. *See*, Exhibit 1. In *Migis*, the same questions were presented to Judge LaBarre, but he

16  has yet to rule on AutoZone's motion. *See*, Excerpt of July 11, 2008 transcript, attached as Exhibit

17  2; Motion for Judgment as a Matter of Law, attached as Exhibit 3.

18  **IV.   ARGUMENT**

19        Should Judge LaBarre enter a decision different from that of Judge Kantor, it would be

20  virtually impossible to try these cases as one. As just one example, it would be impossible to

21  cogently instruct the jury that some AutoZone employees encompassed in the *Joarnt* class (assuming

22  it is certified) do not have any right to recover for meal breaks, but some employees included in the

23  *Migis* class,[1] subject to the same work practices and employed by the very same employer, might.

24

25

---

26  [1] Again, assuming that a class is certified.

PAGE 2 – DEFENDANT'S RESP. TO MTN FOR COORDINATION

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1    To complicate this question further, even Plaintiff's counsel concedes that there is "overlap"

2    between the members of the putative class in *Joarnt* and the putative class in *Migis*.

3         Also, these two lawsuits are in different stages of litigation.  At the time Judge Kantor

4    entered his order dismissing Plaintiffs' meal and rest breaks, AutoZone had a motion to deny class

5    certification pending.  *See*, Excerpt of Motion and Praecipe, attached as Exhibit 4.  One of the most

6    significant issues included in that motion was Mr. Yamaoka's (a named Plaintiff) unsuitability as a

7    class representative.  Plaintiff has yet to file a motion in *Migis* seeking class certification, and the

8    risk of inconsistent results—at least at this point in the litigation—cannot be overlooked.

9    **V.    CONCLUSION**

10        AutoZone asks that this Court deny Plaintiff's motion.  There are motions pending before

11   both Judge LaBarre and Judge Kantor that make consolidation inappropriate at this time.

16   Dated:  July 23, 2008

18   Leigh Ann Collings Tift OSB No.05473
19   LITTLER MENDELSON
     A Professional Corporation

20   Attorneys for Defendant
21   Autozone Inc.

PAGE 3 – DEFENDANT'S RESP. TO MTN FOR COORDINATION

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on July 23, 2008, I served a full, true, and correct copy of the foregoing:

3

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR COORDINATION**

4

**WITH JOARNT V. AUTOZONE (CASE NO. 0503-02795)**

5

☐      By delivery via messenger, or otherwise by hand,

6

☒      By facsimile,

7

☐      By e-mail,

8

☒      By mailing same, postage paid

9

addressed to:

10

11

Bailey Pinney & Associates LLC
Attorneys at Law
1498 SE Tech Center Place
Suite 290
Vancouver, WA  98683
Fax (360) 567-3331

12

13

14

Of Attorneys for Plaintiff

15

16

17

By _____

18

Savanna L. Stevens

19

20

Firmwide:85969697.1 013306.2124

21

22

23

24

25

26

---

PAGE 4 – DEFENDANT'S RESP. TO MTN FOR COORDINATION

1

2

3

4 IN THE CIRCUIT COURT OF THE STATE OF OREGON

5 FOR THE COUNTY OF MULTNOMAH

6 MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,,

No. 0711-13531

**DEFENDANT'S REVISED RESPONSE TO PLAINTIFF'S MOTION FOR COORDINATION WITH JOARNT V. AUTOZONE (CASE NO. 0503-02795)**

7

Plaintiff,

8

9 vs.

10 AUTOZONE INC., a Nevada Corporation,,

11 Defendant.

12

### I.    INTRODUCTION

13

14 Plaintiff asks that this Court coordinate this cause of action with *Joarnt et al. v. AutoZone*, Case No. 0503-02795, or in the alternative consolidate the cases. Defendant, AutoZone, Inc., maintains that this Motion is premature, for the reasons set forth below. Further, not even four months ago, Plaintiff's counsel vigorously opposed this very relief, and AutoZone asks that the Court address the tactics that Plaintiff has employed in this case to increase costs and prolong the litigation.

15

16

17

18

19

### II.    LEGAL STANDARD

20

21 The Oregon Rules of Civil Procedure provide that a "Coordination of class actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes ...will promote the ends of justice..., the convenience of the parties..., the relative development of the actions...[and] the disadvantages of duplicative and inconsistent rulings...". As with a class action in the federal courts, the court must "look to the claims Plaintiffs seek to litigate in the factual context

22

23

24

25

26

PAGE 1 – DEFENDANT'S REVISED RESP. TO MTN FOR COORDINATION

1   of the case and determine whether the Plaintiffs' claims lend themselves to common proof."  *In re*

2   *NCAA I-A Walk-On Football Players Litigation*, 2006 WL 1207915, at *9 (W.D. Wash. 2006).

3           Likewise, the rules permit consolidation when "more than one action involving a common

4   question of law or fact is pending before the court [so as to] avoid unnecessary costs or delay."

5   ORCP 53A.  In *Atkeson v. Cupp*, 68 Or. App. 196 (1984), the Court of Appeals analyzed the

6   propriety of consolidating 63 habeas corpus petitions into three petitions.  The Court of Appeals

7   upheld consolidation because "[t]he 63 petitions were identical, the same attorney was appointed to

8   represent all the prisoners and the issues and necessary discovery would be the same or nearly the

9   same in each case."  *Id.* at 198.  The Court of Appeals further noted the absence of any prejudice to

10  the prisoners for the consolidation and, in fact, commented that "we are unable to conceive of any

11  possible prejudice, at least at this point in the proceedings."  *Id.*

12  **III.    RELEVANT FACTS**

13          The current posture of these cases does not lend itself to coordination or to consolidation.

14  That is so because, in *Joarnt*, Judge Kantor dismissed the Plaintiffs' rest and meal break claims as a

15  matter of law.  *See*, Exhibit 1.  In *Migis*, the same questions were presented to Judge LaBarre, but he

16  has yet to rule on AutoZone's motion.  *See*, Excerpt of July 11, 2008 transcript, attached as Exhibit

17  2; Motion for Judgment as a Matter of Law, attached as Exhibit 3.

18  **IV.    ARGUMENT**

19          Should Judge LaBarre enter a decision different from that of Judge Kantor, it would be

20  virtually impossible to try these cases as one.  As just one example, it would be impossible to

21  cogently instruct the jury that some AutoZone employees encompassed in the *Joarnt* class (assuming

22  it is certified) do not have any right to recover for meal breaks, but some employees included in the

23  *Migis* class,[1] subject to the same work practices and employed by the very same employer, might.

24

25

26  [1] Again, assuming that a class is certified.

PAGE 2 – DEFENDANT'S <u>REVISED</u> RESP. TO MTN
FOR COORDINATION

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1   To complicate this question further, even Plaintiff's counsel concedes that there is "overlap"

2   between the members of the putative class in *Joarnt* and the putative class in *Migis*.

3       Also, these two lawsuits are in different stages of litigation.  At the time Judge Kantor

4   entered his order dismissing Plaintiffs' meal and rest breaks, AutoZone had a motion to deny class

5   certification pending.  *See*, Excerpt of Motion and Praecipe, attached as Exhibit 4.  One of the most

6   significant issues included in that motion was Mr. Yamaoka's (a named Plaintiff) unsuitability as a

7   class representative.  Plaintiff has yet to file a motion in *Migis* seeking class certification, and the

8   risk of inconsistent results—at least at this point in the litigation—cannot be overlooked.

9   **V.    CONCLUSION**

10      AutoZone asks that this Court deny Plaintiff's motion.  There are motions pending before

11  both Judge LaBarre and Judge Kantor that make consolidation inappropriate at this time.

12

13

14

15

16  Dated:  July 24, 2008

17

18  Leigh Ann Collings Tift OSB No.05473
    LITTLER MENDELSON
19  A Professional Corporation

20  Attorneys for Defendant
    Autozone Inc.
21

22

23

24

25

26

PAGE 3 – DEFENDANT'S <u>REVISED</u> RESP. TO MTN
FOR COORDINATION

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on July 24, 2008, I served a full, true, and correct copy of the foregoing:

3

**DEFENDANT'S REVISED RESPONSE TO PLAINTIFF'S MOTION FOR**
4
**COORDINATION WITH JOARNT V. AUTOZONE (CASE NO. 0503-02795)**

5

☐    By delivery via messenger, or otherwise by hand,

6

☒    By facsimile,

7

☐    By e-mail,

8

☒    By mailing same, postage paid

9

addressed to:

10

Bailey Pinney & Associates LLC
11
Attorneys at Law
1498 SE Tech Center Place
12
Suite 290
Vancouver, WA  98683
13
Fax (360) 567-3331

14

Of Attorneys for Plaintiff

15

16

17

By _____
18
Savanna L. Stevens

19

20

Firmwide:85969697.1 013306.2124

21

22

23

24

25

26

---

PAGE 4 – DEFENDANT'S REVISED RESP. TO MTN
FOR COORDINATION

**EXHIBIT 1**



FILED

06 FEB 13 AM 9:52

CIRCUIT COURT
FOR MULTNOMAH COUNTY

ENTERED

FEB 15 2006

IN REGISTER BY EG

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | | |
|---|---|---|
| RICHARD JOANT and BERT YAMAOKO, individually and on behalf of all others similarly situated, | ) ) ) | No. 0503-02795 |
| | ) | |
| Plaintiffs, | ) ) | **PROPOSED ORDER ON PLAINTIFFS' MOTIONS TO** |
| vs. | ) ) | **AMEND, STRIKE, AND COMPEL, AND DEFENDANT'S MOTION FOR** |
| AUTOZONE, INC., a foreign corporation, | ) ) | **JUDGMENT ON THE PLEADINGS** |
| | ) | |
| Defendant. | ) ) | |

**This matter** having come before the Court upon Plaintiffs' Motion for Leave to File an Amended Complaint (Wage Claim) (ORCP 23A), Plaintiffs' Motions to Strike a portion of Defendant's Motion for Judgment on the Pleadings and Motion to Strike the Declaration of Laura Liebman-Alperson, Plaintiffs' Motion to Compel Discovery (ORCP 46), and Defendant's Motion for Judgment on the Pleadings. Oral argument regarding these motions was conducted on December 15, 2005. Plaintiffs were represented by A. E. Bailey, J. Dana Pinney, Chey K. Powelson, and Shauna M. Sjostrom. Defendant was represented by Laura Liebman-Alperson and Leigh Ann Collings Tift. The Court, being fully advised of the premise thereof, **HEREBY ORDERS THAT:**

　　　　1.　　Plaintiffs' Motion for Leave to File an Amended Complaint to add a claim for failure to pay minimum wage to certain employees whose wage rate was at or near minimum wage is **GRANTED, without any prejudice to any motion to dismiss that may be brought.**

\* \* \* \*

Page 1 -　　**ORDER ON PLAINTIFFS' MOTIONS AND DEFENDANT'S MOTION**

1         2.     Plaintiffs' Motion to Strike evidence included in Defendant's Motion

2    for Judgment on the Pleadings, to wit, footnote 5, page 7 of Defendant's Motion, is

3    **GRANTED**.

4         3.     Plaintiffs' Motion to Strike the Declaration of Laura Liebman-

5    Alperson in Support of the Motion for Judgment on the Pleadings and in Opposition to

6    Plaintiffs' First Motion to Strike is **DENIED**.

7         4.     Plaintiffs' Motion to Compel Discovery (ORCP 46) is **GRANTED** in

8    part, and **DENIED** in part:

9         4.a.     Plaintiffs' Motion to Compel AutoZone to produce electronic time

10   records for Oregon employees, dating back one year from the filing of the Complaint

11   (RFP No. 11, Plaintiffs' Third Requests for Production), in the same form as is depicted on

12   Exhibit N to Plaintiffs' Motion to Compel is **GRANTED**, provided, however, the Court may,

13   at a later point and for good cause, shift the costs of producing these records to Plaintiffs.

14   The Court does not impose a specific date by which these records must be provided to

15   Plaintiffs, but does order that the records be produced quickly and without delay.  The Court

16   further enters a Protective Order in regard to the time records, limiting disclosure of

17   employee time records, including any personal information, strictly for the purpose of the

18   prosecution or defense of this proceeding, and requiring that the parties not publish such

19   information to people not connected with this lawsuit without prior permission of the Court

20   and, if filing any such information, must do so under seal unless otherwise ordered by the

21   Court;

22        4.b.     Plaintiffs' Motion to Compel AutoZone to produce "Daily

23   Merchandise and/or Parts Delivery and Pick-up Schedules," (RFP No. 9, Plaintiffs' Third

24   Requests for Production), is **DENIED**;

25   * * * *

26

Page 2 -     **ORDER ON PLAINTIFFS' MOTIONS AND DEFENDANT'S MOTION**

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1         4.c.    Plaintiffs' Motion to Compel AutoZone to produce additional

2 documents "Evidencing Defendant's Efforts to Ascertain the Requirements of ORS 652.140

3 Prior to the Filing of the Complaint," (RFP No. 1, Plaintiffs' Third Requests for Production),

4 is **DENIED**; and

5         4.d.    Plaintiffs' Motion to Compel AutoZone to Produce "Termination

6 Reports," (RFP No. 24, Plaintiffs' First Requests for Production), is **DENIED**, without

7 prejudice to refile should Plaintiffs' motion for class certification be granted and Plaintiffs

8 establish a demonstrable need.

9         5.    Defendant's Motion for Judgment on the Pleadings is **GRANTED** in

10 its entirety.

11         DATED this _10th_ day of ___February___ 2006.

12

13

14                        The Honorable Henry Kantor

15

16 Presented by:

17

18 Laura Liebman-Alperson, OSB No. 02367

19 Of Attorneys for Defendant

20

21

22

23

24

25

26

Page 3 -    **ORDER ON PLAINTIFFS' MOTIONS AND DEFENDANT'S MOTION**

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that I served the foregoing **PROPOSED ORDER ON**

3

**PLAINTIFFS' MOTIONS TO AMEND, STRIKE, AND COMPEL, AND**

4

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** on:

5

6

7

8

> A. E. Bailey
> David A. Schuck
> Shauna Marie Sjostrom
> Bailey Pinney & Associates LLC
> 1498 SE Tech Center Place, Suite 290
> Vancouver, WA 98683
> Attorneys for Plaintiffs

9

☒ by mailing a copy thereof in a sealed, first-class postage prepaid envelope,

10

addressed to each attorney's last-known address and depositing in the U.S. mail at Portland,

11

Oregon on the date set forth below;

12

☐ by causing a copy thereof to be hand-delivered to said attorneys at each

13

attorney's last-known office address on the date set forth below;

14

☐ by sending a copy thereof via overnight courier in a sealed, prepaid

15

envelope, addressed to each attorney's last-known address on the date set forth below; or

16

☒ by faxing a copy thereof to each attorney at his last-known facsimile

17

number on the date set forth below.

18

DATED: February 10, 2006.

19

20

By: _____

21

Scott G. Seidman, OSB No. 83320
Laura Liebman-Alperson, OSB No. 02367
Attorneys for Defendant

22

23

032895\00001\667320 V004

24

25

26

CERTIFICATE OF SERVICE

**EXHIBIT 2**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

```
MICHAEL MIGIS, individually,    )
and on behalf of all others     )
similarly situated,             )
          Plaintiff,            )
          vs.                   )Case No. 0711-13531
AUTOZONE INC., A Nevada         )
corporation,,                   )
          Defendants.           )
```

BE IT REMEMBERED THAT on the 11th day of

July, 2008, the above-entitled matter came on for

hearing before the HONORABLE JEROME LaBARRE, Circuit

Court Judge.

DEBORAH L. COOK, RPR, CSR
COOK COURT REPORTING, INC.
1102 N. Springbrook Road
Suite 136
Newberg, Oregon 97132
(503) 537-0339
deb@cookcourtreporting.com

ede6518a-4c27-43aa-ad0e-5f45307306f9

1    the other matters directly.  And all future hearings in

2    the case, I want each of those counsel to be here in

3    Court and make the presentations.

4            I am hoping that by reducing the number of

5    individuals who are communicating back and forth,

6    matters can be moved forward on a more expeditious

7    manner that reduces expense and reduces delay, and

8    serves the interest of justice.  We had a discussion,

9    and I explained that to counsel in chambers.

10           I am not going to fix a trial date today.

11   Judge Maurer has assigned this case to me for all

12   purposes, and I will not repeat all the discussions we

13   had concerning timing and various matters.  A trial date

14   will be announced shortly.  And Ms. Tift and Mr. Bailey

15   can rely on the general statements I made in terms of

16   how the case ought to be moving forward, and I think

17   we're looking at a trial date in the springtime, in all

18   likelihood.  We will have to pin that down.

19           For today, because -- I thought it was a

20   very productive use of time in chambers, but our time is

21   rapidly vanishing assigned to this case.  It's now

22   2:23 -- no, 2:37.  I can't read the clock right.  And we

23   have, at 2:45, we have another civil matter, and at 3:00

24   we have a preliminary injunction matter.

25           So in terms of what I am deciding and what

ede6518a-4c27-43aa-ad0e-5f45307306f9

1    I am not deciding today, I am not deciding the motion

2    for partial summary judgment, except plaintiff has

3    conceded the -- what is it?

4              MS. COLLINGS-TIFT:  Rest breaks.

5              THE COURT:  Rest breaks.  And the meal

6    breaks remains a disputed issue, but I am not deciding

7    that now.  So we will have to schedule that in the

8    future.  I am not deciding on the attorney's fees award,

9    and the motion for sanctions, per day sanctions, fine.

10   As I understand it, the parties are -- it's already been

11   submitted in writing.  The parties are waiving oral

12   argument, and the next stage is simply to announce my

13   decision.  But I am not going to announce it today.  So

14   that's my understanding where we are on that matter.

15              Basically we're -- what we need to do is

16   deal with the discovery matters that are before the

17   Court, and as I -- because of the shortage of time, it's

18   my understanding, and because of everything else that

19   has been going on, that neither side is really asking

20   for oral argument, but are asking for rulings on these

21   discovery matters.  Am I correct on that?

22              MS. COLLINGS-TIFT:  We would stipulate to

23   submit them on the record, Your Honor.

24              MR. BAILEY:  That's correct.

25              THE COURT:  So let me first deal with the

ede6518a-4c27-43aa-ad0e-5f45307306f9

**EXHIBIT 3**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| MICHAEL MIGIS, individually, and on behalf of all other persons similarly situated,, | No. 0711-13531 |
| Plaintiff, | **DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT** |
| vs. | |
| AUTOZONE INC., a Nevada Corporation,, | **[ORAL ARGUMENT REQUESTED]** |
| Defendant. | |

## I.    REQUEST FOR ORAL ARGUMENT

Pursuant to Uniform Trial Court Rule 5.050, Defendant AutoZone, Inc. requests oral argument on this motion. The time for oral argument is estimated to be 20 minutes. Court reporting services are requested.

## II.    UTCR 5.010 CERTIFICATE OF COMPLIANCE

AutoZone hereby certifies that its counsel conferred with Bud Bailey, counsel for Plaintiff, on May 20, 2008 regarding the issues set forth in this motion. Counsel for the parties were unable to resolve this dispute.

## III.    MOTION

Pursuant to Oregon Rule of Civil Procedure 21B, Defendant AutoZone, Inc. ("AutoZone"), brings this motion for judgment on the pleadings and moves the court for the following relief with respect to Plaintiff Michael Migis' ("Migis") Class Action Allegation Complaint ("Complaint"): an order granting partial judgment on the pleadings and dismissing Plaintiff's First and Second Claims

---

PAGE 1 – DEFENDANT'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA 98101
Phone: 206-623-3300 Fax:206-447-6965

1   for Relief asserting meal and rest period violations because no private right of action for meal and

2   rest period violations exists.  In support of this motion, AutoZone relies on the following Points and

3   Authorities, the Declaration of Amy R. Alpern ("Alpern Dec."), and the pleadings and records on file

4   herein.

5                          IV.    RELEVANT FACTS

6        Migis purports to represent a broad class of "all current and former employees" who worked

7   for AutoZone in Oregon for a period of six years prior to the date that the Complaint was filed on

8   November 16, 2007. Migis has alleged violations of Oregon wage and hour laws, including

9   violations of regulations regarding meal and rest periods.  Migis's allegations are fundamentally

10  flawed, rendering partial judgment on the pleadings proper.  Specifically, because Oregon law

11  provides no private right of action for these claims, they should be dismissed.

12                       V.    ARGUMENT AND AUTHORITY

13        ORCP 21B authorizes the court to enter judgment on the pleadings:  "'when the pleadings,

14  taken together, affirmatively show that the plaintiff has not stated a claim for relief' motion for

15  judgment on the pleadings should be granted." *Slogowski v. Lyness*, 324 Or 436, 439, 927 P2d 587

16  (1996) (quotation omitted).  For purposes of an ORCP 21B motion, a court must accept the

17  allegations of the pleading as true. *Beason v. Harcleroad*, 105 Or App 376, 379-80, 805 P2d 700

18  (1991).  Judgment on the pleadings should be entered when, given the well-pleaded facts, the

19  defendant is entitled to judgment as a matter of law. *Smith, et al. v. Washington County, et al.*, 180

20  Or App 505, 523-24, 43 P3d 1171 (2002).  Here, there is simply no legal basis for Migis's meal and

21  rest period claims.

22  **A.    Migis's Rest Period Claim Should Be Dismissed**

23        In his Complaint, Migis claims that AutoZone is liable to him and the putative class members

24  for unpaid wages because it allegedly failed to provide them with statutorily required rest periods in

25  violation of OAR 839-020-0050.  However, on May 15, 2008, the Oregon Supreme Court held that

26

PAGE 2 – DEFENDANT'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA 98101
Phone: 206-623-3300 Fax:206-447-6965

1    employees do not have a private right of against their employers to recover unpaid wages for missed

2    rest periods. *Gafur v. Legacy Good Samaritan Hospital and Medical Center*, — P.3d --- (May 15,

3    2008) (See Attachment A). The claim for missed rest periods in *Gafur* was based on the same

4    statute and regulations on which Migis relies for the missed rest period claims brought on behalf of

5    himself and the putative class members. Because the Oregon Supreme Court's decision in *Gafur*

6    expressly forecloses such a claim, Migis's claim for missed rest periods must be dismissed.

7    **B.   Migis's Meal Period Claim Should Be Dismissed**

8           Migis also claims that AutoZone failed to provide him with statutorily required meal periods

9    and therefore seeks unpaid wages from AutoZone on this basis. Migis is incorrect. As noted above,

10    the Oregon Supreme Court foreclosed any claim by employees against their employers for missed

11    rest periods. However, the Court did not consider whether the plaintiffs in *Gafur* could sue their

12    employer for unpaid wages for missed meal periods. A brief history of the litigation in *Gafur* is

13    necessary because it explains why Migis is not entitled to sue AutoZone for missed meal periods

14    despite the fact that the Oregon Supreme Court expressly declined to consider the issue.

15           The plaintiffs in *Gafur* brought a class action complaint against their employer seeking

16    compensation for required meal and rest periods they alleged were not provided to them. The

17    employer filed a motion to dismiss and claimed that the plaintiffs did not have a private right of

18    action available to them for the meal and rest period claims. The trial court agreed and dismissed the

19    meal and rest period claims. The plaintiffs appealed to Oregon's Court of Appeals, *which agreed*

20    *with the trial court as to the plaintiffs' meal period allegations and affirmed the trial court's*

21    *dismissal of those claims*. However, the Court of Appeals agreed with the plaintiffs on their rest

22    period claims and reversed the trial court's order dismissing that claim.

23           As noted above, the Oregon Supreme Court ultimately agreed with the trial court on the

24    plaintiffs' rest period claims, reversed the Court of Appeals' decision, and affirmed the trial court's

25

26

PAGE 3 – DEFENDANT'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS

1    dismissal of the rest period claims.  In its opinion, the Supreme Court stated that it was expressly

2    declining to determine whether employees can sue their employers for missed meal periods:

3    > Plaintiffs have not challenged the part of the Court of Appeals decision
         affirming the trial court's ruling respecting the alleged meal period
4    > violations, and that matter also is not before this court.

5

6    *Gafur* at n.3.  Because the Supreme Court expressly declined to consider the meal period claims, and

7    only reversed the Court of Appeals' decision regarding the rest period claims, then it follows that the

8    Court of Appeals' decision that employees do not have a private right of action for missed meal

9    periods remains good authority.

10    The Court of Appeals holding in *Gafur* that employees cannot sue their employers for missed

11    meal periods has not been vacated, reversed or overturned, and there is no Oregon Supreme Court

12    authority to the contrary.  As of today, that decision has not been vacated, reversed, or overturned.

13    Accordingly, it is binding on this Court.  Thus, dismissal of Migis's meal period claims is warranted.

**VI.    CONCLUSIONS**

14

15    For the foregoing reasons, AutoZone respectfully requests that this Court dismiss Migis's rest

16    and meal period claims in their entirety.

17

18    Dated:  May 22, 2008.

19

20    Leigh Ann Collings Tift OSB No. 054732
      Amy R. Alpern OSB No. 840244
21    LITTLER MENDELSON
      A Professional Corporation
22
      Attorneys for Defendant
23    Autozone Inc.

24

25

26

PAGE 4 – DEFENDANT'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on May 22, 2008, I served a full, true, and correct copy of the foregoing:

3

**DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND**

4

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT**

5

☐    By delivery via messenger, or otherwise by hand,

6

☒    By facsimile,

7

☐    By e-mail,

8

☒    By mailing same, postage paid

9

addressed to:

10

11

Bailey Pinney & Associates LLC
Attorneys at Law
1498 SE Tech Center Place
Suite 290
Vancouver, WA  98683
Fax (360) 567-3331

12

13

14

Of Attorneys for Plaintiff

15

16

17

By _____

18

Joanna R. Stewart
Secretary for Amy R. Alpern

19

20

21

22

23

24

25

26

PAGE 5 – DEFENDANT'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS

Littler Mendelson, PC
600 University Street, Suite 3200
Seattle, WA  98101
Phone: 206-623-3300 Fax:206-447-6965

**EXHIBIT 4**

## IN THE CIRCUIT COURT OF THE STATE OF OREGON
## FOR MULTNOMAH COUNTY

RICHARD JOANT and BERT YAMAOKO,
individually, and on behalf of all others similarly
situated,

                           Plaintiffs,

vs.

AUTOZONE, INC., a Foreign corporation,

                           Defendant.

No. 0503 02795

**PETITION FOR EXPEDITED
HEARING (Ex Parte)**

Comes now AutoZone, Inc., by the attorney named below, and petitions for an expedited hearing on the motion indicated below.  The underlying motion is presented herewith for filing with the clerk.

1.    Nature of the underlying motion for which an expedited hearing is requested:

☐ Motion to Compel      ☐ Motion to Quash      ☒ Other Motion as Follows:

2.    Nature of the emergency which requires the setting of the motion to be expedited:  Defendant's Motion Opposing Class Certification cannot be assigned a hearing date in the ordinary course during the week of November 28, 2005, because that date would fall after the call for trial date of November 4, 2005.

3.    Trial Date: November 7, 2005; Date Certain? ☐Yes ☒ No

4.    The Civil Calendering Department of the Court has been contacted and indicates no hearing time is available prior to our trial date of November 7, 2005.

5.    Judges who have heard previous motions in this matter are:  The Honorable Frank L. Bearden.

6.    Judges scheduled to hear pending motions in this matter are: N/A.

I certify to the court that I have complied with SLR 5.025 (3) regarding notice of this ex parte appearance to opposing parties.

DATED:  October 24, 2005    Signature of Attorney:    *Laura Liebman-Alperson*

                                          Print name and OSB No.:    Laura Liebman-Alperson, OSB NO. 02367

032895\00001\643366 V001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

RICHARD JOARNT and BERT
YAMAOKO, individually, and on behalf of
all others similarly situated,

Plaintiffs,

vs.

AUTOZONE, INC., a Foreign corporation,

Defendant.

Case No. 04C17199

**DEFENDANT'S MOTION IN
OPPOSITION TO CLASS
CERTIFICATION AND
STATEMENT OF POINTS AND
AUTHORITIES IN SUPPORT**

*ORAL ARGUMENT REQUESTED*

**DEFENDANT'S MOTION IN OPPOSITION TO CLASS CERTIFICATION AND STATEMENT OF POINTS
AND AUTHORITIES IN SUPPORT**

1    same event, practice, or course of conduct that applied to other putative class members, and,

2    therefore, they do not meet the requirement of typicality. *See Retired Chicago Police Assoc.*

3    *v. City of Chicago*, 141 FRD 477, 488 (ND Ill 1992), *aff'd in part, rev. in part on other*

4    *grounds by* 7 F3d 584 (7th Cir. 1993). Indeed, "an appropriate evaluation of [typicality]

5    requires an assessment of [the Plaintiffs'] individual complaints." *Bradford v. Sears,*

6    *Roebuck & Co.,* 673 F2d 792, 796 (5th Cir 1982). Here, such an evaluation compels the

7    conclusion that the claims being asserted by Joarnt and Yamaoka are not typical of other

8    employees at AutoZone.

9            **D.    Named Plaintiffs Are Not Adequate Class Representatives.**

10          Oregon law establishes that the test of adequacy depends upon a showing that

11   (1) there are no disabling conflicts of interest between the class representatives and the class;

12   and (2) the class is represented by counsel competent to handle such matters. *Alsea Veneer,*

13   *Inc. v. State*, 117 Or App 42, 53, 843 P2d 492 (1992), *aff'd in part, rev. in part on other*

14   *grounds by,* 318 Or 33 (1933), *citing Penk v. Oregon State Board of Higher Education*, 93

15   FRD 45, 50 (D Or 1981). It is beyond dispute that a putative representative cannot

16   adequately protect the class if the representative's interests are in conflict with those of other

17   class members. *Smith v. Babcock*, 19 F3d 257, 265 (6th Cir 1994); *Brown v. Ticor Title Ins.*

18   *Co.*, 982 F2d 386, 390 (9th Cir 1992) (there must be a sharing of interests between

19   representatives and absentees and an absence of antagonism).

20          There are a myriad of such conflicts present here, rendering the named

21   Plaintiffs inadequate representatives:

22          •    In regard to Plaintiff Yamaoka: on the one hand, Yamaoka and Joarnt

23   wish to press claims for unpaid wages, unpaid overtime, and damages resulting from

24   AutoZone's alleged failure to allow rest and meal breaks on behalf of all AutoZone's Oregon

25   current and formers employees who were employed for the past six years. Yet, on the other

26

Page 18 -    **DEFENDANT'S MOTION IN OPPOSITION TO CLASS CERTIFICATION AND STATEMENT OF**
                **POINTS AND AUTHORITIES IN SUPPORT**

1    hand, Plaintiff Yamaoka testified that <u>he</u> altered subordinate employee's pay records (thus

2    causing them to suffer unpaid wages), <u>he</u> refused to allow Joarnt to take his meal breaks, and

3    <u>he</u> directed employees to drive and perform other work off the clock. (*See* Yamaoka Depo.,

4    53:14-54:14; 70:21-71:15; 85:16-25; 97:11-98:7.)  How, then, could Yamaoka purport to

5    represent employees whose records he altered and whom he required to perform work off the

6    clock?

7                •    As between Joarnt and Yamaoka:  Plaintiff Joarnt claims to have

8    negotiated terms of employment with his interviewer, but Plaintiff Yamaoka did <u>not</u>

9    negotiate terms and did not believe he had a contract of employment.  The positions of the

10   named plaintiffs, therefore, are diametrically opposed, and Joarnt's testimony regarding a

11   "contract of employment" will be directly contradicted by Yamaoka's.

12               •    As between the named Plaintiffs and members of the putative class

13   who are current employees:  Plaintiffs propose to pursue multiple, cumulative penalties for

14   AutoZone's alleged failure to timely pay final wages.  For example, Plaintiffs' counsel has

15   outlined a theory whereby multiple penalties might accrue when AutoZone (allegedly) fails

16   to pay employees for time worked, thus incurring a penalty, and then (allegedly) fails to

17   timely pay final wages.  While the Plaintiffs' theory is unsound,[17] it is a theory that

18   necessarily inures to the benefit of terminated employees, but not current employees—

19   because "civil penalties provided in ORS 652.150" (*see* ORS 653.055(1)(b)) are, in specific

20   terms, limited to "penalty wages for failure to pay wages on termination of employment."

21   *See* ORS 652.150.  Stated another way, former employees may seek penalty wages for failure

22   _____

23   [17] Plaintiffs' counsel have explained to AutoZone's counsel their theory that they are entitled
     to "stack" statutory penalties, i.e., when an employee is not properly paid for all hours and
     wages owed in a pay period, ORS 653.055 provides for penalty wages not to exceed 30 days

24   and then again when employees are terminated and continue to be owed wages at
     termination, another penalty arises out of ORS 652.140-.150. (*See* Kisch Dec., ¶ 3)

25   AutoZone strongly disputes the validity of Plaintiff's theory, but for purposes of this motion
     only, AutoZone accepts it as true.

26

Page 19 -   **DEFENDANT'S MOTION IN OPPOSITION TO CLASS CERTIFICATION AND STATEMENT OF**
            **POINTS AND AUTHORITIES IN SUPPORT**

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1   to timely pay final wages (ORS 652.150) or overtime and/or minimum wage (ORS 653.055).

2   Current employees, however, can only seek penalty wages for failure to pay overtime or

3   minimum wage. ORS 653.055. Plaintiffs, both of whom are terminated employees, will

4   necessarily have an interest in maximizing the recovery of this class of employees, and little

5   interest in watching out for the interests of current employees. Likewise, there are no

6   statutory provisions that provide for damages or penalty wages for failure to provide lunch or

7   rest breaks in private rights of action, provided the employees were paid for their time

8   worked – as Joarnt testified he was. Joarnt's testimony will result in a direct conflict with

9   any employee (should such a person exist) who was required to clock out and work through

10   his or her lunch period because that was not Joarnt's experience.

11         ORCP 32 A requires that named plaintiffs adequately and fairly represent the

12   class. In circumstances when there is a conflict of interest between the named Plaintiffs and

13   the purported class, then the named Plaintiffs cannot adequately represent the interests of the

14   class. *See, e.g., Matarazzo v. Friendly Ice Cream Corp.*, 62 FRD 65, 68-69 (EDNY 1974)

15   (plaintiff could not represent current store managers because plaintiff no longer held such

16   position); *Donaldson v. Microsoft Corp.*, 205 FRD 558, 568 (WD Wash 2001) (named

17   plaintiffs had been obligated to implement the very supervisory system challenged by the

18   lawsuit). The present action is rife with similar conflicts of interests such that named

19   Plaintiffs cannot represent any the purported class.

20         Finally, the named Plaintiffs are not suitable class representatives because of

21   the inherent weakness of their claims. "...[I]f the class representative's claims are both weak

22   and typical – if the case as a whole is as weak as the representative's individual claim - then

23   the case should be dismissed, with or without class certification." *Robinson v. Sheriff of*

24   *Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999) (citation omitted). As demonstrated

25   above, named Plaintiffs have made admissions that defeat a number of their claims. The fact

26

Page 20 -  **DEFENDANT'S MOTION IN OPPOSITION TO CLASS CERTIFICATION AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT**

1    is that these individuals are incapable of pursuing their own claims adequately, let alone

2    those of an entire class.

3    **E.    Plaintiffs Have Not Shown That Common Issues Predominate And That
        A Class Action is Superior to Other Means of Proceeding**

4

5            Plaintiffs allege that this lawsuit satisfies the criteria of ORCP 32 B(3).  (*See*

6    Complaint, ¶ 47).   However, ORCP 32 B(3) sets a very stringent standard, and simply

7    meeting the threshold commonality requirement of commonality is not enough.  *Poulos v.*

8    *Caesars World Inc.*, 379 F3d 654, 664 (9th Cir 2004).  First, not only must common issues of

9    law or fact exist, common issues must <u>predominate</u>.  Notably, this element of class

10   certification is actually stricter under Oregon law than under FRCP 23.  "[T]he scope of the

11   class action in Oregon was intended to be circumscribed to a greater extent than is the case

12   under some federal courts' interpretation of Rule 23."  *First Nat'l Bank,* 275 Or at 152.[18]

13           As explained in *First Nat'l Bank*, the Oregon legislature adopted more

14   restrictive amendments to the text of Fed. R. Civ. P. 23 to ameliorate perceived abuses under

15   the federal class action rules – which were seen as too liberal and capable of producing "an

16   unmanageable burden which [might] overwhelm judicial machinery and impose unfair and

17   even coercive pressures upon the parties." *Id.* at 152-53.  Therefore, in accordance with

18   Oregon Rules of Civil Procedure, the Oregon Supreme Court proscribes certification of a

19   class action "when there appears to be a legitimate issue or defense which will require an

20   individual inquiry of a considerable number of the claimants" because to hold otherwise

21   "would attribute to the legislature an intention either to overload the courts with an

22   * * * *

23   * * * *

24

25   _____
     [18] *First Nat'l Bank* cites to ORS 13.220(2)(c), which was repealed in 1979 and replaced by
     ORCP 32, which is substantively the same.

26

Page 21 -   **DEFENDANT'S MOTION IN OPPOSITION TO CLASS CERTIFICATION AND STATEMENT OF
            POINTS AND AUTHORITIES IN SUPPORT**



RECEIVED

AUG    2008

L   NER MENDELSON  P.C.

1
2
3
4
5

**IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH**

6
7

**MICHAEL MIGIS,** individually, and on
behalf of all other persons similarly situated,

Plaintiff,

v.

**AUTOZONE, INC.,** a Foreign Corporation,

Defendant.

Case No.  **0711-13531**

**PLAINTIFF'S  ORCP 32 N(2)
STATEMENT OF FINANCIAL
ARRANGEMENTS**

8
9
10
11
12
13
14
15
16        Pursuant to ORCP 32N(2), Plaintiff Michael Migis, through his attorney herein, files

17   the attached class action contingent fee agreement in the above-captioned matter.

18
19
20        DATED this __11th__ day of August 2008.

21
22                                    BAILEY, PINNEY & ASSOCIATES, LLC

23
24                                    _____
                                      A. E. BUD BAILEY, OSB 75308
25                                    Attorney for Plaintiff

26

Page 1 -    **PLAINTIFF'S STATEMENT OF FINANCIAL ARRANGEMENTS ORCP 32N(2)**

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing **Plaintiff's ORCP 32 N(2) Statement of Financial Arrangements** upon:

Ms. Leigh Ann Tift
Littler Mendelson
One Union Square, 600 University St, Ste 3200
Seattle, WA 98101

by the following indicated method or methods:


[X]     by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the person as shown above, the last-known office address of the person, and deposited with the United States Postal Service at Vancouver, Washington on August 11, 2008.




DATED:    August 11, 2008


_____
CHEY POWELSON, OSB 035512
Of Attorneys for Plaintiff

# Bailey, Pinney & Associates, LLC
## *Attorneys at law*

## CLASS ACTION CONTINGENT FEE AGREEMENT
### Michael Migis  vs.   Auto Zone
### CLASS ACTION DISCLOSURES

You have the right to bring your claim either by yourself alone, or for yourself and on behalf of a class of other people who are similarly affected.  There are some important differences between suing only for yourself and suing on behalf of a class.

1.      If you sue for a class, you have responsibilities to the class as a whole.

2.      If you sue for yourself, you can settle your case at any time on any terms.  If you sue on behalf of a class, any settlement must be fair to the entire class and must be approved by the Court.

3.      What you recover could depend on whether or not you are suing for a class.

4.      In an individual action, you control the decision your lawyers make.  In a class action, the lawyers have a fiduciary duty to the class as a whole, so they may make litigation decisions contrary to your directions, subject ultimately to the control of the Court.

The attorneys are willing to undertake this case on behalf of a class.  By signing this Agreement, you acknowledge that you have had an opportunity to discuss this matter if you wish with independent counsel and have decided that you wish attorneys to represent you in pursuing your claim for yourself and on behalf of other people similarly situated.

I, Michael Migis, hereby employ Bailey, Pinney & Associates, LLC (collectively, "attorneys") as my attorneys to represent me in claims against Auto Zone.  I agree to be a class representative in this class action litigation, subject to the following terms.

### I.  CONTINGENT FEE

There will be no attorney fees charged unless this case is successfully prosecuted.  The fee will be one third (1/3) of the gross amount collected by way of settlement, trial or appeal, subject to any upward or downward adjustment the Court might make based on the factors normally applied in assessing reasonable attorney fees against a class recovery.  This contract is not be construed as a limitation on the maximum reasonable fee to be awarded to the attorneys by the Court.

### II.  COSTS

The attorneys will advance the payment of costs reasonably necessary to prepare the case until a recovery is obtained.  "Costs" include filing fees, witness fees, expert witness costs, travel expenses, copying charges, fax charges, deposition costs, investigator costs and time, messenger service costs, mediation expenses, computer research fees, and all out-of-pocket expense incurred on my behalf.  Costs will be apportioned among the class members pro-rata, if recovery is made, to the extent not taxed against Auto Zone.

If no recovery is made, You are liable for costs, but only to the extent of your ability to pay such costs.

### III.  AUTHORIZATION TO ASSOCIATE OTHER ATTORNEYS, FEE SPLITS

Plaintiff authorizes attorneys to associate other attorneys as they deem necessary so long as any other attorney agrees to be bound by this Agreement. The Plaintiff understands that both the Bailey Pinney firm and those attorneys associated on this case may apply to the Court for award of the attorney fees incurred in this case. Any fees awarded will be either applied as payment for the attorney fees incurred or paid into the general recovery fund to reduce in part the contingence fee to be paid. The Plaintiff understands that the Bailey Pinney firm may enter into various fee arrangements including the splitting of fees with the associated attorneys. Such fee arrangements and fee splitting agreement will not increase the total percentage amount to be paid for attorney fees. The Plaintiff by signing this agreement expressly approves of and consents to the Bailey Pinney firm entering into fee arrangements and fee splitting agreements with any attorney associated on this case. The Bailey Pinney firm agrees to make any fee agreement or arrangement with any attorney associated on this case available for review by Plaintiff upon written request provided to the Bailey Pinney firm offices at 1498 SE Tech Center Place, Suite 290, Vancouver, Washington 98683.

### IV.  RIGHT OF ATTORNEY TO WITHDRAW

The attorneys reserve the right to withdraw from the case if the Court does not certify a class.

### V.  SIGNATURE OF THE PARTIES

This contract contains the entire Agreement and is not valid unless signed by both parties. By signing this agreement, you acknowledge you have read this Agreement, and, the terms and conditions of the Agreement have been explained to you by one of the attorneys, and you acknowledge you have received a copy of this fee Agreement.

DATED: 09-44-06

Michael Migis

DATED: 9-22-06

SHAUNA M. SJOSTROM, OSB 04418
Bailey, Pinney & Associates, LLC

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| **MICHAEL MIGIS**, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>        v.<br><br>**AUTOZONE, INC.**,<br><br>              Defendant. | Case No. 0711-13531<br><br>**PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**<br><br>**(Oral Argument Requested)**<br><br>(Hearing Date to Be Set by the Court, Pursuant to the May 2008 Case Management Order) |

**REQUEST FOR ORAL ARGUMENT:** Pursuant to UTCR 5.050, Plaintiff estimates the time needed for oral argument to be 2 hours 30 minutes. Court reporter services are not required.

## I. MOTION

Pursuant to ORCP 32C and on behalf of all others similarly situated, PLAINTIFF MIGIS by his attorneys moves this Court for an order certifying the following classes defined as:

1.  **Final Wages:** Those individuals working as hourly employees for Defendant AutoZone in Oregon between November 16, 2004 and November 16, 2007, and who AutoZone failed to timely provide all wages earned and unpaid at the time of termination, as required by ORS 652.140(1) - (2)(b).

2.  **Off-the-Clock:** Those individuals working as hourly employees for Defendant AutoZone in Oregon between November 16, 2001 and November 16, 2007, and

Page 1 -    PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

Littler Mendelson

AUG 1 5 2008

Received by: _RML 4:25pm_

1    who AutoZone required to perform uncompensated "off-the-clock" work for the

2    benefit of AutoZone.

3    3.    **Meal Periods:**  Those individuals working as hourly employees for Defendant

4    AutoZone in Oregon between November 16, 2001 and November 16, 2007, and

5    who AutoZone failed to provide uninterrupted meal periods of at least 30 minutes

6    required by ORS 653.261 and OAR 839-020-0050(1)(a), and failed to pay

7    employees for meal periods less than 30 minutes.

8    4.    **Minimum Wage / Overtime:** Plaintiff also moves the Court pursuant to ORCP

9    32G to certify a minimum wage and overtime wages class for those individuals

10    who were subjected to either an overtime or minimum wage violation as a result

11    of Defendant's failure to pay all wages because of off-the-clock or meal period

12    time worked.

13    Plaintiff supports this *Motion* with the *Declaration of Chey K. Powelson* ("*Powelson*

14    *Decl.*"), the *Declaration of Michael Migis*, the *Declaration of Karen A. Moore*, the *Declaration*

15    *of George Shubin* ("*Shubin Decl.*"), and the *Declaration of J. Dana Pinney* ("*Pinney Decl.*").

16

17    **II. APPLICABLE SUBSTANTIVE LAW**

18    A.    **Payment of Final Wages**

19    A central purpose of Oregon's wage statutes is that, due to the "disparity of economic

20    power" between the employee and employer, the employee "shall be assured of prompt payment

21    for his labors when the relationship is terminated." *Lamy v. Jack Jarvis & Company, Inc.*, 281

22    Or 307, 313 (1978). Accord, *State ex rel Nilsen v. Oregon State Motor Assoc.*, 248 Or 133, 138

23    (1957) ("The policy of the statute is to aid an employe [sic] in the prompt collection of

24    compensation due him and to discourage an employer from using a position of economic

25    superiority as a lever to dissuade an employe [sic] from promptly collecting his agreed

26

Page 2 -    PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

1    compensation.").

2    "When an employee who * * * quits employment, all wages earned and unpaid at the time

3    of quitting become due and payable <u>immediately</u> if the employee has given to the employer not

4    less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit

5    employment." ORS 652.140(2)(a) (underline added).

6    If the employee does not give notice, then "the wages become due and payable within five

7    days, excluding Saturdays, Sundays and holidays, after the employee has quit, or at the next

8    regularly scheduled payday after the employee has quit, <u>whichever event first occurs</u>." ORS

9    652.140(2)(b) (underline added).

10    Finally, "[i]f employment termination occurs on a Saturday, Sunday or holiday, all wages

11    earned and unpaid shall be paid no later than the end of the first business day after the

12    employment termination[.]" ORS 652.140(3).

13    Oregon's statutes regarding the payment of final wages "place the burden on the employer

14    to pay the wages, not on the employee to ask for them." *Wales v. Walt Stallcup Enters.*, 167 Or

15    App 212, 215 (2000). Accord, *Emery v. Portland Typewriter & Office Machine*, 86 Or App 635,

16    638 (1987) ("[W]e see no reason why plaintiff's failure to pick up her wages on her termination

17    date, as she had said she would, should be a waiver of her right to receive immediate payment.").

18    Moreover, ORS 652.150(1) provides:

19    [I]f an employer **willfully** fails to pay any wages or compensation of

20    any employee whose employment ceases, as provided in ORS 652.140

21    and 652.145, then, as a penalty for the nonpayment, the wages or

22    compensation of the employee shall continue from the due date thereof

23    at the same hourly rate for eight hours per day until paid or until action

24    therefor is commenced.

24    "Action that is careless * * * can be 'willful or 'knowing,'" as can an action that "is fully

25    knowing, intentional, and voluntary." *Wilson v. Smurfit Newsprint Corp.*, 197 Or App 648, 662

26    (2005). "An employer, then, willfully fails to pay wages owed at termination only if it is 'fully

Page 3 -      PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

1    aware of [its] obligation to do so' but nonetheless consciously and voluntarily decides not fulfill

2    that obligation." *Id.* at 660.[1]  Accord, *Wyatt v. Body Imaging, PC*, 163 Or App 526, 531 (1999),

3    *rev. den.*, 330 Or 252 (2000).  See also *Powelson Decl.*, Ex. 30 (September 26, 1986 Letter from

4    Oregon State Dept. of Justice to Commissioner of Oregon State Bureau of Labor & Industries

5    regarding "Applicability of the Penalty Provision of the Wage Claim Statutes to a Careless

6    Employer.").

7

8    **B.    Payment of Wages for "Hours Worked"**

9            The Oregon State Legislature defines "wages" as "compensation due to an employee by

10   reason of employment * * * ." ORS 653.010(10).   "The word 'employment' is not defined in

11   the statutes, but the word 'employ' means 'to suffer or permit to work' (excluding voluntary or

12   donated services). ORS 653.010(2). Under ORS 653.055, then, the extent to which an employee

13   is 'entitled' to wages depends on whether and for how long he or she was suffered or permitted

14   to 'work.'" *Gafur v. Legacy Good Samaritan Hosp. & Med. Ctr.*, 344 Or 525, 530 (2008).

15           An employer must pay an employee for all hours worked.  "'Hours worked' includes

16   'work time' as defined in ORS 653.010(12)."  OAR 839-020-0004(20) (Definitions). "Work

17   time" means "both time worked and time of authorized attendance." ORS 653.010(11) (2003).

18   Time worked and time of authorized attendance also means meal periods of less than 30 minutes.

19

20   **C.    Failure to Pay All Wages Due for Deducted Meal Periods**

21           The Bureau of Labor & Industries defines an "appropriate meal period" as a "period of

22   not less than 30 minutes during which the employee is relieved of all duties for each work period

23   _____

24           [1] "Every employer regulated under ORS 653.010 to 653.261 must maintain and preserve
     payroll or other records containing the following information and data with respect to each
25   employee to whom the law applies: * * * **Date of payment** and the pay period covered by
     payment."  OAR 839-020-0080(1)(l) (emphasis added).
26

Page 4 -        PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

1   of not less than six or more than eight hours," OAR 839-020-0050(1)(a)(A) (underline added),

2   <u>or</u> a "period in which to eat (for each work period of not less than six or more than eight hours)

3   while continuing to perform duties or remain on call, <u>which is not deducted</u> from the employee's

4   hours worked." OAR 839-020-0050(1)(a)(B) (underline added).[2]

5        The employee must be paid meal periods that are interrupted or are less than 30 minutes

6   long.   Interrupted or less than 30 minutes constitutes "work time" for which the employee is

7   entitled to recover wages under ORS 653.055(1).[3]

8                 **III. BACKGROUND**

9   **A.**    **Overview**

10        As the putative class representative, named Plaintiff Michael Migis filed this lawsuit on

11   November 16, 2007 on behalf of himself and all current and former Oregon AutoZone employees

12   having various claims against Defendant, including claims for: unpaid wages, untimely payment

13   of final wages, unpaid overtime wages, unpaid minimum wages, and penalty wages deriving from

14   violations of Oregon law regarding meal periods, and timely payment of wages upon termination

15   from employment.  The relevant claims periods for this case (depending on the claim alleged)

16   range from two (2) to six (6) years back from the date of filing.

17        In July 2008 Plaintiff Migis filed a motion for coordination or consolidation with another

18   putative class action, *Joarnt v. AutoZone, Inc.* (Mult. Co. Case No. 0503-02795).   The

19   Multnomah County Presiding Court has not ruled or otherwise set a hearing to manage this

20   matter.  However, since the same attorneys represent plaintiffs in the *Joarnt* action, the *Joarnt*

21   plaintiffs are willing and able to file a substantially similar motion for class certification, once

22

23   [2] "[A]n agency's interpretation of its statutory authority is entitled to deference by the courts and [courts] cannot substitute [their] policy ideas for those of the agency." *Miller v. OLCC,*

24   42 Or App 555, 561 (1979).  See also, *Springfield Educ. Assoc. v. Springfield Sch. Dist. No.19,* 290 Or 217, 221 (1980).

25   [3]  See also *Powelson Decl.*, Ex. 34 (BOLI poster); and Ex. 35 (BOLI explanation and frequently asked questions about meal periods).

26

Page 5 -    **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

1    Presiding Court rules whether coordination or consolidation is appropriate.

2

3    **B.    Final Payment of Wages (Three Year Claim Period)**

4        AutoZone's own store managers recognize that "[m]ost employees live from paycheck

5    to paycheck * * * ." *Powelson Decl.*, Ex. 1 (Deposition of AutoZone Store Manager Felipe

6    Carerra, p. 93:14-15). Regularly-scheduled paydays for AutoZone employees occurred every two

7    weeks. *Id.*, Ex. 2 (Employee Handbook).

8        AutoZone practice is generally the same when processing a final paycheck for an

9    employee who is fired or someone who quits with two weeks' notice. *Powelson Decl.*, Ex. 3

10   (Deposition of AutoZone Payroll Manager Kevin Bussey, pp. 26:23 - 27:1).  Cf. *id.*, Ex. 4

11   (Deposition of AutoZone Regional Manager James Kulbacki, p. 55:14-19).

12       AutoZone's "computer system in the store will print [for the Store Manager] a process for

13   requesting a final check * * * ." *Powelson Decl.*, Ex. 5 (Deposition of AutoZone HR Manager

14   Nicole McCollum, p. 34:5-13).   To manually process an Oregon hourly employee's final

15   paycheck, AutoZone's corporate Payroll Department in Memphis, Tennessee must receive a

16   phone call from its Oregon field staff.  *Powelson Decl.*, Ex. 6 (October 2005 e-mail from

17   AutoZone Director of Payroll Mark Dessem); and Ex. 4 (Kulbacki Dep., p. 53:3-9).

18       Only after receiving a phone call from the store does AutoZone practice allow corporate

19   headquarters personnel to "write up a check request and that check leaves [Memphis] the same

20   day and is sent out overnight mail, FedEx." *Powelson Decl.*, Ex. 7 (Deposition of AutoZone's

21   Director of Payroll Mark Dessem. p. 65:1-12); and Ex. 8 (Deposition of AutoZone District

22   Manager Ed Wesner, p. 85:12-16). AutoZone's Director of Payroll has conceded that Defendant

23   does not have an automated report that would trigger a hand-cut check without that phone call.

24   *Id.*, Ex. 7 (Dessem Dep., p. 18:11-14).

25   ///

26

Page 6 -        PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1     The process of corporate personnel taking a phone call from a store manager should result
2   in a hand cut, manual check identified as "off cycle." *Powelson Decl.*, Ex. 7 (Dessem Dep., p.
3   68:8-24). AutoZone's ORCP 39C(6) designee confirmed during a May 15, 2008 deposition that
4   in the Excel summary report, "Off Cycle mean[s] that we have a period for pay cycles. 'Yes'
5   means it was paid during the pay cycle; 'no' means it was paid between cycles." *Id.*, Ex. 9 (ORCP
6   39C(6) Dep. of AutoZone, p. 90:14-23). So if there is no phone call, there can be no subsequent
7   check request or "off cycle" check.

8     During the relevant period of time, AutoZone knew Oregon's requirements regarding the
9   payment of final wages to terminating employees. *Powelson Decl.*, Ex. 10 (p. 2 ("Oregon Final
10  Pay")); and Ex. 5 (McCollum Dep., p. 36:14 - 37:1). For example, if an employee gave 48 hours'
11  advance notice on a Monday workday of their intention to quit by the end of the work day on
12  Wednesday, AutoZone knew Oregon law required providing final wages to that employee on that
13  Wednesday, the last day worked. *Id.*, Ex. 11 (Deposition of AutoZone Oregon District Manager
14  Edward Rogers, p. 87:9-16);and  Ex. 8 (Wesner Dep., p. 84:12-22).

15    Despite such knowledge, AutoZone's Regional Manager testified that if an employee gave
16  two weeks' notice of their intention to quit employment on a Friday, normal procedure would be
17  for the store manager to *wait until the employee worked through that last day* before calling
18  corporate headquarters for a final paycheck. *Powelson Decl.*, Ex. 4 (Kulbacki Dep., p. 54:1-12:
19  stating the phone call "would probably be made right at the end of the shift so they know how
20  many hours they worked.").

21    This may be a moot point, however, because AutoZone's Excel summary termination
22  report reveals that for those approximately 158 hourly employees who terminated employment
23  in the year preceding this lawsuit, approximately 128 *did not* receive any type of manual, Off
24  Cycle paycheck for their final wages. *Powelson Decl.*, Ex. 12 (Termination Report, "Off Cycle"
25  column); and Ex. 33 (electronic Variance Report). Rather, it appears AutoZone issued those
26

Page 7 -    **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1  employees' paychecks in the normal course of business, according to their twice-monthly Friday

2  pay cycle. See *id.*, Ex. 13 (2006 - 2007 annual calendars). (The date of the check in the summary

3  report is when the check was generated. *Id.*, Ex. 9 (May 15, 2008 ORCP 39C(6) Dep., p. 91:3-

4  23)).

5        That 128 out of 158 terminating employees were not issued Off Cycle checks means that,

6  regardless of how an employee's employment would end, there was an 80 percent chance[4] a Store

7  Manager would not call corporate headquarters to request a final paycheck.[5] Of 158 employees

8  on the Excel summary termination report, approximately 121 did not receive their final wages

9  within the time-lines set forth in ORS 652.140. See *Declaration of Karen A. Moore*, Ex. 1, ¶ 2

10  (analyzing 157 employees).

11        This is due to AutoZone's apparent failure to provide any training for or reminders to its

12  Oregon store managers regarding the timely payment of final wages. For example, in October

13  2005, AutoZone's Director of Payroll issued a terse, two-sentence e-mail to two regional

14  managers with authority over Oregon, reminding them that field staff should "call in all Oregon

15  terminations on a timely basis to the Payroll Department so that we may issue the appropriate

16  manual check for their final pay." *Powelson Decl.*, Ex. 6.

17        According to AutoZone counsel, this is the only e-mail or memorandum AutoZone issued

18

19

20

21

22

_____

23        [4] (128 / 158)

24        [5] During Plaintiff's May 15, 2008 ORCP 39C(6) deposition of AutoZone, AutoZone's
    designee completely failed to testify as to the meaning of AutoZone's own job termination
25    categories, including the difference, if any, between "Abandoned Job" and "Quit Without
    Notice." See *Powelson Decl.*, Ex. 9 (ORCP 39C(6) Dep., pp. 92:7 - 98:2; pp. 100:10 - 102:3).
26

Page 8 -        **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1  to its Oregon field staff between October 2005 and November 2007.[6]

2    Plaintiff Migis alleges he did not receive his final paycheck within the time Oregon law

3  requires.  Plaintiff informed AutoZone by no later than February 8, 2006 he was quitting

4  employment, effective immediately. AutoZone did not, however, *issue* a final paycheck until

5  February 15, which was seven calendar days (and therefore five business days) after Mr. Migis

6  quit.  *Powelson Decl.*, Ex. 13 (2006 calendar); and Ex. 14.  See also *Declaration of Michael*

7  *Migis*, Ex. B.  Since according to AutoZone the date of a paycheck only indicates when it was

8  generated, and it takes at least one business day to send a check from Memphis to Oregon, then

9  AutoZone could not have provided Mr. Migis his final paycheck any sooner than February 16,

10  which is one business day after it was due.

11    But AutoZone did not tender Plaintiff Migis' final wages to him even on February 16.

12  Rather, Plaintiff Migis received his final paycheck on February 27, 2006. *Declaration of Michael*

13  *Migis*, ¶ 5; *Powelson Decl.*, Ex. 15 (Deposition of Michael Migis, pp. 102:22 - 103:4; pp. 108:22

14  - 109:3; p. 117:1-13; p. 118:16-25).  This is consistent with the practice AutoZone's Regional

15  Manager described: AutoZone does not necessarily take affirmative steps to send an employee

16  their final paycheck, but rather "in many cases [when an employee terminates employment], the

17  employee knows it's coming and would be there to get it."  *Powelson Decl.*, Ex. 4 (Kulbacki

18  Dep., p. 56:4-15) (also confirming that generally the employee comes back to the store to pick

19  up the check).

20  ///

21  ///

22

23      [6] Defendant's counsel has represented that AutoZone has produced all documents, including all e-mails, relating to: (1) Defendant's efforts to ascertain and/or comply with the requirements of ORS 652.140 in the two (2) year time period prior to the filing of the Complaint

24  in this matter, through the date of filing, for those Oregon hourly employees who left AutoZone employment during that period; and (2) containing, referencing, or otherwise relating to

25  Defendant's policies, procedures, and/or practices for the termination, voluntary or involuntary, of Oregon AutoZone hourly employees.  *Powelson Decl.*, ¶ 7.

26

Page 9 -    **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

**C.    Off-the-Clock Work (Opening & Closing the Store / Delivery of Parts to Different Stores) (Six Year Claim Period)**

Plaintiff alleges that "AutoZone also benefitted from uncompensated 'off the clock' work performed before and/or after shifts by Plaintiff and others similarly situated. Plaintiff and others similarly situated performed services as AutoZone requested. AutoZone has not paid for the services Plaintiff and others similarly situated performed." Complaint, ¶ 27.

For example, AutoZone required its Oregon hourly employees to: (1) work off the clock when both opening and closing AutoZone stores for the day because the process of doing so involved tasks to be performed before clocking in, and after clocking out, respectively, of AutoZone's time-keeping system; and (2) deliver or "transfer" parts and merchandise from one AutoZone store to another while not clocked into the time-keeping system.[7]

AutoZone's policy and practice is to pay its hourly employees only for the time they are clocked in the time-keeping system. *Powelson Decl.*, Ex. 11 (Rogers Dep., p. 76:23: "you clock out, you don't get paid."), Ex. 8 (Wesner Dep., p. 54:18-19: "Once you have clocked out, you have clocked out;" p. 84:5-12), and Ex. 3 (Bussey Dep., p. 24:7-8: "[Employees] get paid for what they've clocked in as working, yes;" and p. 26:6-8: "[Employees] get paid for the hours that they have worked and that they are logged in. That is our policy."). The policy is corporate-wide. *Id.*, Ex. 3 (Bussey Dep., p. 24:12-14).[8]

At the store level, an hourly employee generally clocks in and out at a cash register using a unique password. *Powelson Decl.*, Ex. 7 (Dessem Dep., p. 37:2-8); Ex. 8 (Wesner Dep., pp.

---

[7] Plaintiff Migis has also testified working off-the-clock in other circumstances, and personally observed other hourly employees working off-the-clock. *Powelson Decl.*, Ex. 15 (Migis Dep., pp. 20:19 - 21:10; 23:5 - 24:14; 74:19-23; 126:4-25; 150:25 - 151:10; 157:16-24). He also testified that for end of the week processing on Saturday nights, to avoid incurring too many employee hours for that pay week, AutoZone managers would move employee time to the next day. *Id.* (pp. 90:22 - 93:7; 94:12 - 95:16).

[8] AutoZone's ORCP 39C(6) designee testified he was not aware of any company practice or policy to discipline employees who failed to report all time worked. *Powelson Decl.*, Ex. 9 (ORCP 39C(6) Dep., pp. 78:23 - 79:17).

Page 10 -    PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

1    44:22 - 45:11); and Ex. 16 (Deposition of AutoZone Store Manager David Suhl, p. 43:16-20).

2    However, a Store Manager can also clock employees out by using a computer. *Id.*, Ex. 1 (Carrera

3    Dep., pp. 57:8 - 58:4).

4        **1.**      **Opening and Closing the Store**

5        "AutoZone has guidelines that need to be followed when opening and closing the store."

6    *Powelson Decl.*, Ex. 17 (AutoZone's "Being a Manager" 2005 Training & Development guide).

7    A fundamental guideline is that "[t]wo AutoZoners are required to open or close the store." *Id.*

8    Salaried store managers and hourly Parts Sales Managers are authorized to open and close stores.

9    *Id.*, Ex. 11 (Rogers Dep., p. 68:17-22).  However, Store Managers are not always present for

10   opening or closing.  *Id.*, Ex. 11 (Rogers Dep., p. 69:1-6).  This leaves opening and closing to an

11   hourly Parts Sales Manager and at least one other hourly employee.

12       **a.**    ***Opening the Store***

13       Opening a store includes unlocking the store's door and ensuring the alarm system is on,

14   disarming the alarm, and then turning on the store computer and cash registers. *Powelson Decl.*,

15   Ex. 17 (p. 11); Ex. 16 (Suhl Dep., p. 21:1-7); Ex. 18 (Deposition of AutoZone employee Joe

16   Leach, pp. 39:21 - 40:17); and *Declaration of Michael Migis*, ¶ 3.  AutoZone's alarm system is

17   maintained by a company related to AutoZone. *Powelson Decl.*, Ex.11 (Rogers Dep., pp. 67:24 -

18   68:3).

19       Both AutoZone's alarm records and Plaintiff Migis' testimony confirm he opened and

20   closed the Oregon stores in which he worked. *Powelson Decl.*, Ex. 15 (Migis Dep., p. 93:19-20);

21   and Ex. 19 (alarm records).  But because Plaintiff followed AutoZone procedure, he engaged in

22   work that AutoZone never paid simply because he could not be clocked into the time-keeping

23   system.

24       A representative comparison of Migis' hourly time records with corresponding store alarm

25   records reveals clearly measurable, off-the-clock time between de-activating the alarm system and

26

Page 11 -      **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1   clocking into the time-keeping system. *Powelson Decl.*, Ex. 20 (time records); Ex. 19 (alarm

2   records); and Ex. 21 (OTC Summary No. 1). On several occasions, this off-the-clock time

3   resulted in not just unpaid wages, but also unpaid *overtime*. *Id.*, Ex. 22 (OTC Summary No. 2).

4           **b.    Closing**

5       Just as when opening the store, by following AutoZone's closing policy and procedures

6   Plaintiff Migis also engaged in work for which Defendant did not pay him.

7       Defendant's "Closing the store" policy required that "a manager and at least one other

8   AutoZoner close the store every day." *Powelson Decl.*, Ex. 17 (p. 12). See also *id.*, Ex. 1

9   (Carrera Dep., p. 54:18-21: stating "Two minimum;" and p. 55:13-17); and Ex. 18 (Leach Dep.,

10   pp. 41:19 - 42:5). The procedure for closing the store required a manager, such as an hourly Parts

11   Sales Manager, to: (1) "Run the End of Day Report;" and (2) "Walk through the entire store to

12   see that all recovery tasks have been satisfactorily completed." *Id.*, Ex. 17 (p. 13); and Ex.23

13   (Deposition of AutoZone employee Jose Luis Sardineta, p. 34:2-13). Sometimes more than two

14   hourly employees close the store. *Id.*, Ex. 23 (Sardineta Dep., pp. 33:16 - 34:18); and Ex. 18

15   (Leach Dep., p. 42:1-5). AutoZone policy requires that employees leave together. *Id.*, Ex. 17 (p.

16   14).

17       Running the "End of Day Report" included processing the end of day employee payroll,

18   which meant clocking out all employees who were still on the store premises. *Powelson Decl.*,

19   Ex. 1 (Carrera Dep., p. 56:7 - 21); and Ex. 18 (Leach Dep., p. 41:6-25). In fact, Plaintiff Migis

20   testified that on more than one occasion another manager "would do the end-of-day processing

21   while I was still out on a sales floor working, along with any other employees that might have

22   been in the store, the same thing happened to them at the same time that it happened to me."

23   *Powelson Decl.*, Ex. 15 (Migis Dep., pp. 71:17-22); and Ex. 17 (pp. 12-13: setting forth closing

24   store tasks for hourly employees).

25       Not only did AutoZone's end of day procedure result in off the clock time, but so too did

26   AutoZone's policy and procedure for the processing end of week employee payroll at the store

Page 12 -     **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

1    level.   During deposition an AutoZone Parts Sales Manager described the end-of-week process

2    as follows:

3              * * * We go into payroll and end of day,  which that would clock

4         everybody out of the system by 9:00.  You have up to 9:30 to do it.  That's

5         when everybody should be off of the clock.  Then  * * * from end of day you

          go into payroll, and you do end of week, which would add all the hours that

6         you have worked for the week from Sunday through Saturday, at 9:00.

7              And you approve everybody, put my password in to approve all the

8         hours that everybody worked. * * * So I approve everything, and the system

          tells you that you are about to do end-of-week payroll, you approve everything,

9         and that's it.

10             Q    When you get to that point where it's calculating everybody's

     hours, **at that point is everybody off the clock?**

11             A   Yes.  Because you need to do the end of day first.

12             Q   First?

13             A   Correct.

14             Q   **So you are off the clock, and then you are doing the approval

     of all of the time things on the computer?**

15             A   **Correct,** uh-huh.

16             Q   And then after you get all of that done, what do you do?

          A   Close the system.

17             Q   Who is in the store at the time you are doing this?

18             A   **There has to be at least, if not two, one more person besides me.**

19   *Powelson Decl.*, Ex. 23 (Sardineta Dep., pp. 32:18 - 34:1) (bold added).

20        A representative comparison of Migis' hourly time records with corresponding store alarm

21   records reveals clearly measurable, off-the-clock time measured between the time he clocked out

22   (or was clocked out by someone else) of the time-keeping system and the time he activated the

23   alarm system.  *Powelson Decl.*, Ex. 21 (OTC Summary No. 1); Ex. 19 (alarm records); and Ex.

24   20 (time records).  This off-the-clock time usually ranged anywhere from two (2) to seven (7) or

25   more minutes in each instance.

26   ///

Page 13 -      PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

1    According AutoZone policy and practice, there is no question that since Plaintiff Migis

2    was not clocked in, he was not and would not be paid for the time he started or continued work

3    for AutoZone's benefit either upon opening or closing the store. Unfortunately, this policy and

4    practice resulted in several occasions where Migis not only lost straight wages, but also *overtime*

5    *wages. Powelson Decl.*, Ex. 22 (OTC Summary No. 2).

6        This same logic applies for all other hourly AutoZone employees who not only personally

7    armed or de-activated the store alarm while off the clock, but also fo those hourly employees

8    present and working at the time of closing. Such individuals are easily identifiable by comparing

9    their time records with each store's alarm records.[9]

10       **2.    Employee Parts Delivery to Other Stores ("Store Transfers") / Travel Time**

11           **Between Stores**

12        Plaintiff Migis' claim for unpaid wages resulting from off the clock work also arises from

13    AutoZone's practice of requiring hourly employees to deliver parts (for customers) or otherwise

14    to travel from one store to another to work, but not paying its employees for travel time.

15    Consistent with the foregoing deposition testimony that AutoZone's policy and practice is to pay

16    its hourly employees only for the time they are clocked into the time-keeping system, one

17    AutoZone Oregon District Manager testified that with respect to an employee who travels

18    between stores, "As long as the person is on the clock, absolutely, it's paid for." *Powelson Decl.*,

19    Ex. 8 (Wesner Dep., pp. 52:22 - 53:6).

20       AutoZone required employees (including Plaintiff) to travel between stores to "transfer

21    parts" or to work at two different stores on the same day. This meant the employee had to: (a)

22    clock out at the first store when departing, and then (b) clock in at the second store when arriving.

23    An employee is required to clock in the store at which he arrived, and cannot be clocked in at two

24

---

25        [9] In response to Plaintiff's discovery request, Defendant objected and refused to produce
26    one year's worth of alarm records for all Oregon AutoZone stores to compare with corresponding
      employee time records.

Page 14 -    PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

1  different stores simultaneously.  See e.g., *Powelson Decl.*, Ex. 8 (Wesner Dep., p. 53:8 - 17

2  (confirming a change to an hourly employee's time record because the employee had failed to

3  clock out at the first store before departing to the destination store); Ex. 24 (Plaintiff Migis time

4  records); Ex. 25 (Deposition of former AutoZone employee Richard Joarnt, p. 57:9-11: stating

5  "[I] [w]as not paid for the time that I transferred parts from the Hillsboro store to the Newberg

6  store or the Newberg store to the Forest Grove store;" and p. 61:17-21); and Ex. 26 (Deposition

7  of former AutoZone employee Bert Yamaoka, p. 63:23 - 64:12: confirming that an AutoZone

8  store manager required Richard Joarnt to clock out of one store before delivering a part to another

9  AutoZone store; and p. 64:19 - 69:25: confirming his own off-the-clock parts delivery).

10      Not only could these off the clock transfers occur during the work day, they could also

11  occur before or after an employee's shift.  For example, Plaintiff Migis testified:

12          I would be called at home at 7:30 in the morning [by my Store

13          Manager], for example. I was scheduled to work at 8:00. And it was:

           "Mike, stop at this store. Pick this up. Can you do that?  Bring it in

14          on – on the way to work."  Or leaving the store: "Mike, can you drop

15          this off at this location over here?  It's over by your house."

16  *Powelson Decl.*, Ex. 15 (Migis Dep., pp. 85:22 - 86:5; and 87:5-12).  See also *id.* (Migis Dep.,

17  pp. 18:22 - 19:8; 84:17 - 85:19 ("I wasn't on the clock when I was doing it."); and p. 88:11-

18  14).[10]

19      Plaintiff's analysis of other hourly employee time records also reveals that over the course

20  of almost one year, 90 hourly employees clocked in at two different AutoZone stores during the

21

22

23

24

--------

25      [10] Plaintiff also testified sometimes he took longer lunches (off the clock) because he was
required to transfer merchandise from one store to another. *Powelson Decl.*, Ex. 15 (Migis Dep.,
26  p. 153:18-25).

Page 15 -     **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

1    same day, resulting in over 15,000 "gap minutes" of unpaid time. *Shubin Decl.*, ¶¶ 9-10; Ex. C.[11]

3    **D.    Failure to Pay For Improper Meal Periods (Deducted/Unpaid Wages) (Six Year Claim Period)**

5    Plaintiff's claim for unpaid wages includes the allegation that "AutoZone failed to pay

wages to its employees for meal periods of less than 30 minutes in length. As a result, Plaintiff

and other similarly situated class members are entitled to wages for the unprovided meal period

violations, for the six-year period before the filing of this class action lawsuit * * *." Complaint,

¶ 32.

10   Similarly, Plaintiff alleged on behalf of the class that "For Plaintiff and all similarly

situated class members who worked for AutoZone in Oregon, within the six-year period before

the filing of this complaint, from whom AutoZone deducted wages from the class members'

wages for meal periods of less than 30 minutes in length." Complaint, ¶ 39.

14   Defendant recognizes that Oregon requires a duty-free, unpaid meal period of at least 30

minutes for employees who work for six (6) or more hours in a work day. *Powelson Decl.*, Ex.

10 ("Meal and Rest Period Requirements"). AutoZone requires its employees to clock out for

all meal periods; there are no exceptions to this policy. *Id.*, Ex. 2 (Store Handbook); and Ex.11

(Rogers Dep., p. 76:11-14).

19   Nonetheless, AutoZone practice dictates that if an hourly employee clocks out to take a

lunch break but is called back to work and clocks back in before 30 minutes has expired,

AutoZone will pay the employee only for the time they are clocked in. *Powelson Decl.*, Ex. 11

(Rogers Dep., p. 76:15-23); Ex. 8 (Wesner Dep., p. 77:1-19; pp. 82:18 - 83:3; p. 84:1-12); and

23   [11] To the extent Defendant opposes this claim on the grounds that Plaintiff has no way of knowing whether other employees were eventually paid for travel time between stores despite the gap in their time records, Defendant in June 2008 provided a written agreement to produce hourly employee records that would show "hours paid," which Plaintiff could then compare against the "hours worked" in the SMS time records. However, Defendant later refused to produce those very same "hours paid" records. Plaintiff therefore filed his *Third Motion for Order Compelling Discovery,* by this reference incorporated herein.

Page 16 -    PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1   Ex. 3 (Bussey Dep., p. 24:3-11).

2          In other words, if an employee clocks out for lunch but is called back to work after 18

3   minutes and clocks in, the employee will only be paid for the remaining 12 minutes of the meal

4   period. *Powelson Decl.*, Ex. 3 (Bussey Dep., p. 24:3-8). There are no exceptions to this policy.

5   *Id.*, Ex. 11 (Rogers Dep., pp. 76:24 - 77:6).

6          Moreover, AutoZone also meticulously tracks its employees' scheduled meal periods by

7   requiring managers to designate a reason each time a meal period is less than the time scheduled,

8   including those that are less than 30 minutes. AutoZone *Powelson Decl.*, Ex. 27; and Ex. 28.

9          For example, AutoZone's "Lunch Variance" and other reports[12] for approximately six

10  months' worth of time reveal there were over 300 instances where an Oregon AutoZone

11  employee received a "Short Lunch." *Powelson Decl.*, Ex. 27. Of those short lunches, AutoZone

12  attributed approximately 64 percent of them to the reason, "Management Change Due to Sales."

13  Another three (3) percent were attributed to "Management Change Due to Cover," and another

14  four (4) percent were associated with "Unexcused [sic] - Did Not Follow Schedule." *Id.* Many

15  of those short lunches were less than 30 minutes, and occurred at nearly if not every Oregon store.

16  *Id.*, Ex. 28 (AutoZone Lunch Variance Report); and Ex. 27.

17         Plaintiff's own analysis of the foregoing reports supports those conclusions. For example,

18  of 256 employees, 115 of them (almost 45 percent) were provided at least one lunch break of less

19  than 30 minutes, resulting in over 3,000 minutes (50 hours) of unpaid time. *Shubin Decl.*, ¶¶ 12 -

20  13; Ex. D.

21         Plaintiff's analysis of one year's worth of hourly employee time records results in a

22  similar conclusion, already confirmed by AutoZone's own managers: AutoZone does not pay

23  employees for meal periods less than 30 minutes. Of the daily time records reviewed for 395

24

25         [12] Produced as required by Court order, although Defendant produced six (6) months
    instead of one (1) year's worth of information as the Order required. See also *Shubin Decl.*, ¶ 12,
26  setting forth in table format the date range.

Page 17 -      **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

1  hourly employees, 327 employees had at least one clock out/in gap of less than 30 minutes.
2  *Shubin Decl.*, ¶ 9. "A gap is defined as a discontinuity in [a daily time record] clock-in/clock-out
3  sequences within an employee's work day * * *." *Shubin Decl.*, ¶ 9.

4      For those 327 employees there was a total of 5,607 gaps of time less than 30 minutes,
5  resulting in 114,643 minutes (1,910 hours) of unpaid time. *Shubin Decl.*, ¶¶ 9 -10; Ex. A and Ex.
6  B.

7      Finally, just like those employees, Plaintiff Migis testified he received short meal periods,
8  *Powelson Decl.*, Ex. 15 (Migis Dep., p. 154:1-21), and his time records show gaps of less than
9  30 minutes. *Powelson Decl.*, Ex. 29 (Migis time records, Bates Nos. 399, 403).

10

11  **IV. POINTS & AUTHORITIES**

12  **A.    Overview**

13      Oregon Rule of Civil Procedure 32C requires a court to, as soon as practicable, determine
14  by order whether and with respect to what claims or issues a class action is to be maintained. See
15  e.g., ORCP 32C(1) (an order "may be conditional, and may be altered or amended before the
16  decision on the merits."); and *Joarnt v. Autozone, Inc.*, 343 Or 187, 192 (2008).

17      "'The policy at the very core of the class action mechanism is to overcome the problem
18  that small recoveries do not provide the incentive for any individual to bring a solo action
19  prosecuting his or her rights.'" *Vasquez-Lopez v. Ben. Or., Inc.*, 210 Or App 553, 570 (2007)
20  (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (other internal cites and
21  quotes omitted)).[13]

22      When determining whether certification is proper, ORCP 32 does not require a
23  simultaneous adjudication of the case on the merits. In fact, in deciding a motion for class action,

24

25      [13] See also *State ex rel. Nilson v. Cushing*, 253 Or 262, 269 (1969) (in context of ORS
26  652.150, Court noting that "The **smaller the amount of unpaid compensation the greater is
   the need for assistance in effecting collection.**" (italics original; internal cites omitted)).

Page 18 -    PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

1    it is "not appropriate for the court to determine whether plaintiffs are entitled to prevail * * *."

2    *Alsea Veneer, Inc. v. State of Oregon*, 117 Or App 42, 52-53 (1993) 843 P.2d 492 (1992); *rev'd*

3    *on other grounds*, 318 Or 33, 862 (1993).  The same is true under federal law.  See *Eisen v.*

4    *Carlisle & Jacquelin*, 417 US 156, 177 (1974) ("We find nothing in either the language or history

5    of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a

6    suit in order to determine whether it may be maintained as a class action.").

7        Class certification is appropriate for all proposed classes in this case because Plaintiff

8    meets both the ORCP 32A and ORCP 32B criteria.

9

10   **B.**    **ORCP 32**

11      *ORCP 32A Criteria*

12       **1.**   <u>**Numerosity (ORCP 32A(1))**</u>

13        Oregon Rule of Civil Procedure 32A(1) requires the proposed class to be "so numerous

14    that joinder of all members is impracticable."  With regard to numerosity, the Oregon Supreme

15    Court held that ORCP 32 and FRCP 23 are identical and quotes *Newberg on Class Actions*, 174

16    (Vol. 1, 1977) for the proposition that "the plaintiff whose class numbers in the 25 to 30 range

17    should have a reasonable chance of success on the basis of numbers alone." *Newman v. Tualatin*

18    *Dev. Co. Inc.*, 287 Or 47, 50 (1979).

19        In this case, on April 22, 2008 during the hearing on Defendant's *Motion for Extension*

20    *of Time*, AutoZone counsel Leigh Ann Tift admitted that this "class is enormous." *Powelson*

21    *Decl.*, Ex. 31 (p. 6:22-24).  Defendant's counsel also later conceded in its June 2008 *Opposition*

22    *to Plaintiff's Motion to Bind or Compel ORCP 39C(6) Deposition Answers* that AutoZone's

23    39C(6) testimony "is easily sufficient as a number to establish numerosity." *Opposition* at p. 7:7-

24    9. See also *Powelson Decl.*, Ex. 9 (39C(6) Dep., pp. 160:1 - 163:25).

25    ///

26    ///

Page 19 -    **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

1      a.      *Straight Late Pay Class (Three year class)*

2      Notwithstanding the foregoing, Plaintiff's proposed late pay class meets the numerosity

3   requirement. AutoZone admits in its Answer that for the time period alleged, AutoZone operated

4   at least 24 stores in the State of Oregon.  In addition, the much-discussed Excel summary

5   termination report AutoZone produced in this lawsuit demonstrates that at least 158 hourly

6   employees terminated employment with AutoZone in Oregon between November 16, 2006 and

7   November 16, 2007. *Powelson Decl.*, Ex. 12.

8      The Court can therefore infer that if 158 hourly employees terminated in one year, then

9   for this three year class there could be approximately 474 members in the late pay class.[14]

10  Numerosity is therefore satisfied.

11      b.      *Off-the-Clock Class (Six year class)*

12      There are two proposed off the clock sub-classes: (i) One for those hourly employees who

13  opened and/or closed the stores in which they worked, which required work either before or after

14  clocking out of AutoZone's time-keeping system; and (ii) another for those employees who

15  AutoZone required to deliver to or pick up merchandise from another store.

16      i.      Store Opening and Closing

17      Notwithstanding Defendant's admission that the class is enormous, numerosity for the off-

18  -the-clock class is established by means of Defendant's policy for opening and closing the

19  AutoZone stores (i.e., requiring at least two, if not more, employees present at both opening and

20  closing). See also *Migis Decl.*, ¶¶ 3 - 4.

21      Assuming there was at least one hourly employee at opening and closing though there

22

23

24

25

26      [14] (158 * 3)

Page 20 -      PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1    were sometimes two or more,[15] and that AutoZone's 22 - 29 stores in Oregon were open to the

2    public at least 360 days a year during the claims period, then the Court can infer that there could

3    up to 216,000 instances of measurable, off-the-clock violations involving at least 50 employees.[16]

4    There can be no serious dispute over numerosity for this off-the-clock claim.

5                    ii.    Store Transfers / Employee Travel Between Stores

6            Plaintiff's analysis of hourly employee time records show that approximately 90

7    employees traveled from one AutoZone store to another on the same day, but were not clocked

8    in for the time it may have taken to travel between those stores. *Shubin Decl.*, ¶¶ 9-10; and Ex.

9    C. Numerosity is established.

10                c.    *Failure to Pay Class (Deducted Meal Periods) (Six year class)*

11            Despite Defendant's production of only six months' worth of data instead of one year's

12    worth as ordered by the Court, AutoZone's Lunch Variance Report reveals that even for the six

13    months' worth of time, AutoZone deprived 115 employees of a meal period less than 30 minutes.

14            Moreover, Plaintiff's analysis of one year's worth of Defendant's time records for all

15    employees who worked in the State of Oregon show that approximately 327 employees on at least

16    one occasion received less than 30 minutes for a duty free, uninterrupted meal period.

17            Numerosity is established for Plaintiff's proposed off the clock class as it relates to meal

18    periods of less than 30 uninterrupted minutes.

19                d.    *Derivative Classes*

20            Because Plaintiff seeks to certify his derivative claims for relief under ORCP 32G, he

21    need not show numerosity. See *Shea*, 164 Or App at 205-06.

22    _____

23        [15] See *Powelson Decl.*, Ex. 15 (Migis Dep., pp. 71:3 - 72:6: "They [the Store Managers] would do the end-of-day processing while I was still out on a sales floor working, along with any

24    other employees that might have been in the store;" and "I'd go to clock out and find out that I was already clocked out, and -- and we just set the alarm and walked out the door."); and Ex. 23

25    (Sardineta Dep., pp. 32:18 - 34:1).

26        [16] [(2 hourly employees) * (2 times per day) * (25 stores) * (360 days) * (6 years)] = 216,000.

Page 21 -      PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

1     **2.**     **Commonality (ORCP 32A(2)) and Typicality (ORCP 32A(3))**

2     There is considerable, practical overlap with the elements of commonality, typicality and

3     adequacy of representation. See generally, 5 *Moore's Federal Practice* §§ 23.23[1], 23.24

4     (1997).

5        ***a.***     ***Commonality***

6     "Commonality" means there "are questions of law or fact common to the class[.]" ORCP

7     32A(2). However, "[a]ll questions of fact and law need not be common to satisfy the rule. The

8     existence of shared legal issues with divergent factual predicates is sufficient[.]" *Hanlon v.*

9     *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). That is, "one significant issue common to

10     the class may be sufficient to warrant certification." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168,

11     1178 (9th Cir. 2007).

12     In addition, class relief can be "peculiarly appropriate" when the "issues involved are

13     common to the class as a whole," and which "turn on questions of law applicable in the same

14     manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979).

15     Defendant's counsel has conceded there are common issues of law or fact in this case.

16     For example, in moving to consolidate this case with the *Joarnt v. AutoZone* matter, Defendant

17     argued that both cases covered "the same kinds of wage and hour claims * * * ."[17] More recently,

18     in its *Revised Response* to Plaintiff Migis's *Motion for Coordination* with the *Joarnt* case,

19     AutoZone appears to admit that employees in both cases were "subject to the same work practices

20     * * * ."[18]

21     And as set forth in Plaintiff's Complaint (¶ 47), questions of fact and law common to the

22

23     [17] See ¶ 2, February 19, 2008 *Declaration of Douglas S. Parker in Support of Defendant's Motion to Consolidate*. See e.g., *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227

24     (9th Cir. 1988) ("We * * * hold that statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court." (italics original)); and *Whitelock*

25     *v. Wash. County*, 2004 U.S. Dist. LEXIS 13610, *15-16 (D.Or. June 16, 2004) (same).

26     [18] See p. 2:22-23, July 24, 2008 Defendant's *Revised* Response to Plaintiff's *Motion for Coordination*.

Page 22 -     **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1    entire class include:

2        a        Whether Plaintiff and class members are subject to Oregon State wage and
3                 hour statutes.
4        b        Whether AutoZone suffered and permitted Plaintiff and overtime class
5                 members to work over 40 hours per week.
6        c        Whether AutoZone failed to pay Plaintiff and overtime class members at the
7                 overtime rate for all hours worked over 40 per week.
8        d        Whether AutoZone suffered and permitted Plaintiff and minimum wage class
9                 members to perform work, for which it failed to pay all minimum wages when
10                due.
11       e        Whether, when an employee's time records reflect that the employee worked a
12                shift of sufficient length to entitle the employee to a meal period under OAR
13                839-020-0050(1)(a), the employee's time records show an uncompensated
14                period of time less than 30 minutes, that period amounts to lost wages from the
15                improper deduction within the meaning of OAR 839-020-0050(1)(a) for which
16                the employee is entitled to pay.
17       f        Whether Oregon law provides time lines when AutoZone must pay final wages
18                to terminating employees.
19       g        Whether AutoZone failed to pay Plaintiff and similarly situated class members
20                all wages after termination of their employment when those wages were due.
21       h        Whether AutoZone's failure to timely pay final wages to Plaintiff and other
22                former employees was willful.
23       i        Whether Plaintiff and class members are entitled to attorneys' fees under ORS
24                652.200 and/or ORS 653.055.
25       j        Which remedies are available for the violations of State wage and hour laws.
26    Plaintiff therefore meets the commonality requirement of ORCP 32A(2).

Page 23 -     PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1        ### b.  *Typicality*

2        "Typicality" means that the class representative establish their claims as typical of the

3   claims of the class as a whole.  ORCP 32A(3); *Shea*, 164 Or App at 205.  In Oregon, typicality

4   is present where the plaintiffs' claims **"arise[] from the same event or practice or course of**

5   **conduct** that gives rise to the claims of members and his or her claims are based on the same

6   legal theory." *Newman v. Tualatin Development Co.*, 287 Or. 47, 50 (1979) (cite omitted)

7   (emphasis added).

8        Stated another way, "[t]he 'common theme' that [a] [d]efendant has failed to comply with

9   his legal mandates on a systemwide basis * * * is sufficient to support a finding of typicality.  As

10  the Third Circuit explained, '[a]t any one time, the plaintiffs do not suffer from precisely the same

11  deficiency, but they are all alleged victims of the **systemic failures.**'" *Xiufang Situ v. Leavitt*, 240

12  F.R.D. 551, 561 (N.D.Cal. 2007) (emphasis added) (cite omitted).

13       And as set forth in Plaintiff's Complaint (¶ 48), the claims of the named Plaintiff are

14  typical of the claims of the members of the wage and hour class because:

15       a.      Plaintiff is a member of each class.

16       b.      Plaintiff's claims stem from the same practice or course of conduct that forms

17               the basis of each class.

18       c.      Plaintiff's claims are based upon the same legal and remedial theories as those

19               of the class and involve similar factual circumstances.

20       d.      There is no antagonism between the interests of the named  Plaintiff and

21               putative, absent class members.

22       e.      The injuries which Plaintiff suffered are similar to the injuries that class

23               members have suffered.

24       Typicality is therefore  present in this case.

25  ///

26  ///

Page 24 -     **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1    **3.**    **Adequacy of Class Representative (ORCP 32A(4))**

2    Oregon Rule of Civil Procedure 32A(4) requires that the class representatives must fairly

3    and adequately protect the interests of the class. The crucial components of this element concern

4    the lack of conflicts between the class representative and the class as a whole, and the

5    competency of counsel. *Alsea Veneer, Inc. v. State of Oregon*, 117 Or App 42, 53 (1992). *rev'd*

6    *on other grounds*, 318 Or 33, 41 (1993).

7    *a.    Class Representative*

8    "It is often the defendant, preferring not to be successfully sued by anyone, who

9    supposedly undertakes to assist the court in determining whether a putative class should be

10    certified. When it comes, for instance, to determining whether 'the representative parties will

11    fairly and adequately protect the interests of the class,' * * * it is a bit like permitting a fox,

12    although with a pious countenance, to take charge of the chicken house." *Eggleston v. Chicago*

13    *Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).

14    In sum, the fundamental premise for being an adequate class representative is to "be part

15    of the class and possess the same interest and suffer the same injury as the class members." *East*

16    *Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403 (1977) (quotes omitted) (in context of

17    Fed.R.Civ.Pro. 23(a)(4)).

18    When asked during a May 15, 2008 ORCP 39C(6) deposition why AutoZone believed

19    Plaintiff Migis was an inadequate class representative, *the only reason* the AutoZone designee

20    gave was that Mr. Migis had not worked for AutoZone during the entire claims period. *Powelson*

21    *Decl.*, Ex. 9 (May 15, 2008 ORCP 39C(6) Dep., pp. 22:14-20; 24:8-15).

22    No conflict exists between the named Plaintiff and the rest of the class. Plaintiff will

23    therefore also fairly and adequately represents and protects the interests of the classes because:

24    (1) he alleges suffering the same injuries as the rest of the class members; (2) as Defendant

25    conceded in its earlier motions, the legal arguments for remedying those injuries are common for

26    the entire class; and (3) Plaintiff and the putative class members were subject to the same

Page 25 -    **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1  company policies and work practices.

2          **b.      Adequacy of Class Counsel**

3          Plaintiff has also retained adequate class counsel. The second component is the adequacy

4  of counsel. The law firm of Bailey Pinney & Associates ("Bailey Pinney"), retained by Plaintiff

5  to prosecute this case, limit their practice to wage and hour litigation and wage and hour class

6  action litigation.[19] See *Pinney Decl.* The *Declaration of J. Dana Pinney* lists the extensive

7  Appellate decisions on wage and hour issues obtained by the Bailey Pinney firm in the Court of

8  Appeals and Supreme Court of this state.

9          The Court can also look to the hearings which have occurred before in this case to find

10  that Plaintiff's attorneys are competent to handle the litigation. Further, the fact that Bailey

11  Pinney continues to prosecute the case aggressively even after more than a year of litigation is

12  evidence that Bailey Pinney will see this case through. This fact is also shown by the significant

13  number of Appellate cases on wage and hour laws prosecuted by the Bailey Pinney firm. *Pinney*

14  *Decl.* ¶¶ 6 - 11.

15          Based on the foregoing, Plaintiff satisfies Rule 32A(4).

16

17          ***ORCP 32B: Superiority of the Class Action Mechanism***

18          In addition to the requirements of ORCP 32A, Rule 32B requires the Court also find that

19  a class action is "superior to other available methods for the fair and efficient adjudication of the

20  controversy." In 1992, ORCP 32B was amended to remove the requirement that common

21  questions of law or fact predominate over any questions only affecting individual class members.

22  See *Shea*, 164 Or App at 207.

23          Thus, a party seeking class certification need only demonstrate that <u>one</u> of the ORCP 32B

24  factors has been met. *Shea*, 164 Or App at 207 (Court stating that Rule 32B "includes the

25  ───────────────────

26          [19]Bailey Pinney & Associates has been retained on non-wage and hour work, but such
work is a rare exception with the bulk of the cases brought asserting wage claims.

Page 26 -      **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1 predominance of common questions of law and fact as a 'pertinent' matter that the trial court

2 must consider. It does not require predominance as a *sine qua non* of certification of any class.").

3   Rule 32B lists eight "pertinent" matters to the finding of class action superiority,

4 including: (1) the extent to which "questions of law **or** fact common to the members of the class

5 predominate over any questions affecting only individual members" (ORCP 32B(3)); (2) whether

6 individual class members have little interest in controlling the prosecution of the case (ORCP

7 32B(4)); (3) the desirability or undesirability of concentrating litigation of the claims in the

8 particular forum (ORCP 32B(6)); and (4) manageability of the action as a class (ORCP 32B(7)).

9   In this case, Defendant has virtually conceded there are common issues of law or fact, and

10 that its employees in this and the *Joarnt* case were subject to the same work practices.

11   Based on these admissions, as well as the foregoing analysis and underlying evidence

12 supporting Plaintiff's proposed classes, common issues of law and fact pre-dominate over any

13 individual questions affecting only individual class members.

14   ORCP 32B(4) involves the "interest of members of the class in individually controlling

15 the prosecution" of the case.  The United States Supreme Court explained this concept in

16 *Amchem Products, Inc. v. Windsor*:

17    In setting out these factors, the Advisory Committee for the 1966 reform

18    [of Fed.R.Civ.Pro. 23] anticipated that in each case, courts would

19    "consider the interests of individual members of the class in controlling

20    their own litigations and carrying them on as they see fit."  They

21    elaborated: "[. . . .] the class may have a high degree of cohesion and

22    prosecution of the action through representatives would be quite

23    unobjectionable, or the amounts at stake for individuals may be so small

24    that separate suits would be impracticable."

25 521 U.S. 591, 616 (1997) (cites omitted).  The *Amchem* Court further noted that:

26    While the text of Rule 23(b)(3) does not exclude from certification cases

Page 27 -  **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1    in which individual damages run high, the Advisory Committee had

2    dominantly in mind vindication of "the rights of groups of people who

3    individually would be without effective strength to bring their opponents

4    into court at all."

5    521 U.S. at 617 (cite omitted).

6    There is very little reason for any single class member to want to control the prosecution

7    of this case. This ORCP 32B factor weighs in favor of class certification.

8    Finally, Plaintiff proposes classes that also manageable, and the adjudication of which will

9    further judicial economy. For the Court to process and hear separately each individual putative

10   class member's case would be an incredibly inefficient use of judicial resources. Combining

11   numerous, smaller wage clam cases into a single class action is judicially efficient and presents

12   fewer management difficulties.

13   This is especially so since Defendant's own documents and representative testimony will

14   likely be all that is necessary for proper adjudication. That is, Defendant's policies and practices

15   are well-established and acknowledged, and the nature and extent of liability and damages are

16   easily ascertainable from AutoZone's documents. See e.g., *Anderson v. Mt. Clemens Pottery Co.*,

17   328 U.S. 682 (1946) (supporting the notion that a court can review representative evidence to

18   determine the number of hours employees worked).

19   Based on the foregoing, one or more ORCP 32B factors are met; class certification is

20   appropriate.

21

22   **C.    ORCP 32H**

23   ORCP 32A(5) requires that the class representative, in an action for damages, provide

24   notice to Defendant. This notice must conform to ORCP 32H, which states:

25   H(1) Thirty days or more prior to the commencement of an action for damages
     pursuant to the provisions of sections A and B of this rule, the potential plaintiffs'
26   class representative shall:

Page 28 -    **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

1    (H)1(a) Notify the potential defendant of the particular alleged cause of action; and

2    H(1)(b) Demand that such person correct or rectify the alleged wrong.

3    Plaintiff provided Defendant AutoZone the required notice. See *Pinney Decl.*, Ex. 1.

4    Plaintiff sent this notice on or about March 28, 2007, and then commenced this action on

5    November 16, 2007.

6

7                              **V.  CONCLUSION**

8    Based on the foregoing, Plaintiff Migis requests the Court certify this matter as a class

9    action for all proposed classes and sub-classes.

10

11    Signed this 15th day of August 2008.

12

13                    BAILEY, PINNEY & ASSOCIATES, LLC

14

15

16                    A.E. "BUD" BAILEY, OSB 87157
                      CHEY POWELSON, OSB 03551
17                    SHARON COUSINEAU, OSB 011637
                      Of Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

Page 29 -    **PLAINTIFF MIGIS' MOTION FOR ORCP 32C CLASS ACTION CERTIFICATION**

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing **Plaintiff Migis' Motion for ORCP 32C Class Action Certification** upon:

Ms. Leigh Ann Tift
Littler Mendelson
One Union Square, 600 University St, Ste 3200
Seattle, WA 98101

by the following indicated method or methods:


[X]     by **mailing** a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the person as shown above, the last-known office address of the person, and deposited with the United States Postal Service at Vancouver, Washington on August 15, 2008.


and also upon

Ms. Amy Alpern
Littler Mendelson
1750 SW Harbor Way Suite 450
Portland, OR 97201


{X}     by causing a full, true, and correct copy thereof to be **hand-delivered** to the person listed above on August 15, 2008.


DATED:    August 15, 2008

CHEY POWELSON, OSB 035512
Of Attorneys for Plaintiff

1

2

3

4

## IN THE CIRCUIT COURT OF THE STATE OF OREGON

5

## FOR THE COUNTY OF MULTNOMAH

6

7    **MICHAEL MIGIS**, individually, and on behalf of all other persons similarly situated,

No. 0711-13531

8

**DECLARATION OF GEORGE SHUBIN**

9                                Plaintiff,

10        v.

11    **AUTOZONE, INC.**, a foreign corporation,

12                                Defendant.

13    I, George Shubin, hereby declare:

14    1.      I am an independent computer consultant with nearly 40 years of experience in the use

15    and programming of computer systems.  I provide database design and programming services

16    for clients who need specialized databases created and software applications designed to

17    access and analyze those databases.  I have worked in many aspects of Information

18    Technology, first as a mainframe operator then through various levels of increasing

19    responsibility.  I have been employed in computer operations, systems analysis and

20    programming, database design, and information technology management.  I have been an

21    independent computer consultant since 1991.  I have developed database programs for many

22    different applications, and have resolved many complex data problems over the course of my

23    career.

24    2.      I have personal knowledge of the facts set forth below and, if called upon as a witness,

25    I could and would competently testify thereto.

26

Page 1 -    Declaration of George Shubin

**Littler Mendelson**

AUG 1 5 2008

R⸱ ⸱ived by: _ℒℳℒ 4:25pm_

1    3.     I was hired by Bailey Pinney & Associates, LLC, to perform data conversion, database

2    construction, and analysis of certain documents that were provided to me by Bailey Pinney &

3    Associates. I received two sets of documents from Bailey Pinney & Associates.

4    4.     The first set of documents came on a CD-ROM disk, identified as "AZ Payroll Nov

5    2006 - Nov 2007". I was informed that the CD was provided by Autozone, Inc. The

6    documents were referred to as "SMS Data", and were contained within a proprietary database

7    that protected the data from being changed. Included on the same CD was a database viewer

8    program called "IBM OnDemand", which permitted the viewing and exportation of the data. I

9    was requested by Bailey Pinney & Associates to process those documents and construct a

10    database, perform certain analyses, and generate reports of the data.

11    5.     The second set of documents came in the form of an Excel spreadsheet file, named

12    "AZ_Migis 2221 - Lunch Variance Report.xls". I was informed that the file was provided by

13    Autozone, Inc. The documents were referred to as "Lunch Data". I was requested by Bailey

14    Pinney & Associates to process those documents and construct a database, perform certain

15    analyses, and generate reports of the data.

16    6.     Paragraphs 7 through 10 below refer to my processing the SMS Data. Paragraphs 11

17    through 13 refer to my processing the Lunch Data.

18                            ***Processing the SMS Data***

19    7.     Using the text export facility in the IBM OnDemand program, I converted all 9,454

20    document pages into 9,454 corresponding text files, each line of text in each text file exactly

21    matching each line of text in each document page in the database. The title on each page of

22    these documents was named "SMS TIME FINAL HISTORICAL REPORT". The documents

23    were a record of time clock punch-in and punch-out information. Each of the 9,454 pages

24    contained one employee's time clock activity for one day. I then used Microsoft Access'

25    import tool to import all 9,454 text files into an Access database.

26    8.     After importing the SMS Data into a Microsoft Access database, I used

Page 2 -    Declaration of George Shubin

**BAILEY PINNEY & ASSOCIATES LLC**
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington 98683
(360) 567-2551 • Fax (360) 567-3331

1  industry-standard database data manipulation commands to reformat the imported raw text

2  into a form that was useable in calculations.  Once each line of text was parsed into selected

3  fields such as employee name, date worked, clock-in time, etc., I analyzed the data to produce

4  some reports.

5  9.      The following chart summarizes my findings from the 75,752 lines of data that was

6  derived from the 9,454 document pages produced.

| Dates represented | 10/29/2006 to 11/27/2007 |
|---|---|
| Total number of unique employees | 395 |
| Employees with gaps of 29 minutes or less | 327 |
| Number of gaps of 29 minutes of less | 5,607 |
| Number of gap minutes 29 minutes of less | 114,643 |
| Employees with gaps between work locations | 90 |
| Number of gap minutes between work locations | 15,954 |

A gap is defined as a discontinuity in the SMS Data clock-in/clock-out sequences within an

employee's work day, i.e. the time clock record is silent between a previous clock-out time

and a subsequent clock-in time within an employee's work day.

10.     Further details of my findings in the SMS Data may be found in the attached Exhibits

A, B and C.  Exhibit A shows summary counts of the data sorted by employee last name.

Exhibit B is a detailed list, sorted by employee name and work day date, showing each

occurrence of a gap that is 29 minutes or less, and the date of the occurrence, for each

employee.  Exhibit C is a detailed list of employees who clocked-out at one store location and

then clocked-in at another store location on the same day, and who had a gap of any size up

to 240 minutes (4 hours) between locations.  Exhibit C shows each occurrence and the size of

the gap.

*Processing the Lunch Data*

11.     Using Microsoft Access' Excel data import feature, I imported the Lunch Data into an

Access database.  The data was tabular in format, so it required only minimal reformatting to

get it into a form that was useable for calculations.

Page 3 -   Declaration of George Shubin

12.    The following chart summarizes my findings from the 2,198 lines of data that was derived from the Lunch Data spreadsheet file.

| Dates represented in the data | 1/1/2006 to 8/31/2006 |
|---|---|
| Dates not represented in the data | All March and April 2006 are missing |
| Total number of unique employees | 256 |
| Employees with lunch breaks 29 minutes or less | 115 |
| Number of lunch breaks of 29 minutes of less | 319 |
| Number of lunch minutes "lost" | 3,079 |

A "lost" minute is defined as the number of minutes difference between a full 30-minute lunch break and the actual time recorded for the lunch break.

13.    A detailed list of lunches that were less 29 minutes or less, and the date of their occurrence, sorted by employee name, is contained in the attached Exhibit D.


    I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

Dated August 15, 2008 at  ___Vancouver, WA___.


_____
GEORGE SHUBIN

Page 4 -    Declaration of George Shubin

BAILEY PINNEY & ASSOCIATES LLC
Attorneys at Law
1498 SE Tech Center Place, Suite 290 • Vancouver, Washington  98683
(360) 567-2551 • Fax (360) 567-3331

**AutoZone-Migis SMS Data Incident Summary of Gaps of 29 Minutes or Less, Sorted By Employee Last Name**

Dates represented: 10/28/2006 through 10/27/2007

| | Employee | Incidents | Unpaid Minutes | | Employee | Incidents | Unpaid Minutes |
|---|---|---|---|---|---|---|---|
| 1 | ABBOTT, RYAN | 3 | 62 | 62 | CORONA, CARLOS | 4 | 82 |
| 2 | ACFALLE, JEREMIAH | 3 | 82 | 63 | CORTEZ VIRGEN, RUBEN | 2 | 26 |
| 3 | AGUIAR, LUIS | 16 | 132 | 64 | CORTEZ, JOSEPH | 3 | 80 |
| 4 | ALANIS, SHANNON | 12 | 280 | 65 | COTA, OSCAR | 23 | 236 |
| 5 | ALLAIRE, ERIC | 4 | 30 | 66 | COTE, WRAY | 16 | 352 |
| 6 | ALONSO, ROSA LINDA | 8 | 225 | 67 | COTTENHAM, HONEY | 77 | 1,764 |
| 7 | ALVARADO, ARTURO | 5 | 132 | 68 | CRAWFORD, JERRY | 5 | 93 |
| 8 | AMARAL, JORGE | 8 | 75 | 69 | CRUZ, ERIC | 1 | 21 |
| 9 | AMON, CHRISTOPHER | 1 | 24 | 70 | CUFAUDE, PETER | 1 | 1 |
| 10 | ANAND, DAVE | 10 | 267 | 71 | CURTIS, KRISTOPHER | 4 | 84 |
| 11 | ANDERSON, ANTHONY | 4 | 74 | 72 | DAVIS, JAMES | 11 | 260 |
| 12 | ANDERSON, BRETT | 6 | 154 | 73 | DAVIS, WILLIE | 20 | 347 |
| 13 | ANDRADE, ABRAHAM | 3 | 37 | 74 | DOYLE, CARMEN | 1 | 29 |
| 14 | ANGELES, PABLO | 15 | 383 | 75 | DUNCAN, SHAWN | 1 | 28 |
| 15 | ANGIANO, ALFREDO | 9 | 117 | 76 | DUNCANS, JAMES | 4 | 105 |
| 16 | ASTORGA, ERIBERTO | 30 | 550 | 77 | EATON, TREVOR | 38 | 655 |
| 17 | ATCHISON, KRISTOPHER | 13 | 273 | 78 | ECHEVERRIA, ANDRES | 3 | 9 |
| 18 | AVALOS, CESAR | 10 | 244 | 79 | ECKHART, DANIEL | 20 | 161 |
| 19 | BARBER, CURTIS | 26 | 580 | 80 | EDEN, JESSICA | 28 | 517 |
| 20 | BARLOW, JAMES | 2 | 57 | 81 | ELKINS, DAVID | 11 | 234 |
| 21 | BARLOW, KRISTINE | 25 | 322 | 82 | ELLEFSON, ASHLEE | 1 | 28 |
| 22 | BARNHART, JAIMEE | 8 | 96 | 83 | ELLIS, SHAWN MICHEAL | 14 | 274 |
| 23 | BATHKE, STEVEN | 12 | 190 | 84 | ELLSON, WENDY M | 9 | 188 |
| 24 | BAUTISTA, FRANCISCO | 7 | 128 | 85 | ENSOR, CHET | 6 | 146 |
| 25 | BECHTEL, SEAN | 4 | 68 | 86 | ERICKS, MEGAN | 3 | 31 |
| 26 | BELKNAP, ROBERT | 7 | 174 | 87 | ESLAMIZAR, DAVID | 1 | 2 |
| 27 | BENTLEY, DEWAYNE | 4 | 12 | 88 | ESPINOZA, REYNALDO | 36 | 521 |
| 28 | BERNINGHAUSEN, JOSEPH | 15 | 370 | 89 | ESTRADA, JAIME | 115 | 1,864 |
| 29 | BEST, GARY | 11 | 204 | 90 | FANGUY, MINDY | 22 | 614 |
| 30 | BISSONETTE II, EDWARD | 17 | 189 | 91 | FARLEY, JOSEPH | 54 | 898 |
| 31 | BLAGG, LUCAS | 19 | 312 | 92 | FELTY, STEVEN | 3 | 81 |
| 32 | BOATMAN, BYRON | 75 | 1,750 | 93 | FERNANDEZ, REGINALDO | 9 | 158 |
| 33 | BOND, JASON | 2 | 30 | 94 | FIELDHOUSE, KELLI | 12 | 299 |
| 34 | BOQUET, DARYL | 5 | 128 | 95 | FIRTH, STEVEN | 7 | 95 |
| 35 | BROKAW, THOMAS | 35 | 594 | 96 | FISHER, MICHAEL | 16 | 298 |
| 36 | BROWN, MIKE | 37 | 659 | 97 | FLORES, JAVIER OSCAMPO | 4 | 34 |
| 37 | BROWN, SCOTT | 34 | 577 | 98 | FLORES, JOSE | 32 | 737 |
| 38 | BROWNE, AARON | 41 | 1,073 | 99 | FLORES, JOSHUA | 15 | 311 |
| 39 | BRYANT, CHRIS | 2 | 35 | 100 | FOSTER, MICHAEL | 4 | 101 |
| 40 | BURGH, DARYL | 2 | 55 | 101 | GARCIA, DANIEL | 50 | 1,144 |
| 41 | BURK, STEVEN | 2 | 53 | 102 | GEFROH, JOSEPH | 67 | 1,023 |
| 42 | BURTON, DANIEL | 12 | 276 | 103 | GILLESPIE, HEATHER | 20 | 366 |
| 43 | CAMPBELL, SCOTT | 14 | 264 | 104 | GOMEZ, PAUL | 29 | 334 |
| 44 | CARLSTON, JARED | 2 | 35 | 105 | GONZALEZ GUERRER, FIDEL | 6 | 111 |
| 45 | CARPENTER, TYLER | 2 | 3 | 106 | GONZALEZ RAMOS, HERIBERTO | 5 | 49 |
| 46 | CARRILLO, VERONICA | 5 | 136 | 107 | GONZALEZ, CIRIACO | 5 | 105 |
| 47 | CARSON, PETER | 5 | 135 | 108 | GONZALEZ, SANTIAGO | 9 | 181 |
| 48 | CARTER, HENRY | 22 | 493 | 109 | GRAHAM, BRIAN | 94 | 2,275 |
| 49 | CASTRO, PHILLIP | 21 | 470 | 110 | GREENSTADT, CJ | 18 | 349 |
| 50 | CAVETT, TIMOTHY | 44 | 1,108 | 111 | GRIGGS, COREY | 2 | 35 |
| 51 | CEBREROS, JUAN | 17 | 242 | 112 | GRUENDING, MATTHEW | 1 | 22 |
| 52 | CHITTY, EVA | 40 | 944 | 113 | GUDINO, STEPHANIE | 7 | 152 |
| 53 | CLEARY, JASON | 8 | 202 | 114 | GULOVSEN, CRYSTAL | 46 | 771 |
| 54 | CLEVINGER, DUSTIN | 47 | 810 | 115 | GUTTRIDGE, THOMAS | 4 | 59 |
| 55 | CLEYS, BRIAN | 2 | 47 | 116 | GUZMAN, ANDRES | 11 | 285 |
| 56 | COFFMAN, JASSON | 10 | 87 | 117 | HA, ALAN | 19 | 454 |
| 57 | COLE, CONRAD | 15 | 110 | 118 | HAAGENSON, TRACY | 4 | 89 |
| 58 | COLLIER, TRAVIS | 5 | 82 | 119 | HAINES, RYAN | 29 | 651 |
| 59 | COLVARD, CHERYL | 111 | 2,430 | 120 | HALL, CHARLEY | 14 | 133 |
| 60 | COMSTOCK, MARC | 19 | 317 | 121 | HANCOCK, LANCE | 14 | 350 |
| 61 | CONRAD, GABRIEL | 6 | 124 | 122 | HANDY, RYAN | 1 | 2 |

Exhibit A

**AutoZone-Migis  SMS Data Incident Summary of Gaps of 29 Minutes or Less, Sorted By Employee Last Name**

Dates represented: 10/28/2006 through 10/27/2007

| | Employee | Incidents | Unpaid Minutes | | Employee | Incidents | Unpaid Minutes |
|---|---|---|---|---|---|---|---|
| 123 | HARBOUR, STACIE | 5 | 76 | 184 | MORALES, MARIO | 14 | 290 |
| 124 | HARRIS, LEANNA | 9 | 92 | 185 | MORAVEK, AARON | 3 | 54 |
| 125 | HASKELL, JANELLE | 15 | 76 | 186 | MORRILL, BRYAN | 18 | 430 |
| 126 | HAYASHI, PATRICK | 14 | 210 | 187 | MORRIS, DAVID | 12 | 245 |
| 127 | HEBERT, RYAN | 1 | 3 | 188 | MORRIS, IAN | 3 | 86 |
| 128 | HENDRICKS, ALAN | 4 | 29 | 189 | MUNOZ ESCOBEDO, FERNANDO | 7 | 151 |
| 129 | HINDLE, ANTHONY | 16 | 235 | 190 | NACOSTE, ANTHONY | 40 | 976 |
| 130 | HOBSON JR, LEO | 7 | 16 | 191 | NARVAEZ, DANIEL | 5 | 138 |
| 131 | HOGAN, MARK | 4 | 87 | 192 | NIELSEN, MARK | 19 | 488 |
| 132 | HOLLAND, JOHN | 11 | 117 | 193 | NIMTZ, ALISON | 19 | 461 |
| 133 | HOLMES, AUSTIN | 18 | 372 | 194 | NINO ORTIZ, RICARDO | 1 | 27 |
| 134 | HOUSH, CHRISTOPHER | 3 | 35 | 195 | NORTHCUTT, JUSTIN | 8 | 144 |
| 135 | HUGHES, DAMON | 58 | 1,341 | 196 | NUNEZ, ADRIAN | 1 | 5 |
| 136 | HUMPHREY, JEREMIAH A | 14 | 389 | 197 | OCHOA, JOSE | 1 | 28 |
| 137 | HUNT, JOHN | 56 | 1,250 | 198 | ORDEX, NIGEL | 20 | 490 |
| 138 | IRWIN, KENNETH | 2 | 2 | 199 | ORFIELD, JUSTIN | 23 | 503 |
| 139 | JACK, RACHEL | 16 | 179 | 200 | ORNDUFF, CHRISTOPHER | 25 | 468 |
| 140 | JAQUEZ, JOSE | 17 | 353 | 201 | ORNELAS, SCOTT | 5 | 132 |
| 141 | JENSEN, JUSTIN | 8 | 196 | 202 | OSHEA, DANIEL | 25 | 543 |
| 142 | JENSEN, TRACI | 4 | 109 | 203 | OTT, ANDREW | 9 | 244 |
| 143 | JOHNSON, ANGELA | 8 | 68 | 204 | OUELLETTE, ANDREW | 1 | 29 |
| 144 | JONES, JOHN | 15 | 344 | 205 | PADGETT, WALTER | 8 | 87 |
| 145 | JONES, ROBERT | 7 | 157 | 206 | PAREDES, LEO | 1 | 5 |
| 146 | KELLEY, DONALD | 6 | 166 | 207 | PARMETER, MELISSA | 3 | 86 |
| 147 | KEY, ROBERT | 8 | 100 | 208 | PARNELL, REX | 1 | 26 |
| 148 | KLEIN, SCOTT | 65 | 1,454 | 209 | PARRA, MAGDALENA NAVARRO | 31 | 644 |
| 149 | KNIERIM, ANTHONY | 3 | 69 | 210 | PAZ, FILBERTO | 27 | 488 |
| 150 | KOLODY, MICHAEL | 3 | 58 | 211 | PERMIN, JOSHUA | 4 | 85 |
| 151 | KREBS, ANDREW | 31 | 565 | 212 | PERSONS, KIMBERLY | 18 | 339 |
| 152 | LAHAIE, JACQUELINE | 6 | 74 | 213 | PETROSYAN, EDGAR | 9 | 200 |
| 153 | LAIRD, DIXON | 3 | 52 | 214 | PETTY, TIMOTHY | 5 | 32 |
| 154 | LANE, DAVID | 14 | 195 | 215 | PHILBROOK, ANTHONY | 7 | 83 |
| 155 | LANE, GARY | 29 | 770 | 216 | PHILLIPS III, CYRENIUS | 6 | 145 |
| 156 | LANE, JEFF | 16 | 268 | 217 | PHILLIPS, ORION | 1 | 29 |
| 157 | LARSEN, HEATHER | 14 | 190 | 218 | PHILLIPSON, JUSTIN | 1 | 28 |
| 158 | LARSEN, RICHARD | 1 | 4 | 219 | PINKSTON, STEVEN | 33 | 871 |
| 159 | LARSON, RYAN | 9 | 187 | 220 | PITTS, ERIC | 7 | 93 |
| 160 | LASETER, ERIC | 12 | 120 | 221 | PLANALP, JESSICA | 2 | 6 |
| 161 | LAY IV, WILLIAM | 1 | 28 | 222 | PRADO, YGNACIO | 2 | 51 |
| 162 | LEACH, JOE | 5 | 111 | 223 | PROEBSTEL, DARIN | 20 | 428 |
| 163 | LEON, JAIME | 1 | 13 | 224 | RAMIREZ, CHRISTINA | 1 | 1 |
| 164 | LINDQUIST, SANDIE | 8 | 126 | 225 | RAMIREZ, JOSE | 9 | 195 |
| 165 | LOGAN, JAMI | 3 | 25 | 226 | RAMIREZ, ROBERTO | 9 | 130 |
| 166 | LOOMIS, ROBERT | 132 | 3,230 | 227 | RATLIFF, HEIDI | 5 | 37 |
| 167 | LUNOW, MARCUS | 2 | 44 | 228 | RAUCH, JAMES | 15 | 244 |
| 168 | LUTJE, ELIJAH | 7 | 179 | 229 | RAY, RANDALL | 3 | 86 |
| 169 | LYSKO, BORIS | 10 | 267 | 230 | REAM SAPIANO, ALEX | 12 | 148 |
| 170 | MADRIGAL, MARIA | 24 | 481 | 231 | REYES, JOSE | 1 | 15 |
| 171 | MALONI, KELSEE | 2 | 29 | 232 | REYES, MARTIN | 17 | 69 |
| 172 | MARISCAL, RIGOBERTO | 1 | 27 | 233 | RICHARDSON, MARTIN | 37 | 892 |
| 173 | MARSH, BRYAN | 34 | 786 | 234 | RICHMOND, JEFFREY | 33 | 732 |
| 174 | MARTINEZ, ARMANDO | 1 | 1 | 235 | RICKELS, DAVID | 13 | 290 |
| 175 | MARTINEZ, JOSE | 16 | 363 | 236 | RINCON, MIGUEL | 81 | 2,003 |
| 176 | MCALARY, ALREN | 9 | 79 | 237 | RITTER, BRYCE | 35 | 639 |
| 177 | MCCOLM, SKLER | 2 | 44 | 238 | RIVERA, RARAMURI | 47 | 969 |
| 178 | MCSORLEY, MISTY | 45 | 1,039 | 239 | ROBERTS, SANDRA | 12 | 16 |
| 179 | MEHIC, MIRZET | 47 | 970 | 240 | ROBINSON, NICK | 4 | 22 |
| 180 | MENDOZA, ALEJANDRO | 9 | 51 | 241 | ROBINSON, SHAWN | 44 | 843 |
| 181 | MILLER, NICK | 12 | 110 | 242 | ROCK, NICHOLAS | 4 | 85 |
| 182 | MILLER, PHILLIP | 14 | 304 | 243 | RODRIGUEZ, JAVIER | 2 | 55 |
| 183 | MITCHELL, LAWRENCE | 1 | 5 | 244 | RODRIGUEZ, JOSE | 18 | 457 |

**AutoZone-Migis  SMS Data Incident Summary of Gaps of 29 Minutes or Less, Sorted By Employee Last Name**

Dates represented: 10/28/2006 through 10/27/2007

| | Employee | Incidents | Unpaid Minutes | | Employee | Incidents | Unpaid Minutes |
|---|---|---|---|---|---|---|---|
| 245 | RODRIGUEZ, VICTOR | 41 | 877 | 306 | WARREN, ASHLEY JO | 6 | 102 |
| 246 | RUELAS, ARTURO | 44 | 658 | 307 | WATSON, ROBERT | 4 | 105 |
| 247 | RUND, JOSHUA | 2 | 48 | 308 | WEAVER, MATTHEW | 2 | 55 |
| 248 | RUTH, DANIEL | 42 | 1,073 | 309 | WEBER, ANDREW | 43 | 938 |
| 249 | SAENZ, ADAM | 10 | 71 | 310 | WEBER, NATHANIEL | 2 | 27 |
| 250 | SANCHEZ, BRENDA | 1 | 27 | 311 | WESNER, KIRSTIN | 8 | 218 |
| 251 | SANDOVAL, SAUL | 11 | 59 | 312 | WEST, ISAIAH | 5 | 58 |
| 252 | SANTIAGO, RICARDO | 2 | 29 | 313 | WESTCOTT, ROBERT | 5 | 107 |
| 253 | SCHELLER, JOSEPH | 21 | 513 | 314 | WHITTECAR, JON | 8 | 215 |
| 254 | SCHMIDT, ALEXANDER | 1 | 28 | 315 | WILLCOX, SEAN | 16 | 203 |
| 255 | SCHOW, CHARLES | 4 | 103 | 316 | WILLIAMS, DREW | 30 | 560 |
| 256 | SCHUMACHER, COLTEN | 27 | 650 | 317 | WILSON, NICK | 14 | 337 |
| 257 | SELLS, MICHAEL | 4 | 58 | 318 | WINES, TROY | 111 | 2,901 |
| 258 | SENINA, IVAN | 62 | 1,363 | 319 | WISE, TROY | 9 | 143 |
| 259 | SHAFFER, ROBERT | 5 | 135 | 320 | WOLFE, MICKEY | 46 | 1,154 |
| 260 | SHAW, MICHAEL | 1 | 28 | 321 | WOOD, TODD | 11 | 242 |
| 261 | SHOUPE, MIKE | 4 | 105 | 322 | YORK, DON | 6 | 100 |
| 262 | SIERRA, JOSE | 1 | 2 | 323 | YOU, SOLHENA | 2 | 5 |
| 263 | SIGALA, THOMAS | 4 | 114 | 324 | ZACARIAS, SALVADOR | 5 | 67 |
| 264 | SINNOTT, MARTIN | 11 | 268 | 325 | ZANDER, GEFF | 3 | 33 |
| 265 | SIX, JOHN | 57 | 1,206 | 326 | ZAPIEN, EDGARDO | 3 | 74 |
| 266 | SMITH, JAMES | 24 | 588 | 327 | ZIMMERMAN, MICHAEL | 7 | 126 |
| 267 | SMITH, JONATHAN | 1 | 28 | | | | |
| 268 | SOLBERG, JACOB | 18 | 132 | | | | |
| 269 | SPEGEL, KRISTA | 3 | 45 | | | | |
| 270 | STEBBINS, ROBERT | 18 | 149 | | | | |
| 271 | STEENBURGH, GLEN | 12 | 40 | | | | |
| 272 | STONE, MATHEW | 3 | 84 | | | | |
| 273 | STONER, MATTHEW | 70 | 1,863 | | | | |
| 274 | STRICKLIN, DUANE | 9 | 107 | | | | |
| 275 | STULL, CHARLES | 1 | 5 | | | | |
| 276 | STUTZ, KACEY | 8 | 123 | | | | |
| 277 | SWINEHART, KOBI | 3 | 29 | | | | |
| 278 | SWORDEN, JOSEPH | 15 | 322 | | | | |
| 279 | TAGLE, RICARDO | 9 | 32 | | | | |
| 280 | TANK, JUSTIN | 84 | 1,556 | | | | |
| 281 | TEET, JAMES | 200 | 5,666 | | | | |
| 282 | TERZIAN, MICHAEL | 112 | 1,956 | | | | |
| 283 | THELEN, ANA | 19 | 402 | | | | |
| 284 | THIELEN, KATERI | 13 | 371 | | | | |
| 285 | THORNTON, KURT | 19 | 460 | | | | |
| 286 | TOLUTAU, ITENI | 9 | 104 | | | | |
| 287 | TOMPKINS, JASON | 95 | 2,174 | | | | |
| 288 | TORRERO, JHONATHAN | 3 | 45 | | | | |
| 289 | TORRES, ENRRIQUE | 4 | 86 | | | | |
| 290 | TORRES-MORA, MARIO | 1 | 1 | | | | |
| 291 | TOTTEN, RYAN | 33 | 624 | | | | |
| 292 | TRAVER, RAYMOND | 9 | 105 | | | | |
| 293 | TREJO, ABRAHAM | 1 | 3 | | | | |
| 294 | TRIPP, JEFFERY | 3 | 86 | | | | |
| 295 | TURNER, CLENTON | 9 | 233 | | | | |
| 296 | VALADEZ, RICARDO | 7 | 70 | | | | |
| 297 | VALDOVINOS, OSCAR | 1 | 29 | | | | |
| 298 | VALENCIA, RAY | 3 | 57 | | | | |
| 299 | VAZQUEZ, NOE | 10 | 258 | | | | |
| 300 | VEGOS, JESSE | 10 | 198 | | | | |
| 301 | VILLASTRIGO, FRANCISCO | 14 | 252 | | | | |
| 302 | VOZNYUK, YAROSLAV | 224 | 5,155 | | | | |
| 303 | WALLER, SHAWN | 11 | 242 | | | | |
| 304 | WALLS, DANJA | 2 | 55 | | | | |
| 305 | WARDWELL, MELISSA | 1 | 1 | | | | |

Exhibit A

**AutoZone-Migis  SMS Data Incident Summary of Gaps of 29 Minutes or Less, Sorted By Employee Last Name**

Dates represented: 10/28/2006 through 10/27/2007

| Employee | Incidents | Unpaid Minutes | Employee | Incidents | Unpaid Minutes |
|----------|-----------|----------------|----------|-----------|----------------|
| Report Total | 5,607 | 114,643 | | | |

**AutoZone-Migis  SMS Data Gaps of 29 Minutes or Less, Sorted By Employee and Date of Occurrence**

**Dates Represented:  10/29/2006 through 10/27/2007**

| Employee | Date | Start Time | End Time | Unpaid Minutes | | Employee | Date | Start Time | End Time | Unpaid Minutes |
|---|---|---|---|---|---|---|---|---|---|---|
| ABBOTT, RYAN | | | | | | ALVARADO, ARTURO | | | | |
| | 10/17/2007 | 1:10 PM | 1:38 PM | 28 | | | 9/29/2007 | 5:00 PM | 5:28 PM | 28 |
| | 8/12/2007 | 3:35 PM | 3:58 PM | 23 | | | 4/19/2007 | 6:01 PM | 6:30 PM | 29 |
| | 9/2/2007 | 2:23 PM | 2:34 PM | 11 | | | 5/1/2007 | 11:19 AM | 11:40 AM | 21 |
| | | | | **62** | | | | | | **132** |
| ACFALLE, JEREMIAH | | | | | | AMARAL, JORGE | | | | |
| | 3/23/2007 | 4:43 PM | 5:12 PM | 29 | | | 11/7/2006 | 5:44 PM | 5:49 PM | 5 |
| | 7/5/2007 | 4:32 PM | 5:00 PM | 28 | | | 11/7/2006 | 5:51 PM | 5:56 PM | 5 |
| | 8/11/2007 | 6:06 PM | 6:31 PM | 25 | | | 12/3/2006 | 8:50 AM | 8:51 AM | 1 |
| | | | | **82** | | | 11/3/2006 | 3:04 PM | 3:11 PM | 7 |
| AGUIAR, LUIS | | | | | | | 11/17/2006 | 4:12 PM | 4:30 PM | 18 |
| | 9/19/2007 | 8:04 AM | 8:19 AM | 15 | | | 11/8/2006 | 2:34 PM | 2:35 PM | 1 |
| | 9/3/2007 | 1:30 PM | 1:32 PM | 2 | | | 11/1/2006 | 3:40 PM | 4:09 PM | 29 |
| | 8/25/2007 | 3:24 PM | 3:27 PM | 3 | | | 11/2/2006 | 5:07 PM | 5:16 PM | 9 |
| | 8/17/2007 | 1:33 PM | 1:45 PM | 12 | | | | | | **75** |
| | 8/2/2007 | 12:18 PM | 12:26 PM | 8 | | AMON, CHRISTOPHER | | | | |
| | 2/19/2007 | 3:57 PM | 3:59 PM | 2 | | | 9/4/2007 | 2:28 PM | 2:52 PM | 24 |
| | 10/25/2007 | 3:21 PM | 3:34 PM | 13 | | | | | | **24** |
| | 2/13/2007 | 1:07 PM | 1:10 PM | 3 | | ANAND, DAVE | | | | |
| | 7/12/2007 | 1:50 PM | 2:03 PM | 13 | | | 7/2/2007 | 3:18 PM | 3:45 PM | 27 |
| | 3/23/2007 | 8:01 AM | 8:02 AM | 1 | | | 7/31/2007 | 2:56 PM | 3:22 PM | 26 |
| | 4/6/2007 | 2:40 PM | 2:46 PM | 6 | | | 7/30/2007 | 3:52 PM | 4:21 PM | 29 |
| | 4/20/2007 | 2:45 PM | 2:52 PM | 7 | | | 7/24/2007 | 2:49 PM | 3:14 PM | 25 |
| | 5/16/2007 | 2:37 PM | 2:40 PM | 3 | | | 7/20/2007 | 2:44 PM | 3:11 PM | 27 |
| | 5/31/2007 | 2:18 PM | 2:33 PM | 15 | | | 7/18/2007 | 12:54 PM | 1:22 PM | 28 |
| | 6/10/2007 | 4:36 PM | 4:37 PM | 1 | | | 7/17/2007 | 3:15 PM | 3:39 PM | 24 |
| | 7/11/2007 | 12:51 PM | 1:19 PM | 28 | | | 7/16/2007 | 3:54 PM | 4:19 PM | 25 |
| | | | | **132** | | | 7/10/2007 | 4:51 PM | 5:18 PM | 27 |
| ALANIS, SHANNON | | | | | | | 8/1/2007 | 12:46 PM | 1:15 PM | 29 |
| | 12/20/2006 | 8:33 PM | 8:34 PM | 1 | | | | | | **267** |
| | 12/26/2006 | 3:36 PM | 3:58 PM | 22 | | ANDERSON, ANTHONY | | | | |
| | 10/23/2007 | 5:06 PM | 5:31 PM | 25 | | | 1/1/2007 | 4:01 PM | 4:29 PM | 28 |
| | 10/22/2007 | 5:03 PM | 5:30 PM | 27 | | | 1/28/2007 | 2:34 PM | 2:57 PM | 23 |
| | 10/13/2007 | 3:35 PM | 4:00 PM | 25 | | | 2/16/2007 | 5:01 PM | 5:22 PM | 21 |
| | 8/2/2007 | 3:24 PM | 3:43 PM | 19 | | | 2/26/2007 | 4:57 PM | 4:59 PM | 2 |
| | 6/11/2007 | 4:29 PM | 4:58 PM | 29 | | | | | | **74** |
| | 4/8/2007 | 1:34 PM | 2:00 PM | 26 | | ANDERSON, BRETT | | | | |
| | 3/31/2007 | 4:02 PM | 4:29 PM | 27 | | | 11/20/2006 | 1:11 PM | 1:35 PM | 24 |
| | 1/26/2007 | 5:02 PM | 5:25 PM | 23 | | | 11/6/2006 | 1:46 PM | 2:14 PM | 28 |
| | 10/25/2007 | 4:23 PM | 4:51 PM | 28 | | | 12/23/2006 | 2:49 PM | 3:16 PM | 27 |
| | 3/4/2007 | 1:05 PM | 1:33 PM | 28 | | | 11/18/2006 | 12:11 PM | 12:35 PM | 24 |
| | | | | **280** | | | 12/20/2006 | 3:31 PM | 3:57 PM | 26 |
| ALLAIRE, ERIC | | | | | | | 12/4/2006 | 2:37 PM | 3:02 PM | 25 |
| | 11/17/2006 | 4:19 PM | 4:20 PM | 1 | | | | | | **154** |
| | 12/31/2006 | 3:12 PM | 3:14 PM | 2 | | ANDRADE, ABRAHAM | | | | |
| | 12/31/2006 | 3:18 PM | 3:19 PM | 1 | | | 4/22/2007 | 1:08 PM | 1:23 PM | 15 |
| | 2/3/2007 | 3:16 PM | 3:42 PM | 26 | | | 6/7/2007 | 3:59 PM | 4:01 PM | 2 |
| | | | | **30** | | | 6/15/2007 | 3:05 PM | 3:25 PM | 20 |
| ALONSO, ROSA  LINDA | | | | | | | | | | **37** |
| | 3/24/2007 | 4:06 PM | 4:34 PM | 28 | | ANGELES, PABLO | | | | |
| | 4/1/2007 | 12:38 PM | 1:04 PM | 26 | | | 1/20/2007 | 1:22 PM | 1:50 PM | 28 |
| | 3/15/2007 | 1:14 PM | 1:43 PM | 29 | | | 1/27/2007 | 3:36 PM | 4:04 PM | 28 |
| | 2/20/2007 | 1:27 PM | 1:56 PM | 29 | | | 2/2/2007 | 3:41 PM | 4:09 PM | 28 |
| | 2/13/2007 | 1:05 PM | 1:33 PM | 28 | | | 2/15/2007 | 3:17 PM | 3:46 PM | 29 |
| | 2/7/2007 | 12:58 PM | 1:26 PM | 28 | | | 3/3/2007 | 4:36 PM | 5:05 PM | 29 |
| | 1/29/2007 | 4:48 PM | 5:17 PM | 29 | | | 4/7/2007 | 5:01 PM | 5:03 PM | 2 |
| | 6/6/2007 | 4:17 PM | 4:45 PM | 28 | | | 4/15/2007 | 2:36 PM | 3:05 PM | 29 |
| | | | | **225** | | | 12/12/2006 | 12:32 PM | 12:59 PM | 27 |
| ALVARADO, ARTURO | | | | | | | 6/16/2007 | 2:09 PM | 2:37 PM | 28 |
| | 4/5/2007 | 6:05 PM | 6:34 PM | 29 | | | 8/23/2007 | 11:29 AM | 11:58 AM | 29 |
| | 10/10/2007 | 12:35 PM | 1:00 PM | 25 | | | 6/30/2007 | 4:05 PM | 4:34 PM | 29 |